# Exhibit C

# Rights and Responsibilities



Civility  Integrity  Respect  Citizenship  Lifelong Learning  Embrace of Diversity

**Department of Student Rights and Community Standards**

# 2013 – 2014

**Section 2. Respect for the Health, Safety, and Rights of Community Members**

2.0. All members of the community share the responsibility for protecting and maintaining community health and safety and the rights of other persons. Concentrated housing, varied activities, and the needs of students, faculty, and staff for freedom to pursue their own educational tasks and complete job-related responsibilities free from hazards and intrusions, requires the cooperation of all in maintaining these standards.

2.1. Respect the integrity and personal rights of individuals. The University will not tolerate any behavior that:

      2.1.a. intimidates.

      2.1.b. threatens.

      2.1.c. harasses or bullies (see Section 7 regarding harassment).

      2.1.d. physically harms or is considered unwanted physical contact (some examples: hitting, pushing, or physical altercations/violence of any kind).

      2.1.e. invades personal privacy (see Sections 2.5, 11.2, 11.3, and 17).

      2.1.f. endangers the health, safety, or welfare of any other person on or off campus. Due to the seriousness of any integrity or personal rights accusations and accompanying issues that may impact the Brandeis community, any student involved in such an incident may be placed on campus restriction or emergency suspension pending the outcome of any investigation or conduct process (see Section 22).

      2.1.g. defames or slanders.

      2.1.h. constitutes stalking. The term 'stalking' is defined by the Commonwealth of Massachusetts as: "Whoever (1) willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress, and (2) makes a threat with the intent to place the person in imminent fear of death or bodily injury."

2.2. Comply with instructions of University officials, Special Examiners, committees, or boards.

2.3. Comply with the final decision of the Student Conduct Board, the University Appeals Board, or with an Administrative Action or University Action.

2.4. Recognize and allow for the legitimate functions of the University. Obstructing or disrupting teaching, research, administrative, public service, disciplinary, or other authorized functions is unacceptable.

2.5. Refrain from using computers, cellular phones, tablets, cameras, or other electronic devices in any manner that causes disruption to or invades another individual's privacy in a classroom, library or other campus facility or any campus event.  This includes misuse of computer and/or cellular devices with photographic, audio or video recording or streaming, or text messaging capability (see Sections 2.1.e, 11.2, 11.3, 11.4 and 17.1).

2.6. Use safety equipment and/or initiate safety procedures only when it is necessary (this includes, but is not limited to, fire equipment, fire alarms, fire drills, and exit lights). Initiating a false fire alarm or issuing any type of threat is strictly prohibited (see Sections 9 and 10.15.m).

2.7. Refrain from discrimination on the basis of race, sex, color, national origin, religion, age, gender, gender identity and expression, sexual orientation, disability, veteran status, or genetic information (see Section 7).

2.8. Refrain from hazing.   Hazing is an activity expected of someone joining or participating in a group that humiliates, degrades, abuses, or endangers them (physically or emotionally), regardless of a person's willingness to participate.  Examples of hazing common across student groups include: alcohol consumption; humiliation; isolation; sleep-deprivation; sex acts; initiating or disciplining fellow students, often in the nature of forced alcohol consumption; and humiliating or painful ordeals (see Appendix A for related Massachusetts law) (see Section 1.8).

2.9. It is prohibited to possess or use firearms (including blank pistols and replicas, bb guns, and pellet guns), explosives, knives, fireworks, nun-chucks, paintball guns, and other articles or substances usable as weapons on University property.

2.10. Obtain clearance from the Department of Student Activities for the use of loud speakers or other sound amplification equipment at outdoor events.

2.11. Refrain from bringing any dog or animal onto the campus without a leash.  Students are prohibited from allowing any unrestrained animal to enter any campus building, or allowing any restrained or unrestrained animal (other than guide and service animals) to enter dining service buildings, campus centers, residence halls, or libraries (see Section 10.4).

2.12. Assume responsibility for the actions, damage, or injuries caused by, or costs incurred for the services related to hosting a guest on campus.  The University reserves the right to impose requirements related to the safety or security concerns of a visit by a guest, and to assess the host for the cost of meeting these requirements (see Sections 10.6 and 10.10).

2.13. Comply with the regulations enumerated in other official University publications and documents (e.g., library policies, computer use policies, Dining Services policies, the Residence Halls and Meal Plan License, parking policies, and financial aid policies).

2.14. Refrain from any verbal or physical behavior or actions that could be construed as retaliation for an individual's good-faith report to the Department of Public Safety, the Student Conduct Process, or another University official regarding another student (see Section 7.4).

**Section 3. Sexual Responsibility – Seeking and Communicating Consent**

3.0. Brandeis University expects all members of the University community to treat one another with respect.   Policies regarding sexual misconduct emphasize personal accountability as well as recognition of the impact of one's behavior on others.  Students are encouraged to examine their own values, communicate with one another clearly, and acknowledge the condition and requests of others.  Incapacity to consent to sexual activity or compromised communication can result when individuals are under the influence of intoxicants such as alcohol and other drugs.  If all parties do not consent, or are unable to consent to a sexual act, then the interaction could be defined as sexual misconduct or sexual assault.   Consent must be sought affirmatively and clearly understood and communicated before engaging in any sexual activities.  Due to the seriousness of sexual misconduct accusations and accompanying issues that may impact the Brandeis community, any student accused of sexual misconduct may be placed on campus restriction or emergency suspension pending the outcome of any investigation or conduct process (see Section 22).  **Note:** Adjudication of any allegation related to this section will be pursuant to the Special Examiner's Process found in Section 22.6 and not the Student Conduct Process found in Section 19.

3.1. Students are prohibited from engaging in sexual misconduct.  Sexual contact that occurs without the explicit consent of each person involved may be considered sexual misconduct.   Consent must be clearly and affirmatively communicated, mutual, non-coercive, and given free of force or threat of force.  A person who is physically or mentally incapacitated by drugs, alcohol, or other circumstances is not capable of giving consent. Physical or mental incapacity means the lack of ability to appreciate the fact that the situation is sexual, and/or the inability to rationally and reasonably appreciate the nature and extent of that situation.  Evidence of ingestion of drugs and/or alcohol may raise a presumption of physical and/or mental incapacity.

3.2. Causing incapacitation or intoxication, or taking advantage of someone's incapacitation or intoxication for the purpose of engaging in sexual activity is considered sexual misconduct.

3.3. Consent or lack of consent may be communicated verbally or through actions but if a refusal to engage in sexual activity is communicated at any time then the activity must cease immediately.  Lack of consent may also be inferred from the use of force, threat, physical intimidation, or advantage gained by the Accuser's mental or physical incapacity or impairment of which the Accused was aware or should have been aware.  Prior sexual activity or an existing acquaintanceship, friendship, or other relationship that has been sexual in nature does not constitute consent for the continuation or renewal of sexual activity.

**Services Available to Survivors/Victims of Sexual Assault and Other Sex Offenses:**

The following list identifies services, summarizes relevant policies, and illustrates the University's compliance with the requirements of the Higher Education Reauthorization Act, section 485(f).

•Undergraduate and graduate students should report sexual misconduct, rape, sexual assault, or other sex offenses to the Department of Public Safety.  The Department of Public Safety has full police powers and the staff is trained to provide accurate information on preserving evidence and the options for criminal prosecution, campus disciplinary proceedings, or both.

•Brandeis' Title IX Coordinator, Linda Shinomoto, is also available to meet with students and receive complaints of sexual misconduct.  Ms. Shinomoto oversees the University's investigation and resolution of all Title IX complaints.  Ms. Shinomoto can be reached at 781-736-4474.

•The staff in the Department of Public Safety and the staff in the Division of Students and Enrollment are available to assist students in notifying local police if the student chooses.

•The position of Sexual Assault and Prevention Services Specialist will join the Brandeis Community in the autumn of 2013.  This role will provide services to survivors and to coordinate prevention efforts in the campus community.  In the role of Sexual Assault Services & Prevention Specialist this person will coordinate advocacy services for survivors of sexual assault, relationship violence, and stalking, complying with the VAWA Federal Campus Security Act and Title IX regulations, serving as a liaison to student organizations, and conducting outreach and education events to promote a healthy campus environment.

•Campus disciplinary proceedings may be initiated against a student through the Department of Student Rights and Community Standards (see Sections 3.1, 3.2, 3.3 and/or Section 7 of this publication).  To report sexual misconduct against a staff or faculty member contact the University's Director of Employee Relations and Title IX Coordinator for Human Resources.  To make an anonymous report, the University's Confidential Complaint Hotline can be reached at 781-736-4452.  This 24-hour hotline has been configured so that phone numbers for incoming calls are not retained by the system.

•Section 22.6 of this publication describes the right of the Accused as well as the Accuser to bring an Advisor of their choice from the University community.  This section also permits the passive assistance of legal counsel by either party but only if coexisting criminal charges are pending resulting from the same incident.

•Possible sanctions to be imposed following the completion of campus disciplinary proceedings are included in Section 21 and 22.  The Accuser will be informed of the outcome of disciplinary proceedings, insofar as they relate to the Accuser, in which sexual assault or harassment is alleged.

•The postcard *Personal Safety Resources at Brandeis*, published by the Division of Students and Enrollment, lists many helping services both on campus (e.g., Office of Human Resources Psychological Counseling Center) and off campus (e.g., Boston Area Rape Crisis Center).

•The staff in the Division of Students and Enrollment is available after an alleged sexual assault incident to assist students in making any reasonably available changes in academic or living situations.  The Division of Students and Enrollment and the Office of Human Resources offer educational programs on sexual assault.

6.1.b. Students who engage in chalking must observe the distinction between advertising events and vandalism. Only sidewalks may be chalked. This excludes patios and steps to a building. Chalking on buildings and personal or University property (i.e., buildings, cars, bus shelters, signs, etcetera) is not permitted. Chalking is not permitted in areas where it cannot be washed away by rainfall. The Department of Student Activities reserves the right to authorize the removal of chalked messages if they are inappropriate or use profane illustrations or language or are not in a permitted area.

6.2. Respect, maintain and care for property belonging to others. Vandalism, littering, theft, attempted theft, destruction of, damage to, unauthorized possession of, or in appropriate use of property (including intellectual property) belonging to the University, a member of the University community, or any other individual or entity is unacceptable. This section also applies to the grounds, and personal and public property that surrounds the campus.

6.3. Respect, maintain and care for library materials, or other academic materials or equipment. Destruction, mutilation, defacement, or tampering with any of the above is unacceptable.

6.4. Observe University guidelines and policies regarding the access, occupancy, or use of University property, facilities, name, seal or logo (see Sections 10, 13, and 16). Storage closets, utility rooms, and roof areas of any University building may not be accessed by students without explicit permission.

6.5. Respect and preserve the plant and animal life found on the campus. Mistreatment of animals, trees, or plantings is unacceptable.

6.6. Access University buildings and facilities during posted hours and in authorized areas only.

**Section 7. Equal Opportunity, Non-Discrimination, and Harassment**
7.0. Non-Discrimination and Harassment Policy: Brandeis University is committed to providing its students, faculty and staff with an environment conducive to learning and working where all people are treated with respect and dignity. Toward that end, it is essential that Brandeis be free from discrimination and harassment on the basis of race, color, ancestry, religious creed, gender identity and expression, national or ethnic origin, sex, sexual orientation, age, genetic information, disability, Vietnam Era Veteran, qualified special, disabled veteran or other eligible veteran status or any other category protected by law. **Note:** Adjudication of any allegation related to this section will be pursuant to the Special Examiner's Process found in Section 22.6 and not the Student Conduct Process found in Section 19.

It is the University's responsibility to help prevent harassment and discrimination from occurring, to pursue concerns of which it is aware, to objectively investigate concerns, and to take immediate and appropriate action to remedy issues of harassment and discrimination. Brandeis takes this responsibility seriously. Therefore, violations of this policy will not be tolerated and may result in corrective actions up to and including dismissal from school or release from employment.

7.1. Understanding Harassment: Harassment whether sexual or based on an individual's protected class status (race, color, ancestry, religious creed, gender, national or ethnic origin, sex, sexual orientation, age, genetic information, disability, Vietnam Era Veteran, qualified special, disabled veteran or other eligible veteran status) is a form of discrimination and will not be tolerated.  It is regarded as harassment when the conduct has the purpose or effect of unreasonably interfering with a person's education or work performance by creating an intimidating, hostile or offensive environment in which to work, study or live; or otherwise adversely affects a person's employment or educational opportunities.  This may include but is not limited to, hiring, firing, salary increases, promotions, grades, recommendations, scholarly or teaching opportunities, participation in extracurricular activities and student organizations.  Harassment may occur between supervisor/supervisee, faculty/student, within peer groups, or with third parties.

7.2. Examples of Sexual Harassment: Depending on the circumstances, conduct which may constitute sexual harassment includes, but is not limited to:

•Unwelcome sexual conduct toward an individual, including offensive comments, touching or sexual propositions.

•Threats or insinuations that a person's employment, academic standing, grade, assignments, or other conditions of employment or academic life may be adversely affected by not submitting to sexual advances.

•Leering, making sexual gestures, touching, patting, pinching, rubbing, impeding or blocking movements, displaying of sexually suggestive objects, pictures, cartoons or posters, suggestive or obscene letters or e-mails, notes, invitations or gifts.

•Making or using derogatory comments, epithets, slurs or jokes with a sexual content.

•Persistent unsolicited and unwelcome invitations for dates, encounters, or pressure to engage in sexual activity of an implied or explicit nature.

•Persistent inappropriate and unwelcome questions asked about one's personal life.

•Comments to, or about, any individual or their appearance that is sexually graphic or would otherwise tend to be degrading.

•Displaying, sending, forwarding, downloading or otherwise distributing sexual materials via the Internet, computer, cellular data network, or e-mail.

•Consensual sexual relationships where such relationships lead to favoritism towards the student with whom the instructor is sexually involved, which adversely affects other students.

7.3. Examples of other Forms of Harassment/Discrimination: There are other forms of harassment/discrimination as well that create a hostile educational or work environment on the basis of race, color, ancestry, religious creed, national or ethnic origin, sex, sexual orientation, gender expression, age, genetic information, disability, Vietnam Era Veteran, qualified disabled veteran or other eligible veteran status or status in any group protected by federal or state law (together, 'protected class status'). Depending on the circumstances, the following are examples of behaviors that may constitute harassment/discrimination under this policy. This is not an exhaustive list:

•Jokes, comments or innuendoes that make fun of, denigrate, or are based on an individual's or group's protected class status.

•Epithets or slurs based on an individual's or group's protected class status.

•Objects, posters, cartoons, or pictures that make fun of, denigrate, or are based on an individual's or group's protected class status whether directed to an individual, placed on University premises or displayed or circulated on campus.

•Displaying, sending, forwarding, downloading or otherwise distributing materials via the Internet, cellular data network, computer, or e-mail that make fun of, denigrate, or are based on protected class status.
•Other verbal or physical conduct that denigrates or shows hostility or aversion toward an individual or group based on protected class status.

Determination of whether particular conduct violates this policy is made on a case-by-case basis, in light of all the known facts and circumstances. The University may take action on conduct that it deems to be inappropriate, regardless of whether it rises to the level of a violation of law.

7.4. Retaliation: Brandeis policy, as well as federal and state law, prohibits retaliation against any person who in good faith initiates a complaint of harassment or discrimination or cooperates in the investigation of a complaint of harassment or discrimination. Retaliation may result in corrective action up to and including dismissal from school or termination of employment (see Section 2.14).

7.5. False Claims: If it is determined that an individual falsified a claim of harassment or discrimination, it may result in corrective actions up to and including dismissal from school or release from employment.

7.6. Contact/Reporting Information, Concerning Staff or Faculty: Brandeis encourages the reporting of all perceived incidents of discrimination or harassment. Concerns about harassment or discrimination by a faculty or staff member (including visiting faculty, post-doctoral fellows, or graduate students acting in an instructional capacity) should be brought to the attention of Ms. Linda Shinomoto, the Director of Employee Relations and Title IX Coordinator in the Office of Human Resources at 781-736-4474. Concerns about third parties, such as vendors, should also be directed to this individual. This individual, or a designee, is available to provide guidance in managing the concern, for help with informal resolution, for filing a complaint, and for reviewing complaints that require more in-depth fact-finding. For guidance and/or to file a complaint against any undergraduate or graduate student, contact the Dean of Students Office at 781-736-3600.

16.4. Unauthorized use of University facilities, equipment, or supplies for commercial, political or other non-University related purposes is strictly prohibited (see Section 13).

16.5. Unauthorized use of the University tax-exempt numbers or postal permit is prohibited.

16.6. Guidelines Concerning Use of University Facilities, Name, Seal, or Logo: On March 13, 1947, the Secretary of State of the Commonwealth of Massachusetts officially recognized and gave legal validity to the action of the Board of Trustees of Middlesex University in voting to change the name of that institution from the Trustees of Middlesex University to Brandeis University.  Student organizations recognized by the Student Union Senate or Graduate Student Association (or otherwise recognized by the Division of Students and Enrollment) may use the name of the University, its seal, or logo for purposes of identifying the organization.

16.7. Student organizations recognized by the Student Union Senate or Graduate Student Association (or otherwise recognized by the Division of Students and Enrollment) may use University facilities for meetings, programs, events, or other activities subject to the standards and policies published elsewhere in this code.

**Section 17. Protection of Privacy**
17.1. The privacy of every individual in person and in their room and/or office must be respected.  Malicious or unauthorized entry into rooms, offices, personal files, electronic files (see Sections 2.1.e, 11.3, and 17.4), drawers, or locked spaces, such as lockers, etc., is prohibited.

17.2. Except in circumstances as outlined in Section 10.5, authorized entry for the purpose of searching a student maintained room or space requires advance permission from the Senior Student Affairs Officer or designee.  Each statement of permission to enter shall clearly set forth the purpose and objectives of the search, and shall specify the office(s), room(s), or spaces(s) to be entered.  The search shall be limited to the purpose, objective, and location set forth in the statement of permission.  The University official making the search shall show the statement of permission to the occupant at the time of entry or, in the occupant's absence, shall leave a copy of the statement in the room(s), office(s), or space(s) entered.  Immediately upon conclusion of the search, the official shall prepare and give to or leave for the occupant(s) a receipt for any property seized.

17.3. Student residence hall rooms are inspected by members of the Community Living staff periodically during the academic year to evaluate the safety, security, and health conditions of the rooms and to check for illegal possession of University-owned property.  These inspections will be conducted by floor, by section of building, or by building.  Public notification of such inspections will be provided 24 hours in advance and will specify the date and time of the inspection for a given area.  A student's presence in their room is not required for the inspection to take place (see Section 10.5).

---

17.4. Student Records: The Federal Family Educational Rights and Privacy Act of 1974 (FERPA) gives each enrolled student at Brandeis certain rights, including access to the student's educational records, the right to request amendment of those records where the student believes a record is inaccurate or misleading, and the right to add a statement presenting the student's view if the records are not amended.  A detailed statement of the rights and responsibilities of a student under the Act, the location of all records pertaining to a student, and the procedures for requesting access are contained in the Brandeis University Records Policy.  The policy is available from the University Registrar and at: www.brandeis.edu/registrar/bulletin/EducRecordsPolicy.html

# Student Conduct Process

## Section 18. Initial Procedures and the Mediated Resolution Option

18.0. Disciplinary action against a student (any person enrolled in any academic program or course at Brandeis University, up to and including the student's commencement day) may be implemented only through the report of a violation to the Department of Student Rights and Community Standards (DSRCS).  Where infractions of University standards and policies are involved, written reports of violations or complaints shall be submitted to the DSRCS from the Accuser in a timely manner.  The *Community Standards Report (CSR)* is the official reporting mechanism for all allegations of a Brandeis student's possible violation of a standard found in the student code, *Rights and Responsibilities*.  The *CSR* will be shown, in its entirety, to the Accused.  This report is a web-based form located at: http://www.brandeis.edu/studentaffairs/srcs/reporting.html

In all cases the available facts shall be gathered from the Accuser (the complainant or the reporting agency), and a careful evaluation of these facts, as well as the credibility of the person reporting them, shall be made.  If at this point in the judgment of the administrator in the DSRCS, there is insufficient evidence of a violation, or the case lacks merit, or it was not reported in a timely fashion, a decision not to refer the matter to the Conduct Process may be made.  The Senior Student Affairs Officer or designee may appoint, as needed, *ad hoc* conduct boards in addition to the boards described in Section 20.

### 18.1. Mediated Resolution Option

The Director of the DSRCS, at their discretion, may approve the offer by an Accuser to request participation of the Accused in a mediated resolution that will be facilitated by the Director of the DSRCS or by a designee.  A mediated resolution process is one in which the Accuser and the Accused agree to discuss the allegation in question with the assistance of the Director of the DSRCS or a designee.  The purpose of a mediated resolution process is to apply an informal, non-adversarial approach to an outcome or compromise that will be agreed-upon, recorded, final, and binding.  The parties decide how to engage the conflict through shared, in-person conversation, and the parties decide together how the conflict will be resolved.  The Director or designee serves to explain community standards, to ask clarifying questions, and to maintain an orderly, respectful atmosphere.  The Director must also approve all proposed resolutions.

Subject matter that is sometimes well served by a mediated resolution option includes, though is not limited to: roommate disputes, allegations of theft of personal or intellectual property, certain academic conflicts, and minor offenses of community standards.

18.2. Participating parties have discretion to propose restitution and reconciliation outcomes subject to the approval of the Director.  Such outcomes will be evaluated by the Director for their relevance to the conflict, educational benefit, constructiveness, and respect of parameters found in Section 21 of *Rights and Responsibilities*.  In the event of an impasse or other impediment to arriving at a mutually acceptable outcome the Director shall declare an endpoint to the mediated resolution process and redirect the matter to the process outlined in Section 19.  Failure to adhere to the expectations of the written mediated resolution outcome may expose the offending party to further mediation or referral to the conduct process (see Section 2.3).

18.3. A record of the outcome or impasse will be produced and will be subject to the retention provisions in Section 19.5.

**Section 19. Procedural Standards in the Student Conduct Process**

19.1. In cases where the Department of Student Rights and Community Standards decides that there is evidence of a violation that warrants referral to the Conduct Process the Accused will be contacted to schedule the Preliminary Meeting with the appropriate administrator (Communication regarding conduct procedures and meetings will be through the student's Brandeis e-mail account (see Section 1.9).  Failure to respond to a request for a Preliminary Meeting within 4 business days constitutes an acceptance of responsibility for the charge(s).  In such cases, the DSRCS administrator may proceed to sanctioning in accordance with Section 19.3, or refer the matter to the SCB for sanctioning.  In the event of extenuating circumstances, the DSRCS administrator may grant additional time for the choice.  **Note:** If at the time of notification about a referral the Accused is withdrawn or not available in-person, the Student Conduct Process may be deferred until the Accused returns, re-enrolls, or voluntarily waives their right to this deferral.)

This meeting will serve to inform the student of the details of the charges and educate the Accused about the Conduct Process.  The Accused will have the opportunity to ask questions and make statements.  After the Preliminary Meeting the Accused will receive written charges.  (If the Accused fails to schedule or attend a Preliminary Meeting in a timely fashion, the written charges will be sent in the absence of a Preliminary Meeting).

The Accused will have multiple options from which to determine their path through the Student Conduct Process.  The *Choice of Action Form* explains the options available to the Accused.  An excerpt from the form follows:

> **Denial of Responsibility**
> Choice 1. I deny responsibility for the alleged violation(s) stated above.  I request that the charge(s) for which I have denied responsibility be adjudicated via a FULL HEARING before the Student Conduct Board, pursuant to Section 19 of *Rights and Responsibilities*.
>
> OR (not both)
>
> Choice 2. I deny responsibility for the alleged violation(s) stated above.  I request that the charge(s) for which I have denied responsibility be adjudicated via an ADMINISTRATIVE ACTION made by an individual DSRCS administrator, pursuant to Section 19 of *Rights and Responsibilities*.
>
> **Acceptance of Responsibility**
> Choice 3. I accept responsibility for the alleged violation(s) stated above.  I request that the charge(s) for which I have accepted responsibility be adjudicated via a SANCTION HEARING before the Student Conduct Board, pursuant to Section 19 of *Rights and Responsibilities*.
>
> OR (not both)
>
> Choice 4. I accept responsibility for the alleged violation(s) stated above.  I request that the charge(s) for which I have accepted responsibility be adjudicated via an ADMINISTRATIVE ACTION made by an individual DSRCS administrator, pursuant to Section 19 of *Rights and Responsibilities*.

**Mediated Resolution Option** (Neither an Immediate Denial nor Acceptance of Responsibility)

Choice 5. The Accuser has offered the Mediated Resolution Option as a means of adjudicating the charge(s), and the Director of the DSRCS approves the offer. I also accept the offer to participate in the Mediated Resolution Option as an alternative to the other choices above. I understand that I will be expected to accept or deny responsibility for the charges as part of this option, once underway. Should the Mediated Resolution Option reach an impasse, I understand that I will be asked to reconsider the other options (1-4).

The Accused must choose appropriate options, via the *Choice of Action Form*, (for all written charges) within 2 business days of delivery of the written charge(s) to the Accused, the Accused's Brandeis e-mail account, or the Accused's home address. Prior to making this choice, the Accused shall be advised of the name of the administrator who would recommend the appropriate sanction. An Accused's failure to choose one of the options within 2 business days constitutes an acceptance of responsibility for the charge(s). In such cases, the DSRCS administrator may proceed to sanctioning in accordance with Section 19.3, or refer the matter to the SCB for sanctioning. In the event of extenuating circumstances, the DSRCS administrator may grant additional time for the choice.

19.2. Administrative Action: Within 30 class days (final exams and Senior Week constitute class days) from the date the Accused chooses Administrative Action, the Accused shall meet with the DSRCS administrator or designee to discuss the full circumstances of the charge(s); under the Administrative Action option, this is the only opportunity to present evidence. This meeting may be in addition to, or waived in the event of, the Preliminary Meeting between the Accused and a DSRCS administrator. Summer instruction does not constitute class days unless the student is enrolled in Brandeis Summer School. The DSRCS shall notify the Accused in writing of the decision, confirming the action taken and the reasons for the decision.

19.3. If the Accused fails to attend a scheduled meeting with a DSRCS administrator after having chosen Administrative Action, the administrator may complete the process in the Accused's absence and send notification in writing of the decision. The Accused shall have the right to one rescheduled meeting if the Accused fails to attend the originally scheduled meeting through no fault of their own as determined by the administrator in the DSRCS.

19.4. Deferral of Proceedings: The staff of the DSRCS may defer (place on hold) conduct action at any stage of the process for a period not to exceed 90 class days if the Accused is unable to participate due to their withdrawal, leave of absence, documented illness or incapacity, or if agreed upon by consent of the Accuser, and/or the DSRCS administrator, and the Accused. Pending charges may be discontinued thereafter dependent upon the conduct of the Accused.

19.5. A record of the Administrative Action, comprised of a summary of the evidence presented and decision rendered, shall be made by the administrator.  Such records are confidential and shall be retained by the Director of Student Rights and Community Standards for seven years from the date on which this record was written, after which it will be destroyed, unless the student is involved in further conduct action.  When there are multiple incidents and associated conduct records, all records will be maintained for seven years from the date on which the most recent incident is closed by the Student Conduct Process, after which the records will be destroyed (except in extraordinary cases as defined by the Senior Student Affairs Officer or designee).  Access to such records is governed by the *University Records Policy* (see Sections 17.4 and 19.6.j).

19.6. Procedures for Hearings before the Student Conduct Board (SCB): A hearing shall be held within 30 class days, or as soon as practicable, from the date the Accused chooses the Board hearing.  Summer (the period between the last day of final exams for the spring semester and the first day of class in the fall semester) does not constitute class days unless the Accused is enrolled in Brandeis Summer School.  Study Abroad (including domestic exchange programs) periods do not constitute class days.  All hearings will be closed. Notice of the hearing date shall be delivered to the Accused in person, or to the Accused's Brandeis e-mail account, or the Accused's home address at least 48 hours in advance of the hearing.

> 19.6.a. The Hearing Administrator: An administrator from the DSRCS or another Students and Enrollment professional shall serve as the Hearing Administrator.  The non-voting role of the Hearing Administrator is to ensure the appropriate execution of the hearing as prescribed in Section 19.10. Responsibilities of the Hearing Administrator also include: (a) advising the Board regarding the requirements and provisions of the Student Conduct Process; (b) providing information relevant to procedures or sanctions; (c) providing continuity in Board operations and procedures; (d) facilitating the implementation of conduct procedures at all levels of the Conduct Process; (e) acting as a liaison between Boards and the University community; and (f) assisting the Board in fulfilling its educational responsibilities.  The Hearing Administrator shall be available prior to the hearing at the request of the Accused to provide information regarding the alleged violation and procedural matters.  To provide adequate notice to all parties, names of any Advisors and/or witnesses will be submitted by the Accuser and the Accused to the DSRCS administrator at least 24 hours prior to the hearing.  The Hearing Administrator may share the names of witnesses and Advisors with the Accused and Accuser prior to the hearing.

> 19.6.b. The Accused, Accuser, and their Advisors are prohibited from confronting or questioning the witnesses and the other party(ies) regarding the case prior to the hearing.  Additional/unlisted witnesses may be considered at the discretion of the Chairperson of the Board.

19.6.c. Board members may be informed of the student's name and charges prior to the hearing to avoid conflict-of-interest.  Any Board member may disqualify themselves and either party to the case may request to disqualify a prospective voter if they can satisfy the remaining members of the Board that there is sufficient cause for disqualification.  An alternate member may take the place of the disqualified member, or the Accused and Accuser may agree to proceed without the prescribed minimum voting composition of the Board.

19.6.d. Advisors: The Accused and the Accuser in a hearing may each bring an Advisor of their choice from the University community to provide passive assistance during the hearing.   With the permission of the DSRCS administrator, Advisors may be present for conduct meetings prior to, and after, the hearing.  In exceptional circumstances, the Hearing Administrator may allow active participation by an Advisor during a hearing.   The lack of availability of any particular Advisor will not be considered a legitimate reason to reschedule the hearing (see Section 19.6.k).  To avoid even the appearance of undue influence, DSRCS staff that advise the boards, members of the SCB, and members of the University Appeals Board are not eligible to serve as an Advisor for the Accused or Accuser.  An Advisor may not serve as a witness.

Neither party shall be permitted to employ professional legal counsel or other persons from outside the University community to present the case before the Board or to advise the student during the hearing.  However, passive assistance of legal counsel may be allowed when coexisting criminal charges are pending resulting from the same incident (see DSRCS staff for details).

19.6.e. The Accused and the Accuser must be present at the hearing (except as provided in Section 19.6.k.  The Accused may present evidence and introduce witnesses during the hearing, with the passive assistance of the student's Advisor.  Witnesses are those who were present for the incident in question, and/or have information directly related to the incident in question.  It is the responsibility of the Accuser and the Accused to notify their witnesses and Advisor regarding the time, date, and location of the hearing.  Witnesses must be available when called by the Chairperson or their testimony may be disallowed.   Any expenses incurred by a witness to participate will be the responsibility of the witness.

19.6.f. All persons giving evidence or testimony are obligated to be truthful.  The Board shall rule on the admissibility of evidence and any witness testimony.  Unduly repetitious or irrelevant evidence or witness testimony may be excluded.  Rules of procedure and evidence applicable to civil or criminal cases in court do not apply.

19.6.g. The Accused and the Accuser shall have the right to view and question all evidence and reports presented to the Board during the hearing.   The Accused and the Accuser shall have the right to question all witnesses appearing before the Board and only at the hearing.

Written testimony from absentee witnesses may be received by the Board. Proof of authorship but not content of such testimony must be made by certification of a notary public. Inaccessibility of a notary public must be brought to the attention of the DSRSC Director prior to the hearing. Written testimony sent from the author's Brandeis UNET account will be considered authentic with respect to authorship, (see Section 11.1) and therefore, is not subject to certification by a notary public.

19.6.h. In cases where the Accused denies responsibility, the burden of proof shall rest upon the Accuser.

19.6.i. The Board shall make one of the following decisions upon completion of the hearing: (a) a finding of 'not responsible'; (b) a finding of 'responsible' (based only upon clear and convincing evidence) and the recommendation of a sanction; (c) continuance of the case to obtain additional information or for further consideration. Decisions shall be based solely upon evidence and testimony introduced at the hearing. All decisions shall be made by a majority vote. During any hearing conducted by any conduct board, the Chairperson shall vote only to break a tie.

19.6.j. A written Hearing Report, comprised of a summary of evidence presented at the hearing and decision rendered by the Board, shall be made by the DSRCS Hearing Administrator. Hearing Reports are confidential and shall be retained by the Director of Student Rights and Community Standards for seven years from the date on which this record was written, after which it will be destroyed, unless the student is involved in further conduct action. When there are multiple incidents and associated conduct records, all records will be maintained for seven years from the date on which the most recent incident is closed by the Student Conduct Process, after which the records will be destroyed (except in extraordinary cases as defined by the Senior Student Affairs Officer or designee). Access to such records is governed by the *University Records Policy* (see Section 17.4 and 19.5).

19.6.k. The Accused and Accuser shall have the right to a rescheduled hearing if they fail to attend the originally scheduled hearing through no fault of their own as determined by the DSRCS Hearing Administrator. If the DSRCS Hearing Administrator concludes that the failure to attend was the fault of the Accused, the Accused shall be deemed to have accepted the responsibility, and the case will be referred for Administrative Action (see Section 19.3). If a hearing is rescheduled, it will take place after proper notification. If the Accused fails to attend the rescheduled hearing, the Accused shall be deemed to have accepted responsibility, and the case will be referred for Administrative Action (see Section 19.3).

19.7. Appeal Procedures for Board Decisions: Following approval or modification of the sanction(s) by the Senior Student Affairs Officer or designee or the Director of Student Rights and Community Standards (see Section 21), the Accused shall have the right to submit an appeal request concerning the decision of a board to the University Appeals Board on Student Conduct.  Such appeal requests shall be based only on specific evidence, presented in writing of:

> 19.7.a. fraud

> 19.7.b. denial of rights under this process

> 19.7.c. procedural error

> 19.7.d. the claim of new evidence not previously available, which would have materially affected the decision

Appeals shall not be based upon, or granted due to, dissatisfaction with an imposed sanction.  Appeal requests must be filed within 7 business days of delivery of the conduct action to the student in person, or to the student's home address, or Brandeis e-mail address.  If the University Appeals Board determines that a written request for appeal has merit, it shall conduct a new hearing of the case.  Upon completion of the appeal hearing, the University Appeals Board may uphold the original decision and sanction imposed, find the Accused not responsible, or increase or decrease the sanction.  Any sanctions shall not take effect until approved or modified by the Senior Student Affairs Officer or designee or the Director of Student Rights and Community Standards (see Section 21).

19.8. Procedures for the Review of Administrative Actions/Decisions (see Sections 19.1, 19.2, and 19.3): The Accused shall have the right to meet with the Senior Student Affairs Officer or designee to discuss an administrative decision or Administrative Action.  A student must request this meeting within 2 business days of delivery of the conduct action announcement.  The Senior Student Affairs Officer or designee may or may not amend the original decision and/or sanctions.

19.9. Accused students who obtain information at their hearing which might lead to new evidence shall ask for a continuance of that case at that time, rather than wait to raise the matter for the first time as the basis for an appeal request.

**19.10. Hearing Procedures in the Student Conduct Process**[1]

*All hearing participants (Parties, Advisors, Witnesses, SCB, Hearing Administrator) assemble in the Board hearing room.*

A. The Chairperson invites all participants to introduce themselves.

B. The Chairperson explains the philosophy of peer judgment and Board procedures.  (A copy of this statement is available in the hearing materials).

C. The Chairperson reads the statement of the parties' *Rights to Fairness* under this process:
> 1. To bring one Advisor of the Accused/Accuser's choice from the University community to provide passive assistance during the hearing (an Advisor may not serve as a witness).
> 2. To present witnesses on their behalf.
> 3. To question witnesses appearing against them.
> 4. To submit verbal arguments.
> 5. To remain silent and not testify against themselves.  The Accused and Accuser should remember that if they remain silent, the Board is compelled to hear the case and render a decision based upon the evidence presented.

D. Witnesses leave the room, remaining readily available to be called for their testimony.

E. The Chairperson reads the accusation(s) from the *Choice of Action Form*.
> 1. The Accused is asked if they understand the accusations.
> 2. The Accused accepts or denies responsibility.  *Although the Accused student has already indicated their choice of action earlier in the Student Conduct Process, this step insures that all participants are clear that the Accused wishes to continue with the hearing.*

F. Initial Presentations:
*In the event that there is more than one Accused, the Board may bring them into the hearing room either individually or as a group, in alphabetical order, for Initial Presentations; this system shall prevail throughout the remainder of the hearing procedures.*
> 1. The Accuser offers their description of incident.
> 2. The Accused offers their description of the incident.
> 3. The Accused may ask questions of the Accuser.
> 4. Board members may ask questions of the Accuser.
> 5. The Accuser may ask questions of the Accused.
> 6. Board members may ask questions of the Accused.

G. Witnesses for the Accuser may be called
> 1. The Accuser may ask questions of the witness.
> 2. The Accused may ask questions of the witness.
> 3. Board members may ask questions of the witness.
> 4. The witness is excused from the hearing room (but retained outside for possible recall).

---

[1] Procedures for cases involving allegations of Sections 3 or 7 will be adjudicated by the Special Examiner's Process found in Section 22.6.

H. Witnesses for the Accused may be called
      1. The Accused may ask questions of the witness.
      2. The Accuser may ask questions of the witness.
      3. Board members may ask questions of the witness.
      4. The witness is excused from the hearing room (but retained outside for
      possible recall through Step M.).

I. The Accuser, the Accused, or Board members may recall witnesses or re-question the Accuser or the Accused (following same order as previous witness questioning). Witnesses should remain outside until after the conclusion of letter M.  The Chairperson or Hearing Administrator will excuse witnesses from their waiting position at the appropriate time.

J. Final statement of the Accuser (no new testimony).

K. Final statement of the Accused (no new testimony).

L. The Accuser, the Accused, and their respective Advisors leave hearing room, but remain outside until the conclusion of letter N. or O.

M. Board deliberates on the responsibility or lack of responsibility of the Accused.  The Accused, the Accuser, and Advisors are called back into the hearing room to hear the decision regarding responsibility.

N. If the Accused is found not responsible for all charges, all participants are excused and the hearing is adjourned.  An outcome notification (via Brandeis e-mail) will be sent to the Accused, usually within 3-5 business days, pending approval by the Senior Student Affairs Officer or designee.

*The following portion of the procedures constitutes the sanctioning phase of the Full Hearing. When the Accused chooses a Sanction Hearing, the Chairperson will begin the procedure here after introductory remarks in A. and B.*

_____

O. If the Accused is found responsible for one or more charges, recommendations and questions on sanction(s) are heard.

> 1. The Accuser offers recommendations to the Board regarding possible sanctions.
> 2. The Accused may question the Accuser about the Accuser's recommendations.
> 3. The Accused offers recommendations to the Board regarding possible sanctions.
> 4. The Accuser may question the Accused on the Accused's recommendations.
> 5. The Board may question the Accused and the Accuser on their recommendations.

P. The Accuser, the Accused and their respective Advisors are informed that the Board will deliberate on sanction recommendations which will be communicated to the Director of Student Rights and Community Standards or the Senior Student Affairs Officer or designee. Final sanction determinations will be communicated in writing to the Accused, usually within 3-5 business days. The Accused, the Accuser, and Advisors are excused and the Board reserves the right to adjourn for later deliberations.

Q. The Board deliberates on sanction recommendations.

> 1. The Board is advised of past conduct involvement of the Accused, if any, by the Hearing Administrator.
> 2. The Chairperson will record the Board's recommendations, which will be forwarded to the Hearing Administrator and reviewed by the appropriate administrator.

*Appeal procedures will be addressed in the final outcome letter to the Accused.*

**Section 20. Composition of Boards**

20.1. The Student Conduct Board: The SCB shall hear cases of alleged violations of community standards of behavior or University policies referred to it by the DSRCS, with the exception of cases related to Sections 3 and 7 (see Section 22.6).  SCB Hearing Procedures are enumerated in Section 19.10.

20.2. In hearing cases of alleged violations of policy on academic integrity (see Section 4), a Student Conduct Board voting panel of two students and two faculty must be present; at hearings for alleged violations of all other standards or policies, a voting panel of three students and one faculty member or staff member must be present.  The voting requirements in this section may be waived by mutual consent of the SCB, the Accuser, and the Accused.

20.3. A pool of faculty members and staff members shall serve on the Board.  Faculty members are appointed by the Chairperson of the Faculty Senate.  Staff members appointed by the Senior Student Affairs Officer or designee.  The term of appointment for faculty and staff members shall be two years and renewable.

20.4. Students shall be selected annually by a process open to all continuing students.  The Board is formed in the spring of the preceding academic year of a representative cross-section of Brandeis students, as allowed by those who apply.

20.5. The SCB shall be chaired by students, each annually selected by the Board and the DSRCS Director.

20.6. Any member of the SCB may be removed by the DSRCS Director in consultation with the student Chairpersons if the member is determined to be responsible for behavior that conflicts with the high standards of citizenship, confidentiality, and cooperation that the Board represents.

20.7. The University Appeals Board on Student Conduct: The University Appeals Board (UAB) shall hear appeals of decisions of the Student Conduct Board, the Special Examiner's Process, and appeals of decisions of any *ad hoc* board which may be formed at the discretion of the Senior Student Affairs Officer or designee see Section 19.8 for information on Administrative Action review).  An administrator from the Division of Students and Enrollment, designated by the Senior Student Affairs Officer, will serve as Chairperson of the University Appeals Board.

20.8. The University Appeals Board shall be comprised of three voting members (one full-time student and two members of the faculty) and one tenured faculty Chairperson.  At least two undergraduate students and at least two graduate students shall be appointed to the voter pool by the President of the Student Union and Graduate Student Association, respectively.  At least four faculty members shall be appointed to the voter pool by the Chairperson of the Faculty Senate.  A Chairperson who is a full-time tenured faculty member shall be appointed by the Senior Student Affairs Officer or designee.  Students appointed to the UAB must be free from all elected, appointed, or affiliate relationships with the Student Union or Graduate Student Association.  The term of appointment for faculty and staff members shall be two years and renewable.

20.9. Members and alternates on the UAB shall be selected in a manner similar to that of the SCB, with its formation led by the Senior Student Affairs Officer or designee (SSAO/D) and at least one other member designated by the SSAO/D.  If a UAB position becomes vacant, and no alternate is available, the original appointing authority shall appoint a replacement for the remainder of the term.

20.10. A member of the UAB may be removed by the Senior Student Affairs Officer or designee in consultation with the Chairperson, if the member is determined to be responsible for behavior that conflicts with the high standards of citizenship, confidentiality, and cooperation that the UAB represents.

20.11. UAB Hearing Administrators: The UAB shall have an administrator from the Division of Students and Enrollment, designated by the Senior Student Affairs Officer, serving as a Hearing Administrator in all stages of the hearing and deliberations. Responsibilities of the UAB Hearing Administrator shall include: (a) advising the UAB regarding the requirements and provisions of the University's conduct process; (b) providing information relevant to procedures or sanctions; (c) providing continuity in UAB operations and procedures; (d) facilitating the implementation of conduct procedures at all levels of the conduct process; (e) acting as a liaison between boards and the University community; and (f) assisting the UAB in fulfilling its educational responsibilities.

### Section 21. Range of Conduct Actions and Sanctions

21.0. A variety of actions may be taken as a consequence of being found responsible for a violation of community standards.  When determining these actions, a DSRCS administrator, the SCB, or the UAB may consider all facets of the specific individual situation, including but not limited to the seriousness of the offense, prior history of violations, impact of the offense on others, the student's class year, and/or evidence of intent.  Because the purpose of this process is to uphold and promote community standards, a learning component is also part of the sanctioning process whenever appropriate.

These learning components may include, but are not limited to:
•Failure in a course or on an assignment
•Workshops on note-taking, proper citation, or writing a research paper
•Training (e.g. conflict resolution)
•Education on ethical decision-making
•Education on alcohol and drug abuse
•Restitution for damages
•Counseling/assessments
•Family notification

21.1. Learning components may be imposed in combination with other disciplinary action, and may include a required completion date.  Failure to complete any designated learning component, as with any other sanction, could result in further conduct action (see Section 2.3).  Sanctions shall not take effect until approved by the Director of Student Rights and Community Standards or the Senior Student Affairs Officer or designee (SSAO/D). Either administrator can modify the proposed sanction(s). Suspensions or dismissals shall not take effect until approved by the SSAO/D, who can modify the sanction(s).

21.1.a. No Further Action: In cases where the student is found responsible and the discussion with the administrator or the hearing before the Board has been sufficient in-and-of itself, further action may not be deemed necessary.  However, the responsible finding is noted in the student's record in the Department of Student Rights and Community Standards.

21.1.b. Disciplinary Warning: The student may be warned in writing of the possible consequences of continuing inappropriate behavior.  Additional conditions may be applied as appropriate.

21.1.c. Residence Probation: A student who is placed on Residence Probation is not in good standing with their living unit for a specified period of time, and conditions may be placed on their actions.  The status of Residence Probation reminds the student that their infraction has become part of their record and that repetition of similar or other unacceptable behavior may be cause for removal from the residence halls.   The Department of Community Living will be notified of students who are placed on Residence Probation.

21.1.d. Removal from Living Unit: This action precludes the student's continued residence either in a particular living unit or in any campus living unit.  Such action would normally be taken after one serious violation or repeated violations related to the living unit environment, and is exercised in conjunction with the Department of Community Living.

21.1.e. Loss of University Privileges: A student may be denied certain University privileges including, but not limited to, early arrival on campus, extended stays in the residence halls, participation in campus activities, representing the University in competition or other official capacities, campus employment, and campus leadership opportunities.  Loss of such privileges extends over a specific period of time, and is designed to reflect a specific community concern about the student's behavior.

21.1.f. Disciplinary Probation: A student who is placed on Disciplinary Probation is permitted to remain enrolled at the University, often under certain stated conditions depending upon the nature of the violation and potential learning value that may be derived from such conditions.  The probation usually extends over a stated period, during which it is clearly understood that the student is subject to further disciplinary actions, including suspension or dismissal, if they violate the terms of the probation or in any way fail to conduct themselves as a responsible member of the University community.  Disciplinary Probation is a final warning to the student to help them reevaluate their behavior.

21.1.g. Suspension: An involuntary separation of the student from the institution, Suspension differs from Dismissal since it defines conditions under which return will be possible. Suspension may extend for a semester, until a designated date, and/or until degrees/certificates will not be issued and credit will not be granted for courses taken elsewhere.  Following the Suspension period, return to Brandeis requires initial approval of the Senior Student Affairs Officer or designee and then approval by the Committee on Academic Standing regarding academic suitability for readmission.

21.1.h. Dismissal: A permanent, involuntary separation of the student from the institution.

**Section 22. University Actions and Sanctions**

22.1. Protection of Individuals and the Community: Whenever the University has reason to believe that a student's conduct or behavior may disrupt the safety or well-being of another student, faculty, staff, guest or other University community member, the University may take any action that it believes to be appropriate and reasonable under the circumstances. This may include, but is not limited to, notification of the student's parent or guardian, removal of the student from a residence hall, or other action deemed necessary to remove or minimize the threat or disruption.

The Senior Student Affairs Officer or designee is the only authorized grantor of permission to a student who wishes to return to classes and/or the residence halls after any removal.

In the event the University takes such action, the University shall notify the student of the action taken and the basis for the action. Within 3 business days of notification, the student shall have an opportunity to speak with the Senior Student Affairs Officer or designee to discuss the situation and provide information, including documentation by a health care provider, to contest the action(s) taken. The Senior Student Affairs Officer or designee shall then decide, at their discretion, whether to reinstate or restore the student's privileges, to consider further action under this procedure, or to take additional reasonable and appropriate steps.

22.2. Emergency Suspension: Pending final action on a violation of University regulations, the status of a student shall not be altered, or their right to be present on the campus and to attend classes suspended, except for reasons of imminent danger to their physical or emotional safety or well-being, or for reasons of imminent danger to the safety or well-being of the University community. The decision to separate a student from the campus under these conditions shall be made by the Senior Student Affairs Officer or designee. If a student is separated from the campus by this authority, the procedures outlined in Section 19.1 shall be implemented within 10 class days after the separation.

22.3. Indefinite Suspension: In the event the Senior Student Affairs Officer or designee (SSAO/D) learns that a Brandeis student has been charged with or convicted of a crime, the SSAO/D may immediately remove the student from campus housing, restrict the student's access to the campus, and/or indefinitely suspend the student from the University pending the final outcome of a criminal proceeding. In making this decision, the SSAO/D must consider the nature of the crime and the risk to the safety or well-being of the University community. A student suspended under this authority may request a meeting with the SSAO/D and the Student Conduct Board (SCB). The SCB shall assess the risk to the safety or well-being of the Brandeis community and advise the SSAO/D. The final decision on continuation of the suspension shall be made by the SSAO/D. The procedural standards set forth in Section 19 do not apply to Indefinite Suspension.

22.4. University Sanctions: Brandeis University expects students to conduct themselves at all times as good citizens and good neighbors in a manner that is consistent with the federal, state, and local laws and ordinances. Off-campus behavior which, in the judgment of the Senior Student Affairs Officer or designee (SSAO/D), constitutes behavior that is inconsistent with this expectation and adversely affects the University community may result in disciplinary action up to and including dismissal. A student disciplined under this authority may request a meeting with the SSAO/D and the Student Conduct Board (SCB). The SCB shall advise the SSAO/D on the appropriateness of the sanction. The final decision shall be made by the SSAO/D. The procedural standards set forth in Section 19 do not apply to off-campus behavior or University Sanctions.

22.5. Medical and Emotional Emergencies: Whenever a student's conduct results in the intervention of Brandeis' Health Service, the Brandeis Psychological Counseling Center, or a non-Brandeis medical or psychological health care provider in order to prevent or address a student's self-harm or harm to others, or to address a student's severe emotional or psychological distress, the Senior Student Affairs Officer or designee (SSAO/D) will establish an emergency protocol for that student. Any student who receives treatment from a non-Brandeis medical or psychological health care provider under these circumstances must contact the SSAO/D upon release.

The Senior Student Affairs Officer or designee (SSAO/D) shall notify the student in writing of the emergency protocol and the basis for the protocol. Within 3 business days of notification, the student shall have an opportunity to speak with the SSAO/D, to discuss the protocol and provide information, including documentation by a health care provider, to contest the action(s) taken. The SSAO/D shall then decide, at their discretion, whether to reinstate or restore the student's privileges, to consider further action under this procedure, or to take additional reasonable and appropriate steps.

During the period begun by the emergency intervention and continuing until the conveyance of explicit written permission by the Senior Student Affairs Officer or designee to resume campus functions, a student subject to an emergency protocol is not permitted to access any campus property, facilities or attend any classes. There will be no exception for examinations or other time-sensitive student activities or academic obligations. Failure to comply with this protocol may result in referral to the Student Conduct Process as defined in this document (see Sections 2.2 and 2.3).

### 22.6. Special Examiner's Process

In cases where the DSRCS receives a report and determines that one or more possible violations of Section 3 (Sexual Responsibility) or Section 7 (Equal Opportunity, Non-Discrimination, and Harassment) exist, the case will be adjudicated by the Special Examiner's Process. This process is described here in Section 22 because it is distinct from the procedures described in the Student Conduct Process found in Section 19. Brandeis is committed to acknowledging and preserving the rights and responsibilities of all its students through all of its disciplinary procedures. In the event that the University is aware of possible student violations of Sections 3 or 7, but where there is no Accuser, the Senior Student Affairs Officer or designee reserves the right to take action pursuant to their authority enumerated in Section 22.1.

### Roles and Terms

***Community Standards Report (CSR):*** The official reporting mechanism for all allegations of a Brandeis student's possible violation of a standard found in the student code, *Rights and Responsibilities.* The *CSR* will be shown, in its entirety, to the accused student(s). This report is a web-based form located at:

http://www.brandeis.edu/studentaffairs/srcs/reporting.html

**Advisor:** Any current member of the Brandeis community, including undergraduate and graduate students, faculty members, and administrators and staff, except when co-existing criminal proceedings exist, in which case the Advisor role may instead be held by a party's attorney. The role of any Advisor is passive, and does not include writing or speaking on behalf of their party. An Advisor may not also serve as a witness. Though a potentially important source of support and guidance, and Advisor is not required for progression through the Special Examiner's Process. Further, the failure of a party to choose an Advisor will not delay the progress of the Special Examiner's Process.

**Director of Student Rights and Community Standards:** The Director receives reports and determines, in conjunction with the Senior Student Affairs Officer or designee, whether a *Community Standards Report* will be forwarded to the Student Conduct Process or the Special Examiner's Process. The Director explains the Special Examiner's Process to the parties and collects preliminary information during the Statements Phase.

**Special Examiner:** The examiner of allegations and related evidence regarding the allegations. The Special Examiner will conduct an investigation and prepare a report of their findings at the conclusion of the Fact-Finding Phase that is submitted to the Senior Student Affairs Officer or designee in support of the Responsibility Findings and/or Deliberations Phase of the process.

**Observer:** A member of the faculty or staff, named by the Senior Student Affairs Officer or designee, who is present at all in-person meetings involving the parties held by the Special Examiner during the Fact-Finding Phase of the process. Multiple Observers may participate in a Special Examiner's Process.

**Witness:** Any person who was present during the alleged incident(s) or who has direct knowledge of the incident. A witness may not also serve as an Advisor.

**Senior Student Affairs Officer or designee** (**SSAO/D**)**:** The SSAO/D conducts the Discussion Phase conversations with the parties and communicates findings to the parties made by the Special Examiner and the panel. The SSAO/D is also responsible for rendering the final decision as to any outcome for the Accused, based on the recommendations of the panel.

**Panel:** A group of three University administrators and/or faculty, appointed by the SSAO/D or designee, who will receive the Special Examiner's report (when the Accused is found responsible for one or more charges) and make a recommendation to the SSAO/D as to the outcome(s) for the Accused during the Deliberations Phase.

**University Appeals Board** (**UAB**)**:** The UAB (faculty membership only) will receive any appeal by a party and make a report of its opinions to the SSAO/D or designee.

**Standard of Evaluation:** This process will use the *Preponderance of the Evidence* standard in evaluating the responsibility of the Accused. Under this standard, the Accused is presumed not to have engaged in the alleged conduct unless a "preponderance of the evidence" supports a finding that the conduct occurred. A preponderance of evidence means a greater weight of evidence or more likely than not.

**Time Frame:** The Special Examiner's Process will be conducted deliberately and without unnecessary delay. It will be the goal of the University to conclude all phases of the process within 60 days cumulatively, or as soon as is practicable if unusual circumstances exist.

**Process**
**Statements Phase** (approximately 5 days)
Upon the receipt of a *Community Standards Report*, the Director of the Department of Student Rights and Community Standards will meet in-person with the Accuser and suggest that the Accuser compose in writing a thorough statement of the allegation(s) if the contents of the initial report do not represent a full account. In addition to this statement, any other substantiating materials, such as e-mail, text messages, photographs, records, names of witnesses, names, etcetera, should be submitted to the Director of the Department of Student Rights and Community Standards.

The Director of the Department of Student Rights and Community Standards will discuss the process in full with the Accuser, including the decision about the Accuser's choice of Advisor. If the Accuser is a Brandeis student, the discussion will also include dialog about ongoing efforts to support the student in a variety of non-conduct-related areas, such as medical and counseling services, academic support services, living arrangements, classroom assignments, directory information accessibility, travel considerations, etcetera. Further, the Accuser will be reminded that the Special Examiner's Process does not substitute for the filing of a complaint with law enforcement. The Accuser may initiate both processes. Information about initiating a criminal complaint will be explained. Criminal investigations need not be concluded prior to the initiation of the Special Examiner's Process.

Subsequent to the initial meeting with the Accuser, the Director of the Department of Student Rights and Community Standards (the Director) will contact the Accused in writing (Brandeis e-mail account) to inform the Accused that a *Community Standards Report* has been submitted.  Within 2 business days, the Accused will meet in-person with the Director.  The Director will show to the Accused the *Community Standards Report (CSR)* and suggest that the Accused compose in writing a thorough response to the allegations described in the *CSR*.  In addition to this response, any other substantiating materials, such as e-mail, text messages, photographs, records, names of witnesses, names, etcetera, should be submitted to the Director.

The Director will discuss the process in full with the Accused, including the decision about the Accused's choice of Advisor.  Since the Accused is always a Brandeis student, the discussion will also include dialog about ongoing efforts to support the student.  Once the Special Examiner's Process is activated by a *CSR*, it may not be interrupted by the withdrawal from the University by the Accused.  *The decision to withdraw from the University is one that any student should make in consultation with their Advisor, family, guardians, Academic Services, or other trusted administrators or faculty.*

The Accused must accept or deny responsibility for the allegations presented in the *CSR*. If the Accused accepts responsibility, the Senior Student Affairs Officer or designee (SSAO/D) will issue an outcome for the case, including disciplinary actions or sanctions. Notification will be made in writing (hand-delivered paper copy) to the Accuser and the Accused.  If the Accused fails to cooperate prior to accepting or denying responsibility for the allegation(s), the Director or the Special Examiner may consider the Accused to have accepted responsibility, the party may forfeit their opportunity to participate in the Special Examiner's Process, and the Special Examiner will report accordingly to the SSAO/D for the Outcome Notification.

If the Accused denies responsibility, the Special Examiner's Process will progress to the Fact-Finding Phase.

Cooperation by the parties with the Special Examiner is expected.  If a party fails to respond to correspondence (see Section 1.9) or attend a scheduled meeting with the Director or Special Examiner, the Director or Special Examiner may resume the Special Examiner's Process in the party's absence.  A party shall have the right to one rescheduled meeting if the failure to attend the originally scheduled meeting was through no fault of their own as determined by the Special Examiner or the Director.

At any point during the Special Examiner's Process, any party is entitled to change their initial course of action.  For example, an Accuser may drop one or more charges, and an Accused may accept responsibility.

**Fact-Finding Phase** (approximately 25-30 days)
The Special Examiner will conduct the Fact-Finding Phase based both on materials and information offered by the parties during the Statements Phase, as well as other materials and information discovered in the course of this phase.

### Documents and other Physical Evidence

In addition to information and materials submitted during the Statements Phase, the parties and other witnesses, identified either by the parties or by the Special Examiner, may be added to the record for consideration during the Fact-Finding Phase.   Documents and other physical evidence deemed by the Special Examiner to be of material importance to the Deliberations Phase will be logged and shared equally with the parties to ensure the opportunity for response.  The Special Examiner retains the discretion not to share certain records due to confidentiality concerns, in accordance with applicable law.

### Interviews with Parties and Witnesses

Interviews with the parties, witnesses, and experts will also be conducted at the discretion of the Special Examiner.  The Special Examiner will secure written release as necessary to access pertinent records protected by confidentiality and privacy policies and laws.  The Special Examiner will determine who will be interviewed, as well as how many times, and in what order individuals will be interviewed.

### Interviews with the Accuser and Accused

Interviews with the parties will be conducted separately and in-person.  These interviews will address not only the facts of the case but also the impacts that the accounts have had on them.  The Special Examiner will be joined at all interviews by an Observer, whose role is passive, with the exception of providing supplemental description of details regarding procedures and University services. The parties are entitled (though not required) to be joined by their Advisor, if one has been selected, during all interviews with the Special Examiner.

### Interviews of Witnesses

Interviews of witnesses named by the parties during the Statements or Fact-Finding Phases of the process as well as those identified by the Special Examiner, may be conducted in-person, by telephone, or by use of Internet-based tools at the discretion of the Special Examiner.  Some witnesses may not be local or easily accessible, and the Special Examiner will make a good-faith effort to contact all pertinent witnesses.  Expert witnesses may be consulted to verify materials or provide opinions about information or documents submitted by the parties.

### Special Examiner's Report

Upon conclusion of all interviews and collection of all known documents and materials deemed necessary by the Special Examiner, the Special Examiner will assemble a report for the SSAO/D that summarizes undisputed and disputed facts, offers conclusions about the credibility of testimony, and makes a finding about whether the Accused is responsible or not responsible for any or all charges.

**Discussion Phase** (approximately 5-10 days)

This phase of the Special Examiner's Process provides the Accuser and the Accused with separate meeting opportunities with the SSAO/D or designee to hear and respond to the findings made by the Special Examiner, and to offer rebuttal or new information to the SSAO/D based on the findings.

The parties, in separate meetings, will listen to the SSAO/D's summary of findings and engage in dialog with the SSAO/D about these findings. Each party will also have 2 business days within which to provide new, pertinent information or names of witnesses for the SSAO/D's consideration. If after the meetings with the parties and after the submission of any new information or witness names, the SSAO/D seeks additional fact-finding, the SSAO/D will request the Special Examiner to make any and all necessary inquiries. The Special Examiner will submit a supplemental report to the SSAO/D based on the new inquiries. The SSAO/D retains the discretion to hold another round of meetings with the parties to discuss the new findings.

**Responsibility Findings** (approximately 2 days)
If the Accused is found not responsible for all charges, the SSAO/D will contact the parties in writing (hand-delivered paper copy) within 2 business days under usual circumstances.

If the Accused is found responsible for one or more charges, the Special Examiner's Process will progress to the Deliberations Phase.

**Deliberations Phase** (approximately 5 days)
This phase of the Special Examiner's Process involves a panel of three University administrators and/or faculty, appointed by the SSAO/D, who will receive the Special Examiner's report and make recommendations as to the outcome(s) for the Accused. The SSAO/D will not serve on the panel.

The panel will consult the Special Examiner's report and will be entitled to interview the Special Examiner. The panel will not interview the parties, witnesses, or other experts or individuals. Upon voting, the panel will communicate its recommendations about the outcome(s) for the Accused to the SSAO/D. The SSAO/D will render the final decision as to any outcomes.

**Outcome Notification** (approximately 7 days)
The Senior Student Affairs Officer or designee (SSAO/D) will communicate the final outcome(s) decision in writing (hand-delivered paper copy) to the Accuser and the Accused within 7 days under usual circumstances. The Accuser will be informed of any sanctions that relate to them in accordance with applicable laws.

Any and all sanctions, including suspension or dismissal, will be in effect immediately, regardless of any appeal that may be submitted by the parties.

**Appeals Procedures**
The Accuser and the Accused are entitled to appeal the final decision by the panel in the Special Examiner's Process to the University Appeals Board on Student Conduct (UAB). The UAB's composition, when engaged in a Special Examiner's Process, will differ from what is described in section 20.8. Faculty members will serve as UAB members; students will not. Such appeal requests shall be based only on specific evidence, presented in writing of:
> 1. fraud
> 2. denial of rights under this process
> 3. procedural error
> 4. the claim of new evidence not previously available, which would have materially affected the decision

Appeals shall not be based upon, or granted due to, dissatisfaction with an imposed sanction.   Appeal requests must be filed within 7 business days of delivery of the SSAO/D's final decision.  Appeals that are not related to the above 4 bases will not be considered.  The appeal by the party and the response by the Special Examiner will be forwarded to the University Appeals Board.  On the first business day after the conclusion of the appeal deadline, the SSAO/D will alert the parties by e-mail that one or more appeals have been filed.  The Appellee will be permitted to submit a statement to the UAB about the notification of appeal.  The Special Examiner will respond in writing to the UAB about the appeal(s).

Faculty members of the UAB will convene within 7 business days, or as soon as practicable, to discuss the written appeal request.  The UAB will submit a written report to the SSAO/D of their opinions, thoughts, and suggestions about the appeal.  During the UAB's consideration of the appeal, any pertinent documents, notes, or other materials considered by the panel in making the final decision will be made available to the UAB.  The UAB may make recommendations or suggestions to the SSAO/D about the specific concerns of the Appellant.

The SSAO/D will receive the UAB's written report and will retain the discretion to amend or uphold the original final decision.  The Accuser and the Accused will receive written notification of the appeal outcome (hand-delivered paper copy).

**Records Retention**
Documents generated from the Special Examiner's Process will be retained pursuant to the rules in Sections 17.4, 19.5, and 19.6.j.