# Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN DOE, <br> Plaintiff | ) <br> ) <br> ) <br> ) | |
| | ) | CIVIL ACTION NO.: 13-11740 |
| v. | ) <br> ) | |
| WILLIAMS COLLEGE, <br> Defendant | ) <br> ) <br> ) <br> ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM AND FOR PROTECTIVE ORDER**

**INTRODUCTION**

Plaintiff, John Doe, was expelled from Defendant Williams College ("College') in January 2013, following a false allegation that he exceeded the bounds of consensual sexual intercourse with female student, and a fundamentally flawed disciplinary proceeding arising from that allegation. Mr. Doe contends that his expulsion was a result of: (i) a policy that on its face is biased against the accused; (ii) enforcement of that policy by administrators and faculty with a clear bias; and (iii) departures from the stated policies and procedures of the College that influenced the outcome of the hearing. In short, once the mere allegation was made, the result was a foregone conclusion, notwithstanding the College's promises of a "fair" disciplinary process.

As of this suit's filing, the complainant never lodged a criminal complaint against Mr. Doe and knowledge of the allegations, the procedure, and Mr. Doe's expulsion have been confined to a limited number of individuals in the College community. In bringing this suit, Mr. Doe seeks to clear his name of the allegation and obtain a judicial determination that the College

acted improperly. Inclusion of his name would result in the public association of his name with the complainant's allegations of sexual assault, which would be widely available through electronic means, thereby defeating the very purpose of his suit and causing the harm that the suit seeks to prevent. For these reasons, as further set forth below, this Court should grant Mr. Doe's motion for leave to litigate this matter pseudonymously.

## SUMMARY OF FACTS

**Background and Relationship of the Parties**

Twenty-one years old at the time of his expulsion, Mr. Doe was a junior at the College in satisfactory academic standing. *Id.*, ¶ 9. On or about November 11, 2012, another student at the College, D.C[1]. ("D.C. or "Complainant"), formally complained to the College authorities that Mr. Doe had exceeded the bounds of their consensual sexual intercourse. *Id.*, ¶¶ 10-11. Mr. Doe, in turn, alleged that all of the sex was consensual and that he did not knowingly or intentionally engage in acts beyond those to which D.C. consented. *Id.*, ¶ 12. D.C. never lodged a criminal complaint against Mr. Doe. *Id.*, ¶ 10. Through its disciplinary procedures, the College conducted a hearing on or about January 20, 2013, which resulted in Mr. Doe's expulsion from the College. *Id.*, ¶ 13.

**Relevant Disciplinary Procedures and Bias in the College's Sexual Misconduct Policy**

The College's Disciplinary Procedures are published in the 2012-2013 College Handbook ("Handbook"), and provide that alleged breaches of College regulations are in the first instance investigated by a dean, that a charged student shall have the "reasonable opportunity" to make a defense, and that the student may appeal imposed sanctions within one week to the College Discipline Committee. *Id.*, ¶¶ 14-15. The College policy on Sexual Misconduct in and of itself is

---

[1] Initials are used throughout to protect the anonymity of Ms. D.C.

2

biased as framed, shown by the word choice in connection with reporting alleged sexual misconduct: Statement of the *Victim's* Rights. *Id.*, ¶ 17. Use of the word "victim," as opposed to a value-neutral word such as "accuser" or "complainant" inescapably presupposes the guilt of the accused from the very outset. Such language bespeaks an institutional climate of bias against the accused, who as a result must prove his innocence as opposed to having the presumption of innocence. *Id.*, ¶ 18. The College's bias is further illustrated by the long list of Victim's Rights, twelve in all, as contrasted by the mere three rights enumerated in the Statement of the Accused's Rights. *Id.*, ¶¶ 19-20. Incredibly, the accused do not enjoy the "victim" rights to: (i) be treated with respect by College officials; (ii) not have irrelevant prior sexual history admitted in a campus hearing; (iii) have complaints of sexual misconduct responded to quickly and with sensitivity; or (iv) have sexual assault reports investigated and appropriately resolved/addressed by the College. *Id.*, ¶ 21. This institutional bias has played out in enforcement of the policy: during the 2011-2012 school year, six students were subject to disciplinary proceedings resulting from allegations of sexual misconduct. All six were found guilty. *Id.*, ¶ 22. On information and belief, the sexual misconduct policy has only been enforced against male students at the College. *Id.*, ¶ 23.

**Bias In Application of the College's Policies and Grossly Improper Procedure**

<u>Bias before and during the course of the Investigation</u>

Sometime during the week of November 5, 2012, without prior notice of D.C.'s complaint, Mr. Doe was denied access to Mission Park, the building that contains D.C.'s dormitory and the dining hall in which Mr. Doe regularly ate. *Id.*, ¶ 24. Thereafter, the College issued a No Contact Order forbidding D.C. and Mr. Doe to have any contact with each other, barring Mr. Doe from Mission Park, including the dining hall, and imposing absolute

confidentiality on both parties, stating that any violation would result disciplinary action up to and including expulsion." *Id., ¶¶* 25-26. Twice during the same week after football practice, Mr. Doe was followed by College Safety and Security Supervisor Alison Warner in a Security car. *Id., ¶* 28. These episodes illustrate that based wholly on D.C.'s initial report, the College treated Mr. Doe as if he was a stalker and a dangerous individual, before even informing Mr. Doe of such report, let alone undertaking any investigation. *Id., ¶* 29. During the investigation, D.C. admitted to twice violating the no contact/confidentiality order, having discussed her complaint with two student "Junior Advisors," including with Mr. Doe's friend and teammate. *Id., ¶* 27.

The College continued to perpetuate bias once the investigation was underway, as illustrated by the stark contrast between the interviews of D.C. and Mr. Doe. *Id., ¶* 30. D.C. was interviewed on two occasions, the first of which on November 16, 2012. Whereas D.C. was told it was permissible and indeed was allowed to suspend the interview almost immediately and recommence a week later, Mr. Doe was given no such opportunity. *Id.*, ¶ 31. Similarly, toward the end of D.C.'s interview, Campus Safety and Security Director David Boyer apologized for asking her to repeat her written statement, for "drag[ging you through all that again. It shouldn't have happened." *Id., ¶¶* 32.

The faculty and staff interviewing D.C. asked numerous leading questions, suggesting answers that assumed Mr. Doe's guilt. When an answer was not sufficiently damning the interviewers persisted, suggested negative answers, and even praised the Complainant when she supplied the desired answer. *Id.*, ¶ 33. During her second interview, despite D.C.'s two admitted violations of the no contact/confidentiality order, Mr. Boyer stated that there would be no repercussions as the order was "for [her] comfort," but indicated with regard to Mr. Doe that if he were to breach the order it would cause "further problems" for him. *Id.*, ¶ 34. Moreover,

4

even though D.C. confirmed that prior to the incident in question she did not know Mr. Doe well, Director Boyer characterized Mr. Doe's similar statement as "trying to minimize anytime he had been around [D.C.]…," questioning his honesty even before his interview. *Id.*, ¶ 35.

### Bias in the Disciplinary Proceedings and Sanction

As with the investigation, the Dean's decision, hearing and deliberations were themselves rife with bias and grossly improper procedure that doubtless influenced the outcome. *Id.*, ¶ 36. Along with the investigation, Dean Bolton also considered Mr. Doe's previous disciplinary record, which involved no formal disciplinary sanctions. Nevertheless, the Dean determined that "taken together they strike me as demonstrating a pattern of disrespectful and damaging behavior in a number of contexts." Mr. Doe had no opportunity to discuss the incidents or place them into context. *Id.*, ¶ 37. On December 15, 2012, Dean Sarah Bolton informed Mr. Doe of her decision finding a preponderance of the evidence supporting the allegation of sexual assault, suspending him for three semesters. *Id.*, ¶ 38. Mr. Doe timely appealed the decision and requested a hearing before the Disciplinary Committee. *Id.*, ¶ 39.

In addition to the published procedures, Discipline Committee Chair Cheryl Shanks ("Chair" or "Dr. Shanks") made several specific representations to Mr. Doe about the hearing procedures in a letter dated January 2, 2013 ("1/2/13 Shanks Letter") prior to the Committee Panel's ("Panel") hearing. *Id.*, ¶ 40. Also prior to the hearing, Dean Bolton sent a letter to Mr. Doe dated January 9, 2013 ("1/9/13 Bolton Letter"), listing and attaching copies of relevant materials and evidence. *Id.*, ¶ 41. Consistent with the 1/2/13 Shanks letter indicating that historical and character evidence may not be used, the list did not include Mr. Doe's prior disciplinary record or indicate that other materials might be used in the hearing. *Id.*, ¶ 42. The letter further stated that the documents are confidential and must not be shared, with narrow

5

exceptions, reiterated the no contact order, and that violation of any of the rules would result in additional disciplinary sanctions. *Id.,* ¶ 43.

During the hearing, Dean Bolton and the Chair fostered an atmosphere of overzealous sympathy toward D.C., abandoning the role of impartial fact-finders and likewise compromising the Panel's impartiality. *Id.,* ¶ 44. As with the security interview, Dean Bolton asked D.C. highly leading questions. *Id.,* ¶ 45. While the Complainant was permitted to speak with her advisor, Mr. Doe was prohibited from discussing anything with his. *Id.,* ¶ 46. Prevented from asking D.C. a question to show that her issues with school work and the hearing were unrelated,. *Id.,* ¶ 47. Mr. Doe was essentially forced by the Chair to forgo challenging D.C.'s assertions from fear of seeming insensitive, D.C. was implicitly labeled a "victim," and, in line with the College's policies articulating sexual misconduct, Mr. Doe's guilt was assumed. *Id.,* ¶¶ 47-49.

Dean Bolton further biased the proceedings by exhorting the Panel not to consider evidence in Mr. Doe's defense. *Id.,* ¶ 50. Then, in response to a panel member's skeptical query as to what caused Dean Bolton to impose such a harsh sanction, she indicated that this involved more than one sexual misconduct violation, cited a statistic about recidivism, and stated that it is her job to protect the students. *Id.,* ¶ 51. Despite the prohibition against admission of the Complainant's irrelevant sexual history, moreover, the Chair allowed evidence of the Complainant's alleged virginity prior to the night in question to be admitted into evidence, prompting a number of irrelevant questions that attacked Mr. Doe's integrity, serving only to make the Panel's decision emotional rather than fact-based. *Id.,* ¶¶ 52-53. Likewise, when it was Mr. Doe's turn to be questioned his guilt and dishonesty were further assumed through a pattern of coercive questioning. *Id.,* ¶ 54.

6

Subsequent to the conclusion of the hearing, despite the Chair's written representation that Committee Panel members would remain in the room to deliberate, the decision took more than a week and a half to issue. *Id.,* ¶ 55. During this time, the Chair recalled Panel members on numerous occasions and gave them Mr. Doe's prior disciplinary records, disturbingly suggesting that the required majority did not initially favor expulsion and that the Chair deviated from the standard practice of same-day decision in order to influence the outcome in a particular direction. *Id.,* ¶¶ 56-57. The decision of the Chair to prolong the deliberation process for more than a week created the opportunity for Panel members to be influenced by factors not heard by Mr. Doe or addressed in the proceeding and in fact Mr. Doe encountered three of the Panel members on campus during that period. *Id.,* ¶¶ 58-59. These interactions show that the clear potential existed for compromising impartiality and that the College was negligent in allowing any outside interactions to occur. *Id.,* ¶ 60.

The Chair provided documents related to Mr. Doe's alleged prior disciplinary matters to the Panel after the close of evidence, in clear violation of the Disciplinary Appeals Procedure. *Id.,* ¶ 61. Mr. Doe had no notice or opportunity to respond nor the chance to place the alleged events in context. Indeed, the Chair indicated that such records were neither pertinent nor permissible, and Dean Bolton did not include them on a list of materials and evidence relevant to the case. *Id.,* ¶ 62. In her opening remarks, Dean Bolton reiterated that she would not detail the security reports as she also was making privileged any outside irrelevant information regarding D.C. *Id.,* ¶ 63. Such information appears to have been the motivating factor behind the Panel's decision to increase Mr. Doe's sanction from suspension to expulsion, as the decision letter states that the findings with respect to D.C.'s allegations were sufficient to support a lengthy

7

suspension, then goes on to discuss the alleged prior disciplinary issues as a prelude to the decision to expel, rather than suspend. *Id.,* ¶ 64.

Mr. Doe (or others on his behalf) paid over two years' tuition and fees to the College, totaling approximately $24,000. *Id.,* ¶ 67. Without completing his undergraduate degree, Mr. Doe cannot apply to graduate school, nor does he have any reasonable prospects of employment commensurate with his education. As a result, he faces catastrophic present and future economic loss. *Id.,* ¶ 68. Further, should expulsion for "sexual misconduct" appear on his disciplinary record, Mr. Doe may not even be able to enroll at another institution, let alone one of comparable quality, in order to repeat some of his requirements and complete his college degree. Id., ¶ 69.

## ARGUMENT

**I. THE COURT SHOULD GRANT PLAINTIFF LEAVE TO LITIGATE PSEUDONYMOUSLY**

Although Fed. R. Civ. P. 10(a) requires that a complaint name all parties, a district court may exercise its discretion to allow a party to litigate pseudonymously. *See Doe v. Blue Cross and Blue Shield of Rhode Island,* 794 F.Supp. 72, 73 (D.R.I.1992) (where the district court allowed the plaintiff to proceed under a pseudonym because his suit related to his status as a transsexual, noting that "I will not strip plaintiff of the cloak of privacy which shields him from the stigmatization he might otherwise endure."). To excuse a party from such requirement, a court must determine that a plaintiff has a substantial privacy right that outweighs the presumption favoring judicial openness. *MacInnis v. Cigna Group Ins. Co. of America*, 379 F.Supp.2d 89, 90 (D. Mass. 2005), citing *Doe v. Bell Atlantic Business Systems,* 162 F.R.D. 418, 420 (D.Mass.1995); *Doe v. Blue Cross & Blue Shield of Rhode Island,* 794 F.Supp. 72, 73 n. 3 (D.R.I.1992). The proponent of filing pseudonymously bears the burden of proof. *Id.* citing *Bell Atlantic Business Systems,* 162 F.R.D. at 420. Moreover, if the need for confidentiality is shown,

8

courts consider whether there exist "less drastic means" by which to protect the litigant. *Id*., citing *Doe v. Indiana Black Expo, Inc.,* 923 F.Supp. 137, 140 (S.D.Ind.1996).

Courts have allowed plaintiffs to proceed anonymously in cases involving social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of plaintiff's identity. *Doe v. Bell Atlantic Business Systems Services, Inc.*, 162 F.R.D. at 420 (citations omitted). Cases in which parties are allowed to proceed anonymously because of privacy interests traditionally have involved abortion, mental illness, personal safety, homosexuality, transsexuality and child welfare cases. *Id*.

This case falls into that exceptional category. Cases within this Circuit have not addressed an issue similar to this one[2]. Indeed, the only case on all fours with the instant case is *Doe v. Univ.of the South*, 687 F.Supp.2d 744 (E.D. Tenn. 2009), upholding the Order of a United States Magistrate Judge granting pseudonymity to the plaintiff (Order attached), who was in circumstances entirely similar to that of Mr. Doe. There, the employed standard is the same as that of this Circuit, with the added requirement that the moving party's need for privacy substantially outweighs the risk of unfairness to the opposing party. *See Doe v. Univ. of the South*, No. 4:09-cv-62, Memorandum and Order (E.D. Tenn. 2009 Aug. 7, 2009) (Lee, U.S.M.J.). Factors in addition considered by other courts cited by the plaintiff in that case include: i) whether identification of the plaintiff would result in other harm, including whether the injury litigated against would be incurred as a result of the disclosure of plaintiff's identity; ii) whether public interest in the litigation is furthered by requiring disclosure of the plaintiff's

---

[2] *See e.g. Doe v. Word of Life Fellowship*., Inc., 2011 WL 2968912, **1-2 (D.Mass 2011) (adult defendant accused of sexually abusing a minor denied pseudonymity on public policy grounds and where defendant arrested by police); *Doe v. Univ. of Rhode Island*, 1993 WL 667341 (D.R.I. 1993) (plaintiff in sexual assault case denied pseudonymity where case already publicized and where court found victim status to not carry stigma). *Also see Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F.Supp.2d 444, 452-453 (D.Mass. 2011) (questioning whether homosexuality still carries stigma).

9

identity or iii) whether there is an atypically weak public interest in knowing the litigant's identities. *See Sealed Plaintiff*, 537 F.3d at 190 (citations omitted).

In granting the plaintiff's motion, the court considered, *inter alia*, the "essentially uncontested representations" that no criminal charges were filed; there is no known public record of the accusation, and that the loss of anonymity due to electronic filing, all would compel the plaintiff to disclose information "of the utmost intimacy.[3]" *See Doe v. Univ. of the South*, No. 4:09-cv-62, Memorandum and Order.

Likewise here, no criminal charges were filed and there is no known public record of the accusation. Indeed, the parties were subject to a confidentiality order subjecting them to disciplinary sanction, up and including "separation from the College," for its violation. *See* Complaint, ¶¶ 10, 26. Because the proceedings at issue here confined knowledge to a limited number of people within the College community, the allegation and finding that Mr. Doe committed sexual misconduct has not been publicized. Such limited dissemination militates in favor of maintaining the status quo and allowing the use of pseudonyms. *See Sealed Plaintiff v. Sealed Defendant # 1*, 537 F.3d 185, 190 (2d Cir. 2008), citing *Doe v. Del Rio*, 24 F.R.D. 154, 157 (S.D.N.Y. 2006) (factors in determining appropriateness of pseudonymous filing include extent to which the identity of the litigant has been kept confidential). Also similarly here, the nature of the claims of sexual assault would require Plaintiff to disclose information "of the utmost intimacy." For that reason, Plaintiff has not used the complainant's name in pleadings, only using her initials.

Aside from privacy considerations, a court must consider whether the very "injury litigated against would occur as a result of the disclosure of plaintiff's identity." *Doe v. Bell*

---

[3] The court also considered that the defendant college's student disciplinary records did not reflect that the plaintiff had been accused of rape by a fellow student. Neither here, did the Complainant accuse Plaintiff of rape, nor have such records been publicized.

*Atlantic Business Systems Services, Inc.*, 162 F.R.D. at 420 (citations omitted). Being *accused* of sexual assault bears a strong stigma. Publicity of such accusation would unquestionably have catastrophic effects on twenty-two-year-old Plaintiff's future prospects for higher education and employment, and thus the publicity it would bring to Plaintiff would entirely defeat the purpose of the suit—to clear his name. Among other remedies, Plaintiff is seeking orders: enjoining the College from enforcing its order of expulsion; ordering the College to readmit Mr. Doe; to expunge the incident from College records; and to represent his good standing to third parties. Thus in bringing suit, Plaintiff is attempting, as best he can, to eliminate the harm resulting from the College's improper actions. If he were forced to prosecute the case in his own name, such disclosure would serve only to augment such harm and render useless the suit's primary aim. Under such circumstances, pseudonymous litigation is necessary and appropriate, and no less drastic measure would accomplish such purpose.

The court in *Doe v. Univ. of the South* next found that the plaintiff's need for pseudonymity substantially outweighs the presumption that identity is public information, finding that the public would know everything else about the case other than identity and that the public interest would not thereby be compromised, as Defendant conceded there was nothing particular about plaintiff's status that warranted heightened public interest. *See Doe v. Univ. of the South*, No. 4:09-cv-62, Memorandum and Order. As to prejudice to the defendant school, the court ruled that where the school fully knows the plaintiff's identity, it could not show prejudice in conducting pre-trial proceedings pseudonymously. The court continued that the only potential factor, heightened cost from the potential of more frequent court involvement, is substantially outweighed by the plaintiff's need for privacy, but if actual prejudice arose thereby, that the

11

court could again address the issue at that point. All of these same considerations would be identical in this case, demanding the same result.

## CONCLUSION

For all of the forgoing reasons, Plaintiff requests this Court to grant Plaintiff's motion for the entry of:

i. An order granting Plaintiff leave to proceed under a pseudonym; and

ii. A protective order (a) prohibiting Defendant and its agents from disclosing Plaintiff's identity to any third party other than necessary to defend against this action; (b) ordering that if any party files a document in the public record that would otherwise identify Plaintiff, the filing party shall redact personal identifiers consistent with this Order and Fed. R. Civ. P. 5.2; and (c) ordering that such informed third parties shall be provided a copy of the Court's order and shall not identify Plaintiff other than as may be necessary with respect to this action.

Respectfully submitted,
JOHN DOE
By his attorneys:

/s/ Beth M. Nussbaum
Emily E. Smith-Lee (BBO# 634223)
esmithlee@slnlaw.com
Beth M. Nussbaum (BBO#633878)
bnussbaum@slnlaw.com
Smith Lee Nebenzahl LLP
One Post Office Square
Sharon, MA 02067
781-784-2322
781-793-0600 (facsimile)

Dated: July 19, 2013

12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

JOHN DOE, MARY DOE, and :
JAMES DOE, :
 :
     *Plaintiffs*, :
v. : No. 4:09-cv-62
 : *Mattice/Lee*
THE UNIVERSITY OF THE SOUTH, :
 :
     *Defendant*. :
 :

**<u>MEMORANDUM and ORDER</u>**

     Pending before the Court is the motion of Plaintiffs John Doe, James Doe, and Mary Doe seeking: (1) an order granting Plaintiffs leave to proceed in this action under pseudonyms and (2) a protective order (a) prohibiting Defendant The University of the South and its agents from disclosing, at any time, the identity of any Plaintiff to any third party other than as may be necessary to defend against this action; and (b) prohibiting any such informed third party from disclosing the identity of any Plaintiff [Doc. 3].

**I.    BACKGROUND**

     Plaintiffs' lengthy complaint against Defendant alleges various state and federal law claims arising out of a rape accusation by a female student against student John Doe [Doc. 1]. John Doe claims the sexual encounter was consensual. The complaint contains allegations about the events on Defendant's campus giving rise to the accusation and Defendant's investigation, handling, and resolution of the matter. The complaint seeks damages, declaratory relief, and injunctive relief.

     Prior to an appearance by counsel for Defendant, a provisional order allowing Plaintiffs to

proceed pseudonymously and a protective order was issued by the Court [Doc. 5]. After two stipulated extensions of time to respond to the complaint [Doc. 8 & 9], Defendant filed a partial motion to dismiss [Doc. 10] and opposed Plaintiffs' motion to proceed pseudonymously and for a protective order [Doc. 12]. Plaintiffs' motion and Defendant's opposition were fully briefed [Doc. 4, 12 & 15] and a hearing on the motion was held July 29, 2009.[1] During the hearing, the Court agreed that the parties could submit for consideration a proposed agreed protective order, or separate proposed orders, to be provided to nonparty witnesses as necessary in lieu of the Court's previous order [Doc. 5], but no party chose to do so to date.

## II. ANALYSIS

Plaintiffs argue that revealing John Doe was accused of rape, an accusation they claim is false, is information of the utmost secrecy and potentially extremely harmful to him since electronically filed documents are now widely available online. Defendant contends the public's right to know and potential prejudice to it outweigh any privacy interest of John Doe.[2]

### A. Standards

Federal Rule of Civil Procedure 10(a) requires a complaint to state the name of all parties. Allowing a plaintiff to proceed pseudonymously is the exception, not the rule. *Doe v. Porter,* 370 F. 3d 558, 560 (6th Cir. 2004); *Endangered v. Louisville/Jefferson County Metro Gov't Dep't of Inspections*, No. 3:06CV-250-S, 2007 WL 509695, at *1 (W.D. Ky. Feb. 12, 2007). To be excused

---

[1] Attorney Charles Wayne for Plaintiffs and attorneys Rosemarie Bryan and Aaron Love for Defendant participated in the hearing.

[2] The parties appear to agree the motion involves the privacy interest of John Doe, not his parents, James Doe and Mary Doe, who seek to proceed pseudonymously to avoid identifying their son. If John Doe is required to identify himself, there is no independent basis asserted for allowing his parents to proceed pseudonymously.

2

from the requirement of Rule 10(a) that the complaint state the parties' names, a party must show: (1) the need for proceeding pseudonymously substantially outweighs the general presumption that a party's identity is public information and (2) the moving party's need for privacy substantially outweighs the risk of unfairness to the opposing party. *Porter*, 370 F.3d at 560; *Endangered*, 2007 WL 509695, at *1. In balancing these considerations in civil litigation, a court, in its discretion:

> may excuse plaintiffs from identifying themselves in certain circumstances. Several considerations determine whether a plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings. They include: (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information "of the utmost intimacy"; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Doe v. Porter*, 370 F.3d at 560 (citing *Doe v. Stegall,* 653 F.2d 180, 185-86 (5th Cir.1981)); *accord Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636-37 (6th Cir. 2005).

Pursuant to Fed. R. Civ. P. 26(c), on a showing of good cause a court may issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

### B. Privacy Interest and Public Disclosure

Pertinent here is whether Plaintiffs will be compelled to disclose information "of the utmost secrecy." There appears to be no precedent directly on point and little applicable guidance as to what information is considered of the utmost secrecy such that John Doe's privacy interest outweighs the public's interest in knowing his identity in this case. While claims of sexual assault and harassment have been found not to warrant proceeding pseudonymously in some circumstances, *see, e.g.*, *F.B. v. E. Stroudsburg Univ.*, No. 3:09cv525, 2009 WL 2003363 (M.D. Pa. July 7, 2009) (denying former-student-plaintiffs' request to proceed pseudonymously against school in case

involving claims of sexual assault and harassment by school-officer-defendant),[3] fictitious names have been deemed appropriate when necessary to protect the privacy of some rape victims and other particularly vulnerable parties. *See Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997) (denied the right to proceed anonymously but recognized it was appropriate for rape victims to do so); *Roe v. St. Louis Univ.*, No. 4:08CV1474JCH, 2009 WL 910738 (E.D. Mo. Apr. 2, 2009) (in a case by a student against St. Louis University the district court found it "understandable that plaintiff does not wish to be publicly identified as [a rape victim], which is a personal matter of the utmost intimacy" and allowed the plaintiff to proceed pseudonymously) (citing *W.G.A. v. Priority Pharmacy, Inc.*, 184 F.R.D. 616, 617 (E.D. Mo. 1999)). Neither the parties nor the Court located a case involving a privacy interest similar to John Doe's claimed interest.

Considering all relevant information, including but not limited to the essentially uncontested representations during the hearing that no criminal charges have been filed to date, that Defendant's own student disciplinary records do not reflect John Doe was accused of rape by a fellow student, that there is no known public record of the accusation, and the loss of any sort of practical anonymity due to electronic case filings, the Court concludes if Plaintiffs identify themselves, prosecution of the suit will compel Plaintiffs to disclose information of the utmost intimacy. While John Doe is not a rape *victim*, being accused of rape is a personal matter of the utmost intimacy

---

[3] As argued by Plaintiffs, although "anonymous pleading has frequently been rejected in cases alleging sexual assault[,] [t]he pattern is far from universal . . . . The divergence of outcomes in these cases reemphasize that there is unlikely to be a categorical answer to the question of anonymity across all civil cases involving sexual assault. Discretion must be exercised on a case-by-case basis, depending on the particular circumstances before the court." *Doe v. Del Rio*, 241 F.R.D. 154, 160 (S.D.N.Y. 2006) (footnotes and citations omitted).

under the circumstances at issue.

The Court next turns to whether John Doe's need for proceeding pseudonymously substantially outweighs the general presumption that a party's identity is public information. Defendant knows Plaintiffs' true identities, but the public will not if Plaintiffs are allowed to proceed using fictitious names. However, the public's knowledge of the judicial proceedings will be only minimally restricted because the public will know, among other things, what is alleged to have occurred between John Doe and his fellow student, where and how the alleged occurrence took place, and how Defendant investigated and responded to the alleged occurrence. The only pertinent unknown is the identity of Plaintiffs.[4] When given an opportunity during the hearing, Defendant could not identify how the public's interest would be compromised by not knowing the identity of Plaintiffs during the pretrial stages of the litigation. In addition, Defendant essentially conceded there is nothing about the status of the Plaintiffs that would heighten any public interest beyond the normal public interest in judicial proceedings. Thus, allowing Plaintiffs to proceed pseudonymously during the pretrial stages of this matter will not obstruct the public's interest in this case in any significant way.

The Court finds John Doe's privacy interests substantially outweigh the public's interest in ascertaining the Plaintiffs' true identities. Since John Doe would be required to disclose information of the utmost intimacy during the litigation of this case and the public's interest would be minimally hampered by not disclosing his name, Plaintiffs' need for proceeding pseudonymously substantially

---

[4] To date, neither side of the litigation has revealed in the pleadings the identity of the alleged rape victim, who has been identified only as "A.B." No party sought a protective order regarding A.B.'s identity and the parties' ability to publicly reveal her identity is not addressed herein.

outweighs the general presumption that a party's identity is public information.

### C. Prejudice to Defendant

The Court must also consider whether allowing Plaintiffs to proceed pseudonymously prejudices Defendant. Defendant argued it would be unfair to allow Plaintiffs, who have publicly name Defendant and its employees in their complaint, to proceed under the cloak of pseudonyms, but failed to show any actual prejudice. When given an opportunity to do so, Defendant could not specifically identify how its ability to conduct meaningful discovery, impeach John Doe's credibility, or prepare for trial would be meaningfully hindered if pseudonyms are allowed during pretrial proceedings and discovery takes place pursuant to the terms of the protective order.

Defendant pointed out that allowing Plaintiffs to proceed pseudonymously may require the Court to be more frequently involved in the discovery process, which may result in increased costs to Defendant. While increased cost is a potential prejudice, John Doe's need for privacy substantially outweighs the risk of unfairness to Defendant at this stage of the litigation. Of course, if actual prejudice develops during the discovery process such that John Doe's need for privacy no longer substantially outweighs the risk of unfairness to Defendant, the Court will be able to address the issue of continued anonymity further. At least to date, however, there has been no showing that allowing Plaintiffs to proceed pseudonymously and pursuant to a protective order will prejudice Defendant in any meaningful way.

Thus, the Court finds John Doe's need for privacy substantially outweighs the risk of unfairness to the Defendant at the present time. After balancing Plaintiffs' interests in proceeding pseudonymously against the public's interest in disclosure and prejudice to Defendant, the Court concludes the motion is well-taken and should be **GRANTED**.

III. **CONCLUSION**

Accordingly, Plaintiffs' motion to proceed under pseudonyms and for a protective order [Doc. 3] is **GRANTED**. Defendant **SHALL NOT** identify any Plaintiff to any nonparty other than as may be necessary to defend against this action. Any nonparty who is informed of any Plaintiff's identity **SHALL** be provided a copy of the protective order previously entered by the Court [Doc. 5] by the disclosing party. If any party files a document in the public record that would otherwise identify Plaintiffs, the filing party shall redact personal identifiers consistent with this order and Fed. R. Civ. P. 5.2 until further order of the Court. This order is limited to pretrial proceedings and is subject to further order of the Court, specifically as it relates to trial proceedings.

In addition, Plaintiffs **SHALL** submit under seal to the clerk a copy of the complaint which names Plaintiffs within ten days of the entry of this order, which complaint the clerk is **DIRECTED** to file under seal.

SO ORDERED.

ENTER:

*s/Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE
