## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE, | : |
| | : |
| Plaintiff, | : |
| | : Civil Action No._____ |
| v. | : |
| | : |
| BRANDEIS UNIVERSITY, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendant. | : |
| | : |

### MEMORANDUM OF LAW IN SUPPORT OF JOHN DOE'S MOTION FOR PERMISSION TO PROCEED UNDER A PSEUDONYM

## I.    INTRODUCTION

Plaintiff John Doe ("John") submits this Memorandum of Law in support of his contemporaneously filed Motion for Permission to Proceed Under Pseudonym ("Motion"). John requests to proceed in the above-captioned matter anonymously in order to maintain and protect his privacy and reputational interests as he seeks redress against Defendant Brandeis University ("Brandeis" or "University") for its grievous mishandling of false accusations of sexual misconduct brought against John while a student at Brandeis by J.C., a fellow Brandeis student and former boyfriend with whom John had a 21-month consensual, dating relationship. John also seeks to protect the privacy interests of his accuser, and requests permission to identify him as "J.C." in all of John's public filings. All of John's causes of actions arise from Brandeis's conduct in the course of a confidential University disciplinary proceeding, and involve highly sensitive, personal matters. As demonstrated below, well-established precedent supports permitting John to proceed anonymously.

In bringing this suit, John seeks to clear his name by, *inter alia*, obtaining a judicial declaration that Brandeis subjected John to a fundamentally unfair disciplinary proceeding, and an order requiring Brandeis to expunge from John's education record the University's erroneous findings of responsibility for sexual misconduct.  Inclusion of his name in the Complaint and court filings would result in the public association of his name with J.C.'s false allegations of sexual misconduct, which would be widely available through electronic means, thereby defeating the very purpose of his suit and causing the severe reputational harm that the suit seeks to prevent.

## II.      FACTUAL BACKGROUND

In his Complaint (attached hereto as Exhibit A), John seeks redress for actions taken by Brandeis in conducting a deeply flawed student disciplinary process in connection with accusations that he committed sexual misconduct against J.C.  (Compl. ¶ 1).  Prior to the allegations, John and J.C. had been in a 21-month, sexually active, exclusive dating relationship while attending Brandeis.  (*Id*. ¶¶ 2-4).  In January 2014 – six months after the relationship ended and nearly two years after their first sexual encounter – J.C. filed with Brandeis a 29-word, two-sentence accusation, stating in full:  "Starting in the month of September, 2011, the Alleged Violator of Policy [John] had numerous inappropriate, nonconsensual sexual interactions with me.  These interactions continued to occur until around May 2013."  (*Id*. ¶ 5).

Brandeis immediately placed John on emergency suspension, and two days later, notified him that J.C.'s non-specific accusation related to six alleged violations of student conduct set forth in Brandeis's Rights and Responsibilities Handbook ("R&R Handbook"):  sexual misconduct, lack of consent to sexual activity, taking sexual advantage of incapacitation, sexual harassment, causing physical harm to another, and invasion of personal privacy.  (Compl. ¶¶ 6-7).  On the same day, Brandeis informed John that it would adjudicate the case using the

University's new "Special Examiner's Process" for sexual assault and sexual harassment cases. Previously, the University investigated and adjudicated claims of sexual assault under the University's long-established Student Conduct "Hearing Process." (*Id.* ¶ 8). John was stunned by the accusations and charges, and the University's precipitous response. Not once during their 21-month relationship did J.C. complain to John or anyone else that John had engaged in non-consensual sexual activity with him or that John had invaded his privacy. Nor was there any physical or other corroborating evidence indicating John had ever physically harmed or sexually harassed J.C. (*Id.* ¶¶ 9-10).

After a series of closed-door interviews with the parties and witnesses, the Special Examiner in John's case, an outside lawyer hired by the University, found John responsible for all six charges. (Compl. ¶ 16). The Special Examiner's findings were based on notions of what constitutes sexual misconduct that bordered on the ludicrous and defied common sense. (*Id.* ¶ 18). For example, the Special Examiner concluded John had committed a sexual assault when he kissed his then-boyfriend awake in the morning, and that John invaded J.C.'s privacy when he saw his then-boyfriend's naked body in the dorm's same-sex communal bathrooms. (*Id.* ¶¶ 19-20). The Special Examiner found that, when John placed J.C.'s hand on John's crotch over his clothing during the "flirting" stage of their relationship, that act was a sexual assault, even though the next day they became sexually intimate and began a 21-month dating relationship. (*Id.* ¶ 21).

John was sanctioned by the University with a Disciplinary Warning, which carries a permanent notation in the student's education record. (Compl. ¶¶ 23-24). In John's case, his record will permanently reflect that he was found responsible for sexual misconduct toward another student involving lack of consent to sexual activity, taking sexual advantage of the

student's incapacitation, sexually harassing and physically harming the student, and invading the student's personal privacy. (*Id.* ¶ 25). Brandeis has effectively labeled John as a predatory sexual offender. (*Id.* ¶ 26). The adverse mark on John's permanent education record, stigmatizing him as a sexual offender, jeopardizes, if not shatters, his goal of attending law school and pursuing a career in public service and politics. John's ill-deserved disciplinary record will be a lifetime liability. (*Id.* ¶ 27).

As set forth fully in the Complaint, Brandeis's Special Examiner's Process is a secret, inquisitorial process lacking the most basic due process safeguards for the accused and vests in a single person – the Special Examiner – the competing roles of investigator, prosecutor, and *de facto* judge. (Compl. ¶¶ 13-14, 36). The Special Examiner's findings were arbitrary and capricious. J.C.'s charges lacked a shred of evidentiary support; the Special Examiner ignored witnesses, documentation, and the circumstances of a 21-month consensual relationship indicating that John and J.C had a normal, healthy relationship that ran its course, and that J.C.'s accusations were actuated by malice. (*Id.* ¶ 28).

The Special Examiner's Process also applied inequitable standards of sexual conduct and processes that favored J.C. and discriminated against John in violation of Title IX of the Educational Amendments of 1972. (Compl. ¶ 29). The Department of Education, Office of Civil Rights ("OCR"), the federal agency charged with regulating Title IX, has opened an investigation of Brandeis's handling of John's case. (*Id.* ¶ 30). Upon information and belief, this is only the second case that the OCR has investigated on behalf of an accused student regarding possible violations by a college or university of principles of equity and fairness in connection with a sexual misconduct disciplinary proceeding. Further, as alleged in the

Complaint, throughout the proceedings, Brandeis materially breached its contractual obligations to John and violated its own policies and procedures.

## III.   DISCUSSION

### A.   General Principles Governing Pseudonymous Filings.

Although Fed. R. Civ. P. 10(a) requires that a complaint name all parties, courts have long permitted parties to use pseudonyms when necessary to protect privacy and reputational interests. *See, e.g., Doe v. Bell Atl. Bus. Sys. Servs.*, 162 F.R.D. 418, 420 (D. Mass. 1995) ("It is within the Court's discretion to allow a plaintiff to proceed pseudonymously."); *Doe v. Blue Cross and Blue Shield of Rhode Island*, 794 F. Supp. 72, 73 (D.R.I. 1992) ("I will not strip plaintiff of the cloak of privacy which shields him from the stigmatization [of his status as a transsexual] he might otherwise endure.").

To excuse a party from the requirement of Fed. R. Civ. P. 10(a), a court must determine "[w]hether the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *MacInnis v. Cigna Group Ins. Co. of America*, 379 F. Supp. 2d 89, 90 (D. Mass. 2005), citing *Doe v. Bell Atl.,* 162 F.R.D. at 420; *accord Doe v. Blue Cross & Blue Shield*, 794 F. Supp. 73 n.3; *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992).

"Courts have allowed plaintiffs to proceed anonymously in cases involving social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of the plaintiff's identity." *Doe v. Bell Atl.,* 162 F.R.D. at 420.  In addition to these three types of cases, this Court in *Doe v. Word of Life Fellowship, Inc.*, 2011 U.S. Dist. LEXIS 78383, at *3-4 (D. Mass. July 18, 2011), noted with approval the factors set forth by the United States District Court for the Eastern District of Pennsylvania in *Doe v.*

*Provident Life and Accident Ins. Co.*, 176 F.R.D. 464, 468-69 (E.D. Pa. 1997), to determine whether or not to disclose a litigant's identity.

The non-exhaustive list of factors in favor of anonymity includes the following:

> (1) the extent to which the identity of the litigant has been kept confidential;
>
> (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases;
>
> (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity;
>
> (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities;
>
> (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and
>
> (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Doe v. Provident Life*, at 467-68 (citation and quotation marks omitted).

Among the factors militating against the use of a pseudonym are:

> (7) the universal level of public interest in access to the identities of litigants;
>
> (8) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and
>
> (9) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.*

**B.  The Factors Used by the Courts to Determine Whether to Permit Filing Anonymously Heavily Weigh in John's Favor.**

The factors used by district courts to determine whether to permit filling under a fictitious name heavily weigh in John's favor.  John has a substantial privacy right which outweighs the public's interest in access to identities of litigants and the customary presumption of openness in judicial proceedings.  Because this case seeks redress for false allegations of sexual misconduct, John has a reasonable fear that he will suffer severe social stigmatization and reputational harm if he is denied the opportunity to pursue this action without a pseudonym.  The injury to his reputation that he seeks to rectify through this action would occur as a result of the disclosure of his identity.  Although the public has a legitimate interest in the legal issues John raises in his Complaint, including issues of fairness, equity, due process of law, and contractual obligations owed by colleges to accused students in sexual misconduct disciplinary proceedings, the fact of John's actual identity is of minimal importance to the public.  John has maintained the confidentiality of his identity and has revealed information about the student disciplinary proceedings to which he was subjected only to a small inner circle of persons with a need to know.  He is not a public figure, and having his identity publicly disclosed would serve as a deterrent in asserting his rights in this action, and would have a chilling effect on others who are similarly situated.

John addresses each factor below.

**First**, John has taken scrupulous steps to keep his identity confidential.  He has not disclosed his involvement in this matter to those beyond his inner circle, confined to John's immediate family, close friends and select faculty members and staff at Brandeis, several of whom were witnesses and advisors on his behalf, his therapist, and attorneys retained by John to

offer counsel.[1]  Similar circumstances were present in *Doe v. Provident Life, supra*, where the plaintiff sued his insurance carrier for disability benefits when he became unable to perform the duties of his job due to psychiatric disorders.  Plaintiff took steps to maintain anonymity and only disclosed the underlying facts of the matter to his immediate family, counsel, and medical providers.  176 F.R.D. at 470.  As with the plaintiff in that case, John has only disclosed the facts surrounding this matter to his inner circle.  This factor weighs in John's favor.

**Second,** John seeks to proceed using a pseudonym to minimize the social stigma attached to Brandeis's findings of responsibility for sexual misconduct.  If John is forced to disclose his identity in this action, the very "injury litigated against would occur as a result of the disclosure of plaintiff's identity."  *Doe v. Bell Atl.,* 162 F.R.D. at 420.  There is no question that a finding of responsibility for sexual misconduct bears a strong stigma.  It is because of that social stigma that John seeks in this action to reverse and expunge those findings.  If this black mark on John's *private* education record becomes a matter of *public record*, the publicity it would bring to John would entirely defeat the purpose of the suit, which is to clear his name.  In bringing suit, John is

---

[1]     As alleged in John's Complaint, J.C. has revealed John's identity and has defamed him to a small group of Brandeis administrators who had no direct involvement in John's case and, upon information and belief, to John's former and prospective employer and a reporter.  John believes that Brandeis may also have leaked his name to persons outside of the Brandeis community or recklessly failed to maintain the confidentiality of John's case.  (Compl. ¶¶ 31-32).  John's Complaint seeks to enjoin this defamatory conduct so as to maintain strict confidentiality concerning his identity.  Notably, John's identity has *never* been publicly disclosed, unlike litigants in other cases.  *See, e.g., Doe v. Bell Atl.*, 162 F.R.D. at 421-22 (denying motion to proceed under pseudonym where plaintiff, an alleged rape victim filing an employment discrimination claim, had already been named in a related case and in publicly available administrative complaints); *Doe v. Word of Life Fellowship*, 2011 U.S. Dist. LEXIS 78383, at *6-7 (denying defendant's motion to proceed under pseudonym where his identify had been publicly disclosed to city police department and New York State Police); *see also MacInnis v. Cigna*, 379 F. Supp. 2d at 90 (denying plaintiff's motion to proceed under pseudonym in suit challenging denial of ERISA health benefits; the Court reasoned that plaintiff's cursory one-sentence assertion that disclosure of her depression/anxiety disorder could generate social stigma was unsupported by evidence or explanation and such ERISA claims routinely require plaintiffs to disclose mental and physical illnesses.

attempting, as best he can, to eliminate the harm resulting from Brandeis's improper actions.  If he is forced to prosecute the case in his own name, such disclosure would serve only to augment such harm and render useless the suit's primary aim.  Under such circumstances, pseudonymous litigation is necessary and appropriate, and no less drastic measure would accomplish such purpose.

**Third**, there is significant public interest in maintaining the confidentiality of John and J.C's identities.  Courts have found the public interest is served in protecting the identities of parties when the issues involved are matters of a private, highly sensitive nature.  *See D.M. v. County of Berks*, 929 F. Supp. 2d 390, 402 (E.D. Pa. 2013) (allowing parents to proceed anonymously in case alleging parents were falsely accused of child sexual abuse); *Doe v. Hartford Life and Acc. Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) (allowing plaintiff to proceed using a fictitious name where disclosure of plaintiff's bipolar disorder would risk stigmatization in his community and career); *Doe v. Evans*, 202 F.R.D. 173, 175-76 (E.D. Pa. 2001) (plaintiff allowed to proceed pseudonymously in case alleging sexual assault by former state trooper); *Roe v. Borup*, 500 F. Supp. 127, 130 (E.D. Wis. 1980) (allowing use of fictitious name in case alleging false allegations of child sexual abuse).  John initiated this action due to the damage to his reputation resulting from Brandeis's mishandling of false allegations of sexual misconduct against him.  If John's only avenue of recourse is public disclosure of his identity, he will sustain further humiliation and public disgrace.  There is a significant public interest in support of permitting John to proceed anonymously to clear his good name.

**Fourth**, although there is a public interest in the *legal issues* raised in John's Complaint and in similar complaints brought by an increasing number of accused students who have been forced (like John) to assert their rights in the courts against wrongful student disciplinary actions

by colleges, the public has little interest in knowing, and no compelling need to know, the actual identities of the student-litigants.  Protecting John's identity will not "impede the public's ability to follow the proceedings."  *Doe v. Evans*, 202 F.R.D. at 176; *Doe v. Hartford Life*, 237 F.R.D. at 550.

**Fifth**, John may be deterred from pursuing his case in court if the price he must pay is being publicly identified.  The impact of this chilling effect may also deter other similarly-situated individuals – including those who have been falsely accused of sexual misconduct and wrongly adjudicated by their colleges and universities – who turn to the civil courts to protect their rights and preserve their reputations.   Courts have determined that there is a substantial public interest in ensuring that cases involving important issues like those in John's case are adjudicated "without the risk of stigmatization."  *Doe v. Hartford Life*, 237 F.R.D. at 550.

**Sixth**, John has no illegitimate or ulterior motive in seeking redress for Brandeis's conduct.  John's motive in bringing suit is to clear his name and restore his reputation.  If John is permitted to remain anonymous while seeking judicial relief, he also intends to use a pseudonym when referring to J.C. in documents subject to public access.  John has no interest in subjecting J.C. to stigmatization or public scrutiny.

The factors militating against the use of a pseudonym are correspondingly weak.  John is not a public figure, and as noted, although there may be a significant public interest in the *subject matter* of John's case, there is not a particularly strong interest in knowing John's identity.  The only factor which arguably militates against allowing John to proceed under a pseudonym is the general public interest in access to the identities of litigants.  However, this public interest is present in all civil actions and does not outweigh the factors in support of anonymity if they are

found to "tip in favor of plaintiff's use of a pseudonym." *Doe v. Provident Life*, 176 F.R.D. at 469.

Recently, this Court granted an Order to file under pseudonym in *Doe v. Williams College*, No. 13-11740 (D. Mass. 2013) (a copy of which is attached hereto as Exhibit "B"). Although the Order does not state the reasons for granting the plaintiff's motion to file under a pseudonym, presumably the Court was persuaded by the plaintiff's arguments set forth in his Memorandum of Law in Support of Motion to Proceed Under Pseudonym and for Protective Order (a copy of which is attached hereto as Exhibit "C").  In *Williams College*, the plaintiff, a junior at Williams College, was accused of exceeding the bounds of consensual sexual intercourse by a female student at Williams College.  The plaintiff alleged that all sexual activity was consensual and that he never engaged in activities beyond those to which the female student consented.  (*See* Ex. C at 2).  The plaintiff further alleged that Defendant Williams College wrongfully expelled him after conducting a flawed disciplinary hearing that violated the college's own handbook.  (*Id*. at 5-8). The plaintiff argued that, if he were forced to prosecute the case using his own name, the disclosure would only augment the harm that he was seeking to avoid, rendering the suit's primary aim useless.  (*Id*. at 11).  This Court agreed and permitted the plaintiff to proceed anonymously.  (Ex. B).

Like the plaintiff in *Williams College*, John is seeking to restore his reputation caused by false claims of sexual impropriety and with the university's flawed handling of those claims. And, like the plaintiff in *Williams College*, if John is forced to prosecute the case under his own name, the disclosure would only augment the harm that he is seeking to avoid.  John's primary goal to restore his personal reputation, academic record, and future career and employment prospects would be rendered useless if he could not proceed anonymously.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff John Doe requests that this Court grant his Motion for

Permission to Proceed under a Pseudonym.

Respectfully submitted,

*/s/ Michael R. Schneider*
Michael R. Schneider, Esq.
(Mass. Bar No. 446475)
Good Schneider Cormier
83 Atlantic Avenue
Boston, MA 02110-3711
Tel:  (617) 523-5933
Email:  ms@gscboston.com

Dated:  April 9, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on the date below I caused a true and correct copy of the foregoing

Motion for Permission to Proceed Under a Pseudonym, Memorandum of Law in Support, and

Proposed Order to be served on counsel below in the manner set forth:

**Via Email And Overnight Delivery**

Steven S. Locke, Esquire
General Counsel
Brandeis University
415 South Street
Waltham, MA  02549


/s/ Michael R. Schneider
Michael R. Schneider, Esquire


Dated: April 9, 2015