*The Washington Post*

Education

# Men punished in sexual misconduct cases on colleges campuses are fighting back

**By Nick Anderson**  August 20, 2014

Men punished for sexual misconduct in the wave of cases sweeping college campuses are fighting back against what they call unfair student disciplinary systems and publicity that threatens to shatter their reputations.

The current and former college students describe themselves as victims of false accusations amid a national campaign — led by the White House — to stamp out sexual violence on campuses. While the federal push to increase awareness of sexual assault is aimed at keeping students safe and holding the nation's colleges and universities accountable, some of the accused say the pressure on their schools has led to an unfair tipping of the scales against them.

*(Related: Behind a sexual misconduct case at Brandeis University: questions on all sides)*

They fiercely dispute the validity of internal investigations that rely on a lower standard of proof for determining misconduct than what is required for a conviction of a sex crime. They also contest accounts circulating on campuses and the Internet that label them as sexual assailants or rapists.

Joshua Strange, 23, of Spartanburg, S.C., said he was stunned that Auburn University expelled him in 2012 for sexual misconduct even though an Alabama grand jury found insufficient evidence to prosecute him for a sex crime. The internal disciplinary proceeding began, he said, after an ex-girlfriend falsely accused him of sex assault.

"The way that universities are handling the entire situation is terrible," Strange said. "It's kind of a broken system."

Strange, who graduated this year from the University of South Carolina Upstate, said he is speaking out in the hope of preventing future injustice.

"I want to make sure this doesn't happen to anyone else," he said.

An Auburn spokesman declined to comment on Strange's case, citing privacy laws. Bobby Woodard, Auburn's associate provost and vice president for student affairs, said federal requirements from the U.S. Department of Education mandate that all public universities follow a process that differs from the judicial and law enforcement

systems in many ways.

"Those requirements are very clear and come with severe penalties for noncompliance," Woodard said. "We at Auburn take these requirements very seriously, and that is reflected in our Code of Student Discipline."

A student at Brandeis University in Massachusetts, who was found responsible this year for sexual misconduct after an internal investigation he called biased, said: "I wasn't given a fair trial or anything. It's sad that this process can be abused and that the university can totally change somebody's life, with very little evidence. . . . In the real world, rape and sexual assault are crimes punishable by going to jail — and rightfully so. Why is this left up to schools?"

Debate over campus sex assault has exploded as college students and officials nationwide confront questions about what constitutes consent for sex and what behavior fuels a culture that tolerates or trivializes rape. The issues play out in an arena of young people living on their own for the first time and learning to make choices when alcohol and drugs are often in the mix. When details of disputed sexual encounters are injected into that debate, especially those that identify the accused, the situation intensifies. Individual reputations can be torched.

---

---

National attention has focused mainly on accounts of students who have stepped forward in growing numbers to report sexual violence, most of them women. From 2009 to 2012, federal data show reports of forcible sex offenses on campuses rose from about 2,600 to more than 3,900, up 50 percent. The victims often say that campus judicial processes are skewed in favor of the accused, allowing sex crimes to be hidden, victims' voices silenced and campus reputations protected.

Often, those who file reports are seeking not to press criminal charges, but simply to push schools to enforce rules that guarantee an educational environment free from threat and intimidation. The federal government, citing a 1972 law called Title IX that bans gender discrimination, requires schools to resolve these reports promptly and equitably regardless of whether police become involved.

Advertisement

In June, attorneys for a former Brown University student wrote the federal government to rebut "unsupported allegations of strangulation and violent rape" that they said had "forever tarnished" the name of their 21-year-old client. The man, who had been suspended for a year after the university found him responsible for sexual misconduct in connection with a 2013 encounter with a female student, was not charged with a crime. But he was identified in April in a student newspaper article about the controversy over whether his punishment was too lenient.

Soon afterward, Sen. Kirsten Gillibrand (D-N.Y.) weighed in on a cable television program, saying the woman in the case had been "brutally raped" and "nearly choked to death." The man's attorneys say he denies any violent behavior or sexual misconduct toward the woman. He ultimately withdrew from the Ivy League university in Rhode Island.

Under President Obama, the issue has drawn increased scrutiny. This year, Obama named a White House task force to study how to combat campus sex assault. His administration published a list of dozens of colleges under federal investigation for potentially mishandling sexual violence reports in violation of Title IX. The number listed, 55 on May 1, has grown to 76 as of Wednesday. The administration also told schools in 2011 that they should rely on a standard known as "preponderance of the evidence" to decide their sexual violence cases.

For a student to be found in violation of school rules under that standard, which is regularly used in civil litigation, the school essentially must determine that it is more likely than not that wrongdoing occurred. Previously, some schools had used a more demanding threshold of "clear and convincing evidence." In criminal trials, the burden of proof for a guilty verdict is even higher — "beyond a reasonable doubt."

Which leads both sides to the same question: Are college investigations fair to accusers and accused?

Some lawmakers say survivors of sex assault too often face institutions that are indifferent or even hostile to their plight. They cite schools that report no sex offenses in a given year, an improbable statistic, they say, given studies

showing that the issue touches huge numbers of undergraduate women.

Advertisement

Sen. Claire McCaskill (D-Mo.) is teaming with Gillibrand and others on a bipartisan bill that would require colleges to provide more support for students who report sex offenses.

McCaskill, a former prosecutor, said she wants as many cases as possible to be handled in criminal courts. The bill would require schools to coordinate with law enforcement agencies in solving sex crimes. But she said it is important to remember that college disciplinary inquiries do not put accused students in jeopardy of going to jail.

"I don't think we are anywhere near a tipping point where the people accused of this are somehow being treated unfairly," McCaskill said.

Many who have faced disciplinary sanctions disagree. They question the fairness of closed-door, internal proceedings that don't follow the same rules of evidence and procedure as criminal courts. Usually, accused students must speak for themselves, with little or no help from an attorney. Some are filing lawsuits against schools.

Charles B. Wayne, a Washington attorney for a plaintiff in such a case in a 2011 trial in federal court involving Sewanee: The University of the South in Tennessee, said colleges are not equipped to adjudicate sex assault allegations.

"The people involved in the process are not properly trained and don't have the necessary expertise," Wayne said. "In addition, the assumption that a 19-year-old can defend himself without counsel against rape charges is absurd."

In June, debate flared over resolution of the Brandeis case, which involved two male students. One accused the other of various nonconsensual sexual acts during a relationship of nearly two years. The student found responsible for sexual misconduct and other offenses received a disciplinary warning and was ordered to complete an educational program on sex assault prevention. He was not charged with a crime.

His ex-boyfriend called the sanctions "laughable and ridiculous." He posted on Facebook a May 30 university letter reporting the case's outcome, arguing that the university was protecting an attacker.

Advertisement

"With this letter, they are telling our campus community: 'Go ahead, rape somebody,'" he wrote. "'Sexually harass them. Physically harm them. Ruin their life. We'll give you a freebie.'"

The disciplined student denied any wrongdoing and said he worries that the episode could hurt his career prospects. He disputed the university's investigation, which he said sought to weigh the credibility of differing accounts from the two men of situations that had no eyewitnesses.

Brandeis said privacy rules barred comment on the case. University spokeswoman Ellen de Graffenreid said Brandeis follows federal law and goes to great lengths to determine appropriate sanctions for misconduct. "This is a tremendous challenge, and unlikely to ever satisfy either participant unless the finding is either exoneration or expulsion," she said in a written statement.

Many students and graduates — mostly women, some men — have come forward recently to provide public accounts as survivors of sexual violence. These advocates for victim rights have become influential on Capitol Hill and at the White House.

In July, three mothers announced an organization that will stand for due process in sexual misconduct cases on college campuses. Among the founders of Families Advocating for Campus Equality is Allison Strange, mother of the former Auburn student accused of misconduct, and Sherry Warner-Seefeld, mother of a man kicked out of the University of North Dakota in 2010 after what he called a false allegation of sex assault. The man was never charged with a crime. A year later, the university reversed its sanctions against him after an appeal pointed out that authorities had issued a warrant for the arrest of his accuser on suspicion of making a false report to police.

"We hope to reach out to people in positions of power to get their ear, to have them hear our stories, to convince them there is another aspect to the situation that needs to be considered," Warner-Seefeld said.

---

Nick Anderson covers higher education for The Washington Post. He has been a writer and editor at The Post since 2005.

---