# Rights and Responsibilities



Civility  Integrity  Respect  Citizenship  Lifelong Learning  Embrace of Diversity

Department of Student Rights and Community Standards

# 2013 – 2014

# Personal Safety Resources at Brandeis

## Brandeis University ● Dean of Students Office

**781.736.3600 ● Shapiro Campus Center, Second Floor ● www.brandeis.edu/studentaffairs/index.html**

If you or someone you know has been involved in an incident of sexual misconduct,
stalking, or harassment the Dean of Students Office can help.

Trained staff can assist you in making choices about which additional
resources or processes you may wish to access.

This is a coordinated initial entry point for seeking advice on all
other University and Boston-area sources of healing and justice.

**Brandeis Health Center:** STD screening, treatment, and follow-up ● 781.736.3677
www.brandeis.edu/studentaffairs/health/index.html

**Psychological Counseling Center:** confidential disclosure and advice, individual counseling ● 781.736.3730
www.brandeis.edu/studentaffairs/counseling/index.html

**Public Safety (University Police):** available 24 hours: Emergency ● 781.736.3333 ● Business 781.736.5000
www.brandeis.edu/publicsafety/index.htm

**Brandeis Confidential Complaint Hotline:** available 24 hours ● confidential or anonymous complaints ● number of incoming call is anonymous ● 781.736.4452

**Escort Service:** escort for individuals to locations both on and off campus ● 781.736.4999
www.brandeis.edu/publicsafety/safety/escort/index.html

**Student Rights and Community Standards:** initiate the Student Conduct Process ● 781.736.5070
www.brandeis.edu/studentaffairs/srcs/index.html

**Interfaith Chaplaincy:** confidential advice and disclosure 781.736.3570 ● www.brandeis.edu/studentaffairs/chaplaincy/

**Title IX Coordinator - Office of Human Resources:** confidential advice, workshops, filing complaints against faculty, TAs, administrators, or staff ● 781.736.4474
www.brandeis.edu/humanresources

# Additional Personal Safety Resources

## Brandeis Peer Resources

**Brandeis Counseling & Rape Crisis Hotline:** counselors on-call 10 pm–2 am ● 781.736.TALK
http://my.brandeis.edu/clubs/brandeisrch

**Students Talking About Relationships (STAR)** ● 781.736.4745
http://my.brandeis.edu/clubs/star

**Student Sexuality Information Service (SSIS)** ● 781.736.3695
http://people.brandeis.edu/~ssis/Site/index.html

**Triskelion (GLBT/Queer Alliance)** ● 781.736.3749
http://www.brandeis.edu/glbtq/getinvolved.html

## Community Resources

**Boston Area Rape Crisis Center** ● Hotline: 800.841.8371

**Victim Rights Law Center** ● 617.399.6720 extension 19

**Boston Alliance of Gay & Lesbian Youth (BAGLY)** ● 617.227.4313

**Rape Abuse Incest National Network (RAINN)** ● 800.656.HOPE

**REACH - Beyond Domestic Violence** ● 800.899.4000

**MA Commission Against Discrimination** ● 617.727.3990

**MA Office for Victim Assistance** ● 617.727.5200

**Middlesex County Victim/Witness Assistance** ● 781.897.8300

**Jane Doe Inc.** ● 617.248.0922

**Domestic Violence Safelink** (a 24 hour multilingual statewide hotline) 877.785.2020 TTY: 877.521.2601

**Beth Israel Hospital, Center for Violence, Prevention and Recovery** 617.667.8141

# Support is Available

**Personal Safety Resources**           **Front Inside Cover**

# Introduction                                                    2

# Community Standards of Behavior                                 3
Section 1.  Personal Identification and Representation            3
Section 2.  Respect for Health, Safety, and Rights of Community Members   4
Section 3.  Sexual Responsibility – Seeking and Communicating Consent   6
Section 4.  Maintenance of Academic Integrity                    8
Section 5.  Responsible Use of Tobacco, Alcohol, and other Drugs   8
Section 6.  Care of University and Personal Property             11
Section 7.  Equal Opportunity, Non-Discrimination, and Harassment   12
Section 8.  Campus Protests and Demonstrations                   15
Section 9.  Fire and Life Safety                                 16
Section 10. Living in the Residence Halls                        17
Section 11. Library and Technology Services                      21
Section 12. Campus Dining Services                               22
Section 13. Use of Campus Facilities                             22
Section 14. Parking and Traffic                                  24
Section 15. Commercial Enterprises                               24
Section 16. Name and Tax-Exempt Status of the University         24
Section 17. Protection of Privacy                                25

# Student Conduct Process                                        27
Section 18. Initial Procedures and the Mediated Resolution Option   27
Section 19. Procedural Standards in the Student Conduct Process   28
Section 20. Composition of Boards                                37
Section 21. Range of Conduct Actions and Sanctions              38
Section 22. University Actions and Sanctions                    40

# Appendices                                                     48
Appendix A. Massachusetts Act Prohibiting the Practice of Hazing   48
Appendix B. University Policy on Fraternities and Sororities     49
Appendix C. Related Publications                                 49

# Index                                                          51

**Reporting Inappropriate Behavior**      **Rear Inside Cover**

## Introduction

The vibrant Brandeis University community and its compact and complex campus necessitate that safeguards be provided to insure the freedom to explore the resources we enjoy and to express ourselves appropriately.  In protection of these freedoms, the University must establish certain standards of personal conduct.  The University may apply sanctions or take other appropriate action when the conduct of individuals interferes with the freedom to teach and learn, the safety and health of persons in the community, the maintenance or protection of property, the maintenance of necessary records, the provision of living accommodations and other services, or the sponsoring of non-classroom activities such as lectures, concerts, athletics events, and social functions.

All students enrolled in any undergraduate, graduate, or advanced academic course or program are members of the University community, as well as citizens of the City of Waltham and the Commonwealth of Massachusetts.  As citizens, students are responsible to the community of which they are a part and the University neither substitutes for nor interferes with regular legal processes.  Students are also accountable for offenses against the academic community.  Therefore, an action involving a student in a legal proceeding in a civil or criminal court does not free the student from responsibility for their conduct in a University proceeding.  If a student is charged in both jurisdictions, the University will proceed with its internal review according to its own timetable.

These policies and procedures are set forth in writing in order to give all students a general notice of community standards.  A student who decides to study at another institution, whether domestically or abroad, while remaining enrolled as a degree candidate at Brandeis, either undergraduate or graduate, must adhere to Brandeis policies, including but not limited to those set forth in this handbook.  Students who violate campus or community standards may face conduct action at Brandeis and/or the host institution.

The University reserves broad latitude in defining and interpreting standards of behavior, and in construing these policies and procedures.

# Community Standards of Behavior

## Section 1. Personal Identification and Representation

1.0. The climate of life in the academic community must be one of honesty, acceptance of responsibility, and willingness to represent clearly and accurately oneself, one's own work (including academic assignments – see Section 4), and one's activities.  A student is expected to respect the following standards:

1.1. Furnish correct, truthful, and complete information to University officials, committees, or boards.

1.2. Preserve and maintain evidence so as not to deny its presentation to University officials, committees, or boards.

1.3. Appear before a University official, committee, or board when properly notified to appear.

1.4. Preserve the integrity, legitimacy, and accuracy of all records, documents, writings, and identifications used or maintained by the University so as to avoid injury, fraud, or misrepresentation.

1.5. Self-identify with a University Identification Card when requested by an authorized University official.  The official must, in turn, provide identification if the student requests it.

1.6. Utilize the University Identification Card exclusively for the student's own use in obtaining University services and privileges.  A student may obtain their Identification Card at the Campus Card Office at the beginning of the student's first academic year.  A student's Identification Card and its applications are not transferable.  Lost Identification Cards must be reported to the Campus Card Office and the Department of Public Safety, and then replaced as soon as possible.  Damaged cards will be replaced free of charge, but there is a fee to replace a lost card.  The student must turn in the damaged card to the Campus Card Office.

1.7. Seek and/or obtain only those University privileges or services (check cashing, student elections, athletic events, group examinations, registration, library, campus technologies, etc.) to which the student is properly entitled.

1.8. Refrain from encouraging, enticing, influencing, or enlisting another student to violate any of the University standards or policies listed in this code or other official University documents (see Section 2.13).

1.9. Maintain currency with the use of the University-issued e-mail account.  This account is the University's primary means of communicating information important requests, updates, policies, procedures, and events.

**Section 2. Respect for the Health, Safety, and Rights of Community Members**

2.0. All members of the community share the responsibility for protecting and maintaining community health and safety and the rights of other persons. Concentrated housing, varied activities, and the needs of students, faculty, and staff for freedom to pursue their own educational tasks and complete job-related responsibilities free from hazards and intrusions, requires the cooperation of all in maintaining these standards.

2.1. Respect the integrity and personal rights of individuals. The University will not tolerate any behavior that:

> 2.1.a. intimidates.

> 2.1.b. threatens.

> 2.1.c. harasses or bullies (see Section 7 regarding harassment).

> 2.1.d. physically harms or is considered unwanted physical contact (some examples: hitting, pushing, or physical altercations/violence of any kind).

> 2.1.e. invades personal privacy (see Sections 2.5, 11.2, 11.3, and 17).

> 2.1.f. endangers the health, safety, or welfare of any other person on or off campus. Due to the seriousness of any integrity or personal rights accusations and accompanying issues that may impact the Brandeis community, any student involved in such an incident may be placed on campus restriction or emergency suspension pending the outcome of any investigation or conduct process (see Section 22).

> 2.1.g. defames or slanders.

> 2.1.h. constitutes stalking. The term 'stalking' is defined by the Commonwealth of Massachusetts as: "Whoever (1) willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress, and (2) makes a threat with the intent to place the person in imminent fear of death or bodily injury."

2.2. Comply with instructions of University officials, Special Examiners, committees, or boards.

2.3. Comply with the final decision of the Student Conduct Board, the University Appeals Board, or with an Administrative Action or University Action.

2.4. Recognize and allow for the legitimate functions of the University. Obstructing or disrupting teaching, research, administrative, public service, disciplinary, or other authorized functions is unacceptable.

2.5. Refrain from using computers, cellular phones, tablets, cameras, or other electronic devices in any manner that causes disruption to or invades another individual's privacy in a classroom, library or other campus facility or any campus event.  This includes misuse of computer and/or cellular devices with photographic, audio or video recording or streaming, or text messaging capability (see Sections 2.1.e, 11.2, 11.3, 11.4 and 17.1).

2.6. Use safety equipment and/or initiate safety procedures only when it is necessary (this includes, but is not limited to, fire equipment, fire alarms, fire drills, and exit lights). Initiating a false fire alarm or issuing any type of threat is strictly prohibited (see Sections 9 and 10.15.m).

2.7. Refrain from discrimination on the basis of race, sex, color, national origin, religion, age, gender, gender identity and expression, sexual orientation, disability, veteran status, or genetic information (see Section 7).

2.8. Refrain from hazing.   Hazing is an activity expected of someone joining or participating in a group that humiliates, degrades, abuses, or endangers them (physically or emotionally), regardless of a person's willingness to participate.  Examples of hazing common across student groups include: alcohol consumption; humiliation; isolation; sleep-deprivation; sex acts; initiating or disciplining fellow students, often in the nature of forced alcohol consumption; and humiliating or painful ordeals (see Appendix A for related Massachusetts law) (see Section 1.8).

2.9. It is prohibited to possess or use firearms (including blank pistols and replicas, bb guns, and pellet guns), explosives, knives, fireworks, nun-chucks, paintball guns, and other articles or substances usable as weapons on University property.

2.10. Obtain clearance from the Department of Student Activities for the use of loud speakers or other sound amplification equipment at outdoor events.

2.11. Refrain from bringing any dog or animal onto the campus without a leash.  Students are prohibited from allowing any unrestrained animal to enter any campus building, or allowing any restrained or unrestrained animal (other than guide and service animals) to enter dining service buildings, campus centers, residence halls, or libraries (see Section 10.4).

2.12. Assume responsibility for the actions, damage, or injuries caused by, or costs incurred for the services related to hosting a guest on campus.  The University reserves the right to impose requirements related to the safety or security concerns of a visit by a guest, and to assess the host for the cost of meeting these requirements (see Sections 10.6 and 10.10).

2.13. Comply with the regulations enumerated in other official University publications and documents (e.g., library policies, computer use policies, Dining Services policies, the Residence Halls and Meal Plan License, parking policies, and financial aid policies).

2.14. Refrain from any verbal or physical behavior or actions that could be construed as retaliation for an individual's good-faith report to the Department of Public Safety, the Student Conduct Process, or another University official regarding another student (see Section 7.4).

**Section 3. Sexual Responsibility − Seeking and Communicating Consent**

3.0. Brandeis University expects all members of the University community to treat one another with respect.   Policies regarding sexual misconduct emphasize personal accountability as well as recognition of the impact of one's behavior on others.  Students are encouraged to examine their own values, communicate with one another clearly, and acknowledge the condition and requests of others.  Incapacity to consent to sexual activity or compromised communication can result when individuals are under the influence of intoxicants such as alcohol and other drugs.  If all parties do not consent, or are unable to consent to a sexual act, then the interaction could be defined as sexual misconduct or sexual assault.   Consent must be sought affirmatively and clearly understood and communicated before engaging in any sexual activities.  Due to the seriousness of sexual misconduct accusations and accompanying issues that may impact the Brandeis community, any student accused of sexual misconduct may be placed on campus restriction or emergency suspension pending the outcome of any investigation or conduct process (see Section 22).  **Note:** Adjudication of any allegation related to this section will be pursuant to the Special Examiner's Process found in Section 22.6 and not the Student Conduct Process found in Section 19.

3.1. Students are prohibited from engaging in sexual misconduct.  Sexual contact that occurs without the explicit consent of each person involved may be considered sexual misconduct.   Consent must be clearly and affirmatively communicated, mutual, non-coercive, and given free of force or threat of force.  A person who is physically or mentally incapacitated by drugs, alcohol, or other circumstances is not capable of giving consent. Physical or mental incapacity means the lack of ability to appreciate the fact that the situation is sexual, and/or the inability to rationally and reasonably appreciate the nature and extent of that situation.  Evidence of ingestion of drugs and/or alcohol may raise a presumption of physical and/or mental incapacity.

3.2.  Causing  incapacitation  or  intoxication,  or  taking  advantage  of  someone's incapacitation or intoxication for the purpose of engaging in sexual activity is considered sexual misconduct.

3.3. Consent or lack of consent may be communicated verbally or through actions but if a refusal to engage in sexual activity is communicated at any time then the activity must cease immediately.  Lack of consent may also be inferred from the use of force, threat, physical intimidation, or advantage gained by the Accuser's mental or physical incapacity or impairment of which the Accused was aware or should have been aware.  Prior sexual activity or an existing acquaintanceship, friendship, or other relationship that has been sexual in nature does not constitute consent for the continuation or renewal of sexual activity.

**Services Available to Survivors/Victims of Sexual Assault and Other Sex Offenses:**

The following list identifies services, summarizes relevant policies, and illustrates the University's compliance with the requirements of the Higher Education Reauthorization Act, section 485(f).

•Undergraduate and graduate students should report sexual misconduct, rape, sexual assault, or other sex offenses to the Department of Public Safety.  The Department of Public Safety has full police powers and the staff is trained to provide accurate information on preserving evidence and the options for criminal prosecution, campus disciplinary proceedings, or both.

•Brandeis' Title IX Coordinator, Linda Shinomoto, is also available to meet with students and receive complaints of sexual misconduct.  Ms. Shinomoto oversees the University's investigation and resolution of all Title IX complaints.  Ms. Shinomoto can be reached at 781-736-4474.

•The staff in the Department of Public Safety and the staff in the Division of Students and Enrollment are available to assist students in notifying local police if the student chooses.

•The position of Sexual Assault and Prevention Services Specialist will join the Brandeis Community in the autumn of 2013.  This role will provide services to survivors and to coordinate prevention efforts in the campus community.  In the role of Sexual Assault Services & Prevention Specialist this person will coordinate advocacy services for survivors of sexual assault, relationship violence, and stalking, complying with the VAWA Federal Campus Security Act and Title IX regulations, serving as a liaison to student organizations, and conducting outreach and education events to promote a healthy campus environment.

•Campus disciplinary proceedings may be initiated against a student through the Department of Student Rights and Community Standards (see Sections 3.1, 3.2, 3.3 and/or Section 7 of this publication).  To report sexual misconduct against a staff or faculty member contact the University's Director of Employee Relations and Title IX Coordinator for Human Resources.  To make an anonymous report, the University's Confidential Complaint Hotline can be reached at 781-736-4452.  This 24-hour hotline has been configured so that phone numbers for incoming calls are not retained by the system.

•Section 22.6 of this publication describes the right of the Accused as well as the Accuser to bring an Advisor of their choice from the University community.  This section also permits the passive assistance of legal counsel by either party but only if coexisting criminal charges are pending resulting from the same incident.

•Possible sanctions to be imposed following the completion of campus disciplinary proceedings are included in Section 21 and 22.  The Accuser will be informed of the outcome of disciplinary proceedings, insofar as they relate to the Accuser, in which sexual assault or harassment is alleged.

•The postcard *Personal Safety Resources at Brandeis*, published by the Division of Students and Enrollment, lists many helping services both on campus (e.g., Office of Human Resources Psychological Counseling Center) and off campus (e.g., Boston Area Rape Crisis Center).

•The staff in the Division of Students and Enrollment is available after an alleged sexual assault incident to assist students in making any reasonably available changes in academic or living situations.  The Division of Students and Enrollment and the Office of Human Resources offer educational programs on sexual assault.

**Section 4. Maintenance of Academic Integrity**

4.0. Every member of the University community is expected to maintain the highest standards of academic integrity. A student shall not submit work that is falsified or is not the result of the student's own effort. Infringement of academic honesty by a student subjects that student to serious penalties, which may include failure on the assignment, failure in the course, suspension from the University or other sanctions (see Section 21). A student who is in doubt regarding standards of academic honesty in a course or assignment should consult the faculty member responsible for that course or assignment before submitting the work. Any academic integrity report submitted to the Department of Student Rights and Community Standards is subject to prior consideration by the appropriate academic school, department, or program. Such evaluation is intended to differentiate integrity problems from quality-of-work concerns. In the case of a report against a graduate student regarding a graduate-level course, the appropriate academic review committee may make this evaluation. A student's lack of understanding is not a valid defense to a charge of academic dishonesty.

4.1. A student's name on any written exercise (e.g., examination, report, thesis, theme, notebook, laboratory report, computer program, etc.), or in association with an oral presentation constitutes a representation that the work is the result of that student's own thought and study. Such work shall be stated in the student's own words, and produced without the assistance of others, except for quotation marks, references, and footnotes that accurately acknowledge the use of other sources (including sources found on the Internet). Talking during an examination, or possession or use of unauthorized materials or equipment during an examination constitutes an infringement of academic honesty. Attempting to receive credit for work not originally submitted also constitutes an infringement of academic honesty.

4.2. In some instances, a student may be authorized by a faculty member to work jointly with (an)other student(s) in solving problems or completing projects. However, students may not collaborate on assignments without explicit permission from the instructor. To provide, either knowingly or through negligence, one's own work to assist another student in satisfying a course requirement constitutes an infringement of academic honesty. Aid from personnel associated with University-sanctioned tutoring services is acceptable.

4.3. Unless permission is received in advance from the faculty member in charge of the course involved, a student may not submit, in identical or similar form, work for one course that has been used to fulfill any academic requirement in another course at Brandeis or any other institution. A student who perceives the possibility of overlapping assignments in courses should consult with the appropriate faculty members before presuming that a single effort will fulfill requirements of both courses.

**Section 5. Responsible Use of Tobacco, Alcohol, and other Drugs**

5.0. A commitment to promoting the health and safety of all members of the Brandeis community, combined with the University's obligation to uphold local, state and federal laws, requires clear policies on the possession and use of tobacco, alcohol, and other drugs. Members of the community who sponsor or host programs assume responsibility for compliance with the policies outlined below, and are required to be familiar with guidelines for event sponsorship.

Brandeis University recognizes that abuse of tobacco, alcohol, and other drugs may present conditions that require professional counseling, assistance, or treatment. If any member of the community is at risk because of use or abuse of these substances, many individuals and programs on campus are available to provide immediate or longer-term assistance. The alcohol and drug counselor/educator is located in the Brandeis University Health Center. Assessments and counseling are available for students who want to learn more about their own use of substances, reduce or eliminate their use, or have concerns about a friend or family member's use. Substance abuse counseling is a free service and is confidential. For information contact the Health Center or check their website: www.brandeis.edu/studentaffairs/healthcounseling/drug.html

5.1. Smoking: All Brandeis campus buildings are completely smoke-free. Cigarettes and other smokable products present clear health risks to members of the community, both for users and those experiencing second-hand smoke. Smoking is prohibited in all University buildings (including the residence halls), in outside areas adjacent to the entrances of University buildings (within 30 feet), and in University vehicles. Members of the community who choose to smoke are expected to dispose of these materials in proper receptacles, and without risking harm to the campus environment. Those who use any smokable products must show respect for the community, and are expected to comply with reasonable requests from other members of the community regarding their exposure to second-hand smoke.

5.2. Alcohol Use: Brandeis University upholds and supports local, state, and federal laws with regard to alcohol beverages. Students of legal drinking age may choose to drink within stated campus guidelines, and in accordance with procedures for event sponsorship. Behaviors involving alcohol that encourage or support binge drinking will not be tolerated. Binge drinking exists when a person drinks between four and five (or more) drinks within a short period of time. Students are expected to obey the law and all University policies regarding the possession, consumption, and serving of alcoholic beverages, and every student is responsible for their own conduct. Behavior while intoxicated which causes public disturbance, damage, or nuisance will not be tolerated. Students placing themselves in personal danger, and/or causing an undue burden to the community will be addressed appropriately. Brandeis students are reminded that they are responsible for the conduct of their guests.

**The following general policies apply:**
5.2.a. No student under the legal drinking age of 21 is allowed to possess or consume alcoholic beverages on campus (see Section 5.3).

5.2.b. In compliance with the laws of the Commonwealth of Massachusetts, members of the University and its agents may not serve or provide alcoholic beverages to any student or other individual younger than the legal drinking age of 21 (see Section 1.8).

5.2.c. Alcoholic beverages may not be provided at any public event on University property at which there are underage individuals unless there is advance approval by University officials and reasonable precautions are taken to assure that alcohol is served only to those of legal drinking age. Individuals dispensing alcohol assume serious liability if alcohol is served to anyone who is not of legal drinking age, or anyone who is of age but is intoxicated. Alcohol should not be served at any time to individuals who are, or appear to be, intoxicated.

5.2.d. The sponsor of the public event is responsible for providing food and non-alcoholic beverages at any venue where alcohol is served. Sponsors should consult with the Jump Start Meeting (which includes representatives from the Department of Student Activities, Student Union, the Department of Public Safety, and Conference and Events Services) to plan any event at which alcohol will be served, to assure that the event complies with campus policies and the laws of the Commonwealth of Massachusetts. Sponsors of events bear full responsibility and liability for adherence to these policies. For information check with the Department of Student Activities website:
 www.brandeis.edu/studentaffairs/activities

5.2.e. In compliance with local laws, alcoholic beverages may not be sold or served at any function requiring an admission charge without a valid liquor license for that event (see Section 5.4 regarding purchase of alcohol on campus). The University's liquor license covers The Stein, The Faculty Club, Sherman Function Hall, Levin Ballroom, and Alumni Lounge, and events in these facilities may include alcohol if properly arranged through Conference and Events Services. In all other facilities, the sale of alcoholic beverages is prohibited without a temporary liquor license from the City of Waltham.

5.3. Alcohol in the Residence Halls: Brandeis students living in the residence halls share the responsibility for upholding community standards (see Section 10 for additional guidelines for the residence halls). The following policies regarding alcohol apply specifically to the residence halls:

5.3.a. No alcohol is permitted in private residence hall rooms nor in any public space in first-year or sophomore areas (including Usen Castle, East Quad, Massell Quad, North Quad, 567 South St., The Village's A-House, and Rosenthal Quad). In all other areas, use of alcoholic beverages must comply with the guidelines outlined in Section 5.2 above. Underage students should be aware that possession of empty alcohol containers may be considered alcohol possession. [For the Spring 2014 semester The Village will serve, in part, as housing for Mid-Year students, and the clusters of this residence hall where Mid-Years reside will be subject to the policy in this section.]

5.3.b. Alcoholic beverages may not be consumed in any public area (inside or outside of the residence halls) unless part of an authorized event in conformance with the University regulations regarding events at which alcohol is served or present.

5.3.c. Any student or group of students wishing to sponsor a party with alcohol in the residence halls must request permission for the event from the Community Development Coordinator responsible for that area by submitting a *Party Registration Form* (see the Department of Community Living web site) at least 2 business days before the event is to take place.  The sponsor of the event is responsible for providing food and nonalcoholic beverages at any event where alcohol is served.  Such gatherings may require additional approval from the Department of Public Safety.  Events/gatherings must end no later than 1:00 am on Saturday and Sunday mornings, and no later than 11:00 pm Sunday through Thursday.  Residents sponsoring events assume responsibility for the actions of their guests.  Approval of a gathering does not constitute permission to violate University policy.

5.3.d. Large volumes of alcoholic beverages, mass consumption vessels such as kegs, beer balls, and cases of liquor) are not permitted in residence halls.  Items used with the intention of excessive consumption are prohibited.  These items may include, but are not limited to, funnels and luges.

5.4. Age Verification for Purchase or Consumption of Alcohol on Campus: Beer and wine are available for sale to students of legal drinking age at some University events and at The Stein and The Faculty Club.  One of the following pieces of identification is required to accompany a current and valid Brandeis Identification Card for students and their guests: a valid, original driver's license; a valid passport; a valid, original Massachusetts Liquor Identification Card; or a valid Massachusetts State Identification Card.

5.5. Drugs, Drug Paraphernalia, and Other Substances: The use of illicit drugs or the abuse of legally-obtained drugs or substances can cause serious and permanent harm to one's health and ability to function, and to the community.  A student is expected and required to observe the prohibition of the manufacture, distribution, dispensation, possession, sale, or use of marijuana or its derivatives, or any other illegal narcotic, stimulant, depressant, or hallucinogen.  Possession or use of bongs, pipes, or other drug paraphernalia is prohibited.  Misuse of prescription drugs is also prohibited.

**Section 6. Care of University and Personal Property**
6.0. Maintaining and preserving University grounds, academic and administrative buildings, residence halls, dining facilities, and associated structures is an obligation of all members of the community.  Similarly, maintaining and preserving personal property is an obligation of all members of the community.

6.1. Display posters, banners, handbills, or notices only on spaces designated for that purpose.  Placement of posters, handbills, or notices, etcetera on trees, lawns, sidewalks, statues, motor vehicles, permanent University signage, emergency blue light phones, stairwells, windows, fire suppression equipment, or fire/exterior doors is prohibited.

6.1.a. Students are expected to use only appropriate posting materials that will not cause damage (see Section 10.8 and/or the Department of Student Activities for non-residential spaces).

6.1.b. Students who engage in chalking must observe the distinction between advertising events and vandalism.   Only sidewalks may be chalked.   This excludes patios and steps to a building.  Chalking on buildings and personal or University property (i.e., buildings, cars, bus shelters, signs, etcetera) is not permitted.  Chalking is not permitted in areas where it cannot be washed away by rainfall.  The Department of Student Activities reserves the right to authorize the removal of chalked messages if they are inappropriate or use profane illustrations or language or are not in a permitted area.

6.2. Respect, maintain and care for property belonging to others.  Vandalism, littering, theft, attempted theft, destruction of, damage to, unauthorized possession of, or in appropriate use of property (including intellectual property) belonging to the University, a member of the University community, or any other individual or entity is unacceptable. This section also applies to the grounds, and personal and public property that surrounds the campus.

6.3. Respect, maintain and care for library materials, or other academic materials or equipment.  Destruction, mutilation, defacement, or tampering with any of the above is unacceptable.

6.4. Observe University guidelines and policies regarding the access, occupancy, or use of University property, facilities, name, seal or logo (see Sections 10, 13, and 16). Storage closets, utility rooms, and roof areas of any University building may not be accessed by students without explicit permission.

6.5. Respect and preserve the plant and animal life found on the campus.  Mistreatment of animals, trees, or plantings is unacceptable.

6.6. Access University buildings and facilities during posted hours and in authorized areas only.

### Section 7. Equal Opportunity, Non-Discrimination, and Harassment

7.0. Non-Discrimination and Harassment Policy: Brandeis University is committed to providing its students, faculty and staff with an environment conducive to learning and working where all people are treated with respect and dignity.  Toward that end, it is essential that Brandeis be free from discrimination and harassment on the basis of race, color, ancestry, religious creed, gender identity and expression, national or ethnic origin, sex, sexual orientation, age, genetic information, disability, Vietnam Era Veteran, qualified special, disabled veteran or other eligible veteran status or any other category protected by law.  **Note:** Adjudication of any allegation related to this section will be pursuant to the Special Examiner's Process found in Section 22.6 and not the Student Conduct Process found in Section 19.

It is the University's responsibility to help prevent harassment and discrimination from occurring, to pursue concerns of which it is aware, to objectively investigate concerns, and to take immediate and appropriate action to remedy issues of harassment and discrimination.  Brandeis takes this responsibility seriously.  Therefore, violations of this policy will not be tolerated and may result in corrective actions up to and including dismissal from school or release from employment.

7.1. Understanding Harassment: Harassment whether sexual or based on an individual's protected class status (race, color, ancestry, religious creed, gender, national or ethnic origin, sex, sexual orientation, age, genetic information, disability, Vietnam Era Veteran, qualified special, disabled veteran or other eligible veteran status) is a form of discrimination and will not be tolerated.  It is regarded as harassment when the conduct has the purpose or effect of unreasonably interfering with a person's education or work performance by creating an intimidating, hostile or offensive environment in which to work, study or live; or otherwise adversely affects a person's employment or educational opportunities.  This may include but is not limited to, hiring, firing, salary increases, promotions, grades, recommendations, scholarly or teaching opportunities, participation in extracurricular activities and student organizations.  Harassment may occur between supervisor/supervisee, faculty/student, within peer groups, or with third parties.

7.2. Examples of Sexual Harassment: Depending on the circumstances, conduct which may constitute sexual harassment includes, but is not limited to:

•Unwelcome sexual conduct toward an individual, including offensive comments, touching or sexual propositions.

•Threats or insinuations that a person's employment, academic standing, grade, assignments, or other conditions of employment or academic life may be adversely affected by not submitting to sexual advances.

•Leering, making sexual gestures, touching, patting, pinching, rubbing, impeding or blocking movements, displaying of sexually suggestive objects, pictures, cartoons or posters, suggestive or obscene letters or e-mails, notes, invitations or gifts.

•Making or using derogatory comments, epithets, slurs or jokes with a sexual content.

•Persistent unsolicited and unwelcome invitations for dates, encounters, or pressure to engage in sexual activity of an implied or explicit nature.

•Persistent inappropriate and unwelcome questions asked about one's personal life.

•Comments to, or about, any individual or their appearance that is sexually graphic or would otherwise tend to be degrading.

•Displaying, sending, forwarding, downloading or otherwise distributing sexual materials via the Internet, computer, cellular data network, or e-mail.

•Consensual sexual relationships where such relationships lead to favoritism towards the student with whom the instructor is sexually involved, which adversely affects other students.

7.3. Examples of other Forms of Harassment/Discrimination: There are other forms of harassment/discrimination as well that create a hostile educational or work environment on the basis of race, color, ancestry, religious creed, national or ethnic origin, sex, sexual orientation, gender expression, age, genetic information, disability, Vietnam Era Veteran, qualified disabled veteran or other eligible veteran status or status in any group protected by federal or state law (together, 'protected class status'). Depending on the circumstances, the following are examples of behaviors that may constitute harassment/discrimination under this policy. This is not an exhaustive list:

•Jokes, comments or innuendoes that make fun of, denigrate, or are based on an individual's or group's protected class status.

•Epithets or slurs based on an individual's or group's protected class status.

•Objects, posters, cartoons, or pictures that make fun of, denigrate, or are based on an individual's or group's protected class status whether directed to an individual, placed on University premises or displayed or circulated on campus.

•Displaying, sending, forwarding, downloading or otherwise distributing materials via the Internet, cellular data network, computer, or e-mail that make fun of, denigrate, or are based on protected class status.
•Other verbal or physical conduct that denigrates or shows hostility or aversion toward an individual or group based on protected class status.

Determination of whether particular conduct violates this policy is made on a case-by-case basis, in light of all the known facts and circumstances. The University may take action on conduct that it deems to be inappropriate, regardless of whether it rises to the level of a violation of law.

7.4. Retaliation: Brandeis policy, as well as federal and state law, prohibits retaliation against any person who in good faith initiates a complaint of harassment or discrimination or cooperates in the investigation of a complaint of harassment or discrimination. Retaliation may result in corrective action up to and including dismissal from school or termination of employment (see Section 2.14).

7.5. False Claims: If it is determined that an individual falsified a claim of harassment or discrimination, it may result in corrective actions up to and including dismissal from school or release from employment.

7.6. Contact/Reporting Information, Concerning Staff or Faculty: Brandeis encourages the reporting of all perceived incidents of discrimination or harassment. Concerns about harassment or discrimination by a faculty or staff member (including visiting faculty, post-doctoral fellows, or graduate students acting in an instructional capacity) should be brought to the attention of Ms. Linda Shinomoto, the Director of Employee Relations and Title IX Coordinator in the Office of Human Resources at 781-736-4474. Concerns about third parties, such as vendors, should also be directed to this individual. This individual, or a designee, is available to provide guidance in managing the concern, for help with informal resolution, for filing a complaint, and for reviewing complaints that require more in-depth fact-finding. For guidance and/or to file a complaint against any undergraduate or graduate student, contact the Dean of Students Office at 781-736-3600.

### Section 8. Campus Protests and Demonstrations

8.0. The University community is one of inquiry and persuasion.  A member of the University community may protest, rally or demonstrate provided such protests or demonstrations do not disrupt University operations or obstruct physical movement to, from, or within any place on the campus, including University property located off the main campus.  While the campus must be open to the free exchange of ideas, the University may limit the time, place, and manner of demonstrations.  All members of the community are expected to conduct dialogues with dignity and courtesy.  Students must allow other community members freedom of movement on campus and the freedom to engage in the performance of their duties and the pursuit of their educational activities.

8.1. The Senior Student Affairs Officer or designee must, with as much notice as possible, be notified in advance of any planned demonstrations, and may instruct organizers regarding the guidelines for such activity.

8.2. A protest, rally, or demonstration must not interfere with the missions, processes, procedures or functions of the University (see Section 2.4).  Therefore, protesters must recognize and allow the staff and faculty of the University to engage in the performance of their duties, and for students to pursue their educational activities.  Impeding or restricting these activities by making noise, blocking entrances or exits from University facilities, or by coercion, intimidation or threats or use of violence is unacceptable (see Section 2.1).

8.3. An activity that is neither disruptive nor obstructive is permitted in public areas of campus buildings only during the hours when the buildings are normally open.  An activity that is neither disruptive nor obstructive is permitted in outdoor areas of the campus.  Placement on University property of structures or displays requires permission of the Senior Student Affairs Officer or designee.

8.4. The number of persons who may be safely accommodated in any area where demonstrations occur shall be determined by the Waltham Deputy Chief for Fire Prevention.  Occupancy information is available from the Department of Public Safety and the Department of Conference and Events Services.

8.5. Students are expected and required to vacate an area or facility of the University when directed to do so by an authorized official of the University (see Section 2.2).

**Section 9. Fire and Life Safety**

9.0. The safety of all community members and guests is of the highest concern at Brandeis. University facilities are designed and equipped with mechanisms, apparatuses, and features intended to suppress smoke and fire. These physical safeguards must be respected and protected to insure their proper function. Students and their guests are expected to be aware of, and immediately report, behavior that could increase the risk of danger to life safety.

9.1. Refrain from behavior that leads to the intentional or unintentional combustion of personal, communal, or University property.

9.2. Fire Alarms: Students are expected to vacate a building during a fire alarm, whether during a drill or in an emergency. When an alarm sounds, all individuals must vacate the building (see Section 2.6). Students may not return until instructed to do so by a University official. Periodic, unannounced fire drills will be conducted in the residence halls during the academic year.

9.3. Cooking Equipment: With the exception of microwave ovens, cooking equipment of any kind is not allowed in individual student rooms or lounges. This includes hot plates, toaster ovens, indoor grills, hot pots, immersion heaters, or any item with open coils.

9.4. Open or Enclosed Flames: Open or enclosed flames, including the burning of incense, are prohibited in the residence halls. Students wishing to light candles for religious reasons must register their intention with the Department of Community Living. Religious candles must be handled according to the document, *Safety Procedures for Lighting Religious Candles*, available through the Department of Community Living. Decorative and/or scented candles are permitted if the wicks are removed.

9.5. Tampering with fire or safety equipment including the covering or removal of smoke detectors creates a significant threat to everyone in the building and is strictly prohibited, as is hanging items from sprinkler pipes and heads. Students found responsible for covering, removing, or tampering with smoke detectors may be assessed a fine of up to $150.00 per involved student per occurrence in addition to Residence Probation or other actions, including the temporary or permanent removal from University-owned housing. A parent or guardian of a student who repeats the offense will be contacted. The student's account will be assessed $150.00 for each additional infraction.

**Section 10. Living in the Residence Halls**

10.0. The Department of Community Living strives to create a comfortable and educational living community for all students. Each student is expected to behave in a manner that respects and considers the rights of others in the University community. The exercise of one person's rights must not infringe upon the exercise of another's rights in the ordinary course of daily living. Policies and procedures relating to residence halls are contained in previous sections of this publication, the Residence Halls and Meal Plan License, and in other publications issued by the University. These policies and procedures carry the force of University regulations (see Section 2.13). All students are expected to comply with these policies and procedures as well as those listed below. Students are reminded that multiple-occupancy rooms, as well as shared apartments and suites, create shared responsibility for residential behaviors. The Department of Community Living values regular and close interaction with residents to maximize communication about circumstances that could affect the quality of life in the residence halls.

10.1. Room Vacancies and Room Transfers: Any changes to a student's room assignment must be processed through the Department of Community Living. *Change of Housing Requests* are available on the Department of Community Living website: www.brandeis.edu/studentaffairs/dcl

Room transfers/changes are not performed during the first two weeks of classes. The Department of Community Living may assign a new occupant to any vacancy as required. Any conduct, including deception or harassment, designed to dissuade potential residents or roommates, is unacceptable. See the Department of Community Living or a Community Development Coordinator for information on these policies.

10.2. Involuntary Reassignment of Housing: The Department of Community Living reserves the right to reassign students to other locations or remove them outright from University housing. The decision to reassign or remove a student shall be made by a Director in Community Living after consultation with the Senior Student Affairs Officer or designee. If a student is reassigned or removed outright pursuant to a pending referral to the Department of Student Rights and Community Standards, the procedures outlined in Section 19.1 shall begin within 10 class days after the reassignment/removal (see Section 22).

10.3. Key, Lock, and Door Security: Keys for all residence halls, suite doors and individual room doors are distributed by the Community Living staff. Any lost key must be reported to the Department of Community Living immediately. If the key is not located within 24 hours, the Department of Community Living may change the lock and bill the responsible student for the cost of the lock change. Additional charges may apply for suite door and entrance door keys. Failure to return keys when vacating an assignment will result in a lock change and the appropriate charge(s) to the student. For the safety of all residents, keys to the residence halls may not be duplicated or distributed to others. Locks must not be tampered with in any way or students may be subject to financial charges and other sanctions. For safety and security reasons, entrance doors to the residence halls, and fire doors must not be 'propped' or left open.

10.4. Lockouts: Students are expected to carry their room keys with them at all times.  If a student is locked out of their room, the student may go to the Department of Community Living in Usdan between the hours of 9:00 am and 5:00 pm Monday through Friday, and temporarily check out a loaner key after presenting proper identification (see Section 1.5).  On holidays, weekends, and after 5:00 pm on weekdays, the Department of Public Safety in Stoneman will unlock student rooms upon presentation of proper identification.  Facilities personnel are instructed not to open locked doors for students.  Multiple lockouts may result in financial penalties.

10.5. Right of Entry: The University reserves the right to inspect rooms and perform maintenance at reasonable times, and to enter rooms at any time in case of emergency, in response to a complaint of disturbance, or when there is reason to believe that a violation of University policy is occurring within the room (see Sections 17.2 and 17.3).  Residents are not permitted to change or add private locks or security devices to their rooms or to any part of the building.  University personnel may enter a room after knocking and identifying themselves.

10.6. Room and Common Area Accountability: The assigned residents of a given residence hall will be held accountable for any inappropriate behavior or damages that occur within the hall.  Each student is responsible for any damages caused by the student and/or the student's guests.  When damage can be attributed to the responsible person(s), the cost of repair or replacement is billed to the individual(s) involved (see Section 10.0).

When damage occurs in a student's room, corridor, or apartment but cannot be attributed to a specific party, the costs may be billed in equal parts to all residents of that area. Each student is responsible for completing and returning to the appropriate Community Development Coordinator their *Room Condition Reports* at the beginning of the year (or when occupying a new assignment).  To avoid billing upon termination of the Residence Halls and Meal Plan License, all rooms and corridors must be left clean, neat, and in order.  For student safety, the main entrance of residence halls remains locked at all times. Propping or tampering with residence halls doors is prohibited.  Students must refrain from utilizing any window as a point of entrance or exit except in case of fire or danger to one's life.

10.7. Room and Furniture Alterations: All University-supplied furnishings must remain in students' rooms, suites, and apartments unless their relocation is approved by the Department of Community Living.  Furniture must meet all fire codes before being allowed into the residence halls.  Any student seeking reasonable physical alterations to their room or furniture must request permission from the Department of Community Living.  Community Living may consult with the Health Center, Disabilities Services and Support, and the Department of Facilities Management before permission is granted.

10.8. Postings: If a student or campus organization wishes to distribute fliers, posters, etc. in the residence halls, the materials must be delivered to the Department of Community Living for distribution by staff (see Section 6.1).  Students may not post on behalf of non-Brandeis advertisers.  Students are advised that off-campus individuals and entities seeking to advertise to the Brandeis community must have sponsorship by a University department.

10.9. Storage: The University does not provide additional storage outside of a student's residence hall room (with the exception of limited storage for international students).  See Department of Community Living staff and/or your Community Development Coordinator for information on these policies.

10.10. Visitors and Guests: Visitors and guests are permitted in the residence halls, provided that consideration is given to the rights of all licensees.  Should a roommate, suite-mate, or apartment-mate have any objection to any guest's proposed visit to the multiple-occupancy assignment, those objections must first be mediated before the guest may be welcomed.  Any student whose guest remains within the residence hall for more than three consecutive days must notify the Community Development Coordinator responsible for that area.  Permission to host guests may be curtailed during sensitive community periods such as Orientation and exams.  Public spaces are reserved for use by all residents, and therefore may not be used to accommodate overnight guests.  Residents assume responsibility for the actions of their guests.

10.11. Noise: Quiet Hours are established for all residence halls.   During the school week (Sunday night through Friday morning), Quiet Hours begin at 11:00 pm and conclude at 8:00 am.  On weekends, Quiet Hours are as follows: 1:00 am Saturday through 10:00 am Saturday, and 1:00 am Sunday through 10:00 am on Sunday.  During these times a student should be able to study, read, relax, or sleep in their room without being disturbed by noise by other residents, guests, or members of the community.  At all other times, residents are expected to be respectful of others with regard to noise.  Quiet Hours remain in effect during all times of year, regardless of holidays, vacations, or recesses.  A professional Students and Enrollment staff member may extend Quiet Hours for an approved purpose or during reading periods and final exam periods.

10.12. Solicitation in the Halls: Because residence halls are living communities, students living on campus should be free from the pressures of door-to-door solicitations, sales, or distribution by any member of the community or by any other individual or on behalf of any business or organization.  All salespersons or solicitors must have explicit permission from the Department of Community Living or another Students and Enrollment department.  Students may not use their rooms for the purpose of operating a business (see Section 15).

10.13. Video Cassettes, DVDs, Digital Mass Storage Devices, and other Media: In compliance with copyright laws, video cassettes, DVDs and other media intended for private use may be shown in public areas within the residence halls only if no admission is charged, the event is not widely advertised, and no University funds (including student fees) are used to rent or purchase films.

10.14. Pets: For the health and safety of all residents, fish are the only pets permitted in the residence halls.  Fish tanks may have a maximum capacity of ten gallons of water (see Section 2.11 regarding exceptions for guide and service animals).

10.15. Safety Restrictions: Students must comply with safety and security guidelines. Some personal items and actions may be considered unsafe and may be restricted or prohibited.  To protect the safety of all residents, the following list will apply to all persons residing in or visiting residence halls:

10.15.a. No halogen bulb is permitted, including desk lamps or torchière-style floor lamps that use halogen bulbs.  String lights may only be used if the bulbs are LEDs (light emitting diodes).  String lights may not be strung on or above doorways or windows or on any ceiling.  In the event of a fire, these can pose an obstacle to egress.

10.15.b. Avoid overloading electrical outlets, including excessive use of extension cords (use UL-listed, multiple outlet power strips instead).

10.15.c. Tampering with electrical or lighting fixtures is prohibited.

10.15.d. Do not place furniture closer than 12 inches to electrical heating units in the Foster Mods or the Charles River Apartments.  This type of heating appliance can reach higher surface temperatures than steam heaters in other halls.

10.15.e. Storing or using flammable gases or fluids in any residence hall is prohibited.  This includes lighter fluid for grills, propane or butane for cooking, and jellied fuels for chafing vessels.  It does not include personal-sized cigarette lighters.

10.15.f. The hanging or attaching of any flammable item or postings or decorations (including string lights) from a ceiling, irrespective of their proximity or obstruction of electrical or fire/life safety protection devices is prohibited.

10.15.g. The propping or elevation of furniture using cinder blocks or other unapproved methods is prohibited.

10.15.h. The installation of any air conditioner without medical authorization and approval from the Department of Community Living and Disabilities Services is prohibited.

10.15.i. Standard size refrigerators (taller than counter height, or more than 35 inches tall) are not permitted unless installed by the University.

10.15.j. Waterbeds are not permitted.

10.15.k. It is prohibited to install any outside antennae or other exterior materials.

10.15.l. It is prohibited to throw or drop items from windows, stairwells, ledges, etc.

10.15.m. It is prohibited to violate any fire safety policies (see Sections 2.6 and 9).

10.15.n. Hall 'sports' of any kind are not permitted.  Activity in the residence halls and rooms involving athletic equipment such as balls, Frisbees, etc. may damage fire safety equipment, walls, ceilings, or other University or personal property.

10.15.o. It is prohibited to access or to attempt to access any interior or exterior portion of a residence hall not intended for student use, including: utility closets and rooms, custodial closets and rooms, roofs, fire escapes, maintenance hatches, or other spaces that are posted with restrictions (see Sections 6.4 and 6.6).

10.15.p. Any postings or decorations in the interior of a residence hall must comply with safety and security policies as determined by the Department of Community Living or other departments charged with maintaining such policies.

10.15.q. Natural (cut or rooted) evergreen trees, wreaths, or boughs are prohibited in common spaces or bedrooms due to their flammability.

## Section 11. Library and Technology Services

11.0. Technology use policies apply to all University computer resources and information systems, to all University library resources, and to all telecommunication resources at Brandeis.

The library and technology resources managed by LTS are intended to support learning, teaching, and scholarship.  It is the responsibility of all community members to be informed about the policies and procedures that govern use of these services.

Policies governing use of information technology at Brandeis can be found at:
http://lts.brandeis.edu/about/policies/

In addition, a description of all LTS services and resources is available at:
http://lts.brandeis.edu

11.1. Authorized Use: Students must not use passwords, passphrases, Identification Cards, or accounts, other than their own.  Students may not release another community member's personal information.  Students are also expected to refrain from gaining access to restricted resources or restricted portions of systems to which they have not been given access.

11.2. Appropriate Use: The University may establish 'reasonable use' policies that recognize that resources are finite and therefore subject to regulation or limitation (i.e. bandwidth).  Students agree to follow established procedures for using and protecting library and technology resources, including managing passwords and passphrases; and maintaining the physical and electronic integrity of networks, systems, software, equipment, and accounts.  In particular, students must not send unsolicited bulk communications spam), use disproportionate amounts of network resources, conduct unauthorized network scans or probes, capture or intercept other users' private communications, or introduce malicious programs into the system (see Sections 2.1.e and 2.5).

11.3. Electronic Access and Privacy: Students must respect the privacy of all members of the academic community.  Students should understand that their computer files, telephone records, etc. may be subject to access by employees of the University for a number of legitimate reasons: to assist state or federal authorities in an investigation; to access data in files of personnel for whom they are responsible; to maintain a system or website, etc. (see Sections 2.1.e, 2.5, and 17.1).

11.4. Civility: When using computing or telephone resources, students must not hide their identities for malicious purposes, or assume the identity of another.  Students must not harass (cyber-bully) others using computer or telephone resources to make unwelcome contact (see Section 2.1).  Material that is explicitly sexual or offensive may not be displayed, consistent with the Brandeis University Policy Statement on Non-Discrimination and Harassment (see Section 7).

11.5. Copyright: Library and Technology Services copyright policies are designed to respect the rights of copyright holders while providing for the fair use of materials by Brandeis students.  For information about copyright policies, see the web page *Copyright Policies* located at: http://lts.brandeis.edu/research/helpcopyright/resources.html

Students are expected to comply with all local, state, and federal laws, including laws on copyright and other intellectual property laws.  Use of some electronic resources is governed by license agreements restricting their access to the Brandeis community.  It is the responsibility of all community members to ensure that they employ these resources only for individual, educational, and noncommercial purposes.

## Section 12. Campus Dining Services

12.1. General Guidelines: Students are expected to comply with requests of University staff and present a proper Identification Card when obtaining meals in the dining halls (see Section 1.6).  To maintain health standards required by law, dogs and other animals other than guide and service animals are not allowed into the dining halls, and no one may enter a dining area with bare feet or bare chest.  All reusable food service utensils and equipment are for use in dining areas only, and may not be removed for personal use (see Sections 2.1, 2.2, and 2.11).  The Department of Dining Services is in the Usdan Student Center, further information is available online at: http://brandeis.sodexomyway.net/

## Section 13. Use of Campus Facilities

13.0. University facilities are available for activities consistent with the University's educational, social, and cultural goals.  The University does not impose prior restraints upon the subject matter or point of view expressed by any person or group using its facilities.  Its facilities, however, may not be used for activities contrary to federal, state, or local laws, activities conflicting with University regulations and policies, or activities that may create an undue risk or harm to persons and/or property.  The University requires reasonable advance notice for the use of facilities and reserves the right to determine the time, place, and manner for any event.

13.1. The priority of activities to be carried out in any facility is influenced by the relevance of the request to the University's goals, the timing of the request, and the kinds of functions for which the facility is used.

13.2. The University requires 10-days' advance notice for the reservation of space unless waived by the Department of Conference and Event Services.  The University reserves the right to withhold its approval of any requested use of a facility, to establish financial charges for any use, and to require a security deposit or impose other such requirements including, but not limited to, security personnel and equipment.  Such charges and policies will be made based upon a review of the event plans by the Department of Conference and Event Services.

13.3. The requirements for safety and security at the event will be based upon a timely review by the Director of Public Safety. Requirements may be appealed to the Senior Vice President for Administration, who will make the final decision. This review will be based upon such factors as the possibility of criminal acts, the risk of harm to persons or property, and crowd control.

13.4. Programs held on campus and open to the campus community must end by 2:00 am unless the venue for the program (e.g. a residence hall) has a prior condition requiring an earlier ending time. Exceptions to this standard limit for specific purposes may be made by the Department of Student Activities after consultation with the Department of Public Safety.

13.5. The person or group requesting the facility is responsible for harm to persons or property resulting from the use of the facility, indemnifying the University from any and all liability for injury to any person attending an event in a University facility, or for any damage or loss of personal property occurring on the University campus resulting from the use of the facility. The University reserves the right to charge the sponsor or host for the costs of providing any extraordinary services.

13.6. Facilities must be used for the purposes stated in the request application. The person signing the *Conference and Event Services Reservation Form* will be held responsible for all matters related to the activity. The person or organization requesting the facilities or services shall be responsible for all expenses associated with the event. Sponsors must be able to prove that adequate financial resources are available to meet all anticipated costs, including any non-Brandeis contractual obligations associated with the event.

13.7. Any event involving an off-campus speaker or speakers must indicate the name of the speaker(s) on the reservation form when submitted. Any change in the speaker requires notification and a re-filing of the form. The person or the organization requesting the facilities will be held responsible for the actions of the non-Brandeis speaker or guest. In addition, the host is responsible for the direct cost related to providing safety or security requirements.

13.8. In accordance with the above, University facilities may be reserved by a member of the faculty, a member of the administrative staff, an authorized officer of an undergraduate or graduate student organization recognized by the appropriate student governing authority, any other person or group who, in accordance with these regulations, receives permission from the Department of Student Activities. Off-campus groups seeking space for programming directed toward members of the University community must receive approval from a relevant University department.

13.9. Approval of a requested use of a facility does not relieve the applicant from satisfying such additional requirements set forth in other sections of these regulations.

13.10. The University supports all federal, state and local laws related to illegal gambling, betting, and bookmaking. Any activities in which gambling may be present must receive approval from the Department of Student Activities prior to the event.

**Section 14. Parking and Traffic**

14.0. The parking and traffic regulations of the University are available at the Department of Public Safety, which also issues campus parking permits.  These regulations apply to any person operating a motor vehicle, and carry the force of University regulations (see Section 2.13).

14.1. The improper or reckless operation of a motor vehicle poses a major threat to safety and carries with it the possibility of legal action and/or campus disciplinary proceedings (including the possible loss of driving/parking privileges).

14.2. Operate a bicycle, motorcycle, automobile or any other manual or powered vehicle safely, only on established, authorized roadways and parking areas.

14.3. The Department of Public Safety authorizes a Parking Committee to hear appeals of parking and traffic violations.  The Student Conduct Process may adjudicate cases involving the behavior of students involved in traffic incidents but does not hear appeals of the actual traffic violations.

14.4. Any student seeking to operate a University-owned motor vehicle must first be certified by the Department of Public Safety.

**Section 15. Commercial Enterprises**

15.1. Brandeis University seeks to empower students who undertake entrepreneurial endeavors with realistic support.  Permission is required for personal income-generating activity that uses University property, including (but not limited to) student and campus centers, lobbies, cafeterias, residence hall rooms, campus phone and data lines, Internet servers, and student mailboxes.  Use of the Brandeis name in connection with such activity also requires authorization.

15.2. Any student selling a product, providing a service for a fee, or representing a for-profit entity shall be considered to be involved in a commercial enterprise, and is therefore required to follow the same procedures as outside companies wishing to access Brandeis services and facilities.  All plans for personal income-producing activity on the part of individual or groups of students and involving University property must be approved by the Department of Student Activities (see Section 6.4).

**Section 16. Conduct Affecting the Name and Tax-Exempt Status of the University**

16.1. A member of the Brandeis community shall not speak or act in the name of the University in a political campaign on behalf of a candidate for public office.  Any person speaking for the University in an official capacity should make it clear when expressing an individual opinion that she/he is not stating a University position.

16.2. The name or seal of Brandeis University shall not be used for political purposes on any letters or other written material, or electronic media.

16.3. In political activity, the University title of a member of the faculty, staff, or student body may be used only for identification, and should be accompanied by a statement that the person is speaking individually, and not as a representative of the University.

16.4. Unauthorized use of University facilities, equipment, or supplies for commercial, political or other non-University related purposes is strictly prohibited (see Section 13).

16.5. Unauthorized use of the University tax-exempt numbers or postal permit is prohibited.

16.6. Guidelines Concerning Use of University Facilities, Name, Seal, or Logo: On March 13, 1947, the Secretary of State of the Commonwealth of Massachusetts officially recognized and gave legal validity to the action of the Board of Trustees of Middlesex University in voting to change the name of that institution from the Trustees of Middlesex University to Brandeis University.  Student organizations recognized by the Student Union Senate or Graduate Student Association (or otherwise recognized by the Division of Students and Enrollment) may use the name of the University, its seal, or logo for purposes of identifying the organization.

16.7. Student organizations recognized by the Student Union Senate or Graduate Student Association (or otherwise recognized by the Division of Students and Enrollment) may use University facilities for meetings, programs, events, or other activities subject to the standards and policies published elsewhere in this code.

**Section 17. Protection of Privacy**
17.1. The privacy of every individual in person and in their room and/or office must be respected.  Malicious or unauthorized entry into rooms, offices, personal files, electronic files (see Sections 2.1.e, 11.3, and 17.4), drawers, or locked spaces, such as lockers, etc., is prohibited.

17.2. Except in circumstances as outlined in Section 10.5, authorized entry for the purpose of searching a student maintained room or space requires advance permission from the Senior Student Affairs Officer or designee.  Each statement of permission to enter shall clearly set forth the purpose and objectives of the search, and shall specify the office(s), room(s), or spaces(s) to be entered.  The search shall be limited to the purpose, objective, and location set forth in the statement of permission.  The University official making the search shall show the statement of permission to the occupant at the time of entry or, in the occupant's absence, shall leave a copy of the statement in the room(s), office(s), or space(s) entered.  Immediately upon conclusion of the search, the official shall prepare and give to or leave for the occupant(s) a receipt for any property seized.

17.3. Student residence hall rooms are inspected by members of the Community Living staff periodically during the academic year to evaluate the safety, security, and health conditions of the rooms and to check for illegal possession of University-owned property. These inspections will be conducted by floor, by section of building, or by building.  Public notification of such inspections will be provided 24 hours in advance and will specify the date and time of the inspection for a given area.  A student's presence in their room is not required for the inspection to take place (see Section 10.5).

17.4. Student Records: The Federal Family Educational Rights and Privacy Act of 1974 (FERPA) gives each enrolled student at Brandeis certain rights, including access to the student's educational records, the right to request amendment of those records where the student believes a record is inaccurate or misleading, and the right to add a statement presenting the student's view if the records are not amended. A detailed statement of the rights and responsibilities of a student under the Act, the location of all records pertaining to a student, and the procedures for requesting access are contained in the Brandeis University Records Policy. The policy is available from the University Registrar and at: www.brandeis.edu/registrar/bulletin/EducRecordsPolicy.html

# Student Conduct Process
## Section 18. Initial Procedures and the Mediated Resolution Option
18.0. Disciplinary action against a student (any person enrolled in any academic program or course at Brandeis University, up to and including the student's commencement day) may be implemented only through the report of a violation to the Department of Student Rights and Community Standards (DSRCS). Where infractions of University standards and policies are involved, written reports of violations or complaints shall be submitted to the DSRCS from the Accuser in a timely manner. The *Community Standards Report (CSR)* is the official reporting mechanism for all allegations of a Brandeis student's possible violation of a standard found in the student code, *Rights and Responsibilities.* The *CSR* will be shown, in its entirety, to the Accused. This report is a web-based form located at: http://www.brandeis.edu/studentaffairs/srcs/reporting.html

In all cases the available facts shall be gathered from the Accuser (the complainant or the reporting agency), and a careful evaluation of these facts, as well as the credibility of the person reporting them, shall be made. If at this point in the judgment of the administrator in the DSRCS, there is insufficient evidence of a violation, or the case lacks merit, or it was not reported in a timely fashion, a decision not to refer the matter to the Conduct Process may be made. The Senior Student Affairs Officer or designee may appoint, as needed, *ad hoc* conduct boards in addition to the boards described in Section 20.

18.1. Mediated Resolution Option
The Director of the DSRCS, at their discretion, may approve the offer by an Accuser to request participation of the Accused in a mediated resolution that will be facilitated by the Director of the DSRCS or by a designee. A mediated resolution process is one in which the Accuser and the Accused agree to discuss the allegation in question with the assistance of the Director of the DSRCS or a designee. The purpose of a mediated resolution process is to apply an informal, non-adversarial approach to an outcome or compromise that will be agreed-upon, recorded, final, and binding. The parties decide how to engage the conflict through shared, in-person conversation, and the parties decide together how the conflict will be resolved. The Director or designee serves to explain community standards, to ask clarifying questions, and to maintain an orderly, respectful atmosphere. The Director must also approve all proposed resolutions.

Subject matter that is sometimes well served by a mediated resolution option includes, though is not limited to: roommate disputes, allegations of theft of personal or intellectual property, certain academic conflicts, and minor offenses of community standards.

18.2. Participating parties have discretion to propose restitution and reconciliation outcomes subject to the approval of the Director. Such outcomes will be evaluated by the Director for their relevance to the conflict, educational benefit, constructiveness, and respect of parameters found in Section 21 of *Rights and Responsibilities.* In the event of an impasse or other impediment to arriving at a mutually acceptable outcome the Director shall declare an endpoint to the mediated resolution process and redirect the matter to the process outlined in Section 19. Failure to adhere to the expectations of the written mediated resolution outcome may expose the offending party to further mediation or referral to the conduct process (see Section 2.3).

18.3. A record of the outcome or impasse will be produced and will be subject to the retention provisions in Section 19.5.

**Section 19. Procedural Standards in the Student Conduct Process**

19.1. In cases where the Department of Student Rights and Community Standards decides that there is evidence of a violation that warrants referral to the Conduct Process the Accused will be contacted to schedule the Preliminary Meeting with the appropriate administrator (Communication regarding conduct procedures and meetings will be through the student's Brandeis e-mail account (see Section 1.9).  Failure to respond to a request for a Preliminary Meeting within 4 business days constitutes an acceptance of responsibility for the charge(s).  In such cases, the DSRCS administrator may proceed to sanctioning in accordance with Section 19.3, or refer the matter to the SCB for sanctioning.  In the event of extenuating circumstances, the DSRCS administrator may grant additional time for the choice.  **Note:** If at the time of notification about a referral the Accused is withdrawn or not available in-person, the Student Conduct Process may be deferred until the Accused returns, re-enrolls, or voluntarily waives their right to this deferral.)

This meeting will serve to inform the student of the details of the charges and educate the Accused about the Conduct Process.  The Accused will have the opportunity to ask questions and make statements.  After the Preliminary Meeting the Accused will receive written charges.  (If the Accused fails to schedule or attend a Preliminary Meeting in a timely fashion, the written charges will be sent in the absence of a Preliminary Meeting).

The Accused will have multiple options from which to determine their path through the Student Conduct Process.  The *Choice of Action Form* explains the options available to the Accused.  An excerpt from the form follows:

> **Denial of Responsibility**
> Choice 1. I deny responsibility for the alleged violation(s) stated above.  I request that the charge(s) for which I have denied responsibility be adjudicated via a FULL HEARING before the Student Conduct Board, pursuant to Section 19 of *Rights and Responsibilities*.
>
> OR (not both)
>
> Choice 2. I deny responsibility for the alleged violation(s) stated above.  I request that the charge(s) for which I have denied responsibility be adjudicated via an ADMINISTRATIVE ACTION made by an individual DSRCS administrator, pursuant to Section 19 of *Rights and Responsibilities*.
>
> **Acceptance of Responsibility**
> Choice 3. I accept responsibility for the alleged violation(s) stated above.  I request that the charge(s) for which I have accepted responsibility be adjudicated via a SANCTION HEARING before the Student Conduct Board, pursuant to Section 19 of *Rights and Responsibilities*.
>
> OR (not both)
>
> Choice 4. I accept responsibility for the alleged violation(s) stated above.  I request that the charge(s) for which I have accepted responsibility be adjudicated via an ADMINISTRATIVE ACTION made by an individual DSRCS administrator, pursuant to Section 19 of *Rights and Responsibilities*.

**Mediated Resolution Option** (Neither an Immediate Denial nor Acceptance of Responsibility)

Choice 5. The Accuser has offered the Mediated Resolution Option as a means of adjudicating the charge(s), and the Director of the DSRCS approves the offer. I also accept the offer to participate in the Mediated Resolution Option as an alternative to the other choices above. I understand that I will be expected to accept or deny responsibility for the charges as part of this option, once underway. Should the Mediated Resolution Option reach an impasse, I understand that I will be asked to reconsider the other options (1-4).

The Accused must choose appropriate options, via the *Choice of Action Form*, (for all written charges) within 2 business days of delivery of the written charge(s) to the Accused, the Accused's Brandeis e-mail account, or the Accused's home address. Prior to making this choice, the Accused shall be advised of the name of the administrator who would recommend the appropriate sanction. An Accused's failure to choose one of the options within 2 business days constitutes an acceptance of responsibility for the charge(s). In such cases, the DSRCS administrator may proceed to sanctioning in accordance with Section 19.3, or refer the matter to the SCB for sanctioning. In the event of extenuating circumstances, the DSRCS administrator may grant additional time for the choice.

19.2. Administrative Action: Within 30 class days (final exams and Senior Week constitute class days) from the date the Accused chooses Administrative Action, the Accused shall meet with the DSRCS administrator or designee to discuss the full circumstances of the charge(s); under the Administrative Action option, this is the only opportunity to present evidence. This meeting may be in addition to, or waived in the event of, the Preliminary Meeting between the Accused and a DSRCS administrator. Summer instruction does not constitute class days unless the student is enrolled in Brandeis Summer School. The DSRCS shall notify the Accused in writing of the decision, confirming the action taken and the reasons for the decision.

19.3. If the Accused fails to attend a scheduled meeting with a DSRCS administrator after having chosen Administrative Action, the administrator may complete the process in the Accused's absence and send notification in writing of the decision. The Accused shall have the right to one rescheduled meeting if the Accused fails to attend the originally scheduled meeting through no fault of their own as determined by the administrator in the DSRCS.

19.4. Deferral of Proceedings: The staff of the DSRCS may defer (place on hold) conduct action at any stage of the process for a period not to exceed 90 class days if the Accused is unable to participate due to their withdrawal, leave of absence, documented illness or incapacity, or if agreed upon by consent of the Accuser, and/or the DSRCS administrator, and the Accused. Pending charges may be discontinued thereafter dependent upon the conduct of the Accused.

19.5. A record of the Administrative Action, comprised of a summary of the evidence presented and decision rendered, shall be made by the administrator.  Such records are confidential and shall be retained by the Director of Student Rights and Community Standards for seven years from the date on which this record was written, after which it will be destroyed, unless the student is involved in further conduct action.  When there are multiple incidents and associated conduct records, all records will be maintained for seven years from the date on which the most recent incident is closed by the Student Conduct Process, after which the records will be destroyed (except in extraordinary cases as defined by the Senior Student Affairs Officer or designee).  Access to such records is governed by the *University Records Policy* (see Sections 17.4 and 19.6.j).

19.6. Procedures for Hearings before the Student Conduct Board (SCB): A hearing shall be held within 30 class days, or as soon as practicable, from the date the Accused chooses the Board hearing.  Summer (the period between the last day of final exams for the spring semester and the first day of class in the fall semester) does not constitute class days unless the Accused is enrolled in Brandeis Summer School.  Study Abroad (including domestic exchange programs) periods do not constitute class days.  All hearings will be closed.  Notice of the hearing date shall be delivered to the Accused in person, or to the Accused's Brandeis e-mail account, or the Accused's home address at least 48 hours in advance of the hearing.

> 19.6.a. The Hearing Administrator: An administrator from the DSRCS or another Students and Enrollment professional shall serve as the Hearing Administrator.  The non-voting role of the Hearing Administrator is to ensure the appropriate execution of the hearing as prescribed in Section 19.10.  Responsibilities of the Hearing Administrator also include: (a) advising the Board regarding the requirements and provisions of the Student Conduct Process; (b) providing information relevant to procedures or sanctions; (c) providing continuity in Board operations and procedures; (d) facilitating the implementation of conduct procedures at all levels of the Conduct Process; (e) acting as a liaison between Boards and the University community; and (f) assisting the Board in fulfilling its educational responsibilities.  The Hearing Administrator shall be available prior to the hearing at the request of the Accused to provide information regarding the alleged violation and procedural matters.  To provide adequate notice to all parties, names of any Advisors and/or witnesses will be submitted by the Accuser and the Accused to the DSRCS administrator at least 24 hours prior to the hearing.  The Hearing Administrator may share the names of witnesses and Advisors with the Accused and Accuser prior to the hearing.

> 19.6.b. The Accused, Accuser, and their Advisors are prohibited from confronting or questioning the witnesses and the other party(ies) regarding the case prior to the hearing.  Additional/unlisted witnesses may be considered at the discretion of the Chairperson of the Board.

19.6.c. Board members may be informed of the student's name and charges prior to the hearing to avoid conflict-of-interest.  Any Board member may disqualify themselves and either party to the case may request to disqualify a prospective voter if they can satisfy the remaining members of the Board that there is sufficient cause for disqualification.  An alternate member may take the place of the disqualified member, or the Accused and Accuser may agree to proceed without the prescribed minimum voting composition of the Board.

19.6.d. Advisors: The Accused and the Accuser in a hearing may each bring an Advisor of their choice from the University community to provide passive assistance during the hearing.   With the permission of the DSRCS administrator, Advisors may be present for conduct meetings prior to, and after, the hearing.  In exceptional circumstances, the Hearing Administrator may allow active participation by an Advisor during a hearing.   The lack of availability of any particular Advisor will not be considered a legitimate reason to reschedule the hearing (see Section 19.6.k).  To avoid even the appearance of undue influence, DSRCS staff that advise the boards, members of the SCB, and members of the University Appeals Board are not eligible to serve as an Advisor for the Accused or Accuser.  An Advisor may not serve as a witness.

Neither party shall be permitted to employ professional legal counsel or other persons from outside the University community to present the case before the Board or to advise the student during the hearing.  However, passive assistance of legal counsel may be allowed when coexisting criminal charges are pending resulting from the same incident (see DSRCS staff for details).

19.6.e. The Accused and the Accuser must be present at the hearing (except as provided in Section 19.6.k.  The Accused may present evidence and introduce witnesses during the hearing, with the passive assistance of the student's Advisor. Witnesses are those who were present for the incident in question, and/or have information directly related to the incident in question.  It is the responsibility of the Accuser and the Accused to notify their witnesses and Advisor regarding the time, date, and location of the hearing.  Witnesses must be available when called by the Chairperson or their testimony may be disallowed.   Any expenses incurred by a witness to participate will be the responsibility of the witness.

19.6.f. All persons giving evidence or testimony are obligated to be truthful.  The Board shall rule on the admissibility of evidence and any witness testimony. Unduly repetitious or irrelevant evidence or witness testimony may be excluded. Rules of procedure and evidence applicable to civil or criminal cases in court do not apply.

19.6.g. The Accused and the Accuser shall have the right to view and question all evidence and reports presented to the Board during the hearing.   The Accused and the Accuser shall have the right to question all witnesses appearing before the Board and only at the hearing.

Written testimony from absentee witnesses may be received by the Board. Proof of authorship but not content of such testimony must be made by certification of a notary public. Inaccessibility of a notary public must be brought to the attention of the DSRSC Director prior to the hearing. Written testimony sent from the author's Brandeis UNET account will be considered authentic with respect to authorship, (see Section 11.1) and therefore, is not subject to certification by a notary public.

19.6.h. In cases where the Accused denies responsibility, the burden of proof shall rest upon the Accuser.

19.6.i. The Board shall make one of the following decisions upon completion of the hearing: (a) a finding of 'not responsible'; (b) a finding of 'responsible' (based only upon clear and convincing evidence) and the recommendation of a sanction; (c) continuance of the case to obtain additional information or for further consideration. Decisions shall be based solely upon evidence and testimony introduced at the hearing. All decisions shall be made by a majority vote. During any hearing conducted by any conduct board, the Chairperson shall vote only to break a tie.

19.6.j. A written Hearing Report, comprised of a summary of evidence presented at the hearing and decision rendered by the Board, shall be made by the DSRCS Hearing Administrator. Hearing Reports are confidential and shall be retained by the Director of Student Rights and Community Standards for seven years from the date on which this record was written, after which it will be destroyed, unless the student is involved in further conduct action. When there are multiple incidents and associated conduct records, all records will be maintained for seven years from the date on which the most recent incident is closed by the Student Conduct Process, after which the records will be destroyed (except in extraordinary cases as defined by the Senior Student Affairs Officer or designee). Access to such records is governed by the *University Records Policy* (see Section 17.4 and 19.5).

19.6.k. The Accused and Accuser shall have the right to a rescheduled hearing if they fail to attend the originally scheduled hearing through no fault of their own as determined by the DSRCS Hearing Administrator. If the DSRCS Hearing Administrator concludes that the failure to attend was the fault of the Accused, the Accused shall be deemed to have accepted the responsibility, and the case will be referred for Administrative Action (see Section 19.3). If a hearing is rescheduled, it will take place after proper notification. If the Accused fails to attend the rescheduled hearing, the Accused shall be deemed to have accepted responsibility, and the case will be referred for Administrative Action (see Section 19.3).

19.7. Appeal Procedures for Board Decisions: Following approval or modification of the sanction(s) by the Senior Student Affairs Officer or designee or the Director of Student Rights and Community Standards (see Section 21), the Accused shall have the right to submit an appeal request concerning the decision of a board to the University Appeals Board on Student Conduct. Such appeal requests shall be based only on specific evidence, presented in writing of:

> 19.7.a. fraud

> 19.7.b. denial of rights under this process

> 19.7.c. procedural error

> 19.7.d. the claim of new evidence not previously available, which would have materially affected the decision

Appeals shall not be based upon, or granted due to, dissatisfaction with an imposed sanction. Appeal requests must be filed within 7 business days of delivery of the conduct action to the student in person, or to the student's home address, or Brandeis e-mail address. If the University Appeals Board determines that a written request for appeal has merit, it shall conduct a new hearing of the case. Upon completion of the appeal hearing, the University Appeals Board may uphold the original decision and sanction imposed, find the Accused not responsible, or increase or decrease the sanction. Any sanctions shall not take effect until approved or modified by the Senior Student Affairs Officer or designee or the Director of Student Rights and Community Standards (see Section 21).

19.8. Procedures for the Review of Administrative Actions/Decisions (see Sections 19.1, 19.2, and 19.3): The Accused shall have the right to meet with the Senior Student Affairs Officer or designee to discuss an administrative decision or Administrative Action. A student must request this meeting within 2 business days of delivery of the conduct action announcement. The Senior Student Affairs Officer or designee may or may not amend the original decision and/or sanctions.

19.9. Accused students who obtain information at their hearing which might lead to new evidence shall ask for a continuance of that case at that time, rather than wait to raise the matter for the first time as the basis for an appeal request.

**19.10. Hearing Procedures in the Student Conduct Process**[1]

*All hearing participants (Parties, Advisors, Witnesses, SCB, Hearing Administrator) assemble in the Board hearing room.*

A. The Chairperson invites all participants to introduce themselves.

B. The Chairperson explains the philosophy of peer judgment and Board procedures.  (A copy of this statement is available in the hearing materials).

C. The Chairperson reads the statement of the parties' *Rights to Fairness* under this process:
> 1. To bring one Advisor of the Accused/Accuser's choice from the University community to provide passive assistance during the hearing (an Advisor may not serve as a witness).
> 2. To present witnesses on their behalf.
> 3. To question witnesses appearing against them.
> 4. To submit verbal arguments.
> 5. To remain silent and not testify against themselves.  The Accused and Accuser should remember that if they remain silent, the Board is compelled to hear the case and render a decision based upon the evidence presented.

D. Witnesses leave the room, remaining readily available to be called for their testimony.

E. The Chairperson reads the accusation(s) from the *Choice of Action Form*.
> 1. The Accused is asked if they understand the accusations.
> 2. The Accused accepts or denies responsibility.  *Although the Accused student has already indicated their choice of action earlier in the Student Conduct Process, this step insures that all participants are clear that the Accused wishes to continue with the hearing.*

F. Initial Presentations:
*In the event that there is more than one Accused, the Board may bring them into the hearing room either individually or as a group, in alphabetical order, for Initial Presentations; this system shall prevail throughout the remainder of the hearing procedures.*
> 1. The Accuser offers their description of incident.
> 2. The Accused offers their description of the incident.
> 3. The Accused may ask questions of the Accuser.
> 4. Board members may ask questions of the Accuser.
> 5. The Accuser may ask questions of the Accused.
> 6. Board members may ask questions of the Accused.

G. Witnesses for the Accuser may be called
> 1. The Accuser may ask questions of the witness.
> 2. The Accused may ask questions of the witness.
> 3. Board members may ask questions of the witness.
> 4. The witness is excused from the hearing room (but retained outside for possible recall).

---

[1] Procedures for cases involving allegations of Sections 3 or 7 will be adjudicated by the Special Examiner's Process found in Section 22.6.

H. Witnesses for the Accused may be called
> 1. The Accused may ask questions of the witness.
> 2. The Accuser may ask questions of the witness.
> 3. Board members may ask questions of the witness.
> 4. The witness is excused from the hearing room (but retained outside for possible recall through Step M.).

I. The Accuser, the Accused, or Board members may recall witnesses or re-question the Accuser or the Accused (following same order as previous witness questioning). Witnesses should remain outside until after the conclusion of letter M. The Chairperson or Hearing Administrator will excuse witnesses from their waiting position at the appropriate time.

J. Final statement of the Accuser (no new testimony).

K. Final statement of the Accused (no new testimony).

L. The Accuser, the Accused, and their respective Advisors leave hearing room, but remain outside until the conclusion of letter N. or O.

M. Board deliberates on the responsibility or lack of responsibility of the Accused. The Accused, the Accuser, and Advisors are called back into the hearing room to hear the decision regarding responsibility.

N. If the Accused is found not responsible for all charges, all participants are excused and the hearing is adjourned. An outcome notification (via Brandeis e-mail) will be sent to the Accused, usually within 3-5 business days, pending approval by the Senior Student Affairs Officer or designee.

*The following portion of the procedures constitutes the sanctioning phase of the Full Hearing.*
*When the Accused chooses a Sanction Hearing, the Chairperson will begin the procedure here after*
*introductory remarks in A. and B.*

_____

O. If the Accused is found responsible for one or more charges, recommendations and
questions on sanction(s) are heard.

> 1. The Accuser offers recommendations to the Board regarding possible
> sanctions.
> 2. The Accused may question the Accuser about the Accuser's
> recommendations.
> 3. The Accused offers recommendations to the Board regarding possible
> sanctions.
> 4. The Accuser may question the Accused on the Accused's recommendations.
> 5. The Board may question the Accused and the Accuser on their
> recommendations.

P. The Accuser, the Accused and their respective Advisors are informed that the Board
will deliberate on sanction recommendations which will be communicated to the Director
of Student Rights and Community Standards or the Senior Student Affairs Officer or
designee. Final sanction determinations will be communicated in writing to the Accused,
usually within 3-5 business days. The Accused, the Accuser, and Advisors are excused and
the Board reserves the right to adjourn for later deliberations.

Q. The Board deliberates on sanction recommendations.

> 1. The Board is advised of past conduct involvement of the Accused, if any, by
> the Hearing Administrator.
> 2. The Chairperson will record the Board's recommendations, which will be
> forwarded to the Hearing Administrator and reviewed by the appropriate
> administrator.

*Appeal procedures will be addressed in the final outcome letter to the Accused.*

**Section 20. Composition of Boards**

20.1. The Student Conduct Board: The SCB shall hear cases of alleged violations of community standards of behavior or University policies referred to it by the DSRCS, with the exception of cases related to Sections 3 and 7 (see Section 22.6).  SCB Hearing Procedures are enumerated in Section 19.10.

20.2. In hearing cases of alleged violations of policy on academic integrity (see Section 4), a Student Conduct Board voting panel of two students and two faculty must be present; at hearings for alleged violations of all other standards or policies, a voting panel of three students and one faculty member or staff member must be present.  The voting requirements in this section may be waived by mutual consent of the SCB, the Accuser, and the Accused.

20.3. A pool of faculty members and staff members shall serve on the Board.  Faculty members are appointed by the Chairperson of the Faculty Senate.  Staff members appointed by the Senior Student Affairs Officer or designee.  The term of appointment for faculty and staff members shall be two years and renewable.

20.4. Students shall be selected annually by a process open to all continuing students.  The Board is formed in the spring of the preceding academic year of a representative cross-section of Brandeis students, as allowed by those who apply.

20.5. The SCB shall be chaired by students, each annually selected by the Board and the DSRCS Director.

20.6. Any member of the SCB may be removed by the DSRCS Director in consultation with the student Chairpersons if the member is determined to be responsible for behavior that conflicts with the high standards of citizenship, confidentiality, and cooperation that the Board represents.

20.7. The University Appeals Board on Student Conduct: The University Appeals Board (UAB) shall hear appeals of decisions of the Student Conduct Board, the Special Examiner's Process, and appeals of decisions of any *ad hoc* board which may be formed at the discretion of the Senior Student Affairs Officer or designee see Section 19.8 for information on Administrative Action review).  An administrator from the Division of Students and Enrollment, designated by the Senior Student Affairs Officer, will serve as Chairperson of the University Appeals Board.

20.8. The University Appeals Board shall be comprised of three voting members (one full-time student and two members of the faculty) and one tenured faculty Chairperson.  At least two undergraduate students and at least two graduate students shall be appointed to the voter pool by the President of the Student Union and Graduate Student Association, respectively.  At least four faculty members shall be appointed to the voter pool by the Chairperson of the Faculty Senate.  A Chairperson who is a full-time tenured faculty member shall be appointed by the Senior Student Affairs Officer or designee.  Students appointed to the UAB must be free from all elected, appointed, or affiliate relationships with the Student Union or Graduate Student Association.  The term of appointment for faculty and staff members shall be two years and renewable.

20.9. Members and alternates on the UAB shall be selected in a manner similar to that of the SCB, with its formation led by the Senior Student Affairs Officer or designee (SSAO/D) and at least one other member designated by the SSAO/D.  If a UAB position becomes vacant, and no alternate is available, the original appointing authority shall appoint a replacement for the remainder of the term.

20.10. A member of the UAB may be removed by the Senior Student Affairs Officer or designee in consultation with the Chairperson, if the member is determined to be responsible for behavior that conflicts with the high standards of citizenship, confidentiality, and cooperation that the UAB represents.

20.11. UAB Hearing Administrators: The UAB shall have an administrator from the Division of Students and Enrollment, designated by the Senior Student Affairs Officer, serving as a Hearing Administrator in all stages of the hearing and deliberations. Responsibilities of the UAB Hearing Administrator shall include: (a) advising the UAB regarding the requirements and provisions of the University's conduct process; (b) providing information relevant to procedures or sanctions; (c) providing continuity in UAB operations and procedures; (d) facilitating the implementation of conduct procedures at all levels of the conduct process; (e) acting as a liaison between boards and the University community; and (f) assisting the UAB in fulfilling its educational responsibilities.

**Section 21. Range of Conduct Actions and Sanctions**
21.0. A variety of actions may be taken as a consequence of being found responsible for a violation of community standards.   When determining these actions, a DSRCS administrator, the SCB, or the UAB may consider all facets of the specific individual situation, including but not limited to the seriousness of the offense, prior history of violations, impact of the offense on others, the student's class year, and/or evidence of intent.   Because the purpose of this process is to uphold and promote community standards, a learning component is also part of the sanctioning process whenever appropriate.

These learning components may include, but are not limited to:
•Failure in a course or on an assignment
•Workshops on note-taking, proper citation, or writing a research paper
•Training (e.g. conflict resolution)
•Education on ethical decision-making
•Education on alcohol and drug abuse
•Restitution for damages
•Counseling/assessments
•Family notification

21.1. Learning components may be imposed in combination with other disciplinary action, and may include a required completion date.  Failure to complete any designated learning component, as with any other sanction, could result in further conduct action (see Section 2.3).  Sanctions shall not take effect until approved by the Director of Student Rights and Community Standards or the Senior Student Affairs Officer or designee (SSAO/D). Either administrator can modify the proposed sanction(s). Suspensions or dismissals shall not take effect until approved by the SSAO/D, who can modify the sanction(s).

21.1.a. No Further Action: In cases where the student is found responsible and the discussion with the administrator or the hearing before the Board has been sufficient in-and-of itself, further action may not be deemed necessary. However, the responsible finding is noted in the student's record in the Department of Student Rights and Community Standards.

21.1.b. Disciplinary Warning: The student may be warned in writing of the possible consequences of continuing inappropriate behavior. Additional conditions may be applied as appropriate.

21.1.c. Residence Probation: A student who is placed on Residence Probation is not in good standing with their living unit for a specified period of time, and conditions may be placed on their actions. The status of Residence Probation reminds the student that their infraction has become part of their record and that repetition of similar or other unacceptable behavior may be cause for removal from the residence halls. The Department of Community Living will be notified of students who are placed on Residence Probation.

21.1.d. Removal from Living Unit: This action precludes the student's continued residence either in a particular living unit or in any campus living unit. Such action would normally be taken after one serious violation or repeated violations related to the living unit environment, and is exercised in conjunction with the Department of Community Living.

21.1.e. Loss of University Privileges: A student may be denied certain University privileges including, but not limited to, early arrival on campus, extended stays in the residence halls, participation in campus activities, representing the University in competition or other official capacities, campus employment, and campus leadership opportunities. Loss of such privileges extends over a specific period of time, and is designed to reflect a specific community concern about the student's behavior.

21.1.f. Disciplinary Probation: A student who is placed on Disciplinary Probation is permitted to remain enrolled at the University, often under certain stated conditions depending upon the nature of the violation and potential learning value that may be derived from such conditions. The probation usually extends over a stated period, during which it is clearly understood that the student is subject to further disciplinary actions, including suspension or dismissal, if they violate the terms of the probation or in any way fail to conduct themselves as a responsible member of the University community. Disciplinary Probation is a final warning to the student to help them reevaluate their behavior.

21.1.g. Suspension: An involuntary separation of the student from the institution, Suspension differs from Dismissal since it defines conditions under which return will be possible. Suspension may extend for a semester, until a designated date, and/or until degrees/certificates will not be issued and credit will not be granted for courses taken elsewhere. Following the Suspension period, return to Brandeis requires initial approval of the Senior Student Affairs Officer or designee and then approval by the Committee on Academic Standing regarding academic suitability for readmission.

21.1.h. Dismissal: A permanent, involuntary separation of the student from the institution.

**Section 22. University Actions and Sanctions**

22.1. Protection of Individuals and the Community: Whenever the University has reason to believe that a student's conduct or behavior may disrupt the safety or well-being of another student, faculty, staff, guest or other University community member, the University may take any action that it believes to be appropriate and reasonable under the circumstances.  This may include, but is not limited to, notification of the student's parent or guardian, removal of the student from a residence hall, or other action deemed necessary to remove or minimize the threat or disruption.

The Senior Student Affairs Officer or designee is the only authorized grantor of permission to a student who wishes to return to classes and/or the residence halls after any removal.

In the event the University takes such action, the University shall notify the student of the action taken and the basis for the action.  Within 3 business days of notification, the student shall have an opportunity to speak with the Senior Student Affairs Officer or designee to discuss the situation and provide information, including documentation by a health care provider, to contest the action(s) taken.  The Senior Student Affairs Officer or designee shall then decide, at their discretion, whether to reinstate or restore the student's privileges, to consider further action under this procedure, or to take additional reasonable and appropriate steps.

22.2. Emergency Suspension: Pending final action on a violation of University regulations, the status of a student shall not be altered, or their right to be present on the campus and to attend classes suspended, except for reasons of imminent danger to their physical or emotional safety or well-being, or for reasons of imminent danger to the safety or well-being of the University community.  The decision to separate a student from the campus under these conditions shall be made by the Senior Student Affairs Officer or designee.  If a student is separated from the campus by this authority, the procedures outlined in Section 19.1 shall be implemented within 10 class days after the separation.

22.3. Indefinite Suspension: In the event the Senior Student Affairs Officer or designee (SSAO/D) learns that a Brandeis student has been charged with or convicted of a crime, the SSAO/D may immediately remove the student from campus housing, restrict the student's access to the campus, and/or indefinitely suspend the student from the University pending the final outcome of a criminal proceeding.  In making this decision, the SSAO/D must consider the nature of the crime and the risk to the safety or well-being of the University community.  A student suspended under this authority may request a meeting with the SSAO/D and the Student Conduct Board (SCB).  The SCB shall assess the risk to the safety or well-being of the Brandeis community and advise the SSAO/D.  The final decision on continuation of the suspension shall be made by the SSAO/D.  The procedural standards set forth in Section 19 do not apply to Indefinite Suspension.

22.4. University Sanctions: Brandeis University expects students to conduct themselves at all times as good citizens and good neighbors in a manner that is consistent with the federal, state, and local laws and ordinances. Off-campus behavior which, in the judgment of the Senior Student Affairs Officer or designee (SSAO/D), constitutes behavior that is inconsistent with this expectation and adversely affects the University community may result in disciplinary action up to and including dismissal. A student disciplined under this authority may request a meeting with the SSAO/D and the Student Conduct Board (SCB). The SCB shall advise the SSAO/D on the appropriateness of the sanction. The final decision shall be made by the SSAO/D. The procedural standards set forth in Section 19 do not apply to off-campus behavior or University Sanctions.

22.5. Medical and Emotional Emergencies: Whenever a student's conduct results in the intervention of Brandeis' Health Service, the Brandeis Psychological Counseling Center, or a non-Brandeis medical or psychological health care provider in order to prevent or address a student's self-harm or harm to others, or to address a student's severe emotional or psychological distress, the Senior Student Affairs Officer or designee (SSAO/D) will establish an emergency protocol for that student. Any student who receives treatment from a non-Brandeis medical or psychological health care provider under these circumstances must contact the SSAO/D upon release.

The Senior Student Affairs Officer or designee (SSAO/D) shall notify the student in writing of the emergency protocol and the basis for the protocol. Within 3 business days of notification, the student shall have an opportunity to speak with the SSAO/D, to discuss the protocol and provide information, including documentation by a health care provider, to contest the action(s) taken. The SSAO/D shall then decide, at their discretion, whether to reinstate or restore the student's privileges, to consider further action under this procedure, or to take additional reasonable and appropriate steps.

During the period begun by the emergency intervention and continuing until the conveyance of explicit written permission by the Senior Student Affairs Officer or designee to resume campus functions, a student subject to an emergency protocol is not permitted to access any campus property, facilities or attend any classes. There will be no exception for examinations or other time-sensitive student activities or academic obligations. Failure to comply with this protocol may result in referral to the Student Conduct Process as defined in this document (see Sections 2.2 and 2.3).

## 22.6. Special Examiner's Process

In cases where the DSRCS receives a report and determines that one or more possible violations of Section 3 (Sexual Responsibility) or Section 7 (Equal Opportunity, Non-Discrimination, and Harassment) exist, the case will be adjudicated by the Special Examiner's Process. This process is described here in Section 22 because it is distinct from the procedures described in the Student Conduct Process found in Section 19. Brandeis is committed to acknowledging and preserving the rights and responsibilities of all its students through all of its disciplinary procedures. In the event that the University is aware of possible student violations of Sections 3 or 7, but where there is no Accuser, the Senior Student Affairs Officer or designee reserves the right to take action pursuant to their authority enumerated in Section 22.1.

## Roles and Terms

***Community Standards Report (CSR):*** The official reporting mechanism for all allegations of a Brandeis student's possible violation of a standard found in the student code, *Rights and Responsibilities.* The *CSR* will be shown, in its entirety, to the accused student(s). This report is a web-based form located at:
http://www.brandeis.edu/studentaffairs/srcs/reporting.html

**Advisor:** Any current member of the Brandeis community, including undergraduate and graduate students, faculty members, and administrators and staff, except when co-existing criminal proceedings exist, in which case the Advisor role may instead be held by a party's attorney. The role of any Advisor is passive, and does not include writing or speaking on behalf of their party. An Advisor may not also serve as a witness. Though a potentially important source of support and guidance, and Advisor is not required for progression through the Special Examiner's Process. Further, the failure of a party to choose an Advisor will not delay the progress of the Special Examiner's Process.

**Director of Student Rights and Community Standards:** The Director receives reports and determines, in conjunction with the Senior Student Affairs Officer or designee, whether a *Community Standards Report* will be forwarded to the Student Conduct Process or the Special Examiner's Process. The Director explains the Special Examiner's Process to the parties and collects preliminary information during the Statements Phase.

**Special Examiner:** The examiner of allegations and related evidence regarding the allegations. The Special Examiner will conduct an investigation and prepare a report of their findings at the conclusion of the Fact-Finding Phase that is submitted to the Senior Student Affairs Officer or designee in support of the Responsibility Findings and/or Deliberations Phase of the process.

**Observer:** A member of the faculty or staff, named by the Senior Student Affairs Officer or designee, who is present at all in-person meetings involving the parties held by the Special Examiner during the Fact-Finding Phase of the process. Multiple Observers may participate in a Special Examiner's Process.

**Witness:** Any person who was present during the alleged incident(s) or who has direct knowledge of the incident. A witness may not also serve as an Advisor.

**Senior Student Affairs Officer or designee (SSAO/D):** The SSAO/D conducts the Discussion Phase conversations with the parties and communicates findings to the parties made by the Special Examiner and the panel.   The SSAO/D is also responsible for rendering the final decision as to any outcome for the Accused, based on the recommendations of the panel.

**Panel:** A group of three University administrators and/or faculty, appointed by the SSAO/D or designee, who will receive the Special Examiner's report (when the Accused is found responsible for one or more charges) and make a recommendation to the SSAO/D as to the outcome(s) for the Accused during the Deliberations Phase.

**University Appeals Board (UAB):** The UAB (faculty membership only) will receive any appeal by a party and make a report of its opinions to the SSAO/D or designee.

**Standard of Evaluation:** This process will use the *Preponderance of the Evidence* standard in evaluating the responsibility of the Accused.   Under this standard, the Accused is presumed not to have engaged in the alleged conduct unless a "preponderance of the evidence" supports a finding that the conduct occurred.   A preponderance of evidence means a greater weight of evidence or more likely than not.

**Time Frame:** The Special Examiner's Process will be conducted deliberately and without unnecessary delay.   It will be the goal of the University to conclude all phases of the process within 60 days cumulatively, or as soon as is practicable if unusual circumstances exist.

**Process**
**Statements Phase** (approximately 5 days)
Upon the receipt of a *Community Standards Report,* the Director of the Department of Student Rights and Community Standards will meet in-person with the Accuser and suggest that the Accuser compose in writing a thorough statement of the allegation(s) if the contents of the initial report do not represent a full account.   In addition to this statement, any other substantiating materials, such as e-mail, text messages, photographs, records, names of witnesses, names, etcetera, should be submitted to the Director of the Department of Student Rights and Community Standards.

The Director of the Department of Student Rights and Community Standards will discuss the process in full with the Accuser, including the decision about the Accuser's choice of Advisor.   If the Accuser is a Brandeis student, the discussion will also include dialog about ongoing efforts to support the student in a variety of non-conduct-related areas, such as medical and counseling services, academic support services, living arrangements, classroom assignments, directory information accessibility, travel considerations, etcetera. Further, the Accuser will be reminded that the Special Examiner's Process does not substitute for the filing of a complaint with law enforcement.   The Accuser may initiate both processes.   Information about initiating a criminal complaint will be explained. Criminal investigations need not be concluded prior to the initiation of the Special Examiner's Process.

Subsequent to the initial meeting with the Accuser, the Director of the Department of Student Rights and Community Standards (the Director) will contact the Accused in writing (Brandeis e-mail account) to inform the Accused that a *Community Standards Report* has been submitted.  Within 2 business days, the Accused will meet in-person with the Director.  The Director will show to the Accused the *Community Standards Report (CSR)* and suggest that the Accused compose in writing a thorough response to the allegations described in the *CSR*.  In addition to this response, any other substantiating materials, such as e-mail, text messages, photographs, records, names of witnesses, names, etcetera, should be submitted to the Director.

The Director will discuss the process in full with the Accused, including the decision about the Accused's choice of Advisor.  Since the Accused is always a Brandeis student, the discussion will also include dialog about ongoing efforts to support the student.  Once the Special Examiner's Process is activated by a *CSR*, it may not be interrupted by the withdrawal from the University by the Accused.  *The decision to withdraw from the University is one that any student should make in consultation with their Advisor, family, guardians, Academic Services, or other trusted administrators or faculty.*

The Accused must accept or deny responsibility for the allegations presented in the *CSR*. If the Accused accepts responsibility, the Senior Student Affairs Officer or designee (SSAO/D) will issue an outcome for the case, including disciplinary actions or sanctions. Notification will be made in writing (hand-delivered paper copy) to the Accuser and the Accused.  If the Accused fails to cooperate prior to accepting or denying responsibility for the allegation(s), the Director or the Special Examiner may consider the Accused to have accepted responsibility, the party may forfeit their opportunity to participate in the Special Examiner's Process, and the Special Examiner will report accordingly to the SSAO/D for the Outcome Notification.

If the Accused denies responsibility, the Special Examiner's Process will progress to the Fact-Finding Phase.

Cooperation by the parties with the Special Examiner is expected.  If a party fails to respond to correspondence (see Section 1.9) or attend a scheduled meeting with the Director or Special Examiner, the Director or Special Examiner may resume the Special Examiner's Process in the party's absence.  A party shall have the right to one rescheduled meeting if the failure to attend the originally scheduled meeting was through no fault of their own as determined by the Special Examiner or the Director.

At any point during the Special Examiner's Process, any party is entitled to change their initial course of action.  For example, an Accuser may drop one or more charges, and an Accused may accept responsibility.

**Fact-Finding Phase** (approximately 25-30 days)
The Special Examiner will conduct the Fact-Finding Phase based both on materials and information offered by the parties during the Statements Phase, as well as other materials and information discovered in the course of this phase.

**Documents and other Physical Evidence**

In addition to information and materials submitted during the Statements Phase, the parties and other witnesses, identified either by the parties or by the Special Examiner, may be added to the record for consideration during the Fact-Finding Phase.   Documents and other physical evidence deemed by the Special Examiner to be of material importance to the Deliberations Phase will be logged and shared equally with the parties to ensure the opportunity for response.  The Special Examiner retains the discretion not to share certain records due to confidentiality concerns, in accordance with applicable law.

**Interviews with Parties and Witnesses**

Interviews with the parties, witnesses, and experts will also be conducted at the discretion of the Special Examiner.  The Special Examiner will secure written release as necessary to access pertinent records protected by confidentiality and privacy policies and laws.  The Special Examiner will determine who will be interviewed, as well as how many times, and in what order individuals will be interviewed.

**Interviews with the Accuser and Accused**

Interviews with the parties will be conducted separately and in-person.  These interviews will address not only the facts of the case but also the impacts that the accounts have had on them.  The Special Examiner will be joined at all interviews by an Observer, whose role is passive, with the exception of providing supplemental description of details regarding procedures and University services.  The parties are entitled (though not required) to be joined by their Advisor, if one has been selected, during all interviews with the Special Examiner.

**Interviews of Witnesses**

Interviews of witnesses named by the parties during the Statements or Fact-Finding Phases of the process as well as those identified by the Special Examiner, may be conducted in-person, by telephone, or by use of Internet-based tools at the discretion of the Special Examiner.  Some witnesses may not be local or easily accessible, and the Special Examiner will make a good-faith effort to contact all pertinent witnesses.  Expert witnesses may be consulted to verify materials or provide opinions about information or documents submitted by the parties.

**Special Examiner's Report**

Upon conclusion of all interviews and collection of all known documents and materials deemed necessary by the Special Examiner, the Special Examiner will assemble a report for the SSAO/D that summarizes undisputed and disputed facts, offers conclusions about the credibility of testimony, and makes a finding about whether the Accused is responsible or not responsible for any or all charges.

**Discussion Phase** (approximately 5-10 days)

This phase of the Special Examiner's Process provides the Accuser and the Accused with separate meeting opportunities with the SSAO/D or designee to hear and respond to the findings made by the Special Examiner, and to offer rebuttal or new information to the SSAO/D based on the findings.

The parties, in separate meetings, will listen to the SSAO/D's summary of findings and engage in dialog with the SSAO/D about these findings. Each party will also have 2 business days within which to provide new, pertinent information or names of witnesses for the SSAO/D's consideration. If after the meetings with the parties and after the submission of any new information or witness names, the SSAO/D seeks additional fact-finding, the SSAO/D will request the Special Examiner to make any and all necessary inquiries. The Special Examiner will submit a supplemental report to the SSAO/D based on the new inquiries. The SSAO/D retains the discretion to hold another round of meetings with the parties to discuss the new findings.

**Responsibility Findings** (approximately 2 days)
If the Accused is found not responsible for all charges, the SSAO/D will contact the parties in writing (hand-delivered paper copy) within 2 business days under usual circumstances.

If the Accused is found responsible for one or more charges, the Special Examiner's Process will progress to the Deliberations Phase.

**Deliberations Phase** (approximately 5 days)
This phase of the Special Examiner's Process involves a panel of three University administrators and/or faculty, appointed by the SSAO/D, who will receive the Special Examiner's report and make recommendations as to the outcome(s) for the Accused. The SSAO/D will not serve on the panel.

The panel will consult the Special Examiner's report and will be entitled to interview the Special Examiner. The panel will not interview the parties, witnesses, or other experts or individuals. Upon voting, the panel will communicate its recommendations about the outcome(s) for the Accused to the SSAO/D. The SSAO/D will render the final decision as to any outcomes.

**Outcome Notification** (approximately 7 days)
The Senior Student Affairs Officer or designee (SSAO/D) will communicate the final outcome(s) decision in writing (hand-delivered paper copy) to the Accuser and the Accused within 7 days under usual circumstances. The Accuser will be informed of any sanctions that relate to them in accordance with applicable laws.

Any and all sanctions, including suspension or dismissal, will be in effect immediately, regardless of any appeal that may be submitted by the parties.

**Appeals Procedures**
The Accuser and the Accused are entitled to appeal the final decision by the panel in the Special Examiner's Process to the University Appeals Board on Student Conduct (UAB). The UAB's composition, when engaged in a Special Examiner's Process, will differ from what is described in section 20.8. Faculty members will serve as UAB members; students will not. Such appeal requests shall be based only on specific evidence, presented in writing of:

    1. fraud
    2. denial of rights under this process
    3. procedural error
    4. the claim of new evidence not previously available, which would have materially affected the decision

Appeals shall not be based upon, or granted due to, dissatisfaction with an imposed sanction.   Appeal requests must be filed within 7 business days of delivery of the SSAO/D's final decision.  Appeals that are not related to the above 4 bases will not be considered.  The appeal by the party and the response by the Special Examiner will be forwarded to the University Appeals Board.  On the first business day after the conclusion of the appeal deadline, the SSAO/D will alert the parties by e-mail that one or more appeals have been filed.  The Appellee will be permitted to submit a statement to the UAB about the notification of appeal.  The Special Examiner will respond in writing to the UAB about the appeal(s).

Faculty members of the UAB will convene within 7 business days, or as soon as practicable, to discuss the written appeal request.  The UAB will submit a written report to the SSAO/D of their opinions, thoughts, and suggestions about the appeal.  During the UAB's consideration of the appeal, any pertinent documents, notes, or other materials considered by the panel in making the final decision will be made available to the UAB.  The UAB may make recommendations or suggestions to the SSAO/D about the specific concerns of the Appellant.

The SSAO/D will receive the UAB's written report and will retain the discretion to amend or uphold the original final decision.  The Accuser and the Accused will receive written notification of the appeal outcome (hand-delivered paper copy).

**Records Retention**
Documents generated from the Special Examiner's Process will be retained pursuant to the rules in Sections 17.4, 19.5, and 19.6.j.

# Appendices
## Appendix A
## Massachusetts Act Prohibiting the Practice of Hazing
## (Chapter 269 of the Massachusetts General Laws)

Section 17.   Whoever is principal organizer or participant in the crime of hazing as defined herein shall be punished by a fine of not more than three thousand dollars or by imprisonment in a house of correction for not more than one year, or by both such fine and imprisonment.   The term hazing" as used in this section and in Sections 18 and 19, shall mean any conduct or method of initiation into any student organization, whether on public or private property, which willfully or recklessly endangers the physical or mental health of any student or other person.   Such conduct shall include whipping, beating, branding, forced calisthenics, exposure to the weather, forced consumption of any food, liquor, beverage, drug or other substance, or any other brutal treatment or forced physical activity which is likely to adversely affect the physical health or safety of any such student or other person, or which subjects such student or other person to extreme mental stress, including extended deprivation of sleep or rest or extended isolation.   Notwithstanding any other provisions of this section to the contrary, consent shall not be available as a defense to any prosecution under this action.

Section 18.   Whoever knows that another person is the victim of hazing as defined in Section 17 and is at the scene of such crime shall, to the extent that such person can do so without danger or peril to himself or others, report such crime to an appropriate law enforcement official as soon as reasonably practicable.   Whoever fails to report such crime shall be punished by a fine of not more than $1000.

Section 19.   Each institution of secondary education and each public and private institution of post secondary education shall issue to every student group, student team or student organization which is part of such institution or is recognized by the institution or permitted by the institution to use its name or facilities or is known by the institution to exist as an unaffiliated student group, student team or student organization, a copy of this section and Sections 17 and 18; provided, however, that an institution's compliance with this section's requirements that an institution issue copies of this section and Sections 17 and 18 to unaffiliated student groups, teams or organizations shall not constitute evidence of the institution's recognition or endorsement of said unaffiliated student groups, teams or organizations.

Each such group, team or organization shall distribute a copy of this section and Sections 17 and 18 to each of its members, plebes, pledges or applicants for memberships.   It shall be the duty of each such group, team or organization, acting through its designated officer, to deliver annually, to the institution an attested acknowledgement stating that such group, team or organization has received a copy of this section and said Sections 17 and 18, that each of its members, plebes, pledges, or applicants has received a copy of Sections 17 and 18, and that such group, team or organization understands and agrees to comply with the provisions of this section and Sections 17 and 18.   Each institution of secondary education and each public or private institution of post secondary education shall, at least annually, before or at the start of enrollment, deliver to each person who enrolls as a full time student in such institution a copy of this section and Sections 17 and 18.

Each institution of secondary education and each public or private institution of post secondary education shall file, at least annually, a report with the Board of Higher Education and in the case of secondary institutions, the board of education, certifying that such institution has complied with its responsibility to inform student groups, teams or organizations and to notify each full time student enrolled by it of the provisions of this section and Sections 17 and 18 and also certifying that said institution has adopted a disciplinary policy with regard to the organizers and participants of hazing, and that such policy has been set forth with appropriate emphasis in the student handbook or similar means of communicating the institution's policies to its students.  The Board of Higher Education and, in the case of secondary institutions, the board of education shall promulgate regulations governing the content and frequency of such reports, and shall forthwith report to the attorney general any such institution which fails to make such report.

## Appendix B
### University Policy on Fraternities and Sororities
On May 28, 1988, the Board of Trustees of Brandeis University unanimously approved the following resolution: The Board of Trustees reaffirms University policy of recognizing only those student organizations which are open to all students on the basis of competency or interests.  Exclusive or secret societies are inconsistent with the principles of openness to which the University is committed.   Therefore, social fraternities and sororities, in particular, are neither recognized nor permitted to hold activities on campus or use University facilities.

## Appendix C
### Related Publications
The following publications or statements of guidelines are referenced in the University regulations.   The policies and procedures stated therein carry the force of University regulations.  They may be obtained at the locations indicated below.

Brandeis University Education Records Policy; Office of the University Registrar, Kutz Hall 124.
www.brandeis.edu/registrar/bulletin/EducRecordsPolicy.html

Equal Employment Opportunity; Office of Human Resources, Bernstein-Marcus, Second Floor.
www.brandeis.edu/humanresources/jobs/affirmative.html

Student Activities Polices (Posting, Alcohol at Student Events); Department of Student Activities, Shapiro Campus Center, Second Floor.
www.brandeis.edu/studentaffairs/activities/forms.html

Graduate Student Housing Policies; Office of Graduate Student Affairs, Kutz Hall, First Floor.
www.brandeis.edu/gradstudent/housing/index.html

Library Policies; Feldberg Library.
lts.brandeis.edu/about/policies/libpolicies.html

Parking and Traffic Regulations; Department of Public Safety Parking and Traffic),
Stoneman109.

www.brandeis.edu/publicsafety/parking/regulations.html

Residence Halls and Meal Plan License; (paper form), Department of Community Living, Usdan Student Center, Room 032.

Residence Hall Room Selection Procedures; Department of Community Living, (available seasonally), Usdan Student Center, Room 032.
www.brandeis.edu/studentaffairs/dcl/forms/pdf/Room%20Selection%20Guide%202011.pdf

Room Reservation Procedures; Student Group Request Form, Department of Conference and Event Services, Kutz Hall 9.
www.brandeis.edu/ces/communityevents/documents/studentform.pdf

Safety Procedures for Lighting Candles; Department of Community Living, Usdan Student Center, Room 032.
www.brandeis.edu/studentaffairs/dcl/forms/pdf/Candle_registration.pdf

Dining Services Meal Plans; Department of Dining Services, Kutz Hall 9.
http://brandeis.sodexomyway.net/

Student Phones, Computers, Printers, and TV; Department of Library and Information Technology Services, Feldberg 20.
lts.brandeis.edu/techhelp/hardware/index.html

University Computer Policy; Department of Library and Technology Services, Feldberg 112.
lts.brandeis.edu/about/policies/computingpolicies.html

# Index

academic honesty, 13
academic integrity, 13
access to buildings and facilities, 21
Administrative Action, 6, 46, 50, 51, 55
admission charge, 17
Advisor, 11, 48, 52, 62, 63, 64, 65, 66
age, 6, 16, 18, 22, 24
air conditioners, 33
alcohol, 7, 9, 15, 16, 17, 18, 57
animals, 7, 21
antennae, 33
Appeal Procedures for Board Decisions, 50
Appropriate Use (of technology resources), 35
authorized entry (to residence halls), 41
Authorized Use (of technology resources), 35
automobiles, 39
banners, 20
beer balls, 18
bicycles, 39
binge drinking, 16
Board of Trustees of Middlesex University, 40
Brandeis University Policy Statement on Non-Discrimination and Harassment, 36
bullying, 5
burden of proof, 49
butane, 33
cameras, 6
Campus Card Office, 3
campus restriction, 5, 9
candles, 27
cellular phones, 6
chalking, 20
*Choice of Action Form*, 44, 45, 52
cigarette lighters, 33
cigarettes, 15
City of Waltham, 2, 17
clear and convincing evidence, 49
collaboration on assignments, 13
commercial enterprises, 39
Commonwealth of Massachusetts, 2, 5, 16, 17, 40

Community Development Coordinator, 18, 28, 30, 31
*Community Standards Report (CSR)*, 42, 62, 64
compliance with officials, 6
computers, 6, 7, 13, 23, 24, 35, 36
*Conference and Event Services Reservation Form*, 38
Conference and Events Services, 17
Confidential Complaint Hotline, 11
conflict-of-interest, 47
consensual sexual relationships, 23
consent, 9, 10, 46, 70
cooking equipment, 27
copyright, 32, 36
criminal prosecution, 10
cyber-bullying, 36
Dean of Students Office, 25
defamation, 5
Deliberations Phase, 63, 66, 67
demonstrations, 26
Department of Community Living, 18, 27, 28, 29, 30, 31, 33, 34, 58, 72
Department of Conference and Event Services, 37, 72
Department of Facilities Management, 30
Department of Public Safety, 3, 8, 10, 17, 18, 26, 29, 37, 38, 39, 72
Department of Student Activities, 7, 17, 20, 37, 38, 39, 72
Department of Student Rights and Community Standards, 11, 13, 28, 42, 44, 46, 49, 50, 54, 57, 62, 64
digital mass storage devices, 32
dining facilities, 20
Dining Services, 7, 36, 72
Disabilities Services and Support, 30, 33
disability, 6, 22, 24
Disciplinary Probation, 58
Disciplinary Warning, 57
discrimination, 6, 22, 24, 25
Dismissal, 59
disruptive behavior, 26
Division of Students and Enrollment, 10, 12, 40, 31, 47, 55, 56
dogs, 7, 36
door propping, 29

drug paraphernalia, 19
drugs, 9, 15, 19
DVDs, 32
educational records, 41
electrical heating units, 32
e-mail, 4, 23, 24, 44, 47, 50, 53, 64, 68
emergency blue light phones, 20
Emergency Suspension, 5, 9
equal opportunity, 22, 62
ethnic origin, 22
event security, 37
evergreens, 34
evidence, 3, 10, 42, 44, 46, 48, 49, 50, 51, 52, 63, 66, 68, 70
exams, 31
exit lights, 6
explosives, 7
extension cords, 32
Fact-Finding Phase, 63, 65, 66
fair use, 36
false claims, 25
favoritism, 23
Federal Family Educational Rights and Privacy Act, 41
financial aid, 7
fire, 20, 27, 32
fire alarms, 6, 27
fire equipment, 6
fire escapes, 34
fire safety, 33
firearms, 7
fireworks, 7
fish, 32
flammable gases or fluids, 33
food service utensils, 36
footnotes, 13
funnels, 18
furniture (residence halls), 30
gender, 6, 22, 24
gender expression, 6
gender identity, 6, 22
genetic information, 6, 22, 24
Graduate Student Association, 40, 56
grills, 33
guests, 7, 16, 18, 27, 29, 31, 38, 60
hall sports, 33
hallucinogens, 19
halogen bulbs, 32
harassment, 5, 11, 22, 23, 24, 25, 28

hazing, 7, 70, 71
health and safety, 5, 15, 32
Health Center, 15
Hearing Administrator, 47, 48, 49, 50, 52, 53, 54, 56
Higher Education Reauthorization Act, 10
host institution, 2
hostile or offensive environment, 22
hot pots, 27
Human Resources, 11, 12, 25, 72
Identification Card, 3, 18, 35
immersion heaters, 27
incapacitation, 9
intellectual property, 20, 36, 42
Internet, 13, 23, 24, 39, 66
intimidation, 5
intoxication, 9
Jump Start Meeting, 17
kegs, 18
keys, 29
knives, 7
LEDs, 32
legal counsel, 11, 48
legal drinking age, 16
legitimate functions of the University, 6
library, 3, 6, 7, 20, 35
Library and Technology Services, 1, 35, 36, 73
liquor license, 17
lock changes, 29
lockouts, 29
Loss of University Privileges, 58
loud speakers, 7
luges, 18
mailboxes, 39
malware, 35
marijuana, 19
mass consumption vessels, 18
Mediated Resolution Option, 42, 45
Medical and Emotional Emergencies, 61
Mid-Years, 17
motor vehicle, 38, 39
motorcycles, 39
multiple-occupancy rooms, 28
national origin, 6
No Further Action, 57
nun-chucks, 7
Observer, 63

---

outdoor events, 7
overlapping academic assignments, 14
parking, 7, 38, 39, 72
*Party Registration Form*, 18
passphrases, 35
passwords, 35
personal identification, 3
*Personal Safety Resources at Brandeis*, 12
pets, 32
physically harm, 5
political campaigns, 39
posters, 20, 30
Preliminary Meeting (Student Conduct Process), 44
Preponderance of the Evidence, 63
prescription drugs, 19
privacy, 5, 6, 35, 40, 66
propane, 33
protected class status, 22, 24
protest, 26
Psychological Counseling Center, 12, 61
Quiet Hours, 31
race, 6, 22, 24
Records Policy, 41, 46, 49, 71
refrigerators, 33
religion, 6
Removal from Living Unit, 58
reservation of space, 37
residence hall damages, 29
residence halls, 7, 15, 17, 18, 20, 27, 28, 29, 30, 31, 32, 33, 34, 37, 39, 41, 58, 60, 72
*Residence Halls and Meal Plan License*, 7, 28, 30, 72
Residence Probation, 27, 58
retaliation, 25
Review of Administrative Actions/ Decisions, 51
right of entry (to residence halls), 29
*Rights and Responsibilities*, 42, 43, 44, 45, 62
roadways, 39
roofs, 21, 34
*Room Condition Report*, 30
room inspections, 41
room searches, 41
room transfers, 28
room vacancies, 28
safety equipment, 6, 27, 33

safety procedures, 6
*Safety Procedures for Lighting Religious Candles*, 27
sanctions, 2, 11, 13, 29, 47, 50, 51, 54, 56, 65, 67, 68
seal of Brandeis University, 21, 39
Senior Student Affairs Officer, 26, 28, 41, 42, 46, 49, 50, 51, 53, 54, 55, 56, 57, 59, 60, 61, 62, 63, 65, 67
service animals, 7, 32, 36
sexual assault, 9, 10, 11, 12
Sexual Assault and Prevention Services Specialist, 11
sexual harassment, 23
sexual misconduct, 9, 10, 11
sexual orientation, 6, 22, 24
sexual responsibility, 1, 9, 62
Shinomoto, Ms. Linda, 10, 25
sidewalks, 20
slander, 5
sleep-deprivation, 7
smoke detectors, 27
smoking, 15
software, 35
solicitation in residence halls, 31
sound amplification equipment, 7
speakers, 38
Special Examiner's Process, 9, 22, 52, 55, 61, 62, 63, 64, 65, 67, 68, 69
stalking, 5, 11
steam heaters, 32
streaming, 6
string lights, 32, 33
student businesses, 31
Student Conduct Process, 8, 9, 22, 39, 42, 44, 46, 49, 52, 61, 62
Student Union Senate, 40
substance abuse, 15
suspension, 13, 58, 59, 60, 68
tablets, 6
tax-exempt numbers, 40
technology, 35
text messaging, 6
theft, 20, 42
threat, 5, 6, 9, 10, 27, 38, 60
threats, 5
time, place, and manner (for events), 37
Title IX Coordinator, 10, 11, 25
toaster ovens, 27
tobacco, 15

traffic regulations, 38
tutoring, 13
unauthorized materials, in an exam, 13
UNET account, 49
University Action, 6
University Appeals Board, 6, 48, 50, 55, 56, 63, 68
University privileges, 3, 58
University Sanctions, 61
utility closets, 34
vandalism, 20

VAWA Federal Campus Security Act, 11
veteran status, 6, 22, 24
video cassettes, 32
video recording, 6
visitors, 31
waterbeds, 33
weapons, 7
windows, 20, 30, 32, 33
witnesses, 47, 48, 49, 52, 53, 64, 66, 67

## Submitting a Report of Inappropriate Behavior
### (All Alleged Policy Violations Including Academic Integrity)

The Department of Student Rights and Community Standards (DSRCS) serves the undergraduate and graduate student communities at Brandeis University by implementing the Student Conduct Process or Special Examiner's Process, both described in this code. Specifically, the Student Conduct Process may be found in Sections 18 and 19, and the Special Examiner's Process may be found in Section 22.6. If you are aware of a violation of community standards, or if you have a concern about a Brandeis student, please share your concern via this reporting tool.

The *Community Standards Report (CSR)* may initiate a sanction-seeking process through the Student Conduct Process or the Special Examiner's Process (depending on the nature of the allegations) if the reporter self-identifies. If a reporter wishes to anonymously submit a *CSR*, the DSRCS will use the information to address the concern to the best of its ability in conjunction with other University departments. If you are unsure about whether you wish to submit a *CSR*, the anonymous option might be one to strongly consider.

Always feel welcome to contact us for advice and assistance in your decision to submit a report.

### Please find the
# *Community Standards Report*
### at the following URL:

**http://www.brandeis.edu/studentaffairs/srcs/reporting.html**



# Brandeis University
## Department of Student Rights and Community Standards

**415 South Street − MS 206**
**Waltham, MA 02454**
**Phone: 781.736.5070**
**Fax: 781.736.3579**
**www. brandeis.edu/studentaffairs/srcs**