Appendix 4-E. Dear Colleague Letter: Sexual Violence, Lentz School Sec. Appendix...

Case 1:15-cv-11557-FDS   Document 21-4   Filed 06/09/15   Page 1 of 16

Lentz School Sec. Appendix 4-E (2014)

Lentz School Security
Database updated December 2014
Mary A. Lentz
Chapter 4. Student Harassment and Bullying
Appendices

Appendix 4-E. Dear Colleague Letter: Sexual Violence

**April 4, 2011**

**Dear Colleague:**
Education has long been recognized as the great equalizer in America. The U.S. Department of Education and its Office for Civil Rights (OCR) believe that providing all students with an educational environment free from discrimination is extremely important. The sexual harassment of students, including sexual violence, interferes with students' right to receive an education free from discrimination and, in the case of sexual violence, is a crime.

Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 et seq., and its implementing regulations, 34 C.F.R. Part 106, prohibit discrimination on the basis of sex in education programs or activities operated by recipients of Federal financial assistance. Sexual harassment of students, which includes acts of sexual violence, is a form of sex discrimination prohibited by Title IX. In order to assist recipients, which include school districts, colleges, and universities (hereinafter "schools" or "recipients") in meeting these obligations, this letter [1] explains that the requirements of Title IX pertaining to sexual harassment also cover sexual violence, and lays out the specific Title IX requirements applicable to sexual violence. [2] Sexual violence, as that term is used in this letter, refers to physical sexual acts perpetrated against a person's will or where a person is incapable of giving consent due to the victim's use of drugs or alcohol. An individual also may be unable to give consent due to an intellectual or other disability. A number of different acts fall into the category of sexual violence, including rape, sexual assault, sexual battery, and sexual coercion. All such acts of sexual violence are forms of sexual harassment covered under Title IX.

The statistics on sexual violence are both deeply troubling and a call to action for the nation. A report prepared for the National Institute of Justice found that about 1 in 5 women are victims of completed or attempted sexual assault while in college. [3] The report also found that approximately 6.1 percent of males were victims of completed or attempted sexual assault during college. [4] According to data collected under the Jeanne Clery Disclosure of Campus Security and Campus Crime Statistics Act (Clery Act), 20 U.S.C. § 1092(f), in 2009, college campuses reported nearly 3,300 forcible sex offenses as defined by the Clery Act. [5] This problem is not limited to college. During the 2007–2008 school year, there were 800 reported incidents of rape and attempted rape and 3,800 reported incidents of other sexual batteries at public high schools. [6] Additionally, the likelihood that a woman with intellectual disabilities will be sexually assaulted is estimated to be significantly higher than the general population. [7] The Department is deeply concerned about this problem and is committed to ensuring that all students feel safe in their school, so that they have the opportunity to benefit fully from the school's programs and activities.

This letter begins with a discussion of Title IX's requirements related to student-on-student sexual harassment, including sexual violence, and explains schools' responsibility to take immediate and effective steps to end sexual harassment and sexual violence. These requirements are discussed in detail in OCR's *Revised Sexual Harassment Guidance* issued in 2001 (*2001 Guidance*). [8] This letter supplements the *2001 Guidance* by providing additional guidance and practical examples regarding the Title IX requirements as they relate to sexual violence. This letter concludes by discussing the proactive efforts schools can take to prevent sexual harassment and violence, and by providing examples of remedies that schools and OCR may use to end such

Appendix 4-E. Dear Colleague Letter: Sexual Violence, Lentz School Sec. Appendix...

Case 1:15-cv-11557-FDS   Document 21-4   Filed 06/09/15   Page 2 of 16

conduct, prevent its recurrence, and address its effects. Although some examples contained in this letter are applicable only in the postsecondary context, sexual harassment and violence also are concerns for school districts. The Title IX obligations discussed in this letter apply equally to school districts unless otherwise noted.

**Title IX Requirements Related to Sexual Harassment and Sexual Violence**

**Schools' Obligations to Respond to Sexual Harassment and Sexual Violence**

Sexual harassment is unwelcome conduct of a sexual nature. It includes unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature. Sexual violence is a form of sexual harassment prohibited by Title IX. [9]

As explained in OCR's *2001 Guidance*, when a student sexually harasses another student, the harassing conduct creates a hostile environment if the conduct is sufficiently serious that it interferes with or limits a student's ability to participate in or benefit from the school's program. The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the harassment is physical. Indeed, a single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe. For instance, a single instance of rape is sufficiently severe to create a hostile environment. [10]

Title IX protects students from sexual harassment in a school's education programs and activities. This means that Title IX protects students in connection with all the academic, educational, extracurricular, athletic, and other programs of the school, whether those programs take place in a school's facilities, on a school bus, at a class or training program sponsored by the school at another location, or elsewhere. For example, Title IX protects a student who is sexually assaulted by a fellow student during a school-sponsored field trip. [11]

If a school knows or reasonably should know about student-on-student harassment that creates a hostile environment, Title IX requires the school to take immediate action to eliminate the harassment, prevent its recurrence, and address its effects. [12] Schools also are required to publish a notice of nondiscrimination and to adopt and publish grievance procedures. Because of these requirements, which are discussed in greater detail in the following section, schools need to ensure that their employees are trained so that they know to report harassment to appropriate school officials, and so that employees with the authority to address harassment know how to respond properly. Training for employees should include practical information about how to identify and report sexual harassment and violence. OCR recommends that this training be provided to any employees likely to witness or receive reports of sexual harassment and violence, including teachers, school law enforcement unit employees, school administrators, school counselors, general counsels, health personnel, and resident advisors.

Schools may have an obligation to respond to student-on-student sexual harassment that initially occurred off school grounds, outside a school's education program or activity. If a student files a complaint with the school, regardless of where the conduct occurred, the school must process the complaint in accordance with its established procedures. Because students often experience the continuing effects of off-campus sexual harassment in the educational setting, schools should consider the effects of the off-campus conduct when evaluating whether there is a hostile environment on campus. For example, if a student alleges that he or she was sexually assaulted by another student off school grounds, and that upon returning to school he or she was taunted and harassed by other students who are the alleged perpetrator's friends, the school should take the earlier sexual assault into account in determining whether there is a sexually hostile environment. The school also should take steps to protect a student who was assaulted off campus from further sexual harassment or retaliation from the perpetrator and his or her associates.

Regardless of whether a harassed student, his or her parent, or a third party files a complaint under the school's grievance procedures or otherwise requests action on the student's behalf, a school that knows, or reasonably should know, about possible harassment must promptly investigate to determine what occurred and then take appropriate steps to resolve the situation. As discussed later in this letter, the school's Title IX investigation is different from any law enforcement investigation, and

a law enforcement investigation does not relieve the school of its independent Title IX obligation to investigate the conduct. The specific steps in a school's investigation will vary depending upon the nature of the allegations, the age of the student or students involved (particularly in elementary and secondary schools), the size and administrative structure of the school, and other factors. Yet as discussed in more detail below, the school's inquiry must in all cases be prompt, thorough, and impartial. In cases involving potential criminal conduct, school personnel must determine, consistent with State and local law, whether appropriate law enforcement or other authorities should be notified. [13]

Schools also should inform and obtain consent from the complainant (or the complainant's parents if the complainant is under 18 and does not attend a postsecondary institution) before beginning an investigation. If the complainant requests confidentiality or asks that the complaint not be pursued, the school should take all reasonable steps to investigate and respond to the complaint consistent with the request for confidentiality or request not to pursue an investigation. If a complainant insists that his or her name or other identifiable information not be disclosed to the alleged perpetrator, the school should inform the complainant that its ability to respond may be limited. [14] The school also should tell the complainant that Title IX prohibits retaliation, and that school officials will not only take steps to prevent retaliation but also take strong responsive action if it occurs.

As discussed in the *2001 Guidance*, if the complainant continues to ask that his or her name or other identifiable information not be revealed, the school should evaluate that request in the context of its responsibility to provide a safe and nondiscriminatory environment for all students. Thus, the school may weigh the request for confidentiality against the following factors: the seriousness of the alleged harassment; the complainant's age; whether there have been other harassment complaints about the same individual; and the alleged harasser's rights to receive information about the allegations if the information is maintained by the school as an "education record" under the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g; 34 C.F.R. Part 99. [15] The school should inform the complainant if it cannot ensure confidentiality. Even if the school cannot take disciplinary action against the alleged harasser because the complainant insists on confidentiality, it should pursue other steps to limit the effects of the alleged harassment and prevent its recurrence. Examples of such steps are discussed later in this letter.

Compliance with Title IX, such as publishing a notice of nondiscrimination, designating an employee to coordinate Title IX compliance, and adopting and publishing grievance procedures, can serve as preventive measures against harassment. Combined with education and training programs, these measures can help ensure that all students and employees recognize the nature of sexual harassment and violence, and understand that the school will not tolerate such conduct. Indeed, these measures may bring potentially problematic conduct to the school's attention before it becomes serious enough to create a hostile environment. Training for administrators, teachers, staff, and students also can help ensure that they understand what types of conduct constitute sexual harassment or violence, can identify warning signals that may need attention, and know how to respond. More detailed information and examples of education and other preventive measures are provided later in this letter.

**Procedural Requirements Pertaining to Sexual Harassment and Sexual Violence**
Recipients of Federal financial assistance must comply with the procedural requirements outlined in the Title IX implementing regulations. Specifically, a recipient must:

> (A) Disseminate a notice of nondiscrimination; [16]

> (B) Designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under Title IX; [17] and

> (C) Adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee sex discrimination complaints. [18]

Appendix 4-E. Dear Colleague Letter: Sexual Violence, Lentz School Sec. Appendix...

Case 1:15-cv-11557-FDS   Document 21-4   Filed 06/09/15   Page 4 of 16

These requirements apply to all forms of sexual harassment, including sexual violence, and are important for preventing and effectively responding to sex discrimination. They are discussed in greater detail below. OCR advises recipients to examine their current policies and procedures on sexual harassment and sexual violence to determine whether those policies comply with the requirements articulated in this letter and the *2001 Guidance*. Recipients should then implement changes as needed.

**(A)** *Notice of Nondiscrimination*

The Title IX regulations require that each recipient publish a notice of nondiscrimination stating that the recipient does not discriminate on the basis of sex in its education programs and activities, and that Title IX requires it not to discriminate in such a manner. [19] The notice must state that inquiries concerning the application of Title IX may be referred to the recipient's Title IX coordinator or to OCR. It should include the name or title, office address, telephone number, and e-mail address for the recipient's designated Title IX coordinator.

The notice must be widely distributed to all students, parents of elementary and secondary students, employees, applicants for admission and employment, and other relevant persons. OCR recommends that the notice be prominently posted on school Web sites and at various locations throughout the school or campus and published in electronic and printed publications of general distribution that provide information to students and employees about the school's services and policies. The notice should be available and easily accessible on an ongoing basis.

Title IX does not require a recipient to adopt a policy specifically prohibiting sexual harassment or sexual violence. As noted in the *2001 Guidance*, however, a recipient's general policy prohibiting sex discrimination will not be considered effective and would violate Title IX if, because of the lack of a specific policy, students are unaware of what kind of conduct constitutes sexual harassment, including sexual violence, or that such conduct is prohibited sex discrimination. OCR therefore recommends that a recipient's nondiscrimination policy state that prohibited sex discrimination covers sexual harassment, including sexual violence, and that the policy include examples of the types of conduct that it covers.

**(B)** *Title IX Coordinator*

The Title IX regulations require a recipient to notify all students and employees of the name or title and contact information of the person designated to coordinate the recipient's compliance with Title IX. [20] The coordinator's responsibilities include overseeing all Title IX complaints and identifying and addressing any patterns or systemic problems that arise during the review of such complaints. The Title IX coordinator or designee should be available to meet with students as needed. If a recipient designates more than one Title IX coordinator, the notice should describe each coordinator's responsibilities (*e.g.*, who will handle complaints by students, faculty, and other employees). The recipient should designate one coordinator as having ultimate oversight responsibility, and the other coordinators should have titles clearly showing that they are in a deputy or supporting role to the senior coordinator. The Title IX coordinators should not have other job responsibilities that may create a conflict of interest. For example, serving as the Title IX coordinator and a disciplinary hearing board member or general counsel may create a conflict of interest.

Recipients must ensure that employees designated to serve as Title IX coordinators have adequate training on what constitutes sexual harassment, including sexual violence, and that they understand how the recipient's grievance procedures operate. Because sexual violence complaints often are filed with the school's law enforcement unit, all school law enforcement unit employees should receive training on the school's Title IX grievance procedures and any other procedures used for investigating reports of sexual violence. In addition, these employees should receive copies of the school's Title IX policies. Schools should instruct law enforcement unit employees both to notify complainants of their right to file a Title IX sex discrimination complaint with the school in addition to filing a criminal complaint, and to report incidents of sexual violence to the Title IX coordinator if the complainant consents. The school's Title IX coordinator or designee should be available to provide assistance to school law enforcement unit employees regarding how to respond appropriately to reports of sexual violence. The Title IX coordinator

also should be given access to school law enforcement unit investigation notes and findings as necessary for the Title IX investigation, so long as it does not compromise the criminal investigation.

**(C)** *Grievance Procedures*

The Title IX regulations require all recipients to adopt and publish grievance procedures providing for the prompt and equitable resolution of sex discrimination complaints. [21] The grievance procedures must apply to sex discrimination complaints filed by students against school employees, other students, or third parties.

Title IX does not require a recipient to provide separate grievance procedures for sexual harassment and sexual violence complaints. Therefore, a recipient may use student disciplinary procedures or other separate procedures to resolve such complaints. Any procedures used to adjudicate complaints of sexual harassment or sexual violence, including disciplinary procedures, however, must meet the Title IX requirement of affording a complainant a prompt and equitable resolution. [22] These requirements are discussed in greater detail below. If the recipient relies on disciplinary procedures for Title IX compliance, the Title IX coordinator should review the recipient's disciplinary procedures to ensure that the procedures comply with the prompt and equitable requirements of Title IX. [23]

Grievance procedures generally may include voluntary informal mechanisms (*e.g.*, mediation) for resolving some types of sexual harassment complaints. OCR has frequently advised recipients, however, that it is improper for a student who complains of harassment to be required to work out the problem directly with the alleged perpetrator, and certainly not without appropriate involvement by the school (*e.g.*, participation by a trained counselor, a trained mediator, or, if appropriate, a teacher or administrator). In addition, as stated in the *2001 Guidance*, the complainant must be notified of the right to end the informal process at any time and begin the formal stage of the complaint process. Moreover, in cases involving allegations of sexual assault, mediation is not appropriate even on a voluntary basis. OCR recommends that recipients clarify in their grievance procedures that mediation will not be used to resolve sexual assault complaints.

*Prompt and Equitable Requirements*

As stated in the *2001 Guidance*, OCR has identified a number of elements in evaluating whether a school's grievance procedures provide for prompt and equitable resolution of sexual harassment complaints. These elements also apply to sexual violence complaints because, as explained above, sexual violence is a form of sexual harassment. OCR will review all aspects of a school's grievance procedures, including the following elements that are critical to achieve compliance with Title IX:

- Notice to students, parents of elementary and secondary students, and employees of the grievance procedures, including where complaints may be filed;

- Application of the procedures to complaints alleging harassment carried out by employees, other students, or third parties;

- Adequate, reliable, and impartial investigation of complaints, including the opportunity for both parties to present witnesses and other evidence;

- Designated and reasonably prompt time frames for the major stages of the complaint process;

- Notice to parties of the outcome of the complaint; [24] and

• An assurance that the school will take steps to prevent recurrence of any harassment and to correct its discriminatory effects on the complainant and others, if appropriate.

As noted in the *2001 Guidance*, procedures adopted by schools will vary in detail, specificity, and components, reflecting differences in the age of students, school sizes and administrative structures, State or local legal requirements, and past experiences. Although OCR examines whether all applicable elements are addressed when investigating sexual harassment complaints, this letter focuses on those elements where our work indicates that more clarification and explanation are needed, including:

**(A)** *Notice of the grievance procedures*
The procedures for resolving complaints of sex discrimination, including sexual harassment, should be written in language appropriate to the age of the school's students, easily understood, easily located, and widely distributed. OCR recommends that the grievance procedures be prominently posted on school Web sites; sent electronically to all members of the school community; available at various locations throughout the school or campus; and summarized in or attached to major publications issued by the school, such as handbooks, codes of conduct, and catalogs for students, parents of elementary and secondary students, faculty, and staff.

**(B)** *Adequate, Reliable, and Impartial Investigation of Complaints*
OCR's work indicates that a number of issues related to an adequate, reliable, and impartial investigation arise in sexual harassment and violence complaints. In some cases, the conduct may constitute both sexual harassment under Title IX and criminal activity. Police investigations may be useful for fact-gathering; but because the standards for criminal investigations are different, police investigations or reports are not determinative of whether sexual harassment or violence violates Title IX. Conduct may constitute unlawful sexual harassment under Title IX even if the police do not have sufficient evidence of a criminal violation. In addition, a criminal investigation into allegations of sexual violence does not relieve the school of its duty under Title IX to resolve complaints promptly and equitably.

A school should notify a complainant of the right to file a criminal complaint, and should not dissuade a victim from doing so either during or after the school's internal Title IX investigation. For instance, if a complainant wants to file a police report, the school should not tell the complainant that it is working toward a solution and instruct, or ask, the complainant to wait to file the report.

Schools should not wait for the conclusion of a criminal investigation or criminal proceeding to begin their own Title IX investigation and, if needed, must take immediate steps to protect the student in the educational setting. For example, a school should not delay conducting its own investigation or taking steps to protect the complainant because it wants to see whether the alleged perpetrator will be found guilty of a crime. Any agreement or Memorandum of Understanding (MOU) with a local police department must allow the school to meet its Title IX obligation to resolve complaints promptly and equitably. Although a school may need to delay temporarily the fact-finding portion of a Title IX investigation while the police are gathering evidence, once notified that the police department has completed its gathering of evidence (not the ultimate outcome of the investigation or the filing of any charges), the school must promptly resume and complete its fact-finding for the Title IX investigation.[25] Moreover, nothing in an MOU or the criminal investigation itself should prevent a school from notifying complainants of their Title IX rights and the school's grievance procedures, or from taking interim steps to ensure the safety and well-being of the complainant and the school community while the law enforcement agency's fact-gathering is in progress. OCR also recommends that a school's MOU include clear policies on when a school will refer a matter to local law enforcement.

As noted above, the Title IX regulation requires schools to provide equitable grievance procedures. As part of these procedures, schools generally conduct investigations and hearings to determine whether sexual harassment or violence occurred. In

addressing complaints filed with OCR under Title IX, OCR reviews a school's procedures to determine whether the school is using a preponderance of the evidence standard to evaluate complaints. The Supreme Court has applied a preponderance of the evidence standard in civil litigation involving discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e et seq. Like Title IX, Title VII prohibits discrimination on the basis of sex. [26] OCR also uses a preponderance of the evidence standard when it resolves complaints against recipients. For instance, OCR's Case Processing Manual requires that a noncompliance determination be supported by the preponderance of the evidence when resolving allegations of discrimination under all the statutes enforced by OCR, including Title IX. [27] OCR also uses a preponderance of the evidence standard in its fund termination administrative hearings. [28] Thus, in order for a school's grievance procedures to be consistent with Title IX standards, the school must use a preponderance of the evidence standard (*i.e.*, it is more likely than not that sexual harassment or violence occurred). The "clear and convincing" standard (*i.e.*, it is highly probable or reasonably certain that the sexual harassment or violence occurred), currently used by some schools, is a higher standard of proof. Grievance procedures that use this higher standard are inconsistent with the standard of proof established for violations of the civil rights laws, and are thus not equitable under Title IX. Therefore, preponderance of the evidence is the appropriate standard for investigating allegations of sexual harassment or violence.

Throughout a school's Title IX investigation, including at any hearing, the parties must have an equal opportunity to present relevant witnesses and other evidence. The complainant and the alleged perpetrator must be afforded similar and timely access to any information that will be used at the hearing. [29] For example, a school should not conduct a pre-hearing meeting during which only the alleged perpetrator is present and given an opportunity to present his or her side of the story, unless a similar meeting takes place with the complainant; a hearing officer or disciplinary board should not allow only the alleged perpetrator to present character witnesses at a hearing; and a school should not allow the alleged perpetrator to review the complainant's statement without also allowing the complainant to review the alleged perpetrator's statement.

While OCR does not require schools to permit parties to have lawyers at any stage of the proceedings, if a school chooses to allow the parties to have their lawyers participate in the proceedings, it must do so equally for both parties. Additionally, any school-imposed restrictions on the ability of lawyers to speak or otherwise participate in the proceedings should apply equally. OCR strongly discourages schools from allowing the parties personally to question or cross-examine each other during the hearing. Allowing an alleged perpetrator to question an alleged victim directly may be traumatic or intimidating, thereby possibly escalating or perpetuating a hostile environment. OCR also recommends that schools provide an appeals process. If a school provides for appeal of the findings or remedy, it must do so for both parties. Schools must maintain documentation of all proceedings, which may include written findings of facts, transcripts, or audio recordings.

All persons involved in implementing a recipient's grievance procedures (*e.g.*, Title IX coordinators, investigators, and adjudicators) must have training or experience in handling complaints of sexual harassment and sexual violence, and in the recipient's grievance procedures. The training also should include applicable confidentiality requirements. In sexual violence cases, the fact-finder and decision-maker also should have adequate training or knowledge regarding sexual violence. [30] Additionally, a school's investigation and hearing processes cannot be equitable unless they are impartial. Therefore, any real or perceived conflicts of interest between the fact-finder or decision-maker and the parties should be disclosed.

Public and state-supported schools must provide due process to the alleged perpetrator. However, schools should ensure that steps taken to accord due process rights to the alleged perpetrator do not restrict or unnecessarily delay the Title IX protections for the complainant.

**(C)** *Designated and Reasonably Prompt Time Frames*
OCR will evaluate whether a school's grievance procedures specify the time frames for all major stages of the procedures, as well as the process for extending timelines. Grievance procedures should specify the time frame within which: (1) the school will conduct a full investigation of the complaint; (2) both parties receive a response regarding the outcome of the complaint;

and (3) the parties may file an appeal, if applicable. Both parties should be given periodic status updates. Based on OCR experience, a typical investigation takes approximately 60 calendar days following receipt of the complaint. Whether OCR considers complaint resolutions to be timely, however, will vary depending on the complexity of the investigation and the severity and extent of the harassment. For example, the resolution of a complaint involving multiple incidents with multiple complainants likely would take longer than one involving a single incident that occurred in a classroom during school hours with a single complainant.

**(D)** *Notice of Outcome*

Both parties must be notified, in writing, about the outcome of both the complaint and any appeal, [31] *i.e.*, whether harassment was found to have occurred. OCR recommends that schools provide the written determination of the final outcome to the complainant and the alleged perpetrator concurrently. Title IX does not require the school to notify the alleged perpetrator of the outcome before it notifies the complainant.

Due to the intersection of Title IX and FERPA requirements, OCR recognizes that there may be confusion regarding what information a school may disclose to the complainant. [32] FERPA generally prohibits the nonconsensual disclosure of personally identifiable information from a student's "education record." However, as stated in the *2001 Guidance*, FERPA permits a school to disclose to the harassed student information about the sanction imposed upon a student who was found to have engaged in harassment when the sanction directly relates to the harassed student. This includes an order that the harasser stay away from the harassed student, or that the harasser is prohibited from attending school for a period of time, or transferred to other classes or another residence hall. [33] Disclosure of other information in the student's "education record," including information about sanctions that do not relate to the harassed student, may result in a violation of FERPA.

Further, when the conduct involves a crime of violence or a non-forcible sex offense, [34] FERPA permits a postsecondary institution to disclose to the alleged victim the final results of a disciplinary proceeding against the alleged perpetrator, regardless of whether the institution concluded that a violation was committed. [35] Additionally, a postsecondary institution may disclose to anyone—not just the alleged victim—the final results of a disciplinary proceeding if it determines that the student is an alleged perpetrator of a crime of violence or a non-forcible sex offense, and, with respect to the allegation made, the student has committed a violation of the institution's rules or policies. [36]

Postsecondary institutions also are subject to additional rules under the Clery Act. This law, which applies to postsecondary institutions that participate in Federal student financial aid programs, requires that "both the accuser and the accused must be informed of the outcome [37] of any institutional disciplinary proceeding brought alleging a sex offense." [38] Compliance with this requirement does not constitute a violation of FERPA. Furthermore, the FERPA limitations on redisclosure of information do not apply to information that postsecondary institutions are required to disclose under the Clery Act. [39] Accordingly, postsecondary institutions may not require a complainant to abide by a nondisclosure agreement, in writing or otherwise, that would prevent the redisclosure of this information.

**Steps to Prevent Sexual Harassment and Sexual Violence and Correct its Discriminatory Effects on the Complainant and Others**

**Education and Prevention**
In addition to ensuring full compliance with Title IX, schools should take proactive measures to prevent sexual harassment and violence. OCR recommends that all schools implement preventive education programs and make victim resources, including comprehensive victim services, available. Schools may want to include these education programs in their (1) orientation programs for new students, faculty, staff, and employees; (2) training for students who serve as advisors in residence halls; (3) training for student athletes and coaches; and (4) school assemblies and "back to school nights." These programs should include

a discussion of what constitutes sexual harassment and sexual violence, the school's policies and disciplinary procedures, and the consequences of violating these policies.

The education programs also should include information aimed at encouraging students to report incidents of sexual violence to the appropriate school and law enforcement authorities. Schools should be aware that victims or third parties may be deterred from reporting incidents if alcohol, drugs, or other violations of school or campus rules were involved. [40] As a result, schools should consider whether their disciplinary policies have a chilling effect on victims' or other students' reporting of sexual violence offenses. For example, OCR recommends that schools inform students that the schools' primary concern is student safety, that any other rules violations will be addressed separately from the sexual violence allegation, and that use of alcohol or drugs never makes the victim at fault for sexual violence.

OCR also recommends that schools develop specific sexual violence materials that include the schools' policies, rules, and resources for students, faculty, coaches, and administrators. Schools also should include such information in their employee handbook and any handbooks that student athletes and members of student activity groups receive. These materials should include where and to whom students should go if they are victims of sexual violence. These materials also should tell students and school employees what to do if they learn of an incident of sexual violence. Schools also should assess student activities regularly to ensure that the practices and behavior of students do not violate the schools' policies against sexual harassment and sexual violence.

**Remedies and Enforcement**
As discussed above, if a school determines that sexual harassment that creates a hostile environment has occurred, it must take immediate action to eliminate the hostile environment, prevent its recurrence, and address its effects. In addition to counseling or taking disciplinary action against the harasser, effective corrective action may require remedies for the complainant, as well as changes to the school's overall services or policies. Examples of these actions are discussed in greater detail below.

Title IX requires a school to take steps to protect the complainant as necessary, including taking interim steps before the final outcome of the investigation. The school should undertake these steps promptly once it has notice of a sexual harassment or violence allegation. The school should notify the complainant of his or her options to avoid contact with the alleged perpetrator and allow students to change academic or living situations as appropriate. For instance, the school may prohibit the alleged perpetrator from having any contact with the complainant pending the results of the school's investigation. When taking steps to separate the complainant and alleged perpetrator, a school should minimize the burden on the complainant, and thus should not, as a matter of course, remove complainants from classes or housing while allowing alleged perpetrators to remain. In addition, schools should ensure that complainants are aware of their Title IX rights and any available resources, such as counseling, health, and mental health services, and their right to file a complaint with local law enforcement. [41]

Schools should be aware that complaints of sexual harassment or violence may be followed by retaliation by the alleged perpetrator or his or her associates. For instance, friends of the alleged perpetrator may subject the complainant to name-calling and taunting. As part of their Title IX obligations, schools must have policies and procedures in place to protect against retaliatory harassment. At a minimum, schools must ensure that complainants and their parents, if appropriate, know how to report any subsequent problems, and should follow-up with complainants to determine whether any retaliation or new incidents of harassment have occurred.

When OCR finds that a school has not taken prompt and effective steps to respond to sexual harassment or violence, OCR will seek appropriate remedies for both the complainant and the broader student population. When conducting Title IX enforcement activities, OCR seeks to obtain voluntary compliance from recipients. When a recipient does not come into compliance voluntarily, OCR may initiate proceedings to withdraw Federal funding by the Department or refer the case to the U.S. Department of Justice for litigation.

Schools should proactively consider the following remedies when determining how to respond to sexual harassment or violence. These are the same types of remedies that OCR would seek in its cases.

Depending on the specific nature of the problem, remedies for the complainant might include, but are not limited to:[42]

- providing an escort to ensure that the complainant can move safely between classes and activities;

- ensuring that the complainant and alleged perpetrator do not attend the same classes;

- moving the complainant or alleged perpetrator to a different residence hall or, in the case of an elementary or secondary school student, to another school within the district;

- providing counseling services;

- providing medical services;

- providing academic support services, such as tutoring;

- arranging for the complainant to re-take a course or withdraw from a class without penalty, including ensuring that any changes do not adversely affect the complainant's academic record; and

- reviewing any disciplinary actions taken against the complainant to see if there is a causal connection between the harassment and the misconduct that may have resulted in the complainant being disciplined.[43]

Remedies for the broader student population might include, but are not limited to:

*Counseling and Training*

- offering counseling, health, mental health, or other holistic and comprehensive victim services to all students affected by sexual harassment or sexual violence, and notifying students of campus and community counseling, health, mental health, and other student services;

- designating an individual from the school's counseling center to be "on call" to assist victims of sexual harassment or violence whenever needed;

- training the Title IX coordinator and any other employees who are involved in processing, investigating, or resolving complaints of sexual harassment or sexual violence, including providing training on:

    - the school's Title IX responsibilities to address allegations of sexual harassment or violence

    - how to conduct Title IX investigations

• information on the link between alcohol and drug abuse and sexual harassment or violence and best practices to address that link;

• training all school law enforcement unit personnel on the school's Title IX responsibilities and handling of sexual harassment or violence complaints;

• training all employees who interact with students regularly on recognizing and appropriately addressing allegations of sexual harassment or violence under Title IX; and

• informing students of their options to notify proper law enforcement authorities, including school and local police, and the option to be assisted by school employees in notifying those authorities.

*Development of Materials and Implementation of Policies and Procedures*

• developing materials on sexual harassment and violence, which should be distributed to students during orientation and upon receipt of complaints, as well as widely posted throughout school buildings and residence halls, and which should include:

  • what constitutes sexual harassment or violence

  • what to do if a student has been the victim of sexual harassment or violence

  • contact information for counseling and victim services on and off school grounds

  • how to file a complaint with the school

  • how to contact the school's Title IX coordinator

  • what the school will do to respond to allegations of sexual harassment or violence, including the interim measures that can be taken

• requiring the Title IX coordinator to communicate regularly with the school's law enforcement unit investigating cases and to provide information to law enforcement unit personnel regarding Title IX requirements; [44]

• requiring the Title IX coordinator to review all evidence in a sexual harassment or sexual violence case brought before the school's disciplinary committee to determine whether the complainant is entitled to a remedy under Title IX that was not available through the disciplinary committee; [45]

- requiring the school to create a committee of students and school officials to identify strategies for ensuring that students:

    - know the school's prohibition against sex discrimination, including sexual harassment and violence

    - recognize sex discrimination, sexual harassment, and sexual violence when they occur

    - understand how and to whom to report any incidents

    - know the connection between alcohol and drug abuse and sexual harassment or violence

    - feel comfortable that school officials will respond promptly and equitably to reports of sexual harassment or violence;

- issuing new policy statements or other steps that clearly communicate that the school does not tolerate sexual harassment and violence and will respond to any incidents and to any student who reports such incidents; and

- revising grievance procedures used to handle sexual harassment and violence complaints to ensure that they are prompt and equitable, as required by Title IX.

*School Investigations and Reports to OCR*

- conducting periodic assessments of student activities to ensure that the practices and behavior of students do not violate the school's policies against sexual harassment and violence;

- investigating whether any other students also may have been subjected to sexual harassment or violence;

- investigating whether school employees with knowledge of allegations of sexual harassment or violence failed to carry out their duties in responding to those allegations;

- conducting, in conjunction with student leaders, a school or campus "climate check" to assess the effectiveness of efforts to ensure that the school is free from sexual harassment and violence, and using the resulting information to inform future proactive steps that will be taken by the school; and

- submitting to OCR copies of all grievances filed by students alleging sexual harassment or violence, and providing OCR with documentation related to the investigation of each complaint, such as witness interviews, investigator notes, evidence submitted by the parties, investigative reports and summaries, any final disposition letters, disciplinary records, and documentation regarding any appeals.

**Conclusion**

The Department is committed to ensuring that all students feel safe and have the opportunity to benefit fully from their schools' education programs and activities. As part of this commitment, OCR provides technical assistance to assist recipients in achieving voluntary compliance with Title IX.

If you need additional information about Title IX, have questions regarding OCR's policies, or seek technical assistance, please contact the OCR enforcement office that serves your state or territory. The list of offices is available at http://wdcrobcolp01.ed.gov/CFAPPS/OCR/contactus.cfm. Additional information about addressing sexual violence, including victim resources and information for schools, is available from the U.S. Department of Justice's Office on Violence Against Women (OVW) at http://www.ovw.usdoj.gov/. [46]

Thank you for your prompt attention to this matter. I look forward to continuing our work together to ensure that all students have an equal opportunity to learn in a safe and respectful school climate.

> Sincerely,
> /s/
> Russlynn Ali
> Assistant Secretary for Civil Rights

Westlaw. © 2014 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

Footnotes

1. The Department has determined that this Dear Colleague Letter is a "significant guidance document" under the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices, 72 Fed. Reg. 3432 (Jan. 25, 2007), *available at:* http://www.whitehouse.gov/sites/default/files/omb/assets/regulatory_matters_pdf/012507_good_guidance.pdf. OCR issues this and other policy guidance to provide recipients with information to assist them in meeting their obligations, and to provide members of the public with information about their rights, under the civil rights laws and implementing regulations that we enforce. OCR's legal authority is based on those laws and regulations. This letter does not add requirements to applicable law, but provides information and examples to inform recipients about how OCR evaluates whether covered entities are complying with their legal obligations. If you are interested in commenting on this guidance, please send an e-mail with your comments to mailto:OCR@ed.gov, or write to us at the following address: Office for Civil Rights, U.S. Department of Education, 400 Maryland Avenue, SW, Washington, DC 20202.

2. Use of the term "sexual harassment" throughout this document includes sexual violence unless otherwise noted. Sexual harassment also may violate Title IV of the Civil Rights Act of 1964 (42 U.S.C. § 2000c), which prohibits public school districts and colleges from discriminating against students on the basis of sex, among other bases. The U.S. Department of Justice enforces Title IV.

3. CHRISTOPHER P. KREBS ET AL., THE CAMPUS SEXUAL ASSAULT STUDY: FINAL REPORT xiii (Nat'l Criminal Justice Reference Serv., Oct. 2007), *available at* http://www.ncjrs.gov/pdffiles1/nij/grants/221153.pdf. This study also found that the majority of campus sexual assaults occur when women are incapacitated, primarily by alcohol. *Id.* at xviii.

4. *Id.* at 5-5.

5. U.S. Department of Education, Office of Postsecondary Education, Summary Crime Statistics (data compiled from reports submitted in compliance with the Clery Act), *available at* http://www2.ed.gov/admins/lead/safety/criminal2007-09.pdf. Under the Clery Act, forcible sex offenses are defined as any sexual act directed against another person, forcibly and/or against that person's will, or not forcibly or against the person's will where the victim is incapable of giving consent. Forcible sex offenses include forcible rape, forcible sodomy, sexual assault with an object, and forcible fondling. 34 C.F.R. Part 668, Subpt. D, App. A.

6. SIMONE ROBERS ET AL., INDICATORS OF SCHOOL CRIME AND SAFETY: 2010 at 104 (U.S. Dep't of Educ. & U.S. Dep't of Justice, Nov. 2010), *available at* http://nces.ed.gov/pubs2011/2011002.pdf.

7. ERIKA HARRELL & MICHAEL R. RAND, CRIME AGAINST PEOPLE WITH DISABILITIES, 2008 (Bureau of Justice Statistics, U.S. Dep't of Justice, Dec. 2010), *available at* http://bjs.ojp.usdoj.gov/content/pub/pdf/capd08.pdf.

8. The *2001 Guidance* is available on the Department's Web site at http://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf. This letter focuses on peer sexual harassment and violence. Schools' obligations and the appropriate response to sexual harassment and violence committed by employees may be different from those described in this letter. Recipients should refer to the *2001 Guidance* for further information about employee harassment of students.

Case 1:15-cv-11557-FDS Document 21-4 Filed 06/09/15 Page 14 of 16

Appendix 4-E. Dear Colleague Letter: Sexual Violence, Lentz School Sec. Appendix...

9   Title IX also prohibits gender-based harassment, which may include acts of verbal, nonverbal, or physical aggression, intimidation, or hostility based on sex or sex-stereotyping, even if those acts do not involve conduct of a sexual nature. The Title IX obligations discussed in this letter also apply to gender-based harassment. Gender-based harassment is discussed in more detail in the *2001 Guidance,* and in the 2010 Dear Colleague letter on Harassment and Bullying, which is available at http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf.

10  *See, e.g.*, Jennings v. University of North Carolina, at Chapel Hill, 444 F.3d 255, 268, 208 Ed. Law Rep. 48 (4th Cir. 2006), as amended on reh'g, (June 8, 2006) and on reh'g en banc, 482 F.3d 686, 218 Ed. Law Rep. 89 (4th Cir. 2007) (acknowledging that while not an issue in this case, a single incident of sexual assault or rape could be sufficient to raise a jury question about whether a hostile environment exists, and noting that courts look to Title VII cases for guidance in analyzing Title IX sexual harassment claims); Vance v. Spencer County Public School Dist., 231 F.3d 253, 259 n.4, 148 Ed. Law Rep. 616, 2000 FED App. 0385P (6th Cir. 2000) ("'[w]ithin the context of Title IX, a student's claim of hostile environment can arise from a single incident'" (quoting Doe v. School Administrative Dist. No. 19, 66 F. Supp. 2d 57, 62, 139 Ed. Law Rep. 399 (D. Me. 1999))); Soper v. Hoben, 195 F.3d 845, 855, 139 Ed. Law Rep. 807, 1999 FED App. 0375P (6th Cir. 1999) (explaining that rape and sexual abuse "obviously qualif[y] as … severe, pervasive, and objectively offensive sexual harassment"); *see also* Berry v. Chicago Transit Authority, 618 F.3d 688, 692, 109 Fair Empl. Prac. Cas. (BNA) 1831, 93 Empl. Prac. Dec. (CCH) P 43974 (7th Cir. 2010) (in the Title VII context, "a single act can create a hostile environment if it is severe enough, and instances of uninvited physical contact with intimate parts of the body are among the most severe types of sexual harassment"); Turner v. The Saloon, Ltd., 595 F.3d 679, 686, 22 A.D. Cas. (BNA) 1481, 108 Fair Empl. Prac. Cas. (BNA) 673, 15 Wage & Hour Cas. 2d (BNA) 1448, 93 Empl. Prac. Dec. (CCH) P 43824 (7th Cir. 2010) (noting that "'[o]ne instance of conduct that is sufficiently severe may be enough,'" which is "especially true when the touching is of an intimate body part" (quoting Jackson v. County of Racine, 474 F.3d 493, 499, 99 Fair Empl. Prac. Cas. (BNA) 1025, 89 Empl. Prac. Dec. (CCH) P 42661 (7th Cir. 2007))); McKinnis v. Crescent Guardian, Inc., 189 Fed. Appx. 307, 310, 98 Fair Empl. Prac. Cas. (BNA) 1107 (5th Cir. 2006) (holding that "'the deliberate and unwanted touching of [a plaintiff's] intimate body parts can constitute severe sexual harassment'" in Title VII cases (quoting Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 436, 96 Fair Empl. Prac. Cas. (BNA) 1793, 11 Wage & Hour Cas. 2d (BNA) 142, 87 Empl. Prac. Dec. (CCH) P 42222, 152 Lab. Cas. (CCH) P 35090 (5th Cir. 2005))).

11  Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities. For example, Title IX protects a high school student participating in a college's recruitment program, a visiting student athlete, and a visitor in a school's on-campus residence hall. Title IX also protects employees of a recipient from sexual harassment. For further information about harassment of employees, see *2001 Guidance* at n.1.

12  This is the standard for administrative enforcement of Title IX and in court cases where plaintiffs are seeking injunctive relief. *See 2001 Guidance* at ii-v, 12–13. The standard in private lawsuits for monetary damages is actual knowledge and deliberate indifference. *See* Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, 643, 119 S. Ct. 1661, 143 L. Ed. 2d 839, 134 Ed. Law Rep. 477 (1999).

13  In states with mandatory reporting laws, schools may be required to report certain incidents to local law enforcement or child protection agencies.

14  Schools should refer to the *2001 Guidance* for additional information on confidentiality and the alleged perpetrator's due process rights.

15  For example, the alleged harasser may have a right under FERPA to inspect and review portions of the complaint that directly relate to him or her. In that case, the school must redact the complainant's name and other identifying information before allowing the alleged harasser to inspect and review the sections of the complaint that relate to him or her. In some cases, such as those where the school is required to report the incident to local law enforcement or other officials, the school may not be able to maintain the complainant's confidentiality.

16  34 C.F.R. § 106.9.

17  *Id.* § 106.8(a).

18  *Id.* § 106.8(b).

19  *Id.* § 106.9(a).

20  *Id.* § 106.8(a).

21  *Id.* § 106.8(b). Title IX also requires recipients to adopt and publish grievance procedures for employee complaints of sex discrimination.

22  These procedures must apply to all students, including athletes. If a complaint of sexual violence involves a student athlete, the school must follow its standard procedures for resolving sexual violence complaints. Such complaints must not be addressed solely by athletics department procedures. Additionally, if an alleged perpetrator is an elementary or secondary student with a disability, schools must follow the procedural safeguards in the Individuals with Disabilities Education Act (at 20 U.S.C. § 1415 and 34 C.F.R.

Appendix 4-E. Dear Colleague Letter: Sexual Violence, Lentz School Sec. Appendix...

Case 1:15-cv-11557-FDS Document 21-4 Filed 06/09/15 Page 15 of 16

| | |
|---|---|
| | §§ 300.500 to 300.519, 300.530 to 300.537) as well as the requirements of Section 504 of the Rehabilitation Act of 1973 (at 34 C.F.R. §§ 104.35 to 104.36) when conducting the investigation and hearing. |
| 23 | A school may not absolve itself of its Title IX obligations to investigate and resolve complaints of sexual harassment or violence by delegating, whether through express contractual agreement or other less formal arrangement, the responsibility to administer school discipline to school resource officers or "contract" law enforcement officers. See 34 C.F.R. § 106.4. |
| 24 | "Outcome" does not refer to information about disciplinary sanctions unless otherwise noted. Notice of the outcome is discussed in greater detail in Section D below. |
| 25 | In one recent OCR sexual violence case, the prosecutor's office informed OCR that the police department's evidence gathering stage typically takes three to ten calendar days, although the delay in the school's investigation may be longer in certain instances. |
| 26 | See, e.g., Desert Palace, Inc. v. Costa, 539 U.S. 90, 99, 123 S. Ct. 2148, 156 L. Ed. 2d 84, 91 Fair Empl. Prac. Cas. (BNA) 1569, 84 Empl. Prac. Dec. (CCH) P 41403, 61 Fed. R. Evid. Serv. 708 (2003) (noting that under the "conventional rule of civil litigation," the preponderance of the evidence standard generally applies in cases under Title VII); Price Waterhouse v. Hopkins, 490 U.S. 228, 252–55, 109 S. Ct. 1775, 104 L. Ed. 2d 268, 49 Fair Empl. Prac. Cas. (BNA) 954, 49 Empl. Prac. Dec. (CCH) P 38936 (1989) (approving preponderance standard in Title VII sex discrimination case) (plurality opinion); *id.* at 260 (White, J., concurring in the judgment); *id.* at 261 (O'Connor, J., concurring in the judgment). The *2001 Guidance* noted (on page vi) that "[w]hile Gebser and Davis made clear that Title VII agency principles do not apply in determining liability for money damages under Title IX, the Davis Court also indicated, through its specific references to Title VII caselaw, that Title VII remains relevant in determining what constitutes hostile environment sexual harassment under Title IX." *See also* Jennings v. University of North Carolina, 482 F.3d 686, 695, 218 Ed. Law Rep. 89 (4th Cir. 2007) ("We look to case law interpreting Title VII of the Civil Rights Act of 1964 for guidance in evaluating a claim brought under Title IX."). |
| 27 | OCR's Case Processing Manual is available on the Department's Web site, at http://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.html. |
| 28 | The Title IX regulations adopt the procedural provisions applicable to Title VI of the Civil Rights Act of 1964. *See* 34 C.F.R. § 106.71 ("The procedural provisions applicable to Title VI of the Civil Rights Act of 1964 are hereby adopted and incorporated herein by reference."). The Title VI regulations apply the Administrative Procedure Act to administrative hearings required prior to termination of Federal financial assistance and require that termination decisions be "supported by and in accordance with the reliable, probative and substantial evidence." 5 U.S.C. § 556(d). The Supreme Court has interpreted "reliable, probative and substantial evidence" as a direction to use the preponderance standard. See Steadman v. S. E. C., 450 U.S. 91, 98–102, 101 S. Ct. 999, 67 L. Ed. 2d 69, Fed. Sec. L. Rep. (CCH) P 97878 (1981). |
| 29 | Access to this information must be provided consistent with FERPA. For example, if a school introduces an alleged perpetrator's prior disciplinary records to support a tougher disciplinary penalty, the complainant would not be allowed access to those records. Additionally, access should not be given to privileged or confidential information. For example, the alleged perpetrator should not be given access to communications between the complainant and a counselor or information regarding the complainant's sexual history. |
| 30 | For instance, if an investigation or hearing involves forensic evidence, that evidence should be reviewed by a trained forensic examiner. |
| 31 | As noted previously, "outcome" does not refer to information about disciplinary sanctions unless otherwise noted. |
| 32 | In 1994, Congress amended the General Education Provisions Act (GEPA), of which FERPA is a part, to state that nothing in GEPA "shall be construed to affect the applicability of title VI of the Civil Rights Act of 1964, title IX of Education Amendments of 1972, title V of the Rehabilitation Act of 1973, the Age Discrimination Act, or other statutes prohibiting discrimination, to any applicable program." 20 U.S.C. § 1221(d). The Department interprets this provision to mean that FERPA continues to apply in the context of Title IX enforcement, but if there is a direct conflict between the requirements of FERPA and the requirements of Title IX, such that enforcement of FERPA would interfere with the primary purpose of Title IX to eliminate sex-based discrimination in schools, the requirements of Title IX override any conflicting FERPA provisions. See *2001 Guidance* at vii. |
| 33 | This information directly relates to the complainant and is particularly important in sexual harassment cases because it affects whether a hostile environment has been eliminated. Because seeing the perpetrator may be traumatic, a complainant in a sexual harassment case may continue to be subject to a hostile environment if he or she does not know when the perpetrator will return to school or whether he or she will continue to share classes or a residence hall with the perpetrator. This information also directly affects a complainant's decision regarding how to work with the school to eliminate the hostile environment and prevent its recurrence. For instance, if a complainant knows that the perpetrator will not be at school or will be transferred to other classes or another residence hall for the rest of the year, the complainant may be less likely to want to transfer to another school or change classes, but if the perpetrator will be returning to school after a few days or weeks, or remaining in the complainant's classes or residence hall, the complainant may want to transfer schools or change classes to avoid contact. Thus, the complainant cannot make an informed decision about how best to respond without this information. |

Appendix 4-E. Dear Colleague Letter: Sexual Violence, Lentz School Sec. Appendix...

Case 1:15-cv-11557-FDS   Document 21-4   Filed 06/09/15   Page 16 of 16

| | |
|---|---|
| 34 | Under the FERPA regulations, crimes of violence include arson; assault offenses (aggravated assault, simple assault, intimidation); burglary; criminal homicide (manslaughter by negligence); criminal homicide (murder and non-negligent manslaughter); destruction, damage or vandalism of property; kidnapping/abduction; robbery; and forcible sex offenses. Forcible sex offenses are defined as any sexual act directed against another person forcibly or against that person's will, or not forcibly or against the person's will where the victim is incapable of giving consent. Forcible sex offenses include rape, sodomy, sexual assault with an object, and forcible fondling. Non-forcible sex offenses are incest and statutory rape. 34 C.F.R. Part 99, App. A. |
| 35 | 34 C.F.R. § 99.31(a)(13). For purposes of 34 C.F.R. §§ 99.31(a)(13) to (14), disclosure of "final results" is limited to the name of the alleged perpetrator, any violation found to have been committed, and any sanction imposed against the perpetrator by the school. 34 C.F.R. § 99.39. |
| 36 | 34 C.F.R. § 99.31(a)(14). |
| 37 | For purposes of the Clery Act, "outcome" means the institution's final determination with respect to the alleged sex offense and any sanctions imposed against the accused. 34 C.F.R. § 668.46(b)(11)(vi)(B). |
| 38 | 34 C.F.R. § 668.46(b)(11)(vi)(B). Under the Clery Act, forcible sex offenses are defined as any sexual act directed against another person forcibly or against that person's will, or not forcibly or against the person's will where the person is incapable of giving consent. Forcible sex offenses include forcible rape, forcible sodomy, sexual assault with an object, and forcible fondling. Non-forcible sex offenses include incest and statutory rape. 34 C.F.R. Part 668, Subpt. D, App. A. |
| 39 | 34 C.F.R. § 99.33(c). |
| 40 | The Department's Higher Education Center for Alcohol, Drug Abuse, and Violence Prevention (HEC) helps campuses and communities address problems of alcohol, other drugs, and violence by identifying effective strategies and programs based upon the best prevention science. Information on HEC resources and technical assistance can be found at www.higheredcenter.org. |
| 41 | The Clery Act requires postsecondary institutions to develop and distribute a statement of policy that informs students of their options to notify proper law enforcement authorities, including campus and local police, and the option to be assisted by campus personnel in notifying such authorities. The policy also must notify students of existing counseling, mental health, or other student services for victims of sexual assault, both on campus and in the community. 20 U.S.C. §§ 1092(f)(8)(B)(v) to (vi). |
| 42 | Some of these remedies also can be used as interim measures before the school's investigation is complete. |
| 43 | For example, if the complainant was disciplined for skipping a class in which the harasser was enrolled, the school should review the incident to determine if the complainant skipped the class to avoid contact with the harasser. |
| 44 | Any personally identifiable information from a student's education record that the Title IX coordinator provides to the school's law enforcement unit is subject to FERPA's nondisclosure requirements. |
| 45 | For example, the disciplinary committee may lack the power to implement changes to the complainant's class schedule or living situation so that he or she does not come in contact with the alleged perpetrator. |
| 46 | OVW also administers the Grants to Reduce Domestic Violence, Dating Violence, Sexual Assault, and Stalking on Campus Program. This Federal funding is designed to encourage institutions of higher education to adopt comprehensive, coordinated responses to domestic violence, dating violence, sexual assault, and stalking. Under this competitive grant program, campuses, in partnership with community-based nonprofit victim advocacy organizations and local criminal justice or civil legal agencies, must adopt protocols and policies to treat these crimes as serious offenses and develop victim service programs and campus policies that ensure victim safety, offender accountability, and the prevention of such crimes. OVW recently released the first solicitation for the Services, Training, Education, and Policies to Reduce Domestic Violence, Dating Violence, Sexual Assault and Stalking in Secondary Schools Grant Program. This innovative grant program will support a broad range of activities, including training for school administrators, faculty, and staff; development of policies and procedures for responding to these crimes; holistic and appropriate victim services; development of effective prevention strategies; and collaborations with mentoring organizations to support middle and high school student victims. |

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.