UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 15-11557-FDS |
| v. ) | |
| ) | **Leave to File Granted** |
| BRANDEIS UNIVERSITY, ) | **on May 28, 2015** |
| ) | |
| Defendant. ) | |

**DEFENDANT BRANDEIS UNIVERSITY'S SUR-REPLY IN OPPOSITION
TO PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM**

Defendant Brandeis University ("Brandeis" or "the University") hereby submits its sur-reply in opposition to Plaintiff John Doe's ("Doe") Motion to Proceed Under a Pseudonym. In his reply brief, Doe advances four reasons why pseudonymity is appropriate in this case: (1) Doe revealed his identity only in response to J.C.'s social media and press campaign, and under "strict conditions" of anonymity; (2) Doe will suffer reputational harm if his name is revealed on the public docket; (3) there is little public interest in Doe's identity because of the "purely legal" nature of this case; and (4) Brandeis has not demonstrated that it would be prejudiced by Doe's pseudonymity. These positions lack legal support, contradict the evidence of record, and/or ignore the arguments set forth in Brandeis' opposition memorandum. For these reasons, and the reasons stated in Brandeis' opposition memorandum, the University respectfully requests that the Court deny Doe's Motion to Proceed Under a Pseudonym.

I.      Doe Revealed His Identity to Third Parties for the
        Purpose of Attacking Brandeis and its Special Examiner Process

Doe admits that he revealed his identity and information about the Special Examiner Process to several news outlets. Docket No. 16 at 1-15. He nevertheless contends that he should

1

remain anonymous because he only disclosed this information defensively, and on the condition of anonymity. Id. at 16. This argument is baseless. As noted in Brandeis' opposition memorandum, courts will consider the extent to which the party seeking pseudonymity has taken measures to keep his identity from third parties. See Doe v. Megless, 654 F.3d 404, 409 (3d Cir. 2011). Where the movant's identity is already known to third parties, the purpose underlying the motion for pseudonymity is undermined, and the motion ought to be denied. See, e.g., Doe v. Univ. of R.I., No. 93-0560B, 1993 WL 667341, at *3 (D.R.I. Dec. 28, 1993) (plaintiff not permitted to proceed under pseudonym in part because her identity was well known by other university students and she was named as a party in a prior related litigation). This is true even where, as here, the movant's name was revealed only to a limited number of third parties. See, e.g., Doe v. Word of Life Fellowship, Inc., No. 11-40077-TSH, 2011 WL 2968912, at *2 (D. Mass. July 18, 2011) (denying motion to proceed under pseudonym where movant's identity had already been disclosed to police department and a municipal agency).

Doe, who bears the burden of persuasion on this issue, has not presented any legal authority suggesting that pseudonymity is appropriate where the movant reveals his identity defensively or under certain conditions. He also has not explained how, or why, his position makes any practical sense. Under Doe's logic, because J.C. "started it," Doe is now free to disclose his identity to an unlimited number of individuals, provided that he obtains assurances of confidentiality from each of them. The Court should not endorse such a tenuous and inequitable position.

Furthermore, Doe's suggestion that he revealed his identity "solely as a defensive measure" is inaccurate. Although Doe spoke to news outlets to defend himself against J.C.'s public statements, Doe simultaneously attacked Brandeis and its Special Examiner Process. For

example, Doe told news reporters that Brandeis subjected him to a "biased" internal investigation that amounted to a "flagrant disregard for his due-process rights." Docket No. 12, Exs. A, C. If Doe's sole purpose was to defend himself against J.C.'s statements, Doe simply could have told those reporters that J.C.'s account was replete with falsehoods and exaggerations.[1] Instead, Doe decided to go on the offensive against Brandeis. He cannot now claim that he spoke to news outlets solely to clear his own name.

II.     Doe Has Not Shown That He Will Suffer Reputational
        Harm If He Is Required to Proceed Under His Own Name

Doe contends that he will suffer reputational harm if his name is revealed on the Court's docket. Docket No. 16 at 17. In support, Doe states that, when two employers found out about "the situation at Brandeis," they took adverse actions against him. Id. at 17-18. Doe also notes that he has been taunted as a "rapist" by "J.C.'s allies," and fears that similar abuse will continue. Id. at 3, 18.

Notably, Doe fails to show that this alleged ridicule and reputational harm has resulted from materials that will <u>appear on the Court docket </u>(e.g. the allegedly "leaked" Special Examiner's report)[2], rather than from J.C.'s public comments. Following the Special Examiner Process, J.C. launched a press campaign in which he characterized Doe as a rapist and an "attacker." Id. at 2, 4. These "predatory labels" were <u>not</u> "given to [Doe] by Brandeis," id. at 3, but were used only by J.C and his "allies." Despite Doe's contentions, Brandeis never once

---

[1] Doe criticizes Brandeis for "fail[ing] to correct" J.C.'s statements to the press. Docket No. 16 at 1. Brandeis, however, had no obligation to do so. In fact, Brandeis was prohibited from correcting J.C.'s statements under the Family Educational Rights and Privacy Act. Further, it is not possible for Brandeis to correct each and every inaccurate statement that its students make to news outlets. Brandeis had no control over what J.C. told the press, and should not be penalized by J.C.'s actions.

[2] Doe has not presented any factual basis for the allegation that Brandeis "leaked" the Special Examiner's report.

suggested that Doe was guilty of "reprehensible" or "heinous" "sexual crimes." Id. at 15. By advancing this argument, Doe improperly seeks to hold Brandeis accountable for statements made by J.C. and other students.

Doe recognizes that J.C.'s comments contained embellishments and factual errors that are not reflected in the Special Examiner's materials. See id. at 5. In fact, Doe maintains that the actual record reflects "benign, everyday occurrences [from] a nearly two-year consensual relationship." Id. at 3. He further contends that the Special Examiner's conclusions were, among other things, "ludicrous," "erroneous," and "patently arbitrary." Complaint ¶¶ 98, 118, 225. Given Doe's own view of the record, he cannot plausibly claim that it contains information that will subject him to reputational harm. Indeed, to the extent that J.C.'s statements mischaracterized Brandeis' findings, Doe can seek to undo any potential reputational harm caused by J.C.'s exaggerations by prosecuting this action under his own name. See Megless, 654 F.3d at 410 (finding that "litigating publicly will afford [plaintiff] the opportunity to clear his name in the community" and rid of the stigma of pedophilia). If Doe's name is left off the docket, however, the public will only have the information that they gathered from J.C. and sources that quoted him.

III.   This Case Is Not Necessarily Based on "Purely Legal" Issues

Doe maintains that pseudonymity is warranted because the issues in this case are "purely legal" ones. Docket No. 16 at 18. To some extent, Brandeis agrees with Doe and, accordingly, has filed a motion to dismiss Doe's Complaint under Fed. R. Civ. P. 12(b)(6). Docket No. 19. If, however, the Court were to deny any part of Brandeis' motion to dismiss, then Doe would surely seek—over Brandeis' objection—to conduct fact discovery on various issues, including the sufficiency of the evidence underlying the Special Examiner's findings, and the nature of any

communications between Brandeis and Doe's former and prospective employers.  Unless Doe is willing to forego such discovery or concede that his Complaint is deficient as a matter of law, Doe cannot show conclusively that the issues in this case are "purely legal" ones.  Furthermore, as noted in Brandeis' opposition memorandum, any factual issues in this case would hold considerable public interest.  See Docket No. 12, Ex. C (discussing a "wave of cases" brought under Title IX by men found responsible for sexual misconduct).

IV.     Brandeis Will Be Prejudiced If Doe Is Permitted to
        Attack the University Under the Cloak of Pseudonymity

Doe contends that Brandeis will not be prejudiced if Doe is permitted to proceed under a pseudonym.  Docket No. 16 at 18.  In support, Doe cites to several instances in which courts have allowed the use of pseudonyms in cases involving sexual misconduct.  Doe's argument, however, sidesteps two essential points.  First, plaintiffs in Title IX cases often litigate under their true names, even where the underlying allegations involve forcible sexual assault.  See, e.g., Bleiler v. Coll. of Holy Cross, No. 11-11541-DJC (D. Mass. filed Sept. 1, 2011); Yu v. Vassar Coll., No. 13-CV-4373 RA (S.D.N.Y. filed June 25, 2013); Sahm v. Miami Univ., No. 14-CV-698 (S.D. Ohio filed Sept. 3, 2014).  Second, Doe stands on a different footing than the plaintiffs in his cited cases because Doe has fomented significant public criticism[3] about Brandeis and its Special Examiner Process.  See Docket No. 12, Exs. A-E.  Given Doe's actions to date, it would

---

[3] According to Doe, Brandeis has argued that Doe waived his privacy rights by filing a complaint with the U.S. Department of Education's Office for Civil Rights ("OCR").  Docket No. 16 at 16 n. 3.  That is not correct.  In its opposition memorandum, Brandeis argued that Doe waived his privacy rights because he provided his OCR complaint, and other identifying information, to news reporters.  Docket No. 11 at 6.  Doe also misconstrues the reasons why OCR decided to close Doe's administrative complaint.  Doe acknowledges that, even where "[t]he same allegations have been filed … in federal court" OCR will keep an administrative case open if it "has obtained sufficient evidence to support a finding" against the educational institution.  Docket No. 16 at 12 n. 1; OCR, *Case Processing Manual* § 110(b).  In this case, OCR unequivocally stated that it was closing Doe's case because, in part, it "ha[d] not obtained sufficient evidence to support a finding with regard to the allegations filed with OCR."

be unfair and inequitable if Brandeis were forced to defend itself "publicly while [Doe] could make his accusations from behind a cloak of anonymity." <u>Mateer v. Ross, Suchoff, Egert, Hankin, Maidenbaum & Mazel, P.C.</u>, No. 96 CIV. 1756 (LAP), 1997 WL 171011, at *6 (S.D.N.Y. Apr. 10, 1997).

## Conclusion

For these reasons and the reasons stated in Brandeis' opposition memorandum, Brandeis respectfully requests that the Court deny Doe's Motion to Proceed Under a Pseudonym.

Respectfully submitted,

BRANDEIS UNIVERSITY,

By its attorneys,

/s/ Antonio Moriello
Alan D. Rose (BBO #427280)
Antonio Moriello (BBO #685928)
Rose, Chinitz & Rose
One Beacon Street, 23rd Floor
Boston, Massachusetts  02108
(617) 536-0040
Fax: (617) 536-4400
adr@rose-law.net
am@rose-law.net

Dated:  June 16, 2015

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via mail to those indicated as non-registered participants on June 16, 2015.

/s/ Antonio Moriello