# Exhibit A

# Rights and Responsibilities





Civility  Integrity  Respect  Citizenship  Lifelong Learning  Embrace of Diversity

Department of Student Rights and Community Standards

## Brandeis University
### Department of Student Rights and Community Standards
**415 South Street – MS 206**
**Waltham, MA 02454**
**Phone: 781.736.5070**
**Fax: 781.736.3579**
**www. brandeis.edu/studentaffairs/srcs**

## 2011 – 2012

August, 2011

This booklet, *Rights and Responsibilities*, is a guide to our Brandeis community regarding the standards that define us.  It is a reflection of what over the years has formed the policies and practices under which we all work and learn at our best.

*Rights and Responsibilitie*s also contains the procedures the University employs when a member of the community believes that a student has violated a campus policy.   This process, though it has elements common to most private college campuses in America, is ultimately a Brandeis-grown and nurtured one that is constantly evaluated and tweaked by the community every year.

A careful read of this document should expose its nuance as a statement of rights that we believe our students should hold.  The description of student rights is the product of collaboration between our Union government leadership and the staff who administer our student judicial process. Students seeking peer assistance when encountering the judicial process can look to both the Department of Student Rights and Community Standards, and to the Office of Student Rights and Advocacy – a function of the Union.

I hope you have time to read this book and become familiar with it when you receive it.   By becoming familiar with the various policies on campus in advance, much difficulty can be avoided by understanding policies rather than abusing them.

Students, faculty and staff who are interested in serving on conduct hearing boards or who have questions about policies or procedures impacting community standards should be in touch with Dean Gendron, Director of Student Rights and Community Standards.

Have a great year and be safe.

Rick Sawyer
Vice President and Dean of Student Life

1.5. identify himself or herself with a University Identification Card when requested by an authorized University official.  The official must provide identification if the student requests it.

1.6. utilize the University Identification Card exclusively for the student's own use in obtaining University services and privileges.  A student may obtain his or her Identification Card at the Campus Card Office at the beginning of the student's first academic year.  A student's Identification Card and its applications are not transferable.  Lost Identification Cards must be reported to the Campus Card Office and the Department of Public Safety, and then replaced as soon as possible. Damaged cards will be replaced free of charge, but there is a fee to replace a lost card.  The student must turn in the damaged card to the Campus Card Office.

1.7. seek and/or obtain only those University privileges or services (check cashing, student elections, athletic events, group examinations, registration, library, campus technologies, etc.) to which the student is properly entitled.

1.8. refrain from encouraging, enticing, influencing or enlisting another student to violate any of the University standards or policies listed in this handbook or other official University documents.

**Section 2. Respect for the Health, Safety, and Rights of Community Members**
2.0. All members of the community share the responsibility for protecting and maintaining community health and safety and the rights of other persons.      Concentrated housing, varied activities, and the needs of students, faculty, and staff for freedom to pursue their own educational tasks and complete job-related responsibilities free from hazards and intrusions, requires the cooperation of all in maintaining these standards.

A student is expected and required to:
2.1. respect the integrity and personal rights of individuals.  The University will not tolerate any behavior that:
> 2.1.a. intimidates.
> 2.1.b. threatens.
> 2.1.c. harasses. (see Section 7 regarding harassment)
> 2.1.d. physically harms.  (some examples: hitting, pushing, or physical altercations/violence of any kind)
> 2.1.e. invades personal privacy.
> 2.1.f. endangers the health, safety, or welfare of any other person or oneself on or off campus.  Due to the seriousness of any integrity or personal rights accusations and accompanying issues that may impact the Brandeis community, any student involved in such an incident may be placed on campus restriction or emergency suspension pending the outcome of any investigation or conduct process.

2.2. comply with instructions of University officials.

2.3. comply with the final decision of a conduct board or administrative action.

2.4. recognize and allow for the legitimate functions of the University.  Obstructing or disrupting teaching, research, administrative, public service, disciplinary or other authorized functions is unacceptable.

2.5. refrain from using computers, cellular phones, tablets, cameras, or other electronic devices in any manner that causes disruption to or invades another individual's privacy in a classroom, library

or other campus facility or any campus event.  This includes misuse of computer and/or cellular devices with photographic, video, or text messaging capability (see Section 17).

2.6. use safety equipment and/or initiate safety procedures only when it is necessary (this includes, but is not limited to, fire equipment, fire alarms, fire drills, and exit lights).  Initiating a false fire alarm or issuing any type of threat is strictly prohibited.

2.7. avoid and refrain from discrimination on the basis of race, sex, color, national origin, religion, age, gender, gender identity and expression, sexual orientation, disability, veteran status, or genetic information (see Section 7).

2.8. avoid and refrain from hazing: initiating or disciplining fellow students, often in the nature of forced alcohol consumption, humiliating or painful ordeals (see Appendix A for related Massachusetts law).

2.9. observe the prohibition of on-campus possession of firearms (including blank pistols and replicas, bb guns, and pellet guns), explosives, knives, fireworks, nun-chucks, paintball guns, and other articles or substances usable as weapons.

2.10. obtain clearance from the Department of Student Activities for the use of loud speakers or other sound amplification equipment at outdoor events.

2.11. refrain from bringing any dog or animal onto the University campus without a leash. Students are prohibited from allowing any unrestrained animal to enter any campus building, or allowing any restrained or unrestrained animal (other than guide and service animals) to enter dining service buildings, campus centers, residence halls or libraries.

2.12. assume responsibility for the actions, damage, or injuries caused by, or costs incurred for the services related to hosting a guest on campus.  The University reserves the right to impose requirements related to the safety or security concerns of a visit by a guest, and to assess the host for the cost of meeting these requirements.

2.13. comply with the regulations enumerated in other official University publications and documents (e.g., library policies, computer use policies, Dining Services policies, residence halls and dining services license, parking policies, and financial aid policies).

### Section 3. Sexual Responsibility – Seeking and Communicating Consent
3.0. Brandeis University expects all members of the University community to treat one another with respect.  Policies regarding sexual misconduct emphasize personal accountability as well as recognition of the impact of one's behavior on others.  Students are encouraged to examine their own values, communicate with one another clearly, and acknowledge the condition and requests of others.  Incapacity to consent to sexual activity or compromised communication can result when individuals are under the influence of intoxicants such as alcohol and other drugs.  If both parties do not consent, or are unable to consent to a sexual act, then the interaction could be defined as sexual misconduct or sexual assault.  Consent must be sought and clearly understood and communicated before engaging in any sexual activities.  Due to the seriousness of sexual misconduct accusations and accompanying issues that may impact the Brandeis community, any student accused of sexual misconduct may be placed on campus restriction or emergency suspension pending the outcome of any investigation or conduct process.

3.1. Students are prohibited from engaging in sexual misconduct. Sexual contact that occurs without the explicit consent of each student involved may be considered sexual misconduct. Consent must be clearly communicated, mutual, non-coercive, and given free of force or threat of force. A student who is physically or mentally incapacitated by drugs, alcohol, or other circumstances is not capable of giving consent. Physical or mental incapacity means the lack of ability to appreciate the fact that the situation is sexual, and/or the inability to rationally and reasonably appreciate the nature and extent of that situation. Evidence of ingestion of drugs and/or alcohol may raise a presumption of physical and/or mental incapacity.

3.2. Causing incapacitation or intoxication, or taking advantage of someone's incapacitation or intoxication for the purpose of engaging in sexual activity is considered sexual misconduct.

3.3. Consent or lack of consent may be communicated verbally or through actions but if a refusal to engage in sexual activity is communicated at any time then the activity must cease immediately. Lack of consent may also be inferred from the use of force, threat, physical intimidation, or advantage gained by the accuser's mental or physical incapacity or impairment of which the accused was aware or should have been aware. Prior sexual activity or an existing acquaintance, friendship, or relationship that has been sexual in nature does not constitute consent for the continuation or renewal of sexual activity.

**Services Available to Victims of Sexual Assault and Other Sex Offenses:** The following list identifies services, summarizes relevant policies, and illustrates the University's compliance with the requirements of the 1992 Higher Education Reauthorization Act, section 485(f).

Students should report sexual misconduct, rape, sexual assault or other sex offenses to the Department of Public Safety. The Department of Public Safety has full police powers and the staff is trained to provide accurate information on preserving evidence and the options for criminal prosecution, campus disciplinary proceedings, or both.

The staff in the Department of Public Safety and the staff in the Division of Student Affairs are available to assist students in notifying local police if the student chooses.

Campus disciplinary proceedings may be initiated against a student through the Department of Student Rights and Community Standards (see Sections 3.1, 3.2, 3.3 and/or Section 7 of this publication). To report sexual misconduct against a staff or faculty member contact the University's Vice President for Human Resources.

Section 19.8 of this publication describes the right of an accused student as well as the accuser to bring an adviser of his or her choice from the University community. This section also permits the passive assistance of legal counsel by either party but only if coexisting criminal charges are pending resulting from the same incident.

Possible sanctions to be imposed following the completion of campus disciplinary proceedings are included in Section 21. The accuser will be informed of the outcome of disciplinary proceedings in which sexual assault is alleged.

A brochure published by the Division of Student Affairs lists many helping services both on campus (e.g., Counseling and Rape Crisis Hotline, Office of Human Resources, Psychological Counseling Center) and off campus (e.g., Boston Area Rape Crisis Center).

The staff in the Division of Student Affairs is available after an alleged sexual assault incident to assist students in making any reasonably available changes in academic or living situations.  The Division of Student Affairs and the Office of Human Resources offer educational programs on sexual assault.

Brandeis' Title IX Coordinator, Scot Bemis, is also available to meet with students and receive complaints of sexual misconduct.  Mr. Bemis, the University's Vice President for Human Resources, oversees the University's investigation and resolution of all Title IX complaints.  Mr. Bemis can be reached at 781-736-4464.

### Section 4. Maintenance of Academic Integrity

4.0. Every member of the University community is expected to maintain the highest standards of academic integrity.  A student shall not submit work that is falsified or is not the result of the student's own effort.  Infringement of academic honesty by a student subjects that student to serious penalties, which may include failure on the assignment, failure in the course, suspension from the University or other sanctions (see Section 21).  A student who is in doubt regarding standards of academic honesty in a course or assignment should consult the faculty member responsible for that course or assignment before submitting the work.  A student's lack of understanding is not a valid defense to a charge of academic dishonesty.

4.1. A student's name on any written exercise (e.g., examination, report, thesis, theme, notebook, laboratory report, computer program, etc.), or in association with an oral presentation constitutes a representation that the work is the result of that student's own thought and study.  Such work shall be stated in the student's own words, and produced without the assistance of others, except for quotation marks, references, and footnotes that accurately acknowledge the use of other sources (including sources found on the Internet).  Talking during an examination, or possession or use of unauthorized materials or equipment during an examination constitutes an infringement of academic honesty.  Attempting to receive credit for work not originally submitted also constitutes an infringement of academic honesty.

4.2. In some instances, a student may be authorized by a faculty member to work jointly with (an)other student(s) in solving problems or completing projects.  However, students may not collaborate on assignments without explicit permission from the instructor.  To provide, either knowingly or through negligence, one's own work to assist another student in satisfying a course requirement constitutes an infringement of academic honesty.  Aid from personnel associated with University-sanctioned tutoring services is acceptable.

4.3. Unless permission is received in advance from the faculty member in charge of the course involved, a student may not submit, in identical or similar form, work for one course that has been used to fulfill any academic requirement in another course at Brandeis or any other institution.  A student who perceives the possibility of overlapping assignments in courses should consult with the appropriate faculty members before presuming that a single effort will fulfill requirements of both courses.

### Section 5. Responsible Use of Tobacco, Alcohol, and other Drugs

5.0. A commitment to promoting the health and safety of all members of the Brandeis community, combined with the University's obligation to uphold local, state and federal laws, requires clear policies on the possession and use of tobacco, alcohol, and other drugs.  Members of the community who sponsor or host programs assume responsibility for compliance with the policies outlined below, and are required to be familiar with guidelines for event sponsorship.

5.5. Drugs, Drug Paraphernalia, and Other Substances: The use of illicit drugs or the abuse of legally-obtained drugs or substances can cause serious and permanent harm to one's health and ability to function, and to the community.  A student is expected and required to observe the fact that the manufacturing, distribution, dispensation, possession, sale, or use of marijuana or its derivatives, or any other illegal narcotic, stimulant, depressant, or hallucinogen is prohibited. Possession or use of bongs, pipes, or other drug paraphernalia is prohibited.  Misuse of prescription drugs is also prohibited.

### Section 6. Care of University and Personal Property
6.0. Maintaining and preserving University grounds, academic and administrative buildings, residence halls, dining facilities, and associated structures is an obligation of all members of the community.   Similarly, maintaining and preserving personal property is an obligation of all members of the community.

A student is expected and required to:
6.1. display posters, banners, handbills, or notices only on spaces designated for that purpose. Placement of posters, handbills, or notices etc. on trees, lawns, sidewalks, statues, motor vehicles, permanent University signage, emergency blue light phones, stairwells, windows, fire suppression equipment, or fire/exterior doors is prohibited.   Students are expected to use only appropriate posting materials that will not cause damage (see Section 10.8 and/or the Department of Student Activities for non-residential spaces).

6.2. respect, maintain and care for property belonging to others.  Vandalism, theft, attempted theft, destruction of, damage to, unauthorized possession of, or inappropriate use of property (including intellectual property) belonging to the University, a member of the University community, or any other individual or entity is unacceptable.

6.3. respect, maintain and care for library materials, or other academic materials or equipment. Destruction, mutilation, defacement, or tampering with any of the above is unacceptable.

6.4. observe University guidelines and policies regarding the occupancy and use of University property, facilities, name, seal or logo (see Section 16).   Storage closets, vacated residence hall rooms, and roof areas may not be accessed by students without explicit permission from the Department of Community Living.

6.5. respect and preserve the plant and animal life found on the campus.  Mistreatment of animals, trees, or plantings is unacceptable.

6.6. access University buildings and facilities during posted hours and in authorized areas only.

### Section 7. Equal Opportunity, Non-Discrimination, and Harassment
7.0. Non-Discrimination and Harassment Policy: Brandeis University is committed to providing its students, faculty, and staff with an environment conducive to learning and working where all people are treated with respect and dignity.   Toward that end, it is essential that Brandeis be free from discrimination and harassment on the basis of race, color, ancestry, religious creed, gender identity and expression, national or ethnic origin, sex, sexual orientation, age, genetic information, disability, Vietnam Era Veteran, qualified special, disabled veteran or other eligible veteran status or any other category protected by law.

It is the University's responsibility to help prevent harassment and discrimination from occurring, to pursue concerns of which it is aware, to objectively investigate concerns, and to take immediate and appropriate action to remedy issues of harassment and discrimination.   Brandeis takes this responsibility seriously.   Therefore, violations of this policy will not be tolerated and may result in corrective actions up to and including dismissal from school or release from employment.

7.1. Understanding Harassment: Harassment whether sexual or based on an individual's protected class status (race, color, ancestry, religious creed, gender, national or ethnic origin, sex, sexual orientation, age, genetic information, disability, Vietnam Era Veteran, qualified special, disabled veteran or other eligible veteran status) is a form of discrimination and will not be tolerated.   It is regarded as harassment when the conduct has the purpose or effect of unreasonably interfering with a person's education or work performance by creating an intimidating, hostile or offensive environment in which to work, study or live; or otherwise adversely affects a person's employment or educational opportunities.   This may include but is not limited to, hiring, firing, salary increases, promotions, grades, recommendations, scholarly or teaching opportunities, participation in extracurricular activities and student organizations.   Harassment may occur between supervisor/supervisee, faculty/student, within peer groups, or with third parties.

7.2. Examples of Sexual Harassment: Depending on the circumstances, conduct which may constitute sexual harassment includes, but is not limited to:

- Unwelcome sexual conduct toward an individual, including offensive comments, touching or sexual propositions

- Threats or insinuations that a person's employment, academic standing, grade, assignments, or other conditions of employment or academic life may be adversely affected by not submitting to sexual advances.

- Leering, making sexual gestures, touching, patting, pinching, rubbing, impeding or blocking movements, displaying of sexually suggestive objects, pictures, cartoons or posters, suggestive or obscene letters or e-mails, notes, invitations or gifts

- Making or using derogatory comments, epithets, slurs or jokes with a sexual content

- Persistent unsolicited and unwelcome invitations for dates, encounters, or pressure to engage in sexual activity of an implied or explicit nature

- Persistent inappropriate and unwelcome questions asked about personal life

- Comments to, or about, any individual or their appearance that is sexually graphic or would otherwise tend to be degrading

- Displaying, sending, forwarding, downloading or otherwise distributing sexual materials via the Internet, computer, cellular data network, or e-mail

- Consensual sexual relationships where such relationships lead to favoritism towards the student with whom the instructor is sexually involved, which adversely affects other students

7.3. Examples of other Forms of Harassment/Discrimination: There are other forms of harassment/discrimination as well that create a hostile educational or work environment on the basis of race, color, ancestry, religious creed, national or ethnic origin, sex, sexual orientation, gender expression, age, genetic information, disability, Vietnam Era Veteran, qualified disabled veteran or other eligible veteran status or status in any group protected by federal or state law (together, 'protected class status').  Depending on the circumstances, the following are examples of behaviors that may constitute harassment/discrimination under this policy.   This is not an exhaustive list:

- Jokes, comments or innuendoes that make fun of, denigrate, or are based on an individual's or group's protected class status

- Epithets or slurs based on an individual's or group's protected class status

- Objects, posters, cartoons, or pictures which make fun of, denigrate, or are based on an individual's or group's protected class status whether directed to an individual, placed on University premises or displayed or circulated on campus

- Displaying, sending, forwarding, downloading or otherwise distributing materials via the Internet, cellular data network, computer, or e-mail that make fun of, denigrate, or are based on protected class status

- Other verbal or physical conduct that denigrates or shows hostility or aversion toward an individual or group based on protected class status.

Determination of whether particular conduct violates this policy is made on a case-by-case basis, in light of all the known facts and circumstances.  The University may take action on conduct that it deems to be inappropriate, regardless of whether it rises to the level of a violation of law.

7.4. Retaliation: Brandeis policy, as well as federal and state law, prohibits retaliation against any person who in good faith initiates a complaint of harassment or discrimination or cooperates in the investigation of a complaint of harassment or discrimination.  Retaliation may result in corrective action up to and including dismissal from school or termination of employment.

7.5. False Claims: If it is determined that an individual falsified a claim of harassment or discrimination, it may result in corrective actions up to and including dismissal from school or release from employment.

7.6. Contact/Reporting Information, Concerning Staff or Faculty: Brandeis encourages the reporting of all perceived incidents of discrimination or harassment.  Concerns about harassment or discrimination by a faculty or staff member (including visiting faculty, post-doctoral fellows, or graduate students acting in an instructional capacity) should be brought to the attention of the Vice President for Human Resources and Title IX Coordinator in the Office of Human Resources at 781-736-4464.   Concerns about third parties, such as vendors, should also be directed to this individual.   This individual, or a designee, is available to provide guidance in managing the concern, for help with informal resolution, for filing a complaint, and for reviewing complaints that require more in-depth fact-finding.   For guidance and/or to file a complaint against any undergraduate or graduate student, contact the Office of the Dean of Student Life at 781-736-3600.

16.4. Unauthorized use of University facilities, equipment, or supplies for commercial, political or other non-University related purposes is strictly prohibited (see Section 13).

16.5. Unauthorized use of the University tax-exempt numbers or postal permit is prohibited.

> 16.5.a. Guidelines Concerning Use of University Facilities, Name, Seal or Logo: On March 13, 1947, the Secretary of State of the Commonwealth of Massachusetts officially recognized and gave legal validity to the action of the Board of Trustees of Middlesex University in voting to change the name of that institution from the Trustees of Middlesex University to Brandeis University. Student organizations recognized by the Student Union Senate or Graduate Student Association (or otherwise recognized by the Division of Student Affairs) may use the name of the University, its seal or logo for purposes of identifying the organization.

> 16.5.b. Student organizations recognized by the Student Union Senate or Graduate Student Association (or otherwise recognized by the Division of Student Affairs) may use University facilities for meetings, programs, events, or other activities subject to the standards and policies published elsewhere in this Handbook.

## Section 17. Protection of Privacy

17.1. The privacy of every individual in his or her person, and in his or her room and/or office must be respected. Malicious or unauthorized entry into rooms, offices, personal files, electronic files (see Sections 17.4 and 11.3), drawers, or locked spaces, such as lockers, etc., is prohibited.

17.2. Except in circumstances as outlined in Section 10.5, authorized entry for the purpose of searching a student maintained room or space requires advance permission from the Dean of Student Life, the Senior Vice President for Students and Enrollment, or an appropriate designee. Each statement of permission to enter shall clearly set forth the purpose and objectives of the search, and shall specify the office(s), room(s), or spaces(s) to be entered. The search shall be limited to the purpose, objective, and location set forth in the statement of permission. The University official making the search shall show the statement of permission to the occupant at the time of entry or, in the occupant's absence, shall leave a copy of the statement in the room(s), office(s), or space(s) entered. Immediately on conclusion of the search, the official shall prepare and give to or leave for the occupant(s) a receipt for any property seized.

17.3. Student residence hall rooms are inspected by members of the Community Living staff periodically during the academic year to evaluate the safety, security, and health conditions of the rooms and to check for illegal possession of University–owned property. These inspections will be conducted by floor, by section of building, or by building. Public notification of such inspections will be provided 24 hours in advance and will specify the date and time of the inspection for a given area. A student's presence in their room is not required for the inspection to take place (see Section 10.5).

17.4. Student Records: The Federal Family Educational Rights and Privacy Act of 1974 (FERPA) gives each enrolled student at Brandeis certain rights, including access to the student's educational records, the right to request amendment of those records where the student believes a record is inaccurate or misleading, and the right to add a statement presenting the student's view if the records are not amended. A detailed statement of the rights and responsibilities of a student under the Act, the location of all records pertaining to a student, and the procedures for requesting access are contained in the Brandeis University Records Policy. The policy is available from the University Registrar and, at www.brandeis.edu/registrar/bulletin/EducRecordsPolicy.html, and is on reserve in the University Library.

# Student Conduct System

### Section 18. Initial Procedures and the Mediated Resolution Option

18.0. Disciplinary action against a student (any person enrolled in any academic program at Brandeis University, up to and including the student's commencement day) may be implemented only though referral of a violation to the appropriate administrator within the Department of Student Rights and Community Standards (DSRCS). Where infractions of University standards and policies are involved, written reports of violations or complaints shall be submitted to the DSRCS from the accuser in a timely manner. In all cases the available facts shall be gathered from the accuser (the complainant or the reporting agency), and a careful evaluation of these facts, as well as the credibility of the person reporting them, shall be made. If at this point in the judgment of the administrator in the DSRCS, there is insufficient evidence of a violation, or the case lacks merit, or it was not reported in a timely fashion, a decision not to refer the matter to the conduct system may be made. The Dean of Student Life may appoint, as needed, ad hoc conduct boards in addition to the boards described in Section 20.

18.1. Mediated Resolution Option
The Director of the DSRCS, in his or her discretion, may approve the offer by an accuser to request participation of the accused in a mediated resolution that will be facilitated by the Director of the DSRCS or by a designee. A mediated resolution process is one in which the accuser and the accused agree to discuss the allegation in question with the assistance of the Director of the DSRCS or a designee. The purpose of a mediated resolution process is to apply an informal, non-adversarial approach to an outcome or compromise that will be agreed-upon, recorded, final, and binding. The parties decide how to engage the conflict through shared, in-person conversation, and the parties decide together how the conflict will be resolved. The Director or designee serves to explain community standards, to ask clarifying questions, and to maintain an orderly, respectful atmosphere. The Director must also approve all proposed resolutions.

Subject matter that is sometimes well-served by a mediated resolution option includes, though is not limited to: roommate disputes, allegations of theft of personal or intellectual property, certain academic conflicts, and minor offenses of community standards.

18.2. Participating parties have discretion to propose restitution and reconciliation outcomes subject to the approval of the Director. Such outcomes will be evaluated by the Director for their relevance to the conflict, educational benefit, constructiveness, and respect of parameters found in Section 21 of *Rights and Responsibilities*. In the event of an impasse or other impediment to arriving at a mutually-acceptable outcome the Director shall declare an endpoint to the mediated resolution process and redirect the matter to the process outlined in Section 19. Failure to adhere to the expectations of the written mediated resolution outcome may expose the offending party to further mediation or referral to the conduct process.

18.3. A record of the outcome or impasse will be produced and will be subject to the maintenance provisions in Section 19.5.

**Section 19. Procedural Standards in the Conduct Process**

19.1. In cases where DSRCS decides that there is evidence of a violation that warrants referral to the conduct system the accused student will be contacted to schedule a preliminary meeting with the appropriate administrator (communication regarding conduct procedures and meetings will be through the student's Brandeis e-mail account). This meeting will serve to inform the student of the details of the charges and educate the student about the conduct system. The student will have the opportunity to ask questions and make statements. After this preliminary meeting the student will receive written charges. (If the student fails to schedule or attend a preliminary meeting in a timely fashion, the written charges will be sent in the absence of a preliminary meeting). The student may accept responsibility and choose administrative action (see Section 19.2) or may accept or deny responsibility and request a hearing before the Student Conduct Board (SCB). The accused student must choose one of the options (for all written charges) within 48 hours of delivery of the written charge(s) to the student, the student's Brandeis e-mail account, the student's campus mailbox, or the student's home address. Prior to making this choice, the student shall be advised of the name of the administrator who would recommend the appropriate sanction. A student's failure to choose one of the options within 48 hours constitutes an acceptance of responsibility for the violation. In such cases, the DSRCS administrator may proceed to sanctioning in accordance with Section 19.3, or refer the matter to the SCB for sanctioning. In the event of extenuating circumstances, the DSRCS administrator may grant additional time for the choice.

19.2. Administrative Action: Within 30 class days (final exams and Senior Week constitute class days) from the date the student chooses administrative action, the student shall meet with the DSRCS administrator to discuss the full circumstances of the charge(s); under the Administrative Action option, this is the only opportunity to present evidence. This meeting may be in addition to, or waived in the event of, the preliminary meeting between the accused and a DSRCS administrator. Summer instruction does not constitute class days unless the student is enrolled in summer school at Brandeis. The DSRCS shall notify the student in writing of the decision, confirming the action taken and the reasons for the decision.

19.3. If the student fails to attend a scheduled meeting with a DSRCS administrator after having chosen administrative action, the administrator may complete the process in the student's absence and notify him/her in writing of the decision. A student shall have the right to one rescheduled meeting if she/he fails to attend the originally scheduled meeting through no fault of her/his own as determined by the administrator in the DSRCS.

19.4. Deferral of Proceedings: The staff of the DSRCS may defer (place on hold) conduct action at any stage of the process for a period not to exceed 90 class days if the student is unable to participate due to documented illness or incapacity, or if agreed upon by consent of the accuser, and/or the DSRCS administrator, and the accused student. Pending charges may be discontinued thereafter dependent upon the conduct of the accused student.

19.5. A record of the administrative action, comprised of a summary of the evidence presented and decision rendered, shall be made by the administrator. Such records are confidential and shall be maintained by the Director of Student Rights and Community Standards for five years from the date of the case outcome, after which they will be destroyed, unless the student is involved in further conduct action. In all cases, the records will be maintained for five years from the date of the last conduct action involving that student, after which the records will be destroyed (except in extraordinary cases as defined by the Dean of Student Life). Access to such records is governed by the University Records Policy (see Sections 17.4 and 19.14).

19.6. Procedures for Hearings before the Student Conduct Board (SCB): A hearing shall be held within 30 class days, or as soon as practicable, from the date the student chooses the Board hearing. Summer (the period between the last days of final exams for the spring semester and the first day of class in the fall semester) does not constitute class days unless the student is enrolled in Brandeis Summer School.  Study Abroad (including domestic exchange programs) periods do not constitute class days.  All hearings will be closed.  Notice of the hearing date shall be delivered to the student in person, to the student's campus mailbox, to the student's Brandeis e-mail account, or the student's home address at least 48 hours in advance of the hearing.  An administrator from the DSRCS or another Student Affairs professional shall serve as the hearing administrator.  The non-voting role of the hearing administrator is to ensure the appropriate execution of the hearing as prescribed in Section 23.  The administrator serves to assist the Chairperson with the interpretation of *Rights and Responsibilities*, extenuating or unusual procedural challenges, and will not act in any way to influence the outcome of a case.  The administrator shall be available prior to the hearing at the request of the accused student to provide information regarding the alleged violation and procedural matters.   To provide adequate notice to all parties, names of any advisers and/or witnesses will be submitted by the accuser and/or the accused student(s) to the DSRCS administrator at least 24 hours prior to the hearing.  The administrator may share the names of witnesses and advisers with the accused and accuser prior to the hearing.  The accused, accuser and their advisers are prohibited from confronting or questioning the witnesses and accusers regarding the case prior to the hearing.  Additional/unlisted witnesses may be considered at the discretion of the chairperson of the Board.

19.7. Board members may be informed of the student's name and charges prior to the hearing to avoid conflict-of-interest.  Any Board member may disqualify him/herself and either party to the case may request to disqualify a prospective member if she/he can satisfy the remaining members of the Board that there is good cause for disqualification.  An alternate member may take the place of the disqualified member, or the accused and accuser may agree to proceed without the prescribed minimum voting composition of the Board.

19.8. Advisers: The accused student and the accuser in a hearing may each bring an adviser of his or her choice from the University community to provide passive assistance during the hearing.  With the permission of the DSRCS administrator, advisers may be present for conduct meetings prior to, and after, the hearing.  In exceptional circumstances, the hearing administrator may allow active participation by an adviser during a hearing.  The lack of availability of any particular adviser will not be considered a legitimate reason to reschedule the hearing (see Section 19.15).  To avoid even the appearance of undue influence, DSRCS staff that advises the boards, members of the SCB, and members of the Appeals Board are not eligible to serve as adviser for the accused or accuser.  An adviser may not serve as a witness.  Neither party shall be permitted to employ professional legal counsel or other persons from outside the University community to present the case before the Board or to advise the student during the hearing.  However, passive assistance of legal counsel may be allowed when coexisting criminal charges are pending resulting from the same incident (see SRCS staff for details).

19.9. The accused student and the accuser must be present at the hearing (except as provided in Section 19.15).  She/he may present evidence and introduce witnesses during the hearing, with the passive assistance of the student's adviser.  Witnesses are those who were present for the incident in question, and/or have information directly related to the incident in question.   It is the responsibility of the accuser and the accused student to notify his or her witnesses and adviser regarding the time, date, and location of the hearing. Witnesses must be available when called by the Chairperson or their testimony may be disallowed.   Any expenses incurred by a witness to participate will be the responsibility of the witness.

19.10. All persons giving evidence or testimony are obligated to be truthful.  The Board shall rule on the admissibility of evidence and any witness testimony (see Section 19.6).  Unduly repetitious or irrelevant evidence or witness testimony may be excluded.    Rules of procedure and evidence applicable to civil or criminal cases in court do not apply.

19.11. The accused student and the accuser shall have the right to view and question all evidence and reports presented to the Board during the hearing.  The accused student and the accuser shall have the right to question all witnesses appearing before the Board and only at the hearing.  Written testimony from absentee witnesses may be received by the Board.  Proof of authorship but not content of such testimony must be made by certification of a notary public.  Inaccessibility of a notary public must be brought to the attention of the DSRSC Director prior to the hearing.

19.12. In cases where the accused student denies responsibility, the burden of proof shall rest upon the accuser.

19.13. The Board shall make one of the following decisions upon completion of the hearing: (a) a finding of 'not responsible'; (b) a finding of 'responsible' (based only upon clear and convincing evidence) and the recommendation of a sanction; (c) continuance of the case to obtain additional information or for further consideration.    Decisions shall be based solely upon evidence and testimony introduced at the hearing.  All decisions shall be made by a majority vote.  During any hearing conducted by any conduct board, the chairperson shall vote only to break a tie. **Note:** In hearings that involve allegations of sexual misconduct, sexual harassment or sex discrimination in violation of Section 3 or 7, the standard of evaluation shall be preponderance of the evidence, instead of clear and convincing evidence.

19.14. A written Hearing Report, comprised of a summary of evidence presented at the hearing and decision rendered by the Board, shall be made by the DSRCS hearing administrator.  Hearing Reports are confidential and shall be maintained by the Director of Student Rights and Community Standards for five years from the date of the hearing, after which they will be destroyed unless the student is involved in further conduct action.  In all cases the records will be maintained for five years from the date of the last conduct action involving that student, after which the records will be destroyed (except in extraordinary cases as defined by the Dean of Student Life (see Section 19.5).  Access to these records is governed by the University Records Policy (see Section 17.4).

19.15. An accused student or the accuser shall have the right to a rescheduled hearing if she/he fails to attend the originally scheduled hearing through no fault of his/her own as determined by the DSRCS hearing administrator.  If the DSRCS hearing administrator concludes that the failure to attend was the fault of the student, the student shall be deemed to have accepted the responsibility, and the case will be referred for administrative action (see Section 19.3).  If a hearing is rescheduled, it will take place after proper notification.  If the accused student fails to attend the rescheduled hearing, the student shall be deemed to have accepted responsibility, and the case will be referred for administrative action (see Section 19.3).

19.16.  Appeal Procedures for Board Decisions: Following approval or modification of the sanction(s) by the Dean of Student Life or the Director of Student Rights and Community Standards (see Section 21), an accused student shall have the right to submit an appeal request concerning the decision of a board to the University Appeals Board on Student Conduct.  Such appeal requests shall be based only on specific evidence, presented in writing of:

      19.16.a. fraud
      19.16.b. denial of rights under this process
      19.16.c. procedural error
      19.16.d. the claim of new evidence not previously available, which would have materially
      affected the decision

Appeals shall not be based upon, or granted due to, dissatisfaction with an imposed sanction.  Appeal requests must be filed within 7 days of delivery of the conduct action to the student in person, or to the student's campus mailbox, home address or Brandeis e-mail address.   If the University Appeals Board determines that a written request for appeal has merit, it shall conduct a new hearing of the case.   Upon completion of the appeal hearing, the University Appeals Board may uphold the original decision and sanction imposed, find the student not responsible, or increase or decrease the sanction.   Any sanctions shall not take effect until approved or modified by the Dean of Student Life (or designee) or the Director of Student Rights and Community Standards (see Section 21).   **Note:** In hearings that involve allegations of sexual misconduct, sexual harassment or sex discrimination in violation of Section 3 or 7, the accuser shall have the right to appeal.

19.17. Procedures for Dean's Review of Administrative Actions/Decisions (see Sections 19.1, 19.2, and 19.3): An accused student shall have the right to meet with the Dean of Student Life or Associate Dean of Student Life to discuss an administrative decision or administrative action.   A student must request this meeting within 2 class days of delivery of the conduct action announcement.   The Dean/Associate Dean may or may not amend the original decision and/or sanctions.   **Note:** In cases that involve allegations of sexual misconduct, sexual harassment or sex discrimination in violation of Section 3 or 7, the accuser shall have the same right as an accused student.

19.18. Accused students who obtain information at their hearing which might lead to new evidence shall ask for a continuance of that case at that time, rather than wait to raise the matter for the first time as the basis for an appeal request.

### Section 20. Composition of Boards
20.1. The Student Conduct Board: The SCB shall hear cases of alleged violations of community standards of behavior or University policies referred to it by the DSRCS. Procedures to be followed are enumerated in Section 19 and are available in the Department of Student Rights and Community Standards or on the website at www.brandeis.edu/studentaffairs/SRCS.

20.2. In hearing cases of alleged violations of policy on academic integrity (see Section 4), a Student Conduct Board voting panel of two students and two faculty must be present; at hearings for alleged violations of all other standards or policies, a voting panel of three students and one faculty member or staff member must be present.  The voting requirements in this section may be waived by mutual consent of the SCB, the accuser, and the accused.

20.3. A pool of faculty members and staff members shall serve on the Board. Faculty members are appointed by the Chairperson of the Faculty Senate. Staff members appointed by the Senior Vice President for Students and Enrollment. The term of appointment for faculty and staff members shall be two years and renewable.

20.4. Students shall be selected annually by a process open to all continuing students. The Board is formed in the spring of the preceding academic year of a representative cross-section of Brandeis students.

20.5. The SCB shall be chaired by students, each annually selected by the Board and the DSRCS Director.

20.6. Any member of the SCB may be removed by the DSRCS Director in consultation with the student chairpersons if the member is determined to be responsible for behavior that conflicts with the high standards of citizenship, confidentiality, and cooperation that the Board represents.

20.7. The University Appeals Board on Student Conduct: The University Appeals Board (UAB) shall hear appeals of decisions of the Student Conduct Board, and appeals of decisions of any ad hoc board which may be formed at the discretion of the Dean of Student Life (see Section 19.17 for information on administrative action review). An Associate Dean of Student Life will serve as chairperson of the University Appeals Board.

20.8. The University Appeals Board shall be comprised of three voting members (one full-time student and two members of the faculty) and one faculty chairperson. At least two undergraduate students and at least two graduate students shall be appointed to the voter pool by the President of the Student Union and Graduate Student Association, respectively. At least four faculty shall be appointed to the voter pool by the Chairperson of the Faculty Senate. A chairperson who is a full-time tenured faculty member shall be appointed by the Dean of Student Life. Students appointed to the Appeals Board must be free from all elected, appointed, or affiliate relationships with the Student Union or Graduate Student Association. The term of appointment for faculty and staff members shall be two years and renewable.

20.9. Members and alternates on the UAB shall be selected in a manner similar to that of the SCB, with its formation led by the Dean of Student Life and at least one other member of the Deans staff. If a UAB position becomes vacant, and no alternate is available, the original appointing authority shall appoint a replacement for the remainder of the term.

20.10. A member of the UAB may be removed by the Dean of Student Life in consultation with the chairperson, if the member is determined to be responsible for behavior that conflicts with the high standards of citizenship, confidentiality, and cooperation that the UAB represents.

20.11. SCB/UAB Hearing Administrators: All conduct boards shall have an administrator from Student Affairs serving as a Hearing Administrator in all stages of the conduct process including hearings and deliberations. Responsibilities of the SCB/UAB Hearing Administrator shall include: (a) advising the Board regarding the requirements and provisions of the University's conduct system; (b) providing information relevant to procedures or sanctions; (c) providing continuity in Board operations and procedures; (d) facilitating the implementation of conduct procedures at all levels of the conduct system; (e) acting as a liaison between Boards and the University community; and (f) assisting the Board in fulfilling its educational responsibilities.

**Section 21. Range of Conduct Actions and Sanctions**

21.0. A variety of actions may be taken as a consequence of being found responsible for a violation of community standards.  When determining these actions, a DSRCS administrator or the SCB may consider all facets of the specific individual situation, including but not limited to the seriousness of the offense, prior history of violations, impact of the offense on others, the student's class year, and/or evidence of intent. Because the purpose of this system is to uphold and promote community standards, a learning component is also part of the sanctioning process whenever appropriate.  These learning components may include but are not limited to:

- Failure in a course or on an assignment
- Workshops on note-taking, footnoting, or writing a research paper
- Training (e.g. conflict resolution)
- Education on ethical decision-making
- Education on alcohol and drug abuse
- Restitution for damages
- Counseling/assessments
- Family notification

21.1. Learning components may be imposed in combination with other disciplinary action, and may include a required completion date.  Failure to complete any designated learning component, as with any other sanction, could result in further conduct action.  Sanctions shall not take effect until approved by the Director of Student Rights and Community Standards or the Associate Dean of Student Life or his/her designee, who can modify the sanction.  Suspensions or dismissals shall not take effect until approved by the Dean of Student Life, who can modify the sanction.

21.1.a. Verbal Warning: In cases where the student is found responsible and the discussion with the administrator, or the hearing before the Board, has been sufficient in and of itself, further action may not be deemed necessary.  However, the responsible finding is noted in the student's record in the Department of Student Rights and Community Standards.

21.1.b. Disciplinary Warning: The student may be warned in writing of the possible consequences of continuing inappropriate behavior.  Additional conditions may be applied as appropriate.

21.1.c. Residence Probation: A student who is placed on residence probation is not in good standing with their living unit for a specified period of time, and conditions may be placed on their actions.  The status of residence probation reminds the student that his/her infraction has become part of their record and that repetition of similar or other unacceptable behavior may be cause for removal from the residence halls.

21.1.d. Removal from Living Unit: This action precludes the student's continued residence either in a particular living unit or in any campus living unit.  Such action would normally be taken after one serious violation or repeated violations related to the living unit environment.

21.1.e. Loss of University Privileges: A student may be denied certain University privileges including, but not limited to, early arrival on campus, extended stays in the residence halls, participation in campus activities, representing the University in competition or other official capacities, campus employment, and campus leadership opportunities.  Loss of such privileges extends over a specific period of time, and is designed to reflect a specific community concern about the student's behavior.

21.1.f. Disciplinary Probation: A student who is placed on disciplinary probation is permitted to remain enrolled at the University, often under certain stated conditions depending upon the nature of the violation and potential learning value that may be derived from such conditions. The probation usually extends over a stated period, during which it is clearly understood that the student is subject to further disciplinary actions, including suspension or dismissal, if they violate the terms of the probation or in any way fail to conduct themselves as a responsible member of the University community. Probation is a final warning to the student to help them reevaluate their behavior.

21.1.g. Suspension: An involuntary separation of the student from the institution, suspension differs from dismissal since it defines conditions under which return will be possible. Suspension may extend for a semester, until a designated date, and/or until degrees/certificates will not be issued and credit will not be granted for courses taken elsewhere. Following the suspension period, return to Brandeis requires initial approval of the Dean of Student Life and then approval by the Committee on Academic Standing regarding academic suitability for readmission.

21.1.h. Dismissal: A permanent, involuntary separation of the student from the institution.

### Section 22. Administrative Actions and Sanctions

22.1. Protection of Individuals and the Community: Whenever the University has reason to believe that a student's conduct or behavior may pose a significant threat to his or her physical or emotional safety or well-being, or may disrupt the safety or well-being of another student, faculty, staff, guest or other University community member, the University may take any action that it believes to be appropriate and reasonable under the circumstances. This may include but is not limited to, notification of the student's parents, removal of the student from a residence hall, or other action deemed necessary to remove or minimize the threat or disruption.

The Dean of Student Life or designee is the only authorized grantor of permission to a student who wishes to return to classes and/or the residence halls after any removal.

In the event the University takes such action, the University shall notify the student of the action taken and the basis for the action. Within three class days of notification, the student shall have an opportunity to speak with the Dean of Student Life, or the Dean's designee, to discuss the situation and provide information, including documentation by a health care provider, to contest the action(s) taken. The Dean of Student Life shall then decide, at the Dean's discretion, whether to reinstate or restore the student's privileges, to consider further action under this procedure, or to take additional reasonable and appropriate steps.

22.2. Emergency Suspension: Pending final action on a violation of University regulations, the status of a student shall not be altered, or their right to be present on the campus and to attend classes suspended, except for reasons of imminent danger to their physical or emotional safety or well-being, or for reasons of imminent danger to the safety or well-being of the University community. The decision to separate a student from the campus under these conditions shall be made by the Dean of Student Life or, in the Dean's absence, by the Dean's designee. If a student is separated from the campus by this authority, the procedures outlined in Section 19.1 shall be implemented within 10 class days after the separation.

22.3. Indefinite Suspension: In the event the Dean of Student Life learns that a Brandeis student has been charged with or convicted of a crime, the Dean or the Dean's designee may immediately remove the student from campus housing, restrict the student's access to the campus, and/or indefinitely suspend the student from the University pending the final outcome of a criminal proceeding. In making this decision, the Dean must consider the nature of the crime and the risk to the safety or well-being of the University community. A student suspended under this authority may request a meeting with the Dean and the Student Conduct Board (SCB). The SCB shall assess the risk to the safety or well-being of the Brandeis community and advise the Dean. The final decision on continuation of the suspension shall be made by the Dean of Student Life, or in the Dean's absence, by the Dean's designee. The procedural standards set forth in Section 19 do not apply to Indefinite Suspension.

22.4. Dean's Sanctions: Brandeis University expects students to conduct themselves at all times as good citizens and good neighbors in a manner that is consistent with the federal, state, and local laws and ordinances. Off-campus behavior which, in the judgment of the Dean of Student Life, constitutes behavior that is inconsistent with this expectation and adversely affects the University community may result in disciplinary action up to and including dismissal. A student disciplined under this authority may request a meeting with the Dean and the Student Conduct Board (SCB). The SCB shall advise the Dean on the appropriateness of the sanction. The final decision shall be made by the Dean of Student Life or, in the Dean's absence, by the Dean's designee. The procedural standards set forth in Section 19 do not apply to off- campus behavior or Dean's Sanction.

22.5. Medical and Emotional Emergencies: Whenever a student's conduct results in the intervention of Brandeis' Health Service, the Brandeis Psychological Counseling Center, or a non-Brandeis medical or psychological health care provider in order to prevent or address a student's self-harm or harm to others, or to address a student's severe emotional or psychological distress, the Dean of Student Life will establish an emergency protocol for that student. Any student who receives treatment from a non-Brandeis medical or psychological health care provider under these circumstances must contact the Dean upon release.

The Dean shall notify the student in writing of the emergency protocol and the basis for the protocol. Within three class days of notification, the student shall have an opportunity to speak with the Dean, or the Dean's designee, to discuss the protocol and provide information, including documentation by a health care provider, to contest the action(s) taken. The Dean shall then decide, at the Dean's discretion, whether to reinstate or restore the student's privileges, to consider further action under this procedure, or to take additional reasonable and appropriate steps.

During the period begun by the emergency intervention and continuing until the conveyance of explicit written permission by the Dean of Student Life (or designee) to resume campus functions, a student subject to an emergency protocol is not permitted to access any campus property, facilities or attend any classes. There will be no exception for examinations or other time-sensitive student activities or academic obligations. Failure to comply with this protocol may result in referral to the Student Conduct Process as defined in this document.

**Section 23. Hearing Procedures for the Student Conduct Process[1]**

All hearing participants are brought into the Board meeting room.

A. Chairperson invites all present to introduce themselves.

B. Chairperson explains philosophy of peer judgment and Board procedures (a copy of this statement is available from the Department of Student Rights and Community Standards).

C. Chairperson gives statement of the student's rights to fairness under this process:
> 1. To bring one adviser of the accused/accuser's choice from the University community to provide passive assistance during the hearing (the adviser may not serve as a witness)
> 2. To present witnesses on their own behalf
> 3. To question witnesses appearing against them
> 4. To submit verbal arguments
> 5. To remain silent and not testify against themselves.  The accused/accuser should remember that if they remain silent, the Board is compelled to hear the case and render a decision based upon the evidence presented.

D. Witnesses leave the room

E. Chairperson gives statement of accusations
> 1. The accused is asked if sh/e understands the accusations
> 2. The accused accepts or denies responsibility

F. Initial presentations:
*In the event that there is more than one accused, the Board may bring them into the hearing room either individually or as a group for descriptions of the incident in alphabetical order; this system shall prevail throughout the remainder of the hearing procedures.*
> 1. The accuser offers their description of incident
> 2. The accused offers their description of the incident
> 3. The accused may ask questions of the accuser
> 4. Board members may ask questions of the accuser
> 5. The accuser may ask questions of the accused
> 6. Board members may ask questions of the accused

G. Witnesses for the accuser may be called
> 1. The accuser may ask questions of the witness
> 2. The accused may ask questions of the witness
> 3. Board members may ask questions of the witness
> 4. Witness is excused from the hearing room (but retained outside for possible recall)

H. Witnesses for the accused may be called
> 1. The accused may ask questions of the witness
> 2. The accuser may ask questions of the witness
> 3. Board members may ask questions of the witness
> 4. Witness is excused from the hearing room (but retained outside for possible recall through Step M.)

---

1 Hearing procedures may differ in cases involving allegations of sexual misconduct, sexual harassment or sex discrimination in accordance with Title IX.

I. The accuser, the accused, or Board members may recall witnesses or re-question the accuser or accused (following same order as previous witness questioning).

J. Final statement of accuser (no new testimony)

K. Final statement of accused (no new testimony)

L. Accuser, accused, and their respective advisers leave hearing room, but remain outside.

M. Board deliberates on responsibility
After the board reaches a determination any remaining witnesses in the waiting area are excused. The accused, the accuser, and advisers are called back into the hearing room to hear the decision on responsibility.

N. If the accused is found not responsible for all charges, all are excused and hearing is adjourned. An outcome notification (via Brandeis e-mail) will be sent to the accused, usually within 3-5 business days.

O. If the accused is found responsible for one or more charges, recommendations and questions on sanction(s) are heard.
    1. The Board hears recommendations from the accuser regarding a possible sanction(s)
        a. The accused may question the accuser and/or make a statement regarding recommended sanction(s)
        b. The accuser may question the accused on the recommended sanction(s)
        c. The Board may question the accused and the accuser on the recommended sanction(s)
    2. The accuser, the accused and their respective advisers are informed that the Board will deliberate on sanction recommendations which will be communicated to the Director of Student Rights and Community Standards, Associate Dean of Student Life and/or Dean of Student Life.  Final sanction determinations will be communicated in writing to the accused, and in some cases to the accuser, usually within 3-5 business days.  The accused, the accuser, and advisers are excused and the Board reserves the right to adjourn for later deliberations.

P. The Board deliberates on sanction recommendations.
    1. The Board is advised of past conduct involvement of the accused, if any, by the Hearing Administrator.
    2. The Hearing Administrator will record the Board's recommendations, which will be reviewed by the appropriate administrator.

Appeal procedures will be addressed in the final outcome letter to the accused and, in some cases, the accuser.

# Exhibit B

# Rights and Responsibilities





## Brandeis University
### Department of Student Rights and Community Standards
415 South Street – MS 206
Waltham, MA 02454
Phone: 781.736.5070
Fax: 781.736.3579
www. brandeis.edu/studentaffairs/srcs

## 2012 – 2013

1.5. self-identify with a University Identification Card when requested by an authorized University official. The official must, in turn, provide identification if the student requests it.

1.6. utilize the University Identification Card exclusively for the student's own use in obtaining University services and privileges. A student may obtain their Identification Card at the Campus Card Office at the beginning of the student's first academic year. A student's Identification Card and its applications are not transferable. Lost Identification Cards must be reported to the Campus Card Office and the Department of Public Safety, and then replaced as soon as possible. Damaged cards will be replaced free of charge, but there is a fee to replace a lost card. The student must turn in the damaged card to the Campus Card Office.

1.7. seek and/or obtain only those University privileges or services (check cashing, student elections, athletic events, group examinations, registration, library, campus technologies, etc.) to which the student is properly entitled.

1.8. refrain from encouraging, enticing, influencing, or enlisting another student to violate any of the University standards or policies listed in this code or other official University documents (see Section 2.13).

1.9. maintain currency with the use of the University-issued e-mail account. This account is the University's primary means of communicating information important requests, updates, policies, procedures, and events.

**Section 2. Respect for the Health, Safety, and Rights of Community Members**
2.0. All members of the community share the responsibility for protecting and maintaining community health and safety and the rights of other persons. Concentrated housing, varied activities, and the needs of students, faculty, and staff for freedom to pursue their own educational tasks and complete job-related responsibilities free from hazards and intrusions, requires the cooperation of all in maintaining these standards.

**A student is expected and required to:**
2.1. respect the integrity and personal rights of individuals. The University will not tolerate any behavior that:
>  2.1.a. intimidates.
>  2.1.b. threatens.
>  2.1.c. harasses or bullies. (see Section 7 regarding harassment)
>  2.1.d. physically harms or is considered unwanted physical contact (some examples: hitting, pushing, or physical altercations/violence of any kind).
>  2.1.e. invades personal privacy or constitutes stalking of any type (see Sections 2.5, 11.2, 11.3, and 17).
>  2.1.f. endangers the health, safety, or welfare of any other person on or off campus. Due to the seriousness of any integrity or personal rights accusations and accompanying issues that may impact the Brandeis community, any student involved in such an incident may be placed on campus restriction or emergency suspension pending the outcome of any investigation or conduct process (see Section 22).

2.2. comply with instructions of University officials, committees, or boards.

2.3. comply with the final decision of the Student Conduct Board, the University Appeals Board, or with an Administrative Action or Dean's Action.

2.4. recognize and allow for the legitimate functions of the University. Obstructing or disrupting teaching, research, administrative, public service, disciplinary, or other authorized functions is unacceptable.

2.5. refrain from using computers, cellular phones, tablets, cameras, or other electronic devices in any manner that causes disruption to or invades another individual's privacy in a classroom, library or other campus facility or any campus event. This includes misuse of computer and/or cellular devices with photographic, audio or video recording or streaming, or text messaging capability (see Sections 2.1.e, 11.2, 11.3, and 17.1).

2.6. use safety equipment and/or initiate safety procedures only when it is necessary (this includes, but is not limited to, fire equipment, fire alarms, fire drills, and exit lights). Initiating a false fire alarm or issuing any type of threat is strictly prohibited (see Sections 9 and 10.15.m).

2.7. avoid and refrain from discrimination on the basis of race, sex, color, national origin, religion, age, gender, gender identity and expression, sexual orientation, disability, veteran status, or genetic information (see Section 7).

2.8. avoid and refrain from hazing: initiating or disciplining fellow students, often in the nature of forced alcohol consumption, humiliating or painful ordeals (see Appendix A for related Massachusetts law) (see Section 1.8).

2.9. observe the prohibition of on-campus possession of firearms (including blank pistols and replicas, bb guns, and pellet guns), explosives, knives, fireworks, nun-chucks, paintball guns, and other articles or substances usable as weapons.

2.10. obtain clearance from the Department of Student Activities for the use of loud speakers or other sound amplification equipment at outdoor events.

2.11. refrain from bringing any dog or animal onto the University campus without a leash. Students are prohibited from allowing any unrestrained animal to enter any campus building, or allowing any restrained or unrestrained animal (other than guide and service animals) to enter dining service buildings, campus centers, residence halls, or libraries (see Section 10.4).

2.12. assume responsibility for the actions, damage, or injuries caused by, or costs incurred for the services related to hosting a guest on campus. The University reserves the right to impose requirements related to the safety or security concerns of a visit by a guest, and to assess the host for the cost of meeting these requirements (see Sections 10.6 and 10.10).

2.13. comply with the regulations enumerated in other official University publications and documents (e.g., library policies, computer use policies, Dining Services policies, the Residence Halls and Meal Plan License, parking policies, and financial aid policies).

2.14. avoid and refrain from any verbal or physical behavior or actions that could be construed as retaliation for an individual's good-faith report to the Department of Public Safety, the Student Conduct Process, or another University official regarding another student (see Section 7.4).

**Section 3. Sexual Responsibility − Seeking and Communicating Consent**

3.0. Brandeis University expects all members of the University community to treat one another with respect. Policies regarding sexual misconduct emphasize personal accountability as well as recognition of the impact of one's behavior on others. Students are encouraged to examine their own values, communicate with one another clearly, and acknowledge the condition and requests of others. Incapacity to consent to sexual activity or compromised communication can result when individuals are under the influence of intoxicants such as alcohol and other drugs. If both parties do not consent, or are unable to consent to a sexual act, then the interaction could be defined as sexual misconduct or sexual assault. Consent must be sought and clearly understood and communicated before engaging in any sexual activities. Due to the seriousness of sexual misconduct accusations and accompanying issues that may impact the Brandeis community, any student accused of sexual misconduct may be placed on campus restriction or emergency suspension pending the outcome of any investigation or conduct process (see Section 22). **Note:** Adjudication of any allegation related to this section will be pursuant to the Special Examiner's Process found in Section 22.6 and not the Student Conduct Process found in Section 19.

3.1. Students are prohibited from engaging in sexual misconduct. Sexual contact that occurs without the explicit consent of each student involved may be considered sexual misconduct. Consent must be clearly communicated, mutual, non-coercive, and given free of force or threat of force. A student who is physically or mentally incapacitated by drugs, alcohol, or other circumstances is not capable of giving consent. Physical or mental incapacity means the lack of ability to appreciate the fact that the situation is sexual, and/or the inability to rationally and reasonably appreciate the nature and extent of that situation. Evidence of ingestion of drugs and/or alcohol may raise a presumption of physical and/or mental incapacity.

3.2. Causing incapacitation or intoxication, or taking advantage of someone's incapacitation or intoxication for the purpose of engaging in sexual activity is considered sexual misconduct.

3.3. Consent or lack of consent may be communicated verbally or through actions but if a refusal to engage in sexual activity is communicated at any time then the activity must cease immediately. Lack of consent may also be inferred from the use of force, threat, physical intimidation, or advantage gained by the Accuser's mental or physical incapacity or impairment of which the Accused was aware or should have been aware. Prior sexual activity or an existing acquaintance, friendship, or relationship that has been sexual in nature does not constitute consent for the continuation or renewal of sexual activity.

> **Services Available to Victims of Sexual Assault and Other Sex Offenses:**
> The following list identifies services, summarizes relevant policies, and illustrates the University's compliance with the requirements of the Higher Education Reauthorization Act, section 485(f).
>
> •Students should report sexual misconduct, rape, sexual assault or other sex offenses to the Department of Public Safety. The Department of Public Safety has full police powers and the staff is trained to provide accurate information on preserving evidence and the options for criminal prosecution, campus disciplinary proceedings, or both.
>
> •The staff in the Department of Public Safety and the staff in the Division of Student Affairs are available to assist students in notifying local police if the student chooses.
>
> •Campus disciplinary proceedings may be initiated against a student through the Department of Student Rights and Community Standards (see Sections 3.1, 3.2, 3.3

and/or Section 7 of this publication). To report sexual misconduct against a staff or faculty member contact the University's Director of Employee Relations and Title IX Coordinator for Human Resources. To make an anonymous report, the University's Confidential Complaint Hotline can be reached at 781-736-4452. This 24-hour hotline has been configured so that phone numbers for incoming calls are not retained by the system.

•Section 22.6 of this publication describes the right of the Accused as well as the Accuser to bring an Advisor of their choice from the University community. This section also permits the passive assistance of legal counsel by either party but only if coexisting criminal charges are pending resulting from the same incident.

•Possible sanctions to be imposed following the completion of campus disciplinary proceedings are included in Section 21 and 22. The Accuser will be informed of the outcome of disciplinary proceedings, insofar as they relate to the Accuser, in which sexual assault or harassment is alleged.

•The postcard *Personal Safety Resources at Brandeis*, published by the Division of Student Affairs, lists many helping services both on campus (e.g., Office of Human Resources, Psychological Counseling Center) and off campus (e.g., Boston Area Rape Crisis Center).

•The staff in the Division of Student Affairs is available after an alleged sexual assault incident to assist students in making any reasonably available changes in academic or living situations. The Division of Student Affairs and the Office of Human Resources offer educational programs on sexual assault.

•Brandeis' Title IX Coordinator, Linda Shinomoto, is also available to meet with students and receive complaints of sexual misconduct. Ms. Shinomoto oversees the University's investigation and resolution of all Title IX complaints. Ms. Shinomoto can be reached at 781-736-4474.

## Section 4. Maintenance of Academic Integrity

4.0. Every member of the University community is expected to maintain the highest standards of academic integrity. A student shall not submit work that is falsified or is not the result of the student's own effort. Infringement of academic honesty by a student subjects that student to serious penalties, which may include failure on the assignment, failure in the course, suspension from the University or other sanctions (see Section 21). A student who is in doubt regarding standards of academic honesty in a course or assignment should consult the faculty member responsible for that course or assignment before submitting the work. Any academic integrity report submitted to the Department of Student Rights and Community Standards is subject to review by the appropriate academic school, department, or program. In the case of an allegation against a graduate student, the appropriate program personnel will consult with the Assistant Provost for Graduate Student Affairs to determine if the student should be referred back to the department to address quality of work concerns or if the student should be referred to a conduct process for integrity concerns.

4.1. A student's name on any written exercise (e.g., examination, report, thesis, theme, notebook, laboratory report, computer program, etc.), or in association with an oral presentation constitutes a representation that the work is the result of that student's own thought and study. Such work shall be stated in the student's own words, and produced without the assistance of others, except for quotation marks, references, and footnotes that accurately acknowledge the use of other sources (including sources found on the Internet). Talking during an examination, or possession or use of

6.1.a. Students are expected to use only appropriate posting materials that will not cause damage (see Section 10.8 and/or the Department of Student Activities for non-residential spaces).

6.1.b. Students who engage in chalking must observe the distinction between advertising events and vandalism. Only sidewalks may be chalked. This excludes patios and steps to a building. Chalking on buildings and personal or University property (i.e., buildings, cars, bus shelters, signs, etcetera) is not permitted. Chalking is not permitted in areas where it cannot be washed away by the rain. The Department of Student Activities reserves the right to authorize the removal of chalked messages if they are inappropriate or use profane illustrations or language or are not in a permitted area.

6.2. respect, maintain and care for property belonging to others. Vandalism, littering, theft, attempted theft, destruction of, damage to, unauthorized possession of, or inappropriate use of property (including intellectual property) belonging to the University, a member of the University community, or any other individual or entity is unacceptable. This section also applies to the grounds, and personal and public property that surrounds the campus.

6.3. respect, maintain and care for library materials, or other academic materials or equipment. Destruction, mutilation, defacement, or tampering with any of the above is unacceptable.

6.4. observe University guidelines and policies regarding the access, occupancy, or use of University property, facilities, name, seal or logo (see Sections 10, 13, and 16). Storage closets, utility rooms, and roof areas of any University building may not be accessed by students without explicit permission.

6.5. respect and preserve the plant and animal life found on the campus. Mistreatment of animals, trees, or plantings is unacceptable.

6.6. access University buildings and facilities during posted hours and in authorized areas only.

**Section 7. Equal Opportunity, Non-Discrimination, and Harassment**
7.0. Non-Discrimination and Harassment Policy: Brandeis University is committed to providing its students, faculty and staff with an environment conducive to learning and working where all people are treated with respect and dignity. Toward that end, it is essential that Brandeis be free from discrimination and harassment on the basis of race, color, ancestry, religious creed, gender identity and expression, national or ethnic origin, sex, sexual orientation, age, genetic information, disability, Vietnam Era Veteran, qualified special, disabled veteran or other eligible veteran status or any other category protected by law. **Note:** Adjudication of any allegation related to this section will be pursuant to the Special Examiner's Process found in Section 22.6 and not the Student Conduct Process found in Section 19.

It is the University's responsibility to help prevent harassment and discrimination from occurring, to pursue concerns of which it is aware, to objectively investigate concerns, and to take immediate and appropriate action to remedy issues of harassment and discrimination. Brandeis takes this responsibility seriously. Therefore, violations of this policy will not be tolerated and may result in corrective actions up to and including dismissal from school or release from employment.

7.1. Understanding Harassment: Harassment whether sexual or based on an individual's protected class status (race, color, ancestry, religious creed, gender, national or ethnic origin, sex, sexual orientation, age, genetic information, disability, Vietnam Era Veteran, qualified special, disabled

veteran or other eligible veteran status) is a form of discrimination and will not be tolerated. It is regarded as harassment when the conduct has the purpose or effect of unreasonably interfering with a person's education or work performance by creating an intimidating, hostile or offensive environment in which to work, study or live; or otherwise adversely affects a person's employment or educational opportunities. This may include but is not limited to, hiring, firing, salary increases, promotions, grades, recommendations, scholarly or teaching opportunities, participation in extracurricular activities and student organizations. Harassment may occur between supervisor/supervisee, faculty/student, within peer groups, or with third parties.

7.2. Examples of Sexual Harassment: Depending on the circumstances, conduct which may constitute sexual harassment includes, but is not limited to:

> •Unwelcome sexual conduct toward an individual, including offensive comments, touching or sexual propositions.

> •Threats or insinuations that a person's employment, academic standing, grade, assignments, or other conditions of employment or academic life may be adversely affected by not submitting to sexual advances.

> •Leering, making sexual gestures, touching, patting, pinching, rubbing, impeding or blocking movements, displaying of sexually suggestive objects, pictures, cartoons or posters, suggestive or obscene letters or e-mails, notes, invitations or gifts.

> •Making or using derogatory comments, epithets, slurs or jokes with a sexual content.

> •Persistent unsolicited and unwelcome invitations for dates, encounters, or pressure to engage in sexual activity of an implied or explicit nature.

> •Persistent inappropriate and unwelcome questions asked about one's personal life.

> •Comments to, or about, any individual or their appearance that is sexually graphic or would otherwise tend to be degrading.

> •Displaying, sending, forwarding, downloading or otherwise distributing sexual materials via the Internet, computer, cellular data network, or e-mail.

> •Consensual sexual relationships where such relationships lead to favoritism towards the student with whom the instructor is sexually involved, which adversely affects other students.

7.3. Examples of other Forms of Harassment/Discrimination: There are other forms of harassment/discrimination as well that create a hostile educational or work environment on the basis of race, color, ancestry, religious creed, national or ethnic origin, sex, sexual orientation, gender expression, age, genetic information, disability, Vietnam Era Veteran, qualified disabled veteran or other eligible veteran status or status in any group protected by federal or state law (together, 'protected class status'). Depending on the circumstances, the following are examples of behaviors that may constitute harassment/discrimination under this policy. This is not an exhaustive list:

> •Jokes, comments or innuendoes that make fun of, denigrate, or are based on an individual's or group's protected class status.

•Epithets or slurs based on an individual's or group's protected class status.

•Objects, posters, cartoons, or pictures which make fun of, denigrate, or are based on an individual's or group's protected class status whether directed to an individual, placed on University premises or displayed or circulated on campus.

•Displaying, sending, forwarding, downloading or otherwise distributing materials via the Internet, cellular data network, computer, or e-mail that make fun of, denigrate, or are based on protected class status.

•Other verbal or physical conduct that denigrates or shows hostility or aversion toward an individual or group based on protected class status.

Determination of whether particular conduct violates this policy is made on a case-by-case basis, in light of all the known facts and circumstances.  The University may take action on conduct that it deems to be inappropriate, regardless of whether it rises to the level of a violation of law.

7.4. Retaliation: Brandeis policy, as well as federal and state law, prohibits retaliation against any person who in good faith initiates a complaint of harassment or discrimination or cooperates in the investigation of a complaint of harassment or discrimination.  Retaliation may result in corrective action up to and including dismissal from school or termination of employment (see Section 2.14).

7.5. False Claims: If it is determined that an individual falsified a claim of harassment or discrimination, it may result in corrective actions up to and including dismissal from school or release from employment.

7.6. Contact/Reporting Information, Concerning Staff or Faculty: Brandeis encourages the reporting of all perceived incidents of discrimination or harassment.  Concerns about harassment or discrimination by a faculty or staff member (including visiting faculty, post-doctoral fellows, or graduate students acting in an instructional capacity) should be brought to the attention of the Director of Employee Relations and Title IX Coordinator in the Office of Human Resources at 781-736-4474.  Concerns about third parties, such as vendors, should also be directed to this individual.  This individual, or a designee, is available to provide guidance in managing the concern, for help with informal resolution, for filing a complaint, and for reviewing complaints that require more in-depth fact-finding.  For guidance and/or to file a complaint against any undergraduate or graduate student, contact the Office of the Dean of Student Life at 781-736-3600.

**Section 17. Protection of Privacy**

17.1. The privacy of every individual in person and in their room and/or office must be respected. Malicious or unauthorized entry into rooms, offices, personal files, electronic files (see Sections 2.1.e, 11.3, and 17.4), drawers, or locked spaces, such as lockers, etc., is prohibited.

17.2. Except in circumstances as outlined in Section 10.5, authorized entry for the purpose of searching a student maintained room or space requires advance permission from the Dean of Student Life, the Senior Vice President for Students and Enrollment, or an appropriate designee. Each statement of permission to enter shall clearly set forth the purpose and objectives of the search, and shall specify the office(s), room(s), or spaces(s) to be entered.  The search shall be limited to the purpose, objective, and location set forth in the statement of permission.  The University official making the search shall show the statement of permission to the occupant at the time of entry or, in the occupant's absence, shall leave a copy of the statement in the room(s), office(s), or space(s) entered.  Immediately upon conclusion of the search, the official shall prepare and give to or leave for the occupant(s) a receipt for any property seized.

17.3. Student residence hall rooms are inspected by members of the Community Living staff periodically during the academic year to evaluate the safety, security, and health conditions of the rooms and to check for illegal possession of University–owned property.  These inspections will be conducted by floor, by section of building, or by building.  Public notification of such inspections will be provided 24 hours in advance and will specify the date and time of the inspection for a given area.  A student's presence in their room is not required for the inspection to take place (see Section 10.5).

17.4. Student Records: The Federal Family Educational Rights and Privacy Act of 1974 (FERPA) gives each enrolled student at Brandeis certain rights, including access to the student's educational records, the right to request amendment of those records where the student believes a record is inaccurate or misleading, and the right to add a statement presenting the student's view if the records are not amended.  A detailed statement of the rights and responsibilities of a student under the Act, the location of all records pertaining to a student, and the procedures for requesting access are contained in the Brandeis University Records Policy.   The policy is available from the University Registrar and at:  www.brandeis.edu/registrar/bulletin/EducRecordsPolicy.html, and  is on reserve in the University Library (see Sections 19.5 and 19.6.j).

# Student Conduct Process

### Section 18. Initial Procedures and the Mediated Resolution Option

18.0. Disciplinary action against a student (any person enrolled in any academic program at Brandeis University, up to and including the student's commencement day) may be implemented only through the report of a violation to the Department of Student Rights and Community Standards (DSRCS). Where infractions of University standards and policies are involved, written reports of violations or complaints shall be submitted to the DSRCS from the Accuser in a timely manner. The *Community Standards Report (CSR)* is the official reporting mechanism for all allegations of a Brandeis student's possible violation of a standard found in the student code, *Rights and Responsibilities*. The *CSR* will be shown, in its entirety, to the Accused. This report is a web-based form located at: https://publicdocs.maxient.com/incidentreport.php?BrandeisUniv.

In all cases the available facts shall be gathered from the Accuser (the complainant or the reporting agency), and a careful evaluation of these facts, as well as the credibility of the person reporting them, shall be made. If at this point in the judgment of the administrator in the DSRCS, there is insufficient evidence of a violation, or the case lacks merit, or it was not reported in a timely fashion, a decision not to refer the matter to the Conduct Process may be made. The Dean of Student Life may appoint, as needed, *ad hoc* conduct boards in addition to the boards described in Section 20.

18.1. Mediated Resolution Option

The Director of the DSRCS, in their discretion, may approve the offer by an Accuser to request participation of the Accused in a mediated resolution that will be facilitated by the Director of the DSRCS or by a designee. A mediated resolution process is one in which the Accuser and the Accused agree to discuss the allegation in question with the assistance of the Director of the DSRCS or a designee. The purpose of a mediated resolution process is to apply an informal, non-adversarial approach to an outcome or compromise that will be agreed-upon, recorded, final, and binding. The parties decide how to engage the conflict through shared, in-person conversation, and the parties decide together how the conflict will be resolved. The Director or designee serves to explain community standards, to ask clarifying questions, and to maintain an orderly, respectful atmosphere. The Director must also approve all proposed resolutions.

Subject matter that is sometimes well-served by a mediated resolution option includes, though is not limited to: roommate disputes, allegations of theft of personal or intellectual property, certain academic conflicts, and minor offenses of community standards.

18.2. Participating parties have discretion to propose restitution and reconciliation outcomes subject to the approval of the Director. Such outcomes will be evaluated by the Director for their relevance to the conflict, educational benefit, constructiveness, and respect of parameters found in Section 21 of *Rights and Responsibilities*. In the event of an impasse or other impediment to arriving at a mutually-acceptable outcome the Director shall declare an endpoint to the mediated resolution process and redirect the matter to the process outlined in Section 19. Failure to adhere to the expectations of the written mediated resolution outcome may expose the offending party to further mediation or referral to the conduct process (see Section 2.3).

18.3. A record of the outcome or impasse will be produced and will be subject to the retention provisions in Section 19.5.

**Section 19. Procedural Standards in the Student Conduct Process**

19.1. In cases where the Department of Student Rights and Community Standards decides that there is evidence of a violation that warrants referral to the Conduct Process the Accused will be contacted to schedule the Preliminary Meeting with the appropriate administrator (communication regarding conduct procedures and meetings will be through the student's Brandeis e-mail account). This meeting will serve to inform the student of the details of the charges and educate the student about the Conduct Process.  The student will have the opportunity to ask questions and make statements.  After the Preliminary Meeting the student will receive written charges.  (If the student fails to schedule or attend a Preliminary Meeting in a timely fashion, the written charges will be sent in the absence of a Preliminary Meeting).  The student may accept responsibility and choose Administrative Action (see Section 19.2) or may accept or deny responsibility and request a hearing before the Student Conduct Board (SCB).

The Accused must choose one of the options, via the *Choice of Action Form*, (for all written charges) within 2 business days of delivery of the written charge(s) to the student, the student's Brandeis e-mail account, or the student's home address.  Prior to making this choice, the student shall be advised of the name of the administrator who would recommend the appropriate sanction.  A student's failure to choose one of the options within 2 business days constitutes an acceptance of responsibility for the violation.  In such cases, the DSRCS administrator may proceed to sanctioning in accordance with Section 19.3, or refer the matter to the SCB for sanctioning.  In the event of extenuating circumstances, the DSRCS administrator may grant additional time for the choice. **Note:** If at the time of notification about a referral the student is withdrawn or not available in-person, the Student Conduct Process may be deferred until the student returns, re-enrolls, or voluntarily waives their right to this deferral.

19.2. Administrative Action: Within 30 class days (final exams and Senior Week constitute class days) from the date the student chooses Administrative Action, the student shall meet with the DSRCS administrator or designee to discuss the full circumstances of the charge(s); under the Administrative Action option, this is the only opportunity to present evidence.  This meeting may be in addition to, or waived in the event of, the Preliminary Meeting between the Accused and a DSRCS administrator.  Summer instruction does not constitute class days unless the student is enrolled in Brandeis Summer School.  The DSRCS shall notify the student in writing of the decision, confirming the action taken and the reasons for the decision.

19.3. If the student fails to attend a scheduled meeting with a DSRCS administrator after having chosen Administrative Action, the administrator may complete the process in the student's absence and notify him/her in writing of the decision.  A student shall have the right to one rescheduled meeting if the student fails to attend the originally scheduled meeting through no fault of their own as determined by the administrator in the DSRCS.

19.4. Deferral of Proceedings: The staff of the DSRCS may defer (place on hold) conduct action at any stage of the process for a period not to exceed 90 class days if the student is unable to participate due to their withdrawal, leave of absence, documented illness or incapacity, or if agreed upon by consent of the Accuser, and/or the DSRCS administrator, and the Accused.  Pending charges may be discontinued thereafter dependent upon the conduct of the Accused.

19.5. A record of the Administrative Action, comprised of a summary of the evidence presented and decision rendered, shall be made by the administrator.  Such records are confidential and shall be retained by the Director of Student Rights and Community Standards for seven years from the date on which this record was written, after which it will be destroyed, unless the student is involved in further conduct action.  When there are multiple incidents and associated conduct records, all

records will be maintained for seven years from the date on which the most recent incident is closed by the Student Conduct Process, after which the records will be destroyed (except in extraordinary cases as defined by the Dean of Student Life). Access to such records is governed by the *University Records Policy* (see Sections 17.4 and 19.6.j).

19.6. Procedures for Hearings before the Student Conduct Board (SCB): A hearing shall be held within 30 class days, or as soon as practicable, from the date the student chooses the Board hearing. Summer (the period between the last day of final exams for the spring semester and the first day of class in the fall semester) does not constitute class days unless the Accused is enrolled in Brandeis Summer School. Study Abroad (including domestic exchange programs) periods do not constitute class days. All hearings will be closed. Notice of the hearing date shall be delivered to the student in person, or to the student's Brandeis e-mail account, or the student's home address at least 48 hours in advance of the hearing.

19.6.a. The Hearing Administrator: An administrator from the DSRCS or another Student Affairs professional shall serve as the Hearing Administrator. The non-voting role of the Hearing Administrator is to ensure the appropriate execution of the hearing as prescribed in Section 23. Responsibilities of the Hearing Administrator also include: (a) advising the Board regarding the requirements and provisions of the University's Conduct Process; (b) providing information relevant to procedures or sanctions; (c) providing continuity in Board operations and procedures; (d) facilitating the implementation of conduct procedures at all levels of the Conduct Process; (e) acting as a liaison between Boards and the University community; and (f) assisting the Board in fulfilling its educational responsibilities. The Hearing Administrator shall be available prior to the hearing at the request of the Accused to provide information regarding the alleged violation and procedural matters. To provide adequate notice to all parties, names of any Advisors and/or witnesses will be submitted by the Accuser and the Accused to the DSRCS administrator at least 24 hours prior to the hearing. The Hearing Administrator may share the names of witnesses and Advisors with the Accused and Accuser prior to the hearing.

19.6.b. The Accused, Accuser and their Advisors are prohibited from confronting or questioning the witnesses and Accusers regarding the case prior to the hearing. Additional/unlisted witnesses may be considered at the discretion of the Chairperson of the Board.

19.6.c. Board members may be informed of the student's name and charges prior to the hearing to avoid conflict-of-interest. Any Board member may disqualify themselves and either party to the case may request to disqualify a prospective member if they can satisfy the remaining members of the Board that there is good cause for disqualification. An alternate member may take the place of the disqualified member, or the Accused and Accuser may agree to proceed without the prescribed minimum voting composition of the Board.

19.6.d. Advisors: The Accused and the Accuser in a hearing may each bring an Advisor of their choice from the University community to provide passive assistance during the hearing. With the permission of the DSRCS administrator, Advisors may be present for conduct meetings prior to, and after, the hearing. In exceptional circumstances, the Hearing Administrator may allow active participation by an Advisor during a hearing. The lack of availability of any particular Advisor will not be considered a legitimate reason to reschedule the hearing (see Section 19.6.k). To avoid even the appearance of

undue influence, DSRCS staff that advise the boards, members of the SCB, and members of the University Appeals Board are not eligible to serve as an Advisor for the Accused or Accuser.  An Advisor may not serve as a witness.  Neither party shall be permitted to employ professional legal counsel or other persons from outside the University community to present the case before the Board or to advise the student during the hearing.  However, passive assistance of legal counsel may be allowed when coexisting criminal charges are pending resulting from the same incident (see DSRCS staff for details).

19.6.e. The Accused and the Accuser must be present at the hearing (except as provided in Section 19.16.k).  The Accused may present evidence and introduce witnesses during the hearing, with the passive assistance of the student's Advisor.  Witnesses are those who were present for the incident in question, and/or have information directly related to the incident in question.  It is the responsibility of the Accuser and the Accused to notify their witnesses and Advisor regarding the time, date, and location of the hearing.  Witnesses must be available when called by the Chairperson or their testimony may be disallowed. Any expenses incurred by a witness to participate will be the responsibility of the witness.

19.6.f. All persons giving evidence or testimony are obligated to be truthful.  The Board shall rule on the admissibility of evidence and any witness testimony.  Unduly repetitious or irrelevant evidence or witness testimony may be excluded.  Rules of procedure and evidence applicable to civil or criminal cases in court do not apply.

19.6.g. The Accused and the Accuser shall have the right to view and question all evidence and reports presented to the Board during the hearing.  The Accused and the Accuser shall have the right to question all witnesses appearing before the Board and only at the hearing.  Written testimony from absentee witnesses may be received by the Board. Proof of authorship but not content of such testimony must be made by certification of a notary public.  Inaccessibility of a notary public must be brought to the attention of the DSRSC Director prior to the hearing.

19.6.h. In cases where the Accused denies responsibility, the burden of proof shall rest upon the Accuser.

19.6.i. The Board shall make one of the following decisions upon completion of the hearing: (a) a finding of 'not responsible'; (b) a finding of 'responsible' (based only upon clear and convincing evidence) and the recommendation of a sanction; (c) continuance of the case to obtain additional information or for further consideration.  Decisions shall be based solely upon evidence and testimony introduced at the hearing.  All decisions shall be made by a majority vote.  During any hearing conducted by any conduct board, the Chairperson shall vote only to break a tie.

19.6.j. A written Hearing Report, comprised of a summary of evidence presented at the hearing and decision rendered by the Board, shall be made by the DSRCS Hearing Administrator.  Hearing Reports are confidential and shall be retained by the Director of Student Rights and Community Standards for seven years from the date on which this record was written, after which it will be destroyed, unless the student is involved in further conduct action.  When there are multiple incidents and associated conduct records, all records will be maintained for seven years from the date on which the most recent incident is closed by the Student Conduct Process, after which the records will be

destroyed (except in extraordinary cases as defined by the Dean of Student Life).  Access to such records is governed by the *University Records Policy* (see Sections 17.4 and 19.5).

19.6.k. The Accused and Accuser shall have the right to a rescheduled hearing if they fail to attend the originally scheduled hearing through no fault of their own as determined by the DSRCS Hearing Administrator.  If the DSRCS Hearing Administrator concludes that the failure to attend was the fault of the Accused, the Accused shall be deemed to have accepted the responsibility, and the case will be referred for Administrative Action (see Section 19.3).  If a hearing is rescheduled, it will take place after proper notification. If the Accused fails to attend the rescheduled hearing, the Accused shall be deemed to have accepted responsibility, and the case will be referred for Administrative Action (see Section 19.3).

19.7. Appeal Procedures for Board Decisions: Following approval or modification of the sanction(s) by the Dean of Student Life or the Director of Student Rights and Community Standards (see Section 21), the Accused shall have the right to submit an appeal request concerning the decision of a board to the University Appeals Board on Student Conduct.  Such appeal requests shall be based only on specific evidence, presented in writing of:

> 19.7.a. fraud
> 19.7.b. denial of rights under this process
> 19.7.c. procedural error
> 19.7.d. the claim of new evidence not previously available, which would have materially affected the decision

Appeals shall not be based upon, or granted due to, dissatisfaction with an imposed sanction. Appeal requests must be filed within 7 business days of delivery of the conduct action to the student in person, or to the student's home address, or Brandeis e-mail address.  If the University Appeals Board determines that a written request for appeal has merit, it shall conduct a new hearing of the case.  Upon completion of the appeal hearing, the University Appeals Board may uphold the original decision and sanction imposed, find the Accused not responsible, or increase or decrease the sanction.  Any sanctions shall not take effect until approved or modified by the Dean of Student Life (or designee) or the Director of Student Rights and Community Standards (see Section 21).

19.8. Procedures for Dean's Review of Administrative Actions/Decisions (see Sections 19.1, 19.2, and 19.3): The Accused shall have the right to meet with the Dean of Student Life or Associate Dean of Student Life to discuss an administrative decision or Administrative Action.  A student must request this meeting within 2 business days of delivery of the conduct action announcement. The Dean/Associate Dean may or may not amend the original decision and/or sanctions.

19.9. Accused students who obtain information at their hearing which might lead to new evidence shall ask for a continuance of that case at that time, rather than wait to raise the matter for the first time as the basis for an appeal request.

**19.10. Hearing Procedures in the Student Conduct Process[1]**

All hearing participants are brought into the Board hearing room.

A. The Chairperson invites all participants to introduce themselves.

B. The Chairperson explains the philosophy of peer judgment and Board procedures (a copy of this statement is available from the Department of Student Rights and Community Standards).

C. The Chairperson reads the statement of the parties ' *Rights to Fairness* under this process:
> 1. To bring one Advisor of the Accused/Accuser's choice from the University community. to provide passive assistance during the hearing (the Advisor may not serve as a witness).
> 2. To present witnesses on their own behalf.
> 3. To question witnesses appearing against them.
> 4. To submit verbal arguments.
> 5. To remain silent and not testify against themselves. The Accused and Accuser should remember that if they remain silent, the Board is compelled to hear the case and render a decision based upon the evidence presented.

D. Witnesses leave the room.

E. The Chairperson reads the accusation(s) from the *Choice of Action Form*.
> 1. The Accused is asked if they understand the accusations.
> 2. The Accused accepts or denies responsibility. *Although the Accused student has already indicated their choice of action earlier in the Student Conduct Process, this step insures that all participants are clear that the Accused wishes to continue with the hearing*

F. Initial Presentations:
*In the event that there is more than one Accused, the Board may bring them into the hearing room either individually or as a group, in alphabetical order, for Initial Presentations; this system shall prevail throughout the remainder of the hearing procedures.*
> 1. The Accuser offers their description of incident.
> 2. The Accused offers their description of the incident.
> 3. The Accused may ask questions of the Accuser.
> 4. Board members may ask questions of the Accuser.
> 5. The Accuser may ask questions of the Accused.
> 6. Board members may ask questions of the Accused.

G. Witnesses for the Accuser may be called
> 1. The Accuser may ask questions of the witness.
> 2. The Accused may ask questions of the witness.
> 3. Board members may ask questions of the witness.
> 4. The witness is excused from the hearing room (but retained outside for possible recall).

H. Witnesses for the Accused may be called
> 1. The Accused may ask questions of the witness.
> 2. The Accuser may ask questions of the witness.

---

1 Procedures for cases involving allegations of Sections 3 or 7 will be adjudicated by the Special Examiner's Process found in Section 22.6.

3. Board members may ask questions of the witness.
4. The witness is excused from the hearing room (but retained outside for possible recall through Step M.).

I. The Accuser, the Accused, or Board members may recall witnesses or re-question the Accuser or the Accused (following same order as previous witness questioning). Witnesses should remain outside until after the conclusion of letter M. The Chairperson or Hearing Administrator will excuse witnesses from their waiting position at the appropriate time.

J. Final statement of the Accuser (no new testimony).

K. Final statement of the Accused (no new testimony).

L. The Accuser, the Accused, and their respective Advisors leave hearing room, but remain outside until the conclusion of letter N. or O.

M. Board deliberates on the responsibility or lack of responsibility of the Accused. The Accused, the Accuser, and Advisors are called back into the hearing room to hear the decision regarding responsibility.

N. If the Accused is found not responsible for all charges, all participants are excused and hearing is adjourned. An outcome notification (via Brandeis e-mail) will be sent to the Accused, usually within 3-5 business days, pending approval by the Dean of Student Life or an Associate Dean of Student Life.

O. If the Accused is found responsible for one or more charges, recommendations and questions on sanction(s) are heard.
1. The Accuser offers recommendations to the Board regarding possible sanctions.
2. The Accused may question the Accuser about the Accuser's recommendations.
3. The Accused offers recommendations to the Board regarding possible sanctions.
4. The Accuser may question the Accused on the Accused's recommended sanctions.
5. The Board may question the Accused and the Accuser on their recommended sanctions.

P. The Accuser, the Accused and their respective Advisors are informed that the Board will deliberate on sanction recommendations which will be communicated to the Director of Student Rights and Community Standards, Associate Dean of Student Life and/or Dean of Student Life. Final sanction determinations will be communicated in writing to the Accused, usually within 3-5 business days. The Accused, the Accuser, and Advisors are excused and the Board reserves the right to adjourn for later deliberations.

Q. The Board deliberates on sanction recommendations.
1. The Board is advised of past conduct involvement of the Accused, if any, by the Hearing Administrator.
2. The Chairperson will record the Board's recommendations, which will be forwarded to the Hearing Administrator and reviewed by the appropriate administrator.

Appeal procedures will be addressed in the final outcome letter to the Accused.

**Section 20. Composition of Boards**

20.1. The Student Conduct Board: The SCB shall hear cases of alleged violations of community standards of behavior or University policies referred to it by the DSRCS, with the exception of cases related to Sections 3 and 7 (see Section 22.6). SCB Hearing Procedures are enumerated in Section 19.10.

20.2. In hearing cases of alleged violations of policy on academic integrity (see Section 4), a Student Conduct Board voting panel of two students and two faculty must be present; at hearings for alleged violations of all other standards or policies, a voting panel of three students and one faculty member or staff member must be present. The voting requirements in this section may be waived by mutual consent of the SCB, the Accuser, and the Accused.

20.3. A pool of faculty members and staff members shall serve on the Board. Faculty members are appointed by the Chairperson of the Faculty Senate. Staff members appointed by the Senior Vice President for Students and Enrollment. The term of appointment for faculty and staff members shall be two years and renewable.

20.4. Students shall be selected annually by a process open to all continuing students. The Board is formed in the spring of the preceding academic year of a representative cross-section of Brandeis students.

20.5. The SCB shall be chaired by students, each annually selected by the Board and the DSRCS Director.

20.6. Any member of the SCB may be removed by the DSRCS Director in consultation with the student Chairpersons if the member is determined to be responsible for behavior that conflicts with the high standards of citizenship, confidentiality, and cooperation that the Board represents.

20.7. The University Appeals Board on Student Conduct: The University Appeals Board (UAB) shall hear appeals of decisions of the Student Conduct Board, the Special Examiner's Process, and appeals of decisions of any *ad hoc* board which may be formed at the discretion of the Dean of Student Life (see Section 19.8 for information on Administrative Action review). An Associate Dean of Student Life will serve as Chairperson of the University Appeals Board.

20.8. The University Appeals Board shall be comprised of three voting members (one full-time student and two members of the faculty) and one faculty Chairperson. At least two undergraduate students and at least two graduate students shall be appointed to the voter pool by the President of the Student Union and Graduate Student Association, respectively. At least four faculty shall be appointed to the voter pool by the Chairperson of the Faculty Senate. A Chairperson who is a full-time tenured faculty member shall be appointed by the Dean of Student Life. Students appointed to the UAB must be free from all elected, appointed, or affiliate relationships with the Student Union or Graduate Student Association. The term of appointment for faculty and staff members shall be two years and renewable.

20.9. Members and alternates on the UAB shall be selected in a manner similar to that of the SCB, with its formation led by the Dean of Student Life and at least one other member of the Dean's staff. If a UAB position becomes vacant, and no alternate is available, the original appointing authority shall appoint a replacement for the remainder of the term.

20.10. A member of the UAB may be removed by the Dean of Student Life in consultation with the Chairperson, if the member is determined to be responsible for behavior that conflicts with the high standards of citizenship, confidentiality, and cooperation that the UAB represents.

20.11. UAB Hearing Administrators: The UAB shall have an administrator from the Office of the Dean of Student Life serving as a Hearing Administrator in all stages of the hearing and deliberations.  Responsibilities of the UAB Hearing Administrator shall include: (a) advising the UAB regarding the requirements and provisions of the University's conduct process; (b) providing information relevant to procedures or sanctions; (c) providing continuity in UAB operations and procedures; (d) facilitating the implementation of conduct procedures at all levels of the conduct process; (e) acting as a liaison between boards and the University community; and (f) assisting the UAB in fulfilling its educational responsibilities.

## Section 21. Range of Conduct Actions and Sanctions

21.0. A variety of actions may be taken as a consequence of being found responsible for a violation of community standards.  When determining these actions, a DSRCS administrator, the SCB, or the UAB may consider all facets of the specific individual situation, including but not limited to the seriousness of the offense, prior history of violations, impact of the offense on others, the student's class year, and/or evidence of intent.  Because the purpose of this process is to uphold and promote community standards, a learning component is also part of the sanctioning process whenever appropriate.  These learning components may include, but are not limited to:

- •Failure in a course or on an assignment
- •Workshops on note-taking, proper citation, or writing a research paper
- •Training (e.g. conflict resolution)
- •Education on ethical decision-making
- •Education on alcohol and drug abuse
- •Restitution for damages
- •Counseling/assessments
- •Family notification

21.1. Learning components may be imposed in combination with other disciplinary action, and may include a required completion date.  Failure to complete any designated learning component, as with any other sanction, could result in further conduct action (see Section 2.3).  Sanctions shall not take effect until approved by the Director of Student Rights and Community Standards, the Dean or Student Life, or the Associate Dean of Student Life, all of whom can modify the proposed sanction(s).  Suspensions or dismissals shall not take effect until approved by the Dean of Student Life, who can modify the sanction(s).

21.1.a. No Further Action: In cases where the student is found responsible and the discussion with the administrator or the hearing before the Board has been sufficient in-and-of itself, further action may not be deemed necessary.  However, the responsible finding is noted in the student's record in the Department of Student Rights and Community Standards.

21.1.b. Disciplinary Warning: The student may be warned in writing of the possible consequences of continuing inappropriate behavior.  Additional conditions may be applied as appropriate.

21.1.c. Residence Probation: A student who is placed on Residence Probation is not in good standing with their living unit for a specified period of time, and conditions may be placed on their actions.  The status of Residence Probation reminds the student that their

infraction has become part of their record and that repetition of similar or other unacceptable behavior may be cause for removal from the residence halls. The Department of Community Living will be notified of students who are placed on Residence Probation.

21.1.d. Removal from Living Unit: This action precludes the student's continued residence either in a particular living unit or in any campus living unit. Such action would normally be taken after one serious violation or repeated violations related to the living unit environment, and is exercised in conjunction with the Department of Community Living.

21.1.e. Loss of University Privileges: A student may be denied certain University privileges including, but not limited to, early arrival on campus, extended stays in the residence halls, participation in campus activities, representing the University in competition or other official capacities, campus employment, and campus leadership opportunities. Loss of such privileges extends over a specific period of time, and is designed to reflect a specific community concern about the student's behavior.

21.1.f. Disciplinary Probation: A student who is placed on Disciplinary Probation is permitted to remain enrolled at the University, often under certain stated conditions depending upon the nature of the violation and potential learning value that may be derived from such conditions. The probation usually extends over a stated period, during which it is clearly understood that the student is subject to further disciplinary actions, including suspension or dismissal, if they violate the terms of the probation or in any way fail to conduct themselves as a responsible member of the University community. Disciplinary Probation is a final warning to the student to help them reevaluate their behavior.

21.1.g. Suspension: An involuntary separation of the student from the institution, Suspension differs from Dismissal since it defines conditions under which return will be possible. Suspension may extend for a semester, until a designated date, and/or until degrees/certificates will not be issued and credit will not be granted for courses taken elsewhere. Following the Suspension period, return to Brandeis requires initial approval of the Dean of Student Life and then approval by the Committee on Academic Standing regarding academic suitability for readmission.

21.1.h. Dismissal: A permanent, involuntary separation of the student from the institution.

**Section 22. Dean's Actions and Sanctions**

22.1. Protection of Individuals and the Community: Whenever the University has reason to believe that a student's conduct or behavior may disrupt the safety or well-being of another student, faculty, staff, guest or other University community member, the University may take any action that it believes to be appropriate and reasonable under the circumstances. This may include, but is not limited to, notification of the student's parent or guardian, removal of the student from a residence hall, or other action deemed necessary to remove or minimize the threat or disruption.

The Dean of Student Life or designee is the only authorized grantor of permission to a student who wishes to return to classes and/or the residence halls after any removal.

In the event the University takes such action, the University shall notify the student of the action taken and the basis for the action. Within 3 business days of notification, the student shall have an opportunity to speak with the Dean of Student Life, or the Dean's designee, to discuss the situation and provide information, including documentation by a health care provider, to contest the action(s) taken. The Dean of Student Life shall then decide, at the Dean's discretion, whether to reinstate or restore the student's privileges, to consider further action under this procedure, or to take additional reasonable and appropriate steps.

22.2. Emergency Suspension: Pending final action on a violation of University regulations, the status of a student shall not be altered, or their right to be present on the campus and to attend classes suspended, except for reasons of imminent danger to their physical or emotional safety or well-being, or for reasons of imminent danger to the safety or well-being of the University community. The decision to separate a student from the campus under these conditions shall be made by the Dean of Student Life or, in the Dean's absence, by the Dean's designee. If a student is separated from the campus by this authority, the procedures outlined in Section 19.1 shall be implemented within 10 class days after the separation.

22.3. Indefinite Suspension: In the event the Dean of Student Life learns that a Brandeis student has been charged with or convicted of a crime, the Dean or the Dean's designee may immediately remove the student from campus housing, restrict the student's access to the campus, and/or indefinitely suspend the student from the University pending the final outcome of a criminal proceeding. In making this decision, the Dean must consider the nature of the crime and the risk to the safety or well-being of the University community. A student suspended under this authority may request a meeting with the Dean and the Student Conduct Board (SCB). The SCB shall assess the risk to the safety or well-being of the Brandeis community and advise the Dean. The final decision on continuation of the suspension shall be made by the Dean of Student Life, or in the Dean's absence, by the Dean's designee. The procedural standards set forth in Section 19 do not apply to Indefinite Suspension.

22.4. Dean's Sanctions: Brandeis University expects students to conduct themselves at all times as good citizens and good neighbors in a manner that is consistent with the federal, state, and local laws and ordinances. Off-campus behavior which, in the judgment of the Dean of Student Life, constitutes behavior that is inconsistent with this expectation and adversely affects the University community may result in disciplinary action up to and including dismissal. A student disciplined under this authority may request a meeting with the Dean and the Student Conduct Board (SCB). The SCB shall advise the Dean on the appropriateness of the sanction. The final decision shall be made by the Dean of Student Life or, in the Dean's absence, by the Dean's designee. The procedural standards set forth in Section 19 do not apply to off-campus behavior or Dean's Sanctions.

22.5. Medical and Emotional Emergencies: Whenever a student's conduct results in the intervention of Brandeis' Health Service, the Brandeis Psychological Counseling Center, or a non-Brandeis medical or psychological health care provider in order to prevent or address a student's self-harm or harm to others, or to address a student's severe emotional or psychological distress, the Dean of Student Life will establish an emergency protocol for that student.  Any student who receives treatment from a non-Brandeis medical or psychological health care provider under these circumstances must contact the Dean upon release.

The Dean shall notify the student in writing of the emergency protocol and the basis for the protocol.  Within 3 business days of notification, the student shall have an opportunity to speak with the Dean, or the Dean's designee, to discuss the protocol and provide information, including documentation by a health care provider, to contest the action(s) taken.  The Dean shall then decide, at the Dean's discretion, whether to reinstate or restore the student's privileges, to consider further action under this procedure, or to take additional reasonable and appropriate steps.

During the period begun by the emergency intervention and continuing until the conveyance of explicit written permission by the Dean of Student Life (or designee) to resume campus functions, a student subject to an emergency protocol is not permitted to access any campus property, facilities or attend any classes.  There will be no exception for examinations or other time-sensitive student activities or academic obligations.  Failure to comply with this protocol may result in referral to the Student Conduct Process as defined in this document (see Sections 2.2 and 2.3).

### 22.6.  Special Examiner's Process
In cases where the DSRCS receives a report and determines that one or more possible violations of Section 3 (Sexual Responsibility) or Section 7 (Equal Opportunity, Non-Discrimination, and Harassment) exist, the case will be adjudicated by the Special Examiner's Process.  This process is described here in Section 22 because it is distinct from the procedures described in the Student Conduct Process found in Section 19.  Brandeis is committed to acknowledging and preserving the rights and responsibilities of all its students through all of its disciplinary procedures.

### Roles and Terms
**_Community Standards Report (CSR)_:** The official reporting mechanism for all allegations of a Brandeis student's possible violation of a standard found in the student code, *Rights and Responsibilities*.  The *CSR* will be shown, in its entirety, to the accused student(s).  This report is a web-based form located at:
https://publicdocs.maxient.com/incidentreport.php?BrandeisUniv.

**Advisor:** Any current member of the Brandeis Community, including undergraduate and graduate students, faculty members, and administrators and staff, except when co-existing criminal proceedings exist, in which case the Advisor role may instead be held by a party's attorney.  The role of any Advisor is passive, and does not include writing or speaking on behalf of their party.

**Director of Student Rights and Community Standards:** The Director receives reports and determines, in conjunction with the Dean of Student Life, whether a *Community Standards Report* will be forwarded to the Student Conduct Process or the Special Examiner's Process.

**Special Examiner:** The examiner of allegations and related evidence regarding the allegations.  The Special Examiner will conduct an investigation and prepare a report of

their findings at the conclusion of the Fact-Finding Phase that is submitted to the Dean of Student Life in support of the Outcome Phase of the process.

**Observer:** A member of the faculty or staff, currently or formerly a member of the Student Conduct Board or formerly of the University Appeals Board, who is present at all in-person meetings involving the parties held by the Special Examiner during the Fact-Finding Phase of the process.   Multiple Observers may participate in a Special Examiner's Process.

**Witness:** Any person who was present during the alleged incident(s) or who has direct knowledge of the incident.

**Dean of Student Life:** The Dean renders the Final Decision as to the outcome of the case after receiving the findings from the Special Examiner.

**University Appeals Board (UAB):** The UAB will receive any appeal by a party and make a report of its opinions to the Dean of Student Life.

**Standard of Evaluation:** This process will use the *Preponderance of the Evidence* standard in evaluating the responsibility of the Accused.   Under this standard, the Accused is presumed not to have engaged in the alleged conduct unless a "preponderance of the evidence" supports a finding that the conduct occurred.   A preponderance of evidence means a greater weight of evidence or more likely than not.

**Time Frame:** The Special Examiner's Process will be conducted deliberately and without unnecessary delay.   It will be the goal of the University to conclude all phases of the process within 60 days cumulatively, or as soon as is practicable if unusual circumstances exist.

**Process**
**Statements Phase** (approximately 5-10 days)
Upon the receipt of a *Community Standards Report*, the Special Examiner will meet in-person with the Accuser and request that the Accuser compose in writing a thorough statement of the allegation(s) if the contents of the initial report do not represent a full account.   In addition to this statement, any other substantiating materials, such as e-mail, text messages, photographs, records, names of witnesses, names, etcetera, should be submitted to the Special Examiner.   This is the principal opportunity for the Accuser to convey any and all information deemed useful for the Special Examiner's investigation.

The Special Examiner will discuss the process in full with the Accuser, including the decision about the Accuser's choice of Advisor.   If the Accuser is a Brandeis student, the discussion will also include ample dialog about ongoing efforts to support the student in a variety of non-conduct-related areas, such as medical and counseling services, academic support services, living arrangements, classroom assignments, directory information accessibility, travel considerations, and etcetera.   Further, the Accuser will be reminded that the the Special Examiner's Process does not substitute for the filing of a complaint with law enforcement.   The Accuser may initiate both processes.   Information about initiating a criminal complaint will be explained.   Criminal investigations need not be concluded prior to the initiation of the Special Examiner's Process.

Subsequent to the initial meeting with the Accuser, the Special Examiner will contact the Accused in writing (Brandeis e-mail account) to inform them that a *Community Standards Report* has been

submitted.  Within 2 business days, the Accused will meet in-person with the Special Examiner. The Special Examiner will show to the Accused the *Community Standards Report (CSR)* and request that the Accused compose in writing a thorough response to the allegations described in the *CSR*. In addition to this response, any other substantiating materials, such as e-mail, text messages, photographs, records, names of witnesses, names, etcetera, should be submitted to the Special Examiner.  This is the principal opportunity for the Accused to convey any and all information deemed useful for the Special Examiner's investigation.  **Note:** The Accused will not be shown the Accuser's detailed statement until the Accused has written their own detailed response to the *CSR*. Subsequent to the Accused's submission of their response to the *CSR*, the Special Examiner will share the content of each party's statement with the other.

The Special Examiner will discuss the process in full with the Accused, including the decision about the Accused's choice of Advisor.  Since the Accused is always a Brandeis student, the discussion will also include ample dialog about ongoing efforts to support the student.  Once the Special Examiner's Process is activated by a *CSR*, it may not be interrupted by the withdrawal from the University by the Accused.

The Accused may accept or deny responsibility for the allegations presented in the *CSR*.  If the Accused accepts responsibility, the Dean of Student Life will issue an outcome for the case, including disciplinary actions or sanctions.  Notification will be made in writing (hand-delivered paper copy) to the Accuser and the Accused.

If the Accused denies responsibility, the Special Examiner's Process will progress to the Fact-Finding Phase.

Cooperation by the parties with the Special Examiner is expected.  If a party fails to attend a scheduled meeting with the Special Examiner, the Special Examiner may resume the Special Examiner's Process in the party's absence.  A party shall have the right to one rescheduled meeting if the failure to attend the originally scheduled meeting was through no fault of their own as determined by the Special Examiner.  If the Accused fails to cooperate prior to accepting or denying responsibility for the allegation(s), the Special Examiner may consider the Accused to have accepted responsibility and to report accordingly to the Dean of Student Life for the Outcome Phase.

**Fact-Finding Phase** (approximately 30 days)
The Special Examiner will conduct the Fact-Finding Phase based both on materials and information offered by the parties during the Statements Phase, as well as other materials and information discovered in the course of this phase.

> **Documents and other Physical Evidence**
> In addition to information and materials submitted during the Statements Phase, the parties and other witnesses, identified either by the parties or by the Special Examiner, may be added to the record for consideration during the Fact-Finding Phase.  Documents and other physical evidence deemed by the Special Examiner to be of material importance to the Outcome Phase will be logged and shared equally with the parties to ensure the opportunity for response.  The Special Examiner retains the discretion not to share certain records due to confidentiality concerns, in accordance with applicable law.

> **Interviews with Parties and Witnesses**
> Interviews with the the parties, witnesses, and experts will also be conducted at the discretion of the Special Examiner.  The Special Examiner will secure written release as

necessary to access pertinent records protected by confidentiality and privacy policies and laws. The Special Examiner will determine who will be interviewed, as well as how many times, and in what order individuals will be interviewed.

### Interviews with the Accuser and Accused

Interviews with the parties will be conducted separately and in-person. These interviews will address not only the facts of the case but also the impacts that the accounts have had on them. The Special Examiner will be joined at all interviews by an Observer, whose role is passive. The parties are entitled, though not required, to be joined by their Advisor during all interviews with the Special Examiner.

### Interviews of Witnesses

Interviews of witnesses named by the parties during the Statements or Fact-Finding Phases of the process as well as those identified by the Special Examiner, may be conducted in-person, by telephone, or by use of Internet-based tools. Some witnesses may not be local or easily accessible, and the Special Examiner will make a good-faith effort to contact all pertinent witnesses. Expert witnesses may be consulted to verify materials or provide opinions about information or documents submitted by the parties.

### Special Examiner's Report

Upon conclusion of all interviews and collection of all known documents and materials deemed necessary by the Special Examiner, the Special Examiner will assemble a report that summarizes undisputed and disputed facts, and may offer conclusions or recommendations as to the credibility of testimony or potential outcomes.

**Discussion Phase** (approximately 5-10 days)
This phase of the Special Examiner's Process provides the Accuser and the Accused with separate meeting opportunities with the Dean of Student Life to hear and respond to the findings made by the Special Examiner, and to offer rebuttal or new information to the Dean based on the findings.

The parties, in separate meetings, will listen to the Dean's summary of findings and engage in dialog with the Dean about these findings. Each party will also have 2 business days within which to provide new, pertinent information or names of witnesses for the Dean's consideration. If after the meetings with the parties and after the submission of any new information or witness names, the Dean seeks additional fact-finding, the Dean will request the Special Examiner to make any and all necessary inquiries. The Special Examiner will submit a supplemental report to the Dean based on the new inquiries. The Dean retains the discretion to hold another round of meetings with the parties to discuss the new findings.

**Outcome Phase** (approximately 7 days)
The Outcome Phase exists in two parts, Pre-Decision Action and the Dean's Final Decision. The first part (Pre-Decision Action) is comprised of a period of time during which the parties will reflect on the discussion previously shared with the Dean. The parties will have the option to take a Pre-Decision Action (described below) regarding their participation in the case before the Dean renders the Final Decision. If the Accuser and Accused do not exercise a voluntary Pre-Decision Action, the Dean will issue the binding Final Decision. The Dean will render the Final Decision no earlier than 4 business days, and usually within 7 business days following the Discussion Phase in order to provide a period of consideration by the parties. The Dean will communicate in writing (Brandeis e-mail) to both parties at the beginning of the Outcome Phase so as to clearly delineate the time frame in the Outcome Phase.

### Pre-Decision Action by the Parties

The Accuser will have the opportunity to withdraw their allegation(s) against the Accused anytime prior to the Dean's Final Decision. The voluntary choice to withdraw the allegation(s) is a non-reversible one. This choice will terminate the Special Examiner's Process. The University reserves the right to take actions against the Accused outside of the Special Examiner's Process.

The Accused will have the opportunity to accept responsibility for the allegation(s) anytime prior to the Dean's Final Decision. The voluntary choice to accept responsibility for the allegation(s) is a non-reversible one. This choice will prompt the Dean of Student Life to issue an outcome for the case.

### The Dean's Final Decision

The Dean's Final Decision is communicated in writing (hand-delivered paper copy) to the Accuser and the Accused within 7 days under usual circumstances. The finding will be announced and supporting information will be referenced. The Accuser will be informed of any sanctions that relate to them in accordance with applicable laws. There are two general outcomes that are possible based on the Dean's application of the preponderance of the evidence standard of evaluation:

1. A finding that the Accused is responsible for the alleged violation(s) of *Rights and Responsibilities*. This finding will be accompanied by appropriate disciplinary actions or sanctions as deemed appropriate by the Dean.

2. A finding that the Accused is not responsible for the alleged violation(s) of *Rights and Responsibilities*. This finding will be accompanied by a statement of the dismissal of allegations against the Accused.

Any and all sanctions, including suspension or dismissal, will be in effect immediately, regardless of any appeal that may be submitted by the parties.

## Appeals Procedures

The Accuser and the Accused are entitled to appeal the Final Decision by the Dean in the Special Examiner's Process to the University Appeals Board on Student Conduct (UAB). Such appeal requests shall be based only on specific evidence, presented in writing of:

1. fraud
2. denial of rights under this process
3. procedural error
4. the claim of new evidence not previously available, which would have materially affected the decision

Appeals shall not be based upon, or granted due to, dissatisfaction with an imposed sanction. Appeal requests must be filed within 7 business days of delivery of the Dean's Final Decision. Appeals that are not related to the above 4 bases will not be considered. The Special Examiner will respond in writing to the appeal. The appeal by the party and the response by the Special Examiner will be forwarded to the University Appeals Board. On the first business day after the conclusion of the appeal deadline, the Dean will alert the parties by e-mail that one or more appeals have been filed. If the UAB finds merit in an appeal request, the UAB will share the appeal

request with the appellee. The appellee will have 4 business days to submit a response to the appeal request to the UAB before the UAB makes any statements about the appeal request to the Dean.

The UAB will convene within 7 business days, or as soon as practicable, to discuss the written appeal request.  The UAB will submit a written report to the Dean of Student Life of their opinions, thoughts, and suggestions about the appeal.  During the UAB's consideration of the appeal, any pertinent documents, notes, or other materials considered by the Dean of Student Life in making the Final Decision will be made available to the UAB.  The UAB may make recommendations or suggestions to the Dean about the specific concerns of the appellant.

The Dean of Student Life will receive the UAB's written report and will retain the discretion to amend or uphold the original Final Decision.  The Accuser and the Accused will receive written notification of the appeal outcome (hand-delivered paper copy).

**Records Retention**
Documents generated from the Special Examiner's Process will be retained pursuant to the rules in Sections 17.4, 19.5, and 19.6.j.

# Exhibit C

# Rights and Responsibilities



**2013 − 2014**

**Section 2. Respect for the Health, Safety, and Rights of Community Members**

2.0. All members of the community share the responsibility for protecting and maintaining community health and safety and the rights of other persons. Concentrated housing, varied activities, and the needs of students, faculty, and staff for freedom to pursue their own educational tasks and complete job-related responsibilities free from hazards and intrusions, requires the cooperation of all in maintaining these standards.

2.1. Respect the integrity and personal rights of individuals. The University will not tolerate any behavior that:

> 2.1.a. intimidates.
>
> 2.1.b. threatens.
>
> 2.1.c. harasses or bullies (see Section 7 regarding harassment).
>
> 2.1.d. physically harms or is considered unwanted physical contact (some examples: hitting, pushing, or physical altercations/violence of any kind).
>
> 2.1.e. invades personal privacy (see Sections 2.5, 11.2, 11.3, and 17).
>
> 2.1.f. endangers the health, safety, or welfare of any other person on or off campus. Due to the seriousness of any integrity or personal rights accusations and accompanying issues that may impact the Brandeis community, any student involved in such an incident may be placed on campus restriction or emergency suspension pending the outcome of any investigation or conduct process (see Section 22).
>
> 2.1.g. defames or slanders.
>
> 2.1.h. constitutes stalking. The term 'stalking' is defined by the Commonwealth of Massachusetts as: "Whoever (1) willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress, and (2) makes a threat with the intent to place the person in imminent fear of death or bodily injury."

2.2. Comply with instructions of University officials, Special Examiners, committees, or boards.

2.3. Comply with the final decision of the Student Conduct Board, the University Appeals Board, or with an Administrative Action or University Action.

2.4. Recognize and allow for the legitimate functions of the University. Obstructing or disrupting teaching, research, administrative, public service, disciplinary, or other authorized functions is unacceptable.

2.5. Refrain from using computers, cellular phones, tablets, cameras, or other electronic devices in any manner that causes disruption to or invades another individual's privacy in a classroom, library or other campus facility or any campus event.  This includes misuse of computer and/or cellular devices with photographic, audio or video recording or streaming, or text messaging capability (see Sections 2.1.e, 11.2, 11.3, 11.4 and 17.1).

2.6. Use safety equipment and/or initiate safety procedures only when it is necessary (this includes, but is not limited to, fire equipment, fire alarms, fire drills, and exit lights). Initiating a false fire alarm or issuing any type of threat is strictly prohibited (see Sections 9 and 10.15.m).

2.7. Refrain from discrimination on the basis of race, sex, color, national origin, religion, age, gender, gender identity and expression, sexual orientation, disability, veteran status, or genetic information (see Section 7).

2.8. Refrain from hazing.   Hazing is an activity expected of someone joining or participating in a group that humiliates, degrades, abuses, or endangers them (physically or emotionally), regardless of a person's willingness to participate.  Examples of hazing common across student groups include: alcohol consumption; humiliation; isolation; sleep-deprivation; sex acts; initiating or disciplining fellow students, often in the nature of forced alcohol consumption; and humiliating or painful ordeals (see Appendix A for related Massachusetts law) (see Section 1.8).

2.9. It is prohibited to possess or use firearms (including blank pistols and replicas, bb guns, and pellet guns), explosives, knives, fireworks, nun-chucks, paintball guns, and other articles or substances usable as weapons on University property.

2.10. Obtain clearance from the Department of Student Activities for the use of loud speakers or other sound amplification equipment at outdoor events.

2.11. Refrain from bringing any dog or animal onto the campus without a leash.  Students are prohibited from allowing any unrestrained animal to enter any campus building, or allowing any restrained or unrestrained animal (other than guide and service animals) to enter dining service buildings, campus centers, residence halls, or libraries (see Section 10.4).

2.12. Assume responsibility for the actions, damage, or injuries caused by, or costs incurred for the services related to hosting a guest on campus.  The University reserves the right to impose requirements related to the safety or security concerns of a visit by a guest, and to assess the host for the cost of meeting these requirements (see Sections 10.6 and 10.10).

2.13. Comply with the regulations enumerated in other official University publications and documents (e.g., library policies, computer use policies, Dining Services policies, the Residence Halls and Meal Plan License, parking policies, and financial aid policies).

2.14. Refrain from any verbal or physical behavior or actions that could be construed as retaliation for an individual's good-faith report to the Department of Public Safety, the Student Conduct Process, or another University official regarding another student (see Section 7.4).

**Section 3. Sexual Responsibility – Seeking and Communicating Consent**

3.0. Brandeis University expects all members of the University community to treat one another with respect. Policies regarding sexual misconduct emphasize personal accountability as well as recognition of the impact of one's behavior on others. Students are encouraged to examine their own values, communicate with one another clearly, and acknowledge the condition and requests of others. Incapacity to consent to sexual activity or compromised communication can result when individuals are under the influence of intoxicants such as alcohol and other drugs. If all parties do not consent, or are unable to consent to a sexual act, then the interaction could be defined as sexual misconduct or sexual assault. Consent must be sought affirmatively and clearly understood and communicated before engaging in any sexual activities. Due to the seriousness of sexual misconduct accusations and accompanying issues that may impact the Brandeis community, any student accused of sexual misconduct may be placed on campus restriction or emergency suspension pending the outcome of any investigation or conduct process (see Section 22). **Note:** Adjudication of any allegation related to this section will be pursuant to the Special Examiner's Process found in Section 22.6 and not the Student Conduct Process found in Section 19.

3.1. Students are prohibited from engaging in sexual misconduct. Sexual contact that occurs without the explicit consent of each person involved may be considered sexual misconduct. Consent must be clearly and affirmatively communicated, mutual, non-coercive, and given free of force or threat of force. A person who is physically or mentally incapacitated by drugs, alcohol, or other circumstances is not capable of giving consent. Physical or mental incapacity means the lack of ability to appreciate the fact that the situation is sexual, and/or the inability to rationally and reasonably appreciate the nature and extent of that situation. Evidence of ingestion of drugs and/or alcohol may raise a presumption of physical and/or mental incapacity.

3.2. Causing incapacitation or intoxication, or taking advantage of someone's incapacitation or intoxication for the purpose of engaging in sexual activity is considered sexual misconduct.

3.3. Consent or lack of consent may be communicated verbally or through actions but if a refusal to engage in sexual activity is communicated at any time then the activity must cease immediately. Lack of consent may also be inferred from the use of force, threat, physical intimidation, or advantage gained by the Accuser's mental or physical incapacity or impairment of which the Accused was aware or should have been aware. Prior sexual activity or an existing acquaintanceship, friendship, or other relationship that has been sexual in nature does not constitute consent for the continuation or renewal of sexual activity.

**Services Available to Survivors/Victims of Sexual Assault and Other Sex Offenses:**

The following list identifies services, summarizes relevant policies, and illustrates the University's compliance with the requirements of the Higher Education Reauthorization Act, section 485(f).

•Undergraduate and graduate students should report sexual misconduct, rape, sexual assault, or other sex offenses to the Department of Public Safety.  The Department of Public Safety has full police powers and the staff is trained to provide accurate information on preserving evidence and the options for criminal prosecution, campus disciplinary proceedings, or both.

•Brandeis' Title IX Coordinator, Linda Shinomoto, is also available to meet with students and receive complaints of sexual misconduct.  Ms. Shinomoto oversees the University's investigation and resolution of all Title IX complaints.  Ms. Shinomoto can be reached at 781-736-4474.

•The staff in the Department of Public Safety and the staff in the Division of Students and Enrollment are available to assist students in notifying local police if the student chooses.

•The position of Sexual Assault and Prevention Services Specialist will join the Brandeis Community in the autumn of 2013.  This role will provide services to survivors and to coordinate prevention efforts in the campus community.  In the role of Sexual Assault Services & Prevention Specialist this person will coordinate advocacy services for survivors of sexual assault, relationship violence, and stalking, complying with the VAWA Federal Campus Security Act and Title IX regulations, serving as a liaison to student organizations, and conducting outreach and education events to promote a healthy campus environment.

•Campus disciplinary proceedings may be initiated against a student through the Department of Student Rights and Community Standards (see Sections 3.1, 3.2, 3.3 and/or Section 7 of this publication).  To report sexual misconduct against a staff or faculty member contact the University's Director of Employee Relations and Title IX Coordinator for Human Resources.  To make an anonymous report, the University's Confidential Complaint Hotline can be reached at 781-736-4452.  This 24-hour hotline has been configured so that phone numbers for incoming calls are not retained by the system.

•Section 22.6 of this publication describes the right of the Accused as well as the Accuser to bring an Advisor of their choice from the University community.  This section also permits the passive assistance of legal counsel by either party but only if coexisting criminal charges are pending resulting from the same incident.

•Possible sanctions to be imposed following the completion of campus disciplinary proceedings are included in Section 21 and 22.  The Accuser will be informed of the outcome of disciplinary proceedings, insofar as they relate to the Accuser, in which sexual assault or harassment is alleged.

•The postcard *Personal Safety Resources at Brandeis*, published by the Division of Students and Enrollment, lists many helping services both on campus (e.g., Office of Human Resources Psychological Counseling Center) and off campus (e.g., Boston Area Rape Crisis Center).

•The staff in the Division of Students and Enrollment is available after an alleged sexual assault incident to assist students in making any reasonably available changes in academic or living situations.  The Division of Students and Enrollment and the Office of Human Resources offer educational programs on sexual assault.

6.1.b. Students who engage in chalking must observe the distinction between advertising events and vandalism.  Only sidewalks may be chalked.  This excludes patios and steps to a building.  Chalking on buildings and personal or University property (i.e., buildings, cars, bus shelters, signs, etcetera) is not permitted.  Chalking is not permitted in areas where it cannot be washed away by rainfall.  The Department of Student Activities reserves the right to authorize the removal of chalked messages if they are inappropriate or use profane illustrations or language or are not in a permitted area.

6.2. Respect, maintain and care for property belonging to others.  Vandalism, littering, theft, attempted theft, destruction of, damage to, unauthorized possession of, or in appropriate use of property (including intellectual property) belonging to the University, a member of the University community, or any other individual or entity is unacceptable. This section also applies to the grounds, and personal and public property that surrounds the campus.

6.3. Respect, maintain and care for library materials, or other academic materials or equipment.  Destruction, mutilation, defacement, or tampering with any of the above is unacceptable.

6.4. Observe University guidelines and policies regarding the access, occupancy, or use of University property, facilities, name, seal or logo (see Sections 10, 13, and 16). Storage closets, utility rooms, and roof areas of any University building may not be accessed by students without explicit permission.

6.5. Respect and preserve the plant and animal life found on the campus.  Mistreatment of animals, trees, or plantings is unacceptable.

6.6. Access University buildings and facilities during posted hours and in authorized areas only.

**Section 7. Equal Opportunity, Non-Discrimination, and Harassment**
7.0. Non-Discrimination and Harassment Policy: Brandeis University is committed to providing its students, faculty and staff with an environment conducive to learning and working where all people are treated with respect and dignity.  Toward that end, it is essential that Brandeis be free from discrimination and harassment on the basis of race, color, ancestry, religious creed, gender identity and expression, national or ethnic origin, sex, sexual orientation, age, genetic information, disability, Vietnam Era Veteran, qualified special, disabled veteran or other eligible veteran status or any other category protected by law.  **Note:** Adjudication of any allegation related to this section will be pursuant to the Special Examiner's Process found in Section 22.6 and not the Student Conduct Process found in Section 19.

It is the University's responsibility to help prevent harassment and discrimination from occurring, to pursue concerns of which it is aware, to objectively investigate concerns, and to take immediate and appropriate action to remedy issues of harassment and discrimination.  Brandeis takes this responsibility seriously.  Therefore, violations of this policy will not be tolerated and may result in corrective actions up to and including dismissal from school or release from employment.

7.1. Understanding Harassment: Harassment whether sexual or based on an individual's protected class status (race, color, ancestry, religious creed, gender, national or ethnic origin, sex, sexual orientation, age, genetic information, disability, Vietnam Era Veteran, qualified special, disabled veteran or other eligible veteran status) is a form of discrimination and will not be tolerated.  It is regarded as harassment when the conduct has the purpose or effect of unreasonably interfering with a person's education or work performance by creating an intimidating, hostile or offensive environment in which to work, study or live; or otherwise adversely affects a person's employment or educational opportunities.  This may include but is not limited to, hiring, firing, salary increases, promotions, grades, recommendations, scholarly or teaching opportunities, participation in extracurricular activities and student organizations.  Harassment may occur between supervisor/supervisee, faculty/student, within peer groups, or with third parties.

7.2. Examples of Sexual Harassment: Depending on the circumstances, conduct which may constitute sexual harassment includes, but is not limited to:

•Unwelcome sexual conduct toward an individual, including offensive comments, touching or sexual propositions.

•Threats or insinuations that a person's employment, academic standing, grade, assignments, or other conditions of employment or academic life may be adversely affected by not submitting to sexual advances.

•Leering, making sexual gestures, touching, patting, pinching, rubbing, impeding or blocking movements, displaying of sexually suggestive objects, pictures, cartoons or posters, suggestive or obscene letters or e-mails, notes, invitations or gifts.

•Making or using derogatory comments, epithets, slurs or jokes with a sexual content.

•Persistent unsolicited and unwelcome invitations for dates, encounters, or pressure to engage in sexual activity of an implied or explicit nature.

•Persistent inappropriate and unwelcome questions asked about one's personal life.

•Comments to, or about, any individual or their appearance that is sexually graphic or would otherwise tend to be degrading.

•Displaying, sending, forwarding, downloading or otherwise distributing sexual materials via the Internet, computer, cellular data network, or e-mail.

•Consensual sexual relationships where such relationships lead to favoritism towards the student with whom the instructor is sexually involved, which adversely affects other students.

7.3. Examples of other Forms of Harassment/Discrimination: There are other forms of harassment/discrimination as well that create a hostile educational or work environment on the basis of race, color, ancestry, religious creed, national or ethnic origin, sex, sexual orientation, gender expression, age, genetic information, disability, Vietnam Era Veteran, qualified disabled veteran or other eligible veteran status or status in any group protected by federal or state law (together, 'protected class status'). Depending on the circumstances, the following are examples of behaviors that may constitute harassment/discrimination under this policy. This is not an exhaustive list:

•Jokes, comments or innuendoes that make fun of, denigrate, or are based on an individual's or group's protected class status.

•Epithets or slurs based on an individual's or group's protected class status.

•Objects, posters, cartoons, or pictures that make fun of, denigrate, or are based on an individual's or group's protected class status whether directed to an individual, placed on University premises or displayed or circulated on campus.

•Displaying, sending, forwarding, downloading or otherwise distributing materials via the Internet, cellular data network, computer, or e-mail that make fun of, denigrate, or are based on protected class status.
•Other verbal or physical conduct that denigrates or shows hostility or aversion toward an individual or group based on protected class status.

Determination of whether particular conduct violates this policy is made on a case-by-case basis, in light of all the known facts and circumstances. The University may take action on conduct that it deems to be inappropriate, regardless of whether it rises to the level of a violation of law.

7.4. Retaliation: Brandeis policy, as well as federal and state law, prohibits retaliation against any person who in good faith initiates a complaint of harassment or discrimination or cooperates in the investigation of a complaint of harassment or discrimination. Retaliation may result in corrective action up to and including dismissal from school or termination of employment (see Section 2.14).

7.5. False Claims: If it is determined that an individual falsified a claim of harassment or discrimination, it may result in corrective actions up to and including dismissal from school or release from employment.

7.6. Contact/Reporting Information, Concerning Staff or Faculty: Brandeis encourages the reporting of all perceived incidents of discrimination or harassment. Concerns about harassment or discrimination by a faculty or staff member (including visiting faculty, post-doctoral fellows, or graduate students acting in an instructional capacity) should be brought to the attention of Ms. Linda Shinomoto, the Director of Employee Relations and Title IX Coordinator in the Office of Human Resources at 781-736-4474. Concerns about third parties, such as vendors, should also be directed to this individual. This individual, or a designee, is available to provide guidance in managing the concern, for help with informal resolution, for filing a complaint, and for reviewing complaints that require more in-depth fact-finding. For guidance and/or to file a complaint against any undergraduate or graduate student, contact the Dean of Students Office at 781-736-3600.

16.4. Unauthorized use of University facilities, equipment, or supplies for commercial, political or other non-University related purposes is strictly prohibited (see Section 13).

16.5. Unauthorized use of the University tax-exempt numbers or postal permit is prohibited.

16.6. Guidelines Concerning Use of University Facilities, Name, Seal, or Logo: On March 13, 1947, the Secretary of State of the Commonwealth of Massachusetts officially recognized and gave legal validity to the action of the Board of Trustees of Middlesex University in voting to change the name of that institution from the Trustees of Middlesex University to Brandeis University.  Student organizations recognized by the Student Union Senate or Graduate Student Association (or otherwise recognized by the Division of Students and Enrollment) may use the name of the University, its seal, or logo for purposes of identifying the organization.

16.7. Student organizations recognized by the Student Union Senate or Graduate Student Association (or otherwise recognized by the Division of Students and Enrollment) may use University facilities for meetings, programs, events, or other activities subject to the standards and policies published elsewhere in this code.

**Section 17. Protection of Privacy**
17.1. The privacy of every individual in person and in their room and/or office must be respected.  Malicious or unauthorized entry into rooms, offices, personal files, electronic files (see Sections 2.1.e, 11.3, and 17.4), drawers, or locked spaces, such as lockers, etc., is prohibited.

17.2. Except in circumstances as outlined in Section 10.5, authorized entry for the purpose of searching a student maintained room or space requires advance permission from the Senior Student Affairs Officer or designee.  Each statement of permission to enter shall clearly set forth the purpose and objectives of the search, and shall specify the office(s), room(s), or spaces(s) to be entered.  The search shall be limited to the purpose, objective, and location set forth in the statement of permission.  The University official making the search shall show the statement of permission to the occupant at the time of entry or, in the occupant's absence, shall leave a copy of the statement in the room(s), office(s), or space(s) entered.  Immediately upon conclusion of the search, the official shall prepare and give to or leave for the occupant(s) a receipt for any property seized.

17.3. Student residence hall rooms are inspected by members of the Community Living staff periodically during the academic year to evaluate the safety, security, and health conditions of the rooms and to check for illegal possession of University-owned property. These inspections will be conducted by floor, by section of building, or by building.  Public notification of such inspections will be provided 24 hours in advance and will specify the date and time of the inspection for a given area.  A student's presence in their room is not required for the inspection to take place (see Section 10.5).

17.4. Student Records: The Federal Family Educational Rights and Privacy Act of 1974 (FERPA) gives each enrolled student at Brandeis certain rights, including access to the student's educational records, the right to request amendment of those records where the student believes a record is inaccurate or misleading, and the right to add a statement presenting the student's view if the records are not amended.  A detailed statement of the rights and responsibilities of a student under the Act, the location of all records pertaining to a student, and the procedures for requesting access are contained in the Brandeis University Records Policy.  The policy is available from the University Registrar and at: www.brandeis.edu/registrar/bulletin/EducRecordsPolicy.html

# Student Conduct Process
## Section 18. Initial Procedures and the Mediated Resolution Option

18.0. Disciplinary action against a student (any person enrolled in any academic program or course at Brandeis University, up to and including the student's commencement day) may be implemented only through the report of a violation to the Department of Student Rights and Community Standards (DSRCS).  Where infractions of University standards and policies are involved, written reports of violations or complaints shall be submitted to the DSRCS from the Accuser in a timely manner.  The *Community Standards Report (CSR)* is the official reporting mechanism for all allegations of a Brandeis student's possible violation of a standard found in the student code, *Rights and Responsibilities*.  The *CSR* will be shown, in its entirety, to the Accused.  This report is a web-based form located at: http://www.brandeis.edu/studentaffairs/srcs/reporting.html

In all cases the available facts shall be gathered from the Accuser (the complainant or the reporting agency), and a careful evaluation of these facts, as well as the credibility of the person reporting them, shall be made.  If at this point in the judgment of the administrator in the DSRCS, there is insufficient evidence of a violation, or the case lacks merit, or it was not reported in a timely fashion, a decision not to refer the matter to the Conduct Process may be made.  The Senior Student Affairs Officer or designee may appoint, as needed, *ad hoc* conduct boards in addition to the boards described in Section 20.

18.1. Mediated Resolution Option
The Director of the DSRCS, at their discretion, may approve the offer by an Accuser to request participation of the Accused in a mediated resolution that will be facilitated by the Director of the DSRCS or by a designee.  A mediated resolution process is one in which the Accuser and the Accused agree to discuss the allegation in question with the assistance of the Director of the DSRCS or a designee.  The purpose of a mediated resolution process is to apply an informal, non-adversarial approach to an outcome or compromise that will be agreed-upon, recorded, final, and binding.  The parties decide how to engage the conflict through shared, in-person conversation, and the parties decide together how the conflict will be resolved.  The Director or designee serves to explain community standards, to ask clarifying questions, and to maintain an orderly, respectful atmosphere.  The Director must also approve all proposed resolutions.

Subject matter that is sometimes well served by a mediated resolution option includes, though is not limited to: roommate disputes, allegations of theft of personal or intellectual property, certain academic conflicts, and minor offenses of community standards.

18.2. Participating parties have discretion to propose restitution and reconciliation outcomes subject to the approval of the Director.  Such outcomes will be evaluated by the Director for their relevance to the conflict, educational benefit, constructiveness, and respect of parameters found in Section 21 of *Rights and Responsibilities*.  In the event of an impasse or other impediment to arriving at a mutually acceptable outcome the Director shall declare an endpoint to the mediated resolution process and redirect the matter to the process outlined in Section 19.  Failure to adhere to the expectations of the written mediated resolution outcome may expose the offending party to further mediation or referral to the conduct process (see Section 2.3).

18.3. A record of the outcome or impasse will be produced and will be subject to the retention provisions in Section 19.5.

**Section 19. Procedural Standards in the Student Conduct Process**

19.1. In cases where the Department of Student Rights and Community Standards decides that there is evidence of a violation that warrants referral to the Conduct Process the Accused will be contacted to schedule the Preliminary Meeting with the appropriate administrator (Communication regarding conduct procedures and meetings will be through the student's Brandeis e-mail account (see Section 1.9).  Failure to respond to a request for a Preliminary Meeting within 4 business days constitutes an acceptance of responsibility for the charge(s).  In such cases, the DSRCS administrator may proceed to sanctioning in accordance with Section 19.3, or refer the matter to the SCB for sanctioning.  In the event of extenuating circumstances, the DSRCS administrator may grant additional time for the choice.  **Note:** If at the time of notification about a referral the Accused is withdrawn or not available in-person, the Student Conduct Process may be deferred until the Accused returns, re-enrolls, or voluntarily waives their right to this deferral.)

This meeting will serve to inform the student of the details of the charges and educate the Accused about the Conduct Process.  The Accused will have the opportunity to ask questions and make statements.  After the Preliminary Meeting the Accused will receive written charges.  (If the Accused fails to schedule or attend a Preliminary Meeting in a timely fashion, the written charges will be sent in the absence of a Preliminary Meeting).

The Accused will have multiple options from which to determine their path through the Student Conduct Process.  The *Choice of Action Form* explains the options available to the Accused.  An excerpt from the form follows:

**Denial of Responsibility**
Choice 1. I deny responsibility for the alleged violation(s) stated above.  I request that the charge(s) for which I have denied responsibility be adjudicated via a FULL HEARING before the Student Conduct Board, pursuant to Section 19 of *Rights and Responsibilities*.

OR (not both)

Choice 2. I deny responsibility for the alleged violation(s) stated above.  I request that the charge(s) for which I have denied responsibility be adjudicated via an ADMINISTRATIVE ACTION made by an individual DSRCS administrator, pursuant to Section 19 of *Rights and Responsibilities*.

**Acceptance of Responsibility**
Choice 3. I accept responsibility for the alleged violation(s) stated above.  I request that the charge(s) for which I have accepted responsibility be adjudicated via a SANCTION HEARING before the Student Conduct Board, pursuant to Section 19 of *Rights and Responsibilities*.

OR (not both)

Choice 4. I accept responsibility for the alleged violation(s) stated above.  I request that the charge(s) for which I have accepted responsibility be adjudicated via an ADMINISTRATIVE ACTION made by an individual DSRCS administrator, pursuant to Section 19 of *Rights and Responsibilities*.

**Mediated Resolution Option** (Neither an Immediate Denial nor Acceptance of Responsibility)

Choice 5. The Accuser has offered the Mediated Resolution Option as a means of adjudicating the charge(s), and the Director of the DSRCS approves the offer. I also accept the offer to participate in the Mediated Resolution Option as an alternative to the other choices above. I understand that I will be expected to accept or deny responsibility for the charges as part of this option, once underway. Should the Mediated Resolution Option reach an impasse, I understand that I will be asked to reconsider the other options (1-4).

The Accused must choose appropriate options, via the *Choice of Action Form*, (for all written charges) within 2 business days of delivery of the written charge(s) to the Accused, the Accused's Brandeis e-mail account, or the Accused's home address. Prior to making this choice, the Accused shall be advised of the name of the administrator who would recommend the appropriate sanction. An Accused's failure to choose one of the options within 2 business days constitutes an acceptance of responsibility for the charge(s). In such cases, the DSRCS administrator may proceed to sanctioning in accordance with Section 19.3, or refer the matter to the SCB for sanctioning. In the event of extenuating circumstances, the DSRCS administrator may grant additional time for the choice.

19.2. Administrative Action: Within 30 class days (final exams and Senior Week constitute class days) from the date the Accused chooses Administrative Action, the Accused shall meet with the DSRCS administrator or designee to discuss the full circumstances of the charge(s); under the Administrative Action option, this is the only opportunity to present evidence. This meeting may be in addition to, or waived in the event of, the Preliminary Meeting between the Accused and a DSRCS administrator. Summer instruction does not constitute class days unless the student is enrolled in Brandeis Summer School. The DSRCS shall notify the Accused in writing of the decision, confirming the action taken and the reasons for the decision.

19.3. If the Accused fails to attend a scheduled meeting with a DSRCS administrator after having chosen Administrative Action, the administrator may complete the process in the Accused's absence and send notification in writing of the decision. The Accused shall have the right to one rescheduled meeting if the Accused fails to attend the originally scheduled meeting through no fault of their own as determined by the administrator in the DSRCS.

19.4. Deferral of Proceedings: The staff of the DSRCS may defer (place on hold) conduct action at any stage of the process for a period not to exceed 90 class days if the Accused is unable to participate due to their withdrawal, leave of absence, documented illness or incapacity, or if agreed upon by consent of the Accuser, and/or the DSRCS administrator, and the Accused. Pending charges may be discontinued thereafter dependent upon the conduct of the Accused.

19.5. A record of the Administrative Action, comprised of a summary of the evidence presented and decision rendered, shall be made by the administrator.  Such records are confidential and shall be retained by the Director of Student Rights and Community Standards for seven years from the date on which this record was written, after which it will be destroyed, unless the student is involved in further conduct action.  When there are multiple incidents and associated conduct records, all records will be maintained for seven years from the date on which the most recent incident is closed by the Student Conduct Process, after which the records will be destroyed (except in extraordinary cases as defined by the Senior Student Affairs Officer or designee).  Access to such records is governed by the *University Records Policy* (see Sections 17.4 and 19.6.j).

19.6. Procedures for Hearings before the Student Conduct Board (SCB): A hearing shall be held within 30 class days, or as soon as practicable, from the date the Accused chooses the Board hearing.  Summer (the period between the last day of final exams for the spring semester and the first day of class in the fall semester) does not constitute class days unless the Accused is enrolled in Brandeis Summer School.  Study Abroad (including domestic exchange programs) periods do not constitute class days.  All hearings will be closed.  Notice of the hearing date shall be delivered to the Accused in person, or to the Accused's Brandeis e-mail account, or the Accused's home address at least 48 hours in advance of the hearing.

> 19.6.a. The Hearing Administrator: An administrator from the DSRCS or another Students and Enrollment professional shall serve as the Hearing Administrator.  The non-voting role of the Hearing Administrator is to ensure the appropriate execution of the hearing as prescribed in Section 19.10.  Responsibilities of the Hearing Administrator also include: (a) advising the Board regarding the requirements and provisions of the Student Conduct Process; (b) providing information relevant to procedures or sanctions; (c) providing continuity in Board operations and procedures; (d) facilitating the implementation of conduct procedures at all levels of the Conduct Process; (e) acting as a liaison between Boards and the University community; and (f) assisting the Board in fulfilling its educational responsibilities.  The Hearing Administrator shall be available prior to the hearing at the request of the Accused to provide information regarding the alleged violation and procedural matters.  To provide adequate notice to all parties, names of any Advisors and/or witnesses will be submitted by the Accuser and the Accused to the DSRCS administrator at least 24 hours prior to the hearing.  The Hearing Administrator may share the names of witnesses and Advisors with the Accused and Accuser prior to the hearing.

> 19.6.b. The Accused, Accuser, and their Advisors are prohibited from confronting or questioning the witnesses and the other party(ies) regarding the case prior to the hearing.  Additional/unlisted witnesses may be considered at the discretion of the Chairperson of the Board.

19.6.c. Board members may be informed of the student's name and charges prior to the hearing to avoid conflict-of-interest.  Any Board member may disqualify themselves and either party to the case may request to disqualify a prospective voter if they can satisfy the remaining members of the Board that there is sufficient cause for disqualification.  An alternate member may take the place of the disqualified member, or the Accused and Accuser may agree to proceed without the prescribed minimum voting composition of the Board.

19.6.d. Advisors: The Accused and the Accuser in a hearing may each bring an Advisor of their choice from the University community to provide passive assistance during the hearing.   With the permission of the DSRCS administrator, Advisors may be present for conduct meetings prior to, and after, the hearing.  In exceptional circumstances, the Hearing Administrator may allow active participation by an Advisor during a hearing.  The lack of availability of any particular Advisor will not be considered a legitimate reason to reschedule the hearing (see Section 19.6.k).  To avoid even the appearance of undue influence, DSRCS staff that advise the boards, members of the SCB, and members of the University Appeals Board are not eligible to serve as an Advisor for the Accused or Accuser.  An Advisor may not serve as a witness.

Neither party shall be permitted to employ professional legal counsel or other persons from outside the University community to present the case before the Board or to advise the student during the hearing.  However, passive assistance of legal counsel may be allowed when coexisting criminal charges are pending resulting from the same incident (see DSRCS staff for details).

19.6.e. The Accused and the Accuser must be present at the hearing (except as provided in Section 19.6.k.  The Accused may present evidence and introduce witnesses during the hearing, with the passive assistance of the student's Advisor.  Witnesses are those who were present for the incident in question, and/or have information directly related to the incident in question.  It is the responsibility of the Accuser and the Accused to notify their witnesses and Advisor regarding the time, date, and location of the hearing.  Witnesses must be available when called by the Chairperson or their testimony may be disallowed.  Any expenses incurred by a witness to participate will be the responsibility of the witness.

19.6.f. All persons giving evidence or testimony are obligated to be truthful.  The Board shall rule on the admissibility of evidence and any witness testimony.  Unduly repetitious or irrelevant evidence or witness testimony may be excluded.  Rules of procedure and evidence applicable to civil or criminal cases in court do not apply.

19.6.g. The Accused and the Accuser shall have the right to view and question all evidence and reports presented to the Board during the hearing.   The Accused and the Accuser shall have the right to question all witnesses appearing before the Board and only at the hearing.

Written testimony from absentee witnesses may be received by the Board. Proof of authorship but not content of such testimony must be made by certification of a notary public. Inaccessibility of a notary public must be brought to the attention of the DSRSC Director prior to the hearing. Written testimony sent from the author's Brandeis UNET account will be considered authentic with respect to authorship, (see Section 11.1) and therefore, is not subject to certification by a notary public.

19.6.h. In cases where the Accused denies responsibility, the burden of proof shall rest upon the Accuser.

19.6.i. The Board shall make one of the following decisions upon completion of the hearing: (a) a finding of 'not responsible'; (b) a finding of 'responsible' (based only upon clear and convincing evidence) and the recommendation of a sanction; (c) continuance of the case to obtain additional information or for further consideration. Decisions shall be based solely upon evidence and testimony introduced at the hearing. All decisions shall be made by a majority vote. During any hearing conducted by any conduct board, the Chairperson shall vote only to break a tie.

19.6.j. A written Hearing Report, comprised of a summary of evidence presented at the hearing and decision rendered by the Board, shall be made by the DSRCS Hearing Administrator. Hearing Reports are confidential and shall be retained by the Director of Student Rights and Community Standards for seven years from the date on which this record was written, after which it will be destroyed, unless the student is involved in further conduct action. When there are multiple incidents and associated conduct records, all records will be maintained for seven years from the date on which the most recent incident is closed by the Student Conduct Process, after which the records will be destroyed (except in extraordinary cases as defined by the Senior Student Affairs Officer or designee). Access to such records is governed by the *University Records Policy* (see Section 17.4 and 19.5).

19.6.k. The Accused and Accuser shall have the right to a rescheduled hearing if they fail to attend the originally scheduled hearing through no fault of their own as determined by the DSRCS Hearing Administrator. If the DSRCS Hearing Administrator concludes that the failure to attend was the fault of the Accused, the Accused shall be deemed to have accepted the responsibility, and the case will be referred for Administrative Action (see Section 19.3). If a hearing is rescheduled, it will take place after proper notification. If the Accused fails to attend the rescheduled hearing, the Accused shall be deemed to have accepted responsibility, and the case will be referred for Administrative Action (see Section 19.3).

19.7. Appeal Procedures for Board Decisions: Following approval or modification of the sanction(s) by the Senior Student Affairs Officer or designee or the Director of Student Rights and Community Standards (see Section 21), the Accused shall have the right to submit an appeal request concerning the decision of a board to the University Appeals Board on Student Conduct.  Such appeal requests shall be based only on specific evidence, presented in writing of:

> 19.7.a. fraud

> 19.7.b. denial of rights under this process

> 19.7.c. procedural error

> 19.7.d. the claim of new evidence not previously available, which would have materially affected the decision

Appeals shall not be based upon, or granted due to, dissatisfaction with an imposed sanction.  Appeal requests must be filed within 7 business days of delivery of the conduct action to the student in person, or to the student's home address, or Brandeis e-mail address.  If the University Appeals Board determines that a written request for appeal has merit, it shall conduct a new hearing of the case.  Upon completion of the appeal hearing, the University Appeals Board may uphold the original decision and sanction imposed, find the Accused not responsible, or increase or decrease the sanction.  Any sanctions shall not take effect until approved or modified by the Senior Student Affairs Officer or designee or the Director of Student Rights and Community Standards (see Section 21).

19.8. Procedures for the Review of Administrative Actions/Decisions (see Sections 19.1, 19.2, and 19.3): The Accused shall have the right to meet with the Senior Student Affairs Officer or designee to discuss an administrative decision or Administrative Action.  A student must request this meeting within 2 business days of delivery of the conduct action announcement.  The Senior Student Affairs Officer or designee may or may not amend the original decision and/or sanctions.

19.9. Accused students who obtain information at their hearing which might lead to new evidence shall ask for a continuance of that case at that time, rather than wait to raise the matter for the first time as the basis for an appeal request.

**19.10. Hearing Procedures in the Student Conduct Process**[1]

*All hearing participants (Parties, Advisors, Witnesses, SCB, Hearing Administrator) assemble in the Board hearing room.*

A. The Chairperson invites all participants to introduce themselves.

B. The Chairperson explains the philosophy of peer judgment and Board procedures.  (A copy of this statement is available in the hearing materials).

C. The Chairperson reads the statement of the parties' *Rights to Fairness* under this process:
    1. To bring one Advisor of the Accused/Accuser's choice from the University community to provide passive assistance during the hearing (an Advisor may not serve as a witness).
    2. To present witnesses on their behalf.
    3. To question witnesses appearing against them.
    4. To submit verbal arguments.
    5. To remain silent and not testify against themselves.  The Accused and Accuser should remember that if they remain silent, the Board is compelled to hear the case and render a decision based upon the evidence presented.

D. Witnesses leave the room, remaining readily available to be called for their testimony.

E. The Chairperson reads the accusation(s) from the *Choice of Action Form.*
    1. The Accused is asked if they understand the accusations.
    2. The Accused accepts or denies responsibility.  *Although the Accused student has already indicated their choice of action earlier in the Student Conduct Process, this step insures that all participants are clear that the Accused wishes to continue with the hearing.*

F. Initial Presentations:
*In the event that there is more than one Accused, the Board may bring them into the hearing room either individually or as a group, in alphabetical order, for Initial Presentations; this system shall prevail throughout the remainder of the hearing procedures.*
    1. The Accuser offers their description of incident.
    2. The Accused offers their description of the incident.
    3. The Accused may ask questions of the Accuser.
    4. Board members may ask questions of the Accuser.
    5. The Accuser may ask questions of the Accused.
    6. Board members may ask questions of the Accused.

G. Witnesses for the Accuser may be called
    1. The Accuser may ask questions of the witness.
    2. The Accused may ask questions of the witness.
    3. Board members may ask questions of the witness.
    4. The witness is excused from the hearing room (but retained outside for possible recall).

---

[1] Procedures for cases involving allegations of Sections 3 or 7 will be adjudicated by the Special Examiner's Process found in Section 22.6.

H. Witnesses for the Accused may be called
      1. The Accused may ask questions of the witness.
      2. The Accuser may ask questions of the witness.
      3. Board members may ask questions of the witness.
      4. The witness is excused from the hearing room (but retained outside for
      possible recall through Step M.).

I. The Accuser, the Accused, or Board members may recall witnesses or re-question the Accuser or the Accused (following same order as previous witness questioning). Witnesses should remain outside until after the conclusion of letter M. The Chairperson or Hearing Administrator will excuse witnesses from their waiting position at the appropriate time.

J. Final statement of the Accuser (no new testimony).

K. Final statement of the Accused (no new testimony).

L. The Accuser, the Accused, and their respective Advisors leave hearing room, but remain outside until the conclusion of letter N. or O.

M. Board deliberates on the responsibility or lack of responsibility of the Accused. The Accused, the Accuser, and Advisors are called back into the hearing room to hear the decision regarding responsibility.

N. If the Accused is found not responsible for all charges, all participants are excused and the hearing is adjourned. An outcome notification (via Brandeis e-mail) will be sent to the Accused, usually within 3-5 business days, pending approval by the Senior Student Affairs Officer or designee.

*The following portion of the procedures constitutes the sanctioning phase of the Full Hearing.*
*When the Accused chooses a Sanction Hearing, the Chairperson will begin the procedure here after*
*introductory remarks in A. and B.*

_____

O. If the Accused is found responsible for one or more charges, recommendations and
questions on sanction(s) are heard.

> 1. The Accuser offers recommendations to the Board regarding possible
> sanctions.
> 2. The Accused may question the Accuser about the Accuser's
> recommendations.
> 3. The Accused offers recommendations to the Board regarding possible
> sanctions.
> 4. The Accuser may question the Accused on the Accused's recommendations.
> 5. The Board may question the Accused and the Accuser on their
> recommendations.

P. The Accuser, the Accused and their respective Advisors are informed that the Board
will deliberate on sanction recommendations which will be communicated to the Director
of Student Rights and Community Standards or the Senior Student Affairs Officer or
designee.  Final sanction determinations will be communicated in writing to the Accused,
usually within 3-5 business days.  The Accused, the Accuser, and Advisors are excused and
the Board reserves the right to adjourn for later deliberations.

Q. The Board deliberates on sanction recommendations.

> 1. The Board is advised of past conduct involvement of the Accused, if any, by
> the Hearing Administrator.
> 2. The Chairperson will record the Board's recommendations, which will be
> forwarded to the Hearing Administrator and reviewed by the appropriate
> administrator.

*Appeal procedures will be addressed in the final outcome letter to the Accused.*

**Section 20. Composition of Boards**

20.1. The Student Conduct Board: The SCB shall hear cases of alleged violations of community standards of behavior or University policies referred to it by the DSRCS, with the exception of cases related to Sections 3 and 7 (see Section 22.6).  SCB Hearing Procedures are enumerated in Section 19.10.

20.2. In hearing cases of alleged violations of policy on academic integrity (see Section 4), a Student Conduct Board voting panel of two students and two faculty must be present; at hearings for alleged violations of all other standards or policies, a voting panel of three students and one faculty member or staff member must be present.  The voting requirements in this section may be waived by mutual consent of the SCB, the Accuser, and the Accused.

20.3. A pool of faculty members and staff members shall serve on the Board.  Faculty members are appointed by the Chairperson of the Faculty Senate.  Staff members appointed by the Senior Student Affairs Officer or designee.  The term of appointment for faculty and staff members shall be two years and renewable.

20.4. Students shall be selected annually by a process open to all continuing students.  The Board is formed in the spring of the preceding academic year of a representative cross-section of Brandeis students, as allowed by those who apply.

20.5. The SCB shall be chaired by students, each annually selected by the Board and the DSRCS Director.

20.6. Any member of the SCB may be removed by the DSRCS Director in consultation with the student Chairpersons if the member is determined to be responsible for behavior that conflicts with the high standards of citizenship, confidentiality, and cooperation that the Board represents.

20.7. The University Appeals Board on Student Conduct: The University Appeals Board (UAB) shall hear appeals of decisions of the Student Conduct Board, the Special Examiner's Process, and appeals of decisions of any *ad hoc* board which may be formed at the discretion of the Senior Student Affairs Officer or designee see Section 19.8 for information on Administrative Action review).  An administrator from the Division of Students and Enrollment, designated by the Senior Student Affairs Officer, will serve as Chairperson of the University Appeals Board.

20.8. The University Appeals Board shall be comprised of three voting members (one full-time student and two members of the faculty) and one tenured faculty Chairperson.  At least two undergraduate students and at least two graduate students shall be appointed to the voter pool by the President of the Student Union and Graduate Student Association, respectively.  At least four faculty members shall be appointed to the voter pool by the Chairperson of the Faculty Senate.  A Chairperson who is a full-time tenured faculty member shall be appointed by the Senior Student Affairs Officer or designee.  Students appointed to the UAB must be free from all elected, appointed, or affiliate relationships with the Student Union or Graduate Student Association.  The term of appointment for faculty and staff members shall be two years and renewable.

20.9. Members and alternates on the UAB shall be selected in a manner similar to that of the SCB, with its formation led by the Senior Student Affairs Officer or designee (SSAO/D) and at least one other member designated by the SSAO/D.  If a UAB position becomes vacant, and no alternate is available, the original appointing authority shall appoint a replacement for the remainder of the term.

20.10. A member of the UAB may be removed by the Senior Student Affairs Officer or designee in consultation with the Chairperson, if the member is determined to be responsible for behavior that conflicts with the high standards of citizenship, confidentiality, and cooperation that the UAB represents.

20.11. UAB Hearing Administrators: The UAB shall have an administrator from the Division of Students and Enrollment, designated by the Senior Student Affairs Officer, serving as a Hearing Administrator in all stages of the hearing and deliberations. Responsibilities of the UAB Hearing Administrator shall include: (a) advising the UAB regarding the requirements and provisions of the University's conduct process; (b) providing information relevant to procedures or sanctions; (c) providing continuity in UAB operations and procedures; (d) facilitating the implementation of conduct procedures at all levels of the conduct process; (e) acting as a liaison between boards and the University community; and (f) assisting the UAB in fulfilling its educational responsibilities.

**Section 21. Range of Conduct Actions and Sanctions**
21.0. A variety of actions may be taken as a consequence of being found responsible for a violation of community standards.   When determining these actions, a DSRCS administrator, the SCB, or the UAB may consider all facets of the specific individual situation, including but not limited to the seriousness of the offense, prior history of violations, impact of the offense on others, the student's class year, and/or evidence of intent.   Because the purpose of this process is to uphold and promote community standards, a learning component is also part of the sanctioning process whenever appropriate.

These learning components may include, but are not limited to:
•Failure in a course or on an assignment
•Workshops on note-taking, proper citation, or writing a research paper
•Training (e.g. conflict resolution)
•Education on ethical decision-making
•Education on alcohol and drug abuse
•Restitution for damages
•Counseling/assessments
•Family notification

21.1. Learning components may be imposed in combination with other disciplinary action, and may include a required completion date.  Failure to complete any designated learning component, as with any other sanction, could result in further conduct action (see Section 2.3).  Sanctions shall not take effect until approved by the Director of Student Rights and Community Standards or the Senior Student Affairs Officer or designee (SSAO/D). Either administrator can modify the proposed sanction(s). Suspensions or dismissals shall not take effect until approved by the SSAO/D, who can modify the sanction(s).

21.1.a. No Further Action: In cases where the student is found responsible and the discussion with the administrator or the hearing before the Board has been sufficient in-and-of itself, further action may not be deemed necessary.  However, the responsible finding is noted in the student's record in the Department of Student Rights and Community Standards.

21.1.b. Disciplinary Warning: The student may be warned in writing of the possible consequences of continuing inappropriate behavior.  Additional conditions may be applied as appropriate.

21.1.c. Residence Probation: A student who is placed on Residence Probation is not in good standing with their living unit for a specified period of time, and conditions may be placed on their actions.  The status of Residence Probation reminds the student that their infraction has become part of their record and that repetition of similar or other unacceptable behavior may be cause for removal from the residence halls.   The Department of Community Living will be notified of students who are placed on Residence Probation.

21.1.d. Removal from Living Unit: This action precludes the student's continued residence either in a particular living unit or in any campus living unit.  Such action would normally be taken after one serious violation or repeated violations related to the living unit environment, and is exercised in conjunction with the Department of Community Living.

21.1.e. Loss of University Privileges: A student may be denied certain University privileges including, but not limited to, early arrival on campus, extended stays in the residence halls, participation in campus activities, representing the University in competition or other official capacities, campus employment, and campus leadership opportunities.  Loss of such privileges extends over a specific period of time, and is designed to reflect a specific community concern about the student's behavior.

21.1.f. Disciplinary Probation: A student who is placed on Disciplinary Probation is permitted to remain enrolled at the University, often under certain stated conditions depending upon the nature of the violation and potential learning value that may be derived from such conditions.  The probation usually extends over a stated period, during which it is clearly understood that the student is subject to further disciplinary actions, including suspension or dismissal, if they violate the terms of the probation or in any way fail to conduct themselves as a responsible member of the University community. Disciplinary Probation is a final warning to the student to help them reevaluate their behavior.

21.1.g. Suspension: An involuntary separation of the student from the institution, Suspension differs from Dismissal since it defines conditions under which return will be possible. Suspension may extend for a semester, until a designated date, and/or until degrees/certificates will not be issued and credit will not be granted for courses taken elsewhere.  Following the Suspension period, return to Brandeis requires initial approval of the Senior Student Affairs Officer or designee and then approval by the Committee on Academic Standing regarding academic suitability for readmission.

21.1.h. Dismissal: A permanent, involuntary separation of the student from the institution.

**Section 22. University Actions and Sanctions**

22.1. Protection of Individuals and the Community: Whenever the University has reason to believe that a student's conduct or behavior may disrupt the safety or well-being of another student, faculty, staff, guest or other University community member, the University may take any action that it believes to be appropriate and reasonable under the circumstances.  This may include, but is not limited to, notification of the student's parent or guardian, removal of the student from a residence hall, or other action deemed necessary to remove or minimize the threat or disruption.

The Senior Student Affairs Officer or designee is the only authorized grantor of permission to a student who wishes to return to classes and/or the residence halls after any removal.

In the event the University takes such action, the University shall notify the student of the action taken and the basis for the action.  Within 3 business days of notification, the student shall have an opportunity to speak with the Senior Student Affairs Officer or designee to discuss the situation and provide information, including documentation by a health care provider, to contest the action(s) taken.  The Senior Student Affairs Officer or designee shall then decide, at their discretion, whether to reinstate or restore the student's privileges, to consider further action under this procedure, or to take additional reasonable and appropriate steps.

22.2. Emergency Suspension: Pending final action on a violation of University regulations, the status of a student shall not be altered, or their right to be present on the campus and to attend classes suspended, except for reasons of imminent danger to their physical or emotional safety or well-being, or for reasons of imminent danger to the safety or well-being of the University community.  The decision to separate a student from the campus under these conditions shall be made by the Senior Student Affairs Officer or designee.  If a student is separated from the campus by this authority, the procedures outlined in Section 19.1 shall be implemented within 10 class days after the separation.

22.3. Indefinite Suspension: In the event the Senior Student Affairs Officer or designee (SSAO/D) learns that a Brandeis student has been charged with or convicted of a crime, the SSAO/D may immediately remove the student from campus housing, restrict the student's access to the campus, and/or indefinitely suspend the student from the University pending the final outcome of a criminal proceeding.  In making this decision, the SSAO/D must consider the nature of the crime and the risk to the safety or well-being of the University community.  A student suspended under this authority may request a meeting with the SSAO/D and the Student Conduct Board (SCB).  The SCB shall assess the risk to the safety or well-being of the Brandeis community and advise the SSAO/D. The final decision on continuation of the suspension shall be made by the SSAO/D.  The procedural standards set forth in Section 19 do not apply to Indefinite Suspension.

22.4. University Sanctions: Brandeis University expects students to conduct themselves at all times as good citizens and good neighbors in a manner that is consistent with the federal, state, and local laws and ordinances. Off-campus behavior which, in the judgment of the Senior Student Affairs Officer or designee (SSAO/D), constitutes behavior that is inconsistent with this expectation and adversely affects the University community may result in disciplinary action up to and including dismissal. A student disciplined under this authority may request a meeting with the SSAO/D and the Student Conduct Board (SCB). The SCB shall advise the SSAO/D on the appropriateness of the sanction. The final decision shall be made by the SSAO/D. The procedural standards set forth in Section 19 do not apply to off-campus behavior or University Sanctions.

22.5. Medical and Emotional Emergencies: Whenever a student's conduct results in the intervention of Brandeis' Health Service, the Brandeis Psychological Counseling Center, or a non-Brandeis medical or psychological health care provider in order to prevent or address a student's self-harm or harm to others, or to address a student's severe emotional or psychological distress, the Senior Student Affairs Officer or designee (SSAO/D) will establish an emergency protocol for that student. Any student who receives treatment from a non-Brandeis medical or psychological health care provider under these circumstances must contact the SSAO/D upon release.

The Senior Student Affairs Officer or designee (SSAO/D) shall notify the student in writing of the emergency protocol and the basis for the protocol. Within 3 business days of notification, the student shall have an opportunity to speak with the SSAO/D, to discuss the protocol and provide information, including documentation by a health care provider, to contest the action(s) taken. The SSAO/D shall then decide, at their discretion, whether to reinstate or restore the student's privileges, to consider further action under this procedure, or to take additional reasonable and appropriate steps.

During the period begun by the emergency intervention and continuing until the conveyance of explicit written permission by the Senior Student Affairs Officer or designee to resume campus functions, a student subject to an emergency protocol is not permitted to access any campus property, facilities or attend any classes. There will be no exception for examinations or other time-sensitive student activities or academic obligations. Failure to comply with this protocol may result in referral to the Student Conduct Process as defined in this document (see Sections 2.2 and 2.3).

**22.6. Special Examiner's Process**

In cases where the DSRCS receives a report and determines that one or more possible violations of Section 3 (Sexual Responsibility) or Section 7 (Equal Opportunity, Non-Discrimination, and Harassment) exist, the case will be adjudicated by the Special Examiner's Process. This process is described here in Section 22 because it is distinct from the procedures described in the Student Conduct Process found in Section 19. Brandeis is committed to acknowledging and preserving the rights and responsibilities of all its students through all of its disciplinary procedures. In the event that the University is aware of possible student violations of Sections 3 or 7, but where there is no Accuser, the Senior Student Affairs Officer or designee reserves the right to take action pursuant to their authority enumerated in Section 22.1.

**Roles and Terms**

***Community Standards Report (CSR):*** The official reporting mechanism for all allegations of a Brandeis student's possible violation of a standard found in the student code, *Rights and Responsibilities*. The *CSR* will be shown, in its entirety, to the accused student(s). This report is a web-based form located at:

http://www.brandeis.edu/studentaffairs/srcs/reporting.html

**Advisor:** Any current member of the Brandeis community, including undergraduate and graduate students, faculty members, and administrators and staff, except when co-existing criminal proceedings exist, in which case the Advisor role may instead be held by a party's attorney. The role of any Advisor is passive, and does not include writing or speaking on behalf of their party. An Advisor may not also serve as a witness. Though a potentially important source of support and guidance, and Advisor is not required for progression through the Special Examiner's Process. Further, the failure of a party to choose an Advisor will not delay the progress of the Special Examiner's Process.

**Director of Student Rights and Community Standards:** The Director receives reports and determines, in conjunction with the Senior Student Affairs Officer or designee, whether a *Community Standards Report* will be forwarded to the Student Conduct Process or the Special Examiner's Process. The Director explains the Special Examiner's Process to the parties and collects preliminary information during the Statements Phase.

**Special Examiner:** The examiner of allegations and related evidence regarding the allegations. The Special Examiner will conduct an investigation and prepare a report of their findings at the conclusion of the Fact-Finding Phase that is submitted to the Senior Student Affairs Officer or designee in support of the Responsibility Findings and/or Deliberations Phase of the process.

**Observer:** A member of the faculty or staff, named by the Senior Student Affairs Officer or designee, who is present at all in-person meetings involving the parties held by the Special Examiner during the Fact-Finding Phase of the process. Multiple Observers may participate in a Special Examiner's Process.

**Witness:** Any person who was present during the alleged incident(s) or who has direct knowledge of the incident. A witness may not also serve as an Advisor.

**Senior Student Affairs Officer or designee (SSAO/D):** The SSAO/D conducts the Discussion Phase conversations with the parties and communicates findings to the parties made by the Special Examiner and the panel.  The SSAO/D is also responsible for rendering the final decision as to any outcome for the Accused, based on the recommendations of the panel.

**Panel:** A group of three University administrators and/or faculty, appointed by the SSAO/D or designee, who will receive the Special Examiner's report (when the Accused is found responsible for one or more charges) and make a recommendation to the SSAO/D as to the outcome(s) for the Accused during the Deliberations Phase.

**University Appeals Board (UAB):** The UAB (faculty membership only) will receive any appeal by a party and make a report of its opinions to the SSAO/D or designee.

**Standard of Evaluation:** This process will use the *Preponderance of the Evidence* standard in evaluating the responsibility of the Accused.  Under this standard, the Accused is presumed not to have engaged in the alleged conduct unless a "preponderance of the evidence" supports a finding that the conduct occurred.  A preponderance of evidence means a greater weight of evidence or more likely than not.

**Time Frame:** The Special Examiner's Process will be conducted deliberately and without unnecessary delay.  It will be the goal of the University to conclude all phases of the process within 60 days cumulatively, or as soon as is practicable if unusual circumstances exist.

**Process**
**Statements Phase** (approximately 5 days)
Upon the receipt of a *Community Standards Report,* the Director of the Department of Student Rights and Community Standards will meet in-person with the Accuser and suggest that the Accuser compose in writing a thorough statement of the allegation(s) if the contents of the initial report do not represent a full account.  In addition to this statement, any other substantiating materials, such as e-mail, text messages, photographs, records, names of witnesses, names, etcetera, should be submitted to the Director of the Department of Student Rights and Community Standards.

The Director of the Department of Student Rights and Community Standards will discuss the process in full with the Accuser, including the decision about the Accuser's choice of Advisor.  If the Accuser is a Brandeis student, the discussion will also include dialog about ongoing efforts to support the student in a variety of non-conduct-related areas, such as medical and counseling services, academic support services, living arrangements, classroom assignments, directory information accessibility, travel considerations, etcetera.  Further, the Accuser will be reminded that the Special Examiner's Process does not substitute for the filing of a complaint with law enforcement.  The Accuser may initiate both processes.  Information about initiating a criminal complaint will be explained.  Criminal investigations need not be concluded prior to the initiation of the Special Examiner's Process.

Subsequent to the initial meeting with the Accuser, the Director of the Department of Student Rights and Community Standards (the Director) will contact the Accused in writing (Brandeis e-mail account) to inform the Accused that a *Community Standards Report* has been submitted.  Within 2 business days, the Accused will meet in-person with the Director.  The Director will show to the Accused the *Community Standards Report (CSR)* and suggest that the Accused compose in writing a thorough response to the allegations described in the *CSR*.  In addition to this response, any other substantiating materials, such as e-mail, text messages, photographs, records, names of witnesses, names, etcetera, should be submitted to the Director.

The Director will discuss the process in full with the Accused, including the decision about the Accused's choice of Advisor.  Since the Accused is always a Brandeis student, the discussion will also include dialog about ongoing efforts to support the student.  Once the Special Examiner's Process is activated by a *CSR*, it may not be interrupted by the withdrawal from the University by the Accused.  *The decision to withdraw from the University is one that any student should make in consultation with their Advisor, family, guardians, Academic Services, or other trusted administrators or faculty.*

The Accused must accept or deny responsibility for the allegations presented in the *CSR*.  If the Accused accepts responsibility, the Senior Student Affairs Officer or designee (SSAO/D) will issue an outcome for the case, including disciplinary actions or sanctions.  Notification will be made in writing (hand-delivered paper copy) to the Accuser and the Accused.  If the Accused fails to cooperate prior to accepting or denying responsibility for the allegation(s), the Director or the Special Examiner may consider the Accused to have accepted responsibility, the party may forfeit their opportunity to participate in the Special Examiner's Process, and the Special Examiner will report accordingly to the SSAO/D for the Outcome Notification.

If the Accused denies responsibility, the Special Examiner's Process will progress to the Fact-Finding Phase.

Cooperation by the parties with the Special Examiner is expected.  If a party fails to respond to correspondence (see Section 1.9) or attend a scheduled meeting with the Director or Special Examiner, the Director or Special Examiner may resume the Special Examiner's Process in the party's absence.  A party shall have the right to one rescheduled meeting if the failure to attend the originally scheduled meeting was through no fault of their own as determined by the Special Examiner or the Director.

At any point during the Special Examiner's Process, any party is entitled to change their initial course of action.  For example, an Accuser may drop one or more charges, and an Accused may accept responsibility.

**Fact-Finding Phase** (approximately 25-30 days)
The Special Examiner will conduct the Fact-Finding Phase based both on materials and information offered by the parties during the Statements Phase, as well as other materials and information discovered in the course of this phase.

**Documents and other Physical Evidence**

In addition to information and materials submitted during the Statements Phase, the parties and other witnesses, identified either by the parties or by the Special Examiner, may be added to the record for consideration during the Fact-Finding Phase. Documents and other physical evidence deemed by the Special Examiner to be of material importance to the Deliberations Phase will be logged and shared equally with the parties to ensure the opportunity for response. The Special Examiner retains the discretion not to share certain records due to confidentiality concerns, in accordance with applicable law.

**Interviews with Parties and Witnesses**

Interviews with the parties, witnesses, and experts will also be conducted at the discretion of the Special Examiner. The Special Examiner will secure written release as necessary to access pertinent records protected by confidentiality and privacy policies and laws. The Special Examiner will determine who will be interviewed, as well as how many times, and in what order individuals will be interviewed.

**Interviews with the Accuser and Accused**

Interviews with the parties will be conducted separately and in-person. These interviews will address not only the facts of the case but also the impacts that the accounts have had on them. The Special Examiner will be joined at all interviews by an Observer, whose role is passive, with the exception of providing supplemental description of details regarding procedures and University services. The parties are entitled (though not required) to be joined by their Advisor, if one has been selected, during all interviews with the Special Examiner.

**Interviews of Witnesses**

Interviews of witnesses named by the parties during the Statements or Fact-Finding Phases of the process as well as those identified by the Special Examiner, may be conducted in-person, by telephone, or by use of Internet-based tools at the discretion of the Special Examiner. Some witnesses may not be local or easily accessible, and the Special Examiner will make a good-faith effort to contact all pertinent witnesses. Expert witnesses may be consulted to verify materials or provide opinions about information or documents submitted by the parties.

**Special Examiner's Report**

Upon conclusion of all interviews and collection of all known documents and materials deemed necessary by the Special Examiner, the Special Examiner will assemble a report for the SSAO/D that summarizes undisputed and disputed facts, offers conclusions about the credibility of testimony, and makes a finding about whether the Accused is responsible or not responsible for any or all charges.

**Discussion Phase** (approximately 5-10 days)

This phase of the Special Examiner's Process provides the Accuser and the Accused with separate meeting opportunities with the SSAO/D or designee to hear and respond to the findings made by the Special Examiner, and to offer rebuttal or new information to the SSAO/D based on the findings.

The parties, in separate meetings, will listen to the SSAO/D's summary of findings and engage in dialog with the SSAO/D about these findings.  Each party will also have 2 business days within which to provide new, pertinent information or names of witnesses for the SSAO/D's consideration.  If after the meetings with the parties and after the submission of any new information or witness names, the SSAO/D seeks additional fact-finding, the SSAO/D will request the Special Examiner to make any and all necessary inquiries.  The Special Examiner will submit a supplemental report to the SSAO/D based on the new inquiries.  The SSAO/D retains the discretion to hold another round of meetings with the parties to discuss the new findings.

**Responsibility Findings** (approximately 2 days)
If the Accused is found not responsible for all charges, the SSAO/D will contact the parties in writing (hand-delivered paper copy) within 2 business days under usual circumstances.

If the Accused is found responsible for one or more charges, the Special Examiner's Process will progress to the Deliberations Phase.

**Deliberations Phase** (approximately 5 days)
This phase of the Special Examiner's Process involves a panel of three University administrators and/or faculty, appointed by the SSAO/D, who will receive the Special Examiner's report and make recommendations as to the outcome(s) for the Accused.  The SSAO/D will not serve on the panel.

The panel will consult the Special Examiner's report and will be entitled to interview the Special Examiner.  The panel will not interview the parties, witnesses, or other experts or individuals.  Upon voting, the panel will communicate its recommendations about the outcome(s) for the Accused to the SSAO/D.  The SSAO/D will render the final decision as to any outcomes.

**Outcome Notification** (approximately 7 days)
The Senior Student Affairs Officer or designee (SSAO/D) will communicate the final outcome(s) decision in writing (hand-delivered paper copy) to the Accuser and the Accused within 7 days under usual circumstances.  The Accuser will be informed of any sanctions that relate to them in accordance with applicable laws.

Any and all sanctions, including suspension or dismissal, will be in effect immediately, regardless of any appeal that may be submitted by the parties.

**Appeals Procedures**
The Accuser and the Accused are entitled to appeal the final decision by the panel in the Special Examiner's Process to the University Appeals Board on Student Conduct (UAB).  The UAB's composition, when engaged in a Special Examiner's Process, will differ from what is described in section 20.8.  Faculty members will serve as UAB members; students will not.  Such appeal requests shall be based only on specific evidence, presented in writing of:
1. fraud
2. denial of rights under this process
3. procedural error
4. the claim of new evidence not previously available, which would have materially affected the decision

Appeals shall not be based upon, or granted due to, dissatisfaction with an imposed sanction. Appeal requests must be filed within 7 business days of delivery of the SSAO/D's final decision. Appeals that are not related to the above 4 bases will not be considered. The appeal by the party and the response by the Special Examiner will be forwarded to the University Appeals Board. On the first business day after the conclusion of the appeal deadline, the SSAO/D will alert the parties by e-mail that one or more appeals have been filed. The Appellee will be permitted to submit a statement to the UAB about the notification of appeal. The Special Examiner will respond in writing to the UAB about the appeal(s).

Faculty members of the UAB will convene within 7 business days, or as soon as practicable, to discuss the written appeal request. The UAB will submit a written report to the SSAO/D of their opinions, thoughts, and suggestions about the appeal. During the UAB's consideration of the appeal, any pertinent documents, notes, or other materials considered by the panel in making the final decision will be made available to the UAB. The UAB may make recommendations or suggestions to the SSAO/D about the specific concerns of the Appellant.

The SSAO/D will receive the UAB's written report and will retain the discretion to amend or uphold the original final decision. The Accuser and the Accused will receive written notification of the appeal outcome (hand-delivered paper copy).

**Records Retention**
Documents generated from the Special Examiner's Process will be retained pursuant to the rules in Sections 17.4, 19.5, and 19.6.j.

# Exhibit D

# Rights and Responsibilities



Civility  Integrity  Respect  Citizenship  Lifelong Learning  Embrace of Diversity

**Department of Student Rights and Community Standards**

# 2014 – 2015

presenting the student's view if the records are not amended. A detailed statement of the rights and responsibilities of a student under the Act, the location of all records pertaining to a student, and the procedures for requesting access are contained in the Brandeis University Records Policy. The policy is available from the University Registrar and at http://www.brandeis.edu/registrar/bulletin/EducRecordsPolicy.html (see sections 18.5 and 18.6.l). Brandeis is required by law to provide statistics and narrative information about certain confidential information. Personally identifiable information will be removed from such communications whenever possible. **Note:** Any records or other evidence retained by the University may be subject to production by court order.

# Section 17. Identifying Concerning Behavior and Initial Procedures

**Student Conduct Processes: The PRP and the Special Examiner's Process**

**Applicability:** Formal and informal adjudication in support of a student (any person enrolled in any academic program or course at Brandeis University [including Brandeis-sponsored distance or Internet-based courses], up to and including the student's commencement day or the last day of evaluation for non-degree students) may be implemented through the report of an alleged violation or concerning behavior to the DSRCS. Reported behaviors will be vetted to determine whether the PRP, the SEP or the DOS Office will be the appropriate mechanism/venue for response.

**Behavioral Intervention — The Care Team:** Brandeis convenes a team of professionals to welcome reports of concerning behavior and to make deliberate decisions about appropriate, individualized courses of action for supporting students of concern. The team may make referrals to a student conduct process, to a health or wellness resource or any other care provider to maximize the student's well-being and/or academic and social success. The team is coordinated by the Vice President for Health and Wellness and the DOS Office.

**Reporting:** Where infractions of University standards and policies are involved, reports of violations or complaints shall be submitted to the DSRCS from the reporter in a timely manner. The Community Standards Report (CSR) is an official reporting mechanism for all allegations of a Brandeis student's possible violation of a standard found in the student code, "Rights and Responsibilities." Only a CSR can initiate a formal adjudication process. Any person may submit a CSR, and all CSRs will be reviewed and acted upon appropriately. Only Brandeis community members (Brandeis students, staff and faculty) may serve as an accuser in the PRP or the SEP. The CSR will be shown, in its entirety, to the accused student(s). This report is a web-based form located at http://www.brandeis.edu/studentaffairs/srcs/reporting.html.
**Note:** Any records or other evidence retained by the University may be subject to production by court order.

**Initial Pre-process Procedures:** Subsequent to the receipt of a CSR, the available facts shall be gathered from the reporter, and a careful evaluation of these facts, as well as the credibility of the person reporting them, shall be made. The Director of the DSRCS (DDSRCS) or the Director of Academic Integrity (DAI) may forward the case to a formal adjudication process if the reporter wishes to engage a formal process as an accuser. The

_____
*Rights and Responsibilities, 2014-2015*                                      33

DDSRCS must first determine that there is sufficient evidence of a violation, that the allegation has merit and is timely. The formal conduct processes include the Peer Review Process (PRP), the Special Examiner's Process (SEP) and University Sanctions found in section 21.4. The DOS may appoint, as needed, *ad hoc* conduct boards in addition to the boards described in section 18.

The formal conduct processes adjudicate different portions of the code. The PRP adjudicates alleged violations of academic integrity and various other social policy violations unrelated to gender-based behaviors. The SEP adjudicates all gender-based allegations, including sexual misconduct, domestic violence, dating violence, stalking and sexual harassment. University Sanctions address off-campus behavior or behavior anywhere that aggrieves a person who is not a member of the Brandeis community.

The PRP is administered by the Department of Student Rights and Community Standards, in association with the Director of Academic Integrity, when applicable. The SEP is administered by the DOS Office. University Sanctions are issued by the DOS Office.

**Confidentiality Policy:** Brandeis considers student privacy to be of the highest importance. Adjudication processes provide participants with the opportunity to disclose sensitive, private or otherwise protected information toward the comprehensive consideration of factors that influence findings. This policy exists to balance the University's need to gather necessary information with its interest in protecting all participants in any conduct process from privacy violations.

Any Brandeis student who is involved in any informal or formal adjudication process (Misconduct Inquiry, PRP, SEP or University Sanctions) as a principal party or as a witness or Advisor is required to respect the privacy of any person about whom information is learned during the process.

All information discussed or provided in a conduct process is considered confidential and therefore not sharable beyond a small number of people who may need to know. "Need-to-know" means that the relationship between the student and the recipient of the information is familial, legal or medical (licensed physiological or psychological professionals, including the Brandeis Sexual Assault Services and Prevention Specialist). In addition, the student's Advisor in the process or members of the DOS Office or other senior administrators, including the Title IX Coordinator, are individuals with whom participants may discuss confidential information. The parties are not restricted from discussing and sharing information obtained with any person serving as a witness for them in the conduct process.
Accusers and accused students will list, and submit to the DOS, the names of the persons who are designated by them as "need-to-know." Need-to-know parties will be required to sign a statement of understanding that describes this policy and the University's retaliation policies. Written permission from the DOS will be required to disclose confidential information to any person/entity outside of the need-to-know list.

Failure to adhere to this policy may subject the student participant to disciplinary action. Failure of people to whom information is disclosed to maintain confidentiality may also subject the Brandeis student participant, and any other Brandeis student discloser, to disciplinary action.

_____

The policy extends to documents (paper or electronic) and other evidence related to a conduct process.

This policy is in no way intended to prevent any person from discussing the personal experiences that led to the initiation of the conduct process. For example, an aggrieved person (accuser) is not prevented from discussing facts or personal opinions about those facts as the student came to know them prior to the participation in a conduct process. Only new information about those facts that is learned in a conduct process is not sharable.

This policy is not intended to discourage a Brandeis student from seeking advice or redress from oversight or judicial entities external to Brandeis.

The University exercises careful discretion in sharing confidential information internally with professionals whose expertise or job function relate to the adjudication or support of participants. Additionally, the University may share confidential information with other institutions in which a student participant is enrolled. Whenever confidential information is shared, it will be as minimal or redacted as possible in order to balance the need for sharing with the interest of maximizing privacy.

Brandeis is required by law to provide statistics and narrative information about certain confidential information. Personally identifiable information will be removed from such communications whenever possible.

Questions about this policy should be directed to the DOS or to the Title IX Coordinator.

# Section 18. Procedural Standards in the Peer Review Process (PRP)

**18.0. The Peer Review Process:** The PRP (formerly called the Student Conduct Process through the 2013-14 academic year) is the formal conduct process that utilizes the clear and convincing evidence standard to adjudicate most allegations of "Rights and Responsibilities" that describe on-campus behavior. Gender-based harassment allegations are not adjudicated by the PRP, but rather the Special Examiner's Process found in section 22. The DOS Office, pursuant to section 21, typically adjudicates off-campus behavior.

**18.1. Preliminary Meeting:** In cases where the Department of Student Rights and Community Standards (DSRCS) or the Director of Academic Integrity (DAI) decides that there is evidence of a violation that warrants referral to the PRP, the accused will be contacted to schedule the Preliminary Meeting with the appropriate administrator. Communication regarding conduct procedures and meetings will be through the student's Brandeis email account (see section 1.9). Failure to respond to a request for a Preliminary Meeting within four business days constitutes an acceptance of responsibility for the charge(s). In such cases, the DDSRCS/DAI may proceed to sanctioning in accordance with section 18.3, or refer the matter to the Student Conduct Board (SCB) for sanctioning. In the event of extenuating circumstances, the DDSRCS/DAI may grant additional time for the choice. **Note:** If at the time of notification about a

assess the risk to the safety or well-being of the Brandeis community and advise the DOS. The final decision on continuation of the suspension shall be made by the DOS. The procedural standards set forth in section 18 do not apply to indefinite suspension.

**21.4. University Sanctions (Formal Adjudication for Off-Campus Incidents and Non-Brandeis Reporters):** Brandeis University expects students to conduct themselves at all times as good citizens and good neighbors in a manner that is consistent with the federal, state and local laws and ordinances. Off-campus student behavior that aggrieves any person, or on-campus student behavior that aggrieves a non-Brandeis community member, which, in the judgment of the DOS (DOS), constitutes behavior that is inconsistent with this code and adversely affects the University community, may result in sanctions and/or protective measures up to and including dismissal. A Brandeis student disciplined under this authority may request a meeting with the DOS and the SCB or the Outcome Panel (see section 22) (if the allegations include sexual misconduct or gender-based misconduct). The SCB or Outcome Panel shall advise the DOS on the appropriateness of the sanction. The final decision shall be made by the DOS. The procedural standards set forth in section 18 do not apply to off-campus behavior or university sanctions.

**21.5. Medical and Emotional Emergencies:** Whenever a student's conduct results in the intervention of the Brandeis Health Center, the Brandeis Psychological Counseling Center or a non-Brandeis medical or psychological health care provider in order to prevent or address a student's self-harm or harm to others, or to address a student's severe emotional or psychological distress, the DOS will establish an emergency protocol for that student. Any student who receives treatment from a non-Brandeis medical or psychological health care provider under these circumstances must contact the DOS upon release.

The DOS shall notify the student in writing of the emergency protocol and the basis for the protocol. Within three business days of notification, the student shall have an opportunity to speak with the DOS, to discuss the protocol and provide information, including documentation by a health care provider, to contest the action(s) taken. The DOS shall then decide, at his/her discretion, whether to reinstate or restore the student's privileges, to consider further action under this procedure or to take additional reasonable and appropriate steps.

During the period begun by the emergency intervention and continuing until the conveyance of explicit written permission by the DOS to resume campus functions, a student subject to an emergency protocol is not permitted to access any campus property, facilities or attend any classes. There will be no exception for examinations or other time-sensitive student activities or academic obligations. Failure to comply with this protocol may result in referral to the PRP as defined in this document (see sections 2.1 and 2.2).

## Section 22. The Special Examiner's Process

In cases where the University receives a report from a willing accuser who is a current Brandeis community member (students, staff or faculty) and determines that one or more possible violations of section 3 or gender-based behaviors from any other section exist, the case will be adjudicated by the SEP. This prompt, fair and impartial process is

described here in section 22 because it is distinct from the procedures described in the PRP found in section 18. When a student is accused of multiple violations for a single incident or cluster of related incidents, some of which are gender-based and others of which are not, the SEP will be used to adjudicate all allegations simultaneously or in multiple SEPs as deemed appropriate by the DOS.

Brandeis is committed to acknowledging and preserving the rights and responsibilities of all its students through all of its disciplinary procedures. In the event that the University is aware of possible student violations of section 3 or gender-based behaviors related to any section of this code, but where there is no accuser, the DOS reserves the right to take action pursuant to their authority enumerated in section 21.

**Roles and Terms**

**Confidentiality:** The Confidentiality Policy, found in section 17, applies to the SEP.

**Community Standards Report (CSR):** An official report to the University's DOS Office about the behavior of a student or another person. A CSR may be submitted by a person who self-identifies or by a person who wishes to remain anonymous. A CSR is required to initiate a formal adjudication process, though a CSR does not automatically initiate a formal adjudication process. The reporter must first self-identify and choose to initiate a formal adjudication process, such as the SEP. Upon the choice to initiate a formal adjudication process, the reporter becomes an accuser. The CSR will be shown, in its entirety, to the accused student(s). This report is a web-based form located at http://www.brandeis.edu/studentaffairs/srcs/reporting.html.

**Interim Measures:** Due to the seriousness of sexual or gender-based misconduct allegations and accompanying issues that may impact the Brandeis community, any student accused of sexual or gender-based misconduct may be subject to interim measures, including: removal from certain roles or positions, University Actions and restrictions (see section 21.1) or Emergency Suspension (see section 21.2) pending the outcome of any investigation or formal disciplinary process. Interim Measures will typically be in effect until the conclusion of the SEP. The DOS, in conjunction with the Title IX Coordinator, reserves the right to maintain, amend, add or remove one or more Interim Measures at any time as deemed appropriate.

**Standard of Evaluation:** This process will use the "Preponderance of the Evidence" standard in evaluating the responsibility of the accused. Under this standard, the accused is presumed not to have engaged in the alleged conduct unless a "preponderance of the evidence" supports a finding that the conduct occurred. A preponderance of evidence means a greater weight of evidence or more likely than not.

**Advisor:** Any current member of the Brandeis community, including undergraduate and graduate students, faculty members, administrators and staff may serve as an advisor to the accuser or the accused. When co-existing criminal proceedings exist, the community eligible to serve as an advisor may expand beyond the Brandeis community to include the party's attorney. An advisor may not also serve as a witness.

The role of any advisor is passive and does not include writing or speaking on behalf of a party throughout the duration of the SEP. Though a potentially important source of support and guidance, the advisor's participation is not required for the party's

progression through the SEP. The failure of a party to choose an advisor will not delay the progress of the SEP. The party is responsible for arranging for their advisor's presence at SEP-related meetings.

An effective advisor combines a generous capacity for empathy with the party being supported with sensitivity toward assisting the party to communicate effectively and completely about their experiences during the SEP.

**Conflict of Interest:** In our small community there is some likelihood that SEP participants may know each other. Reasonable care is taken to avoid conflicts of interest or perceived potential for bias.

**Director of Student Rights and Community Standards (DDSRCS):** The Director receives reports and determines, in conjunction with the Care Team and the DOS, whether a Community Standards Report will be forwarded to the PRP or the SEP. The DDSRCS explains the SEP to the parties and collects preliminary information during the Statements Phase. The Co-Examiner may also serve in place of, or in conjunction with, the DDSRCS in the SEP.

**Special Examiner:** The examiner of allegations and related evidence regarding the allegation(s). During the Fact-Finding Phase the Special Examiner will conduct an investigation and prepare a report of his/her recommended findings at the conclusion of the phase that is submitted to the DOS in support of the Responsibility Findings and/or Deliberations Phase of the process. The report will include three general components: 1) factual findings, 2) observations about the credibility of the participants and 3) opinions about whether a preponderance of the evidence exists for the allegation(s). **Note:** The DOS will make the final decision as to whether the accused is responsible for any allegations. The Special Examiner may be a University employee or a contracted, external expert. The Special Examiner is appointed by the SVPSE or designee.

**Co-Examiner:** A member of the faculty or staff, named by the Title IX compliance officer, who is present at all interviews involving the parties and witnesses held by the Special Examiner. The Co-Examiner will contribute to the investigation by asking questions alongside the Special Examiner. The Co-Examiner will advise the Special Examiner in the preparation of the report, but will not be responsible for the preparation of a separate report. The Co-Examiner will also provide policy and procedural clarifications during interviews.

**Witness:** Any person who was present during the alleged incident(s) or alleged behavior(s) or who has direct knowledge of the incident(s) or alleged behavior(s). A witness may not also serve as an advisor. Witness participation is voluntary. Rather than serving for one party or another, the witness serves the SEP in general. The participation of a willing witness will be at the discretion of the Special Examiner. **Note:** Any records or other evidence retained by the University may be subject to production by court order.

**Dean of Students (DOS):** The DOS or designee conducts the Discussion Phase conversations with the parties and communicates findings to the parties made by the Special Examiner and the panel. The DOS is also responsible for rendering the final decision, during the Outcome Phase, as to any outcome for the accused, based on the recommendations of the Outcome Panel in the Deliberations Phase or based on recommendations of the UAB after any appeal.

**Outcome Panel:** A group of three University administrators and/or faculty, appointed by the DOS, who will receive the Special Examiner's report (when the accused is found responsible for one or more charges) and make a recommendation to the DOS as to the outcome(s) for the accused during the Deliberations Phase.

**SEP Appeals Board:** The SEP Appeals Board is a subset of the University Appeals Board described in sections 19.7 through 19.11. The membership of SEP Appeals Board includes only faculty; a board is comprised of three faculty voters and one tenured faculty chairperson. The procedures of the SEP Appeals Board differ from those of the University Appeals Board. Most significantly, if the SEP Appeals Board determines that a written request for an appeal has merit, it shall make recommendations to the DOS regarding the SEP outcome, rather than conduct any phase of the SEP anew.

**Time Frame:** The SEP will be conducted deliberately and without unnecessary delay. Brandeis University strives to complete investigations within 60 calendar days following receipt of the complaint. Based on past experience, investigations may take longer depending on the complexity of the investigation and the severity and extent of the allegation.

**Timely Access to Information:** Special Examiner's Report will be made available (with appropriate redactions in accordance with applicable laws) to the accuser and the accused. **Note:** Any records or other evidence retained by the University may be subject to production by court order.

**Process**

**Statements Phase:** Subsequent to the receipt of a CSR, the available facts shall be gathered from the reporter, and a careful evaluation of these facts, as well as the credibility of the person reporting them, shall be made. Some reporters choose to limit the details or names of potential witnesses at the time of the CSR submission. While this is acceptable, the CSR must contain sufficient description of the allegations such that relevant citations from "Rights and Responsibilities" are identifiable. The accuser will discuss citations from the code with the DDSRCS/Co-Examiner prior to contact with the accused. Discussion between the accuser and the DDSRCS/Co-Examiner does not infer viability of the allegations, but only that a reasonable relationship might exist between the CSR's narrative and one or more behaviors described in "Rights and Responsibilities." The accused student will be informed of the citations simultaneous to the notification about the contents of the accuser's CSR.

Any other substantiating materials, such as email, text messages, photographs, records, names of witnesses, names, etc., should be submitted to the DDSRCS/Co-Examiner.

The DDSRCS/Co-Examiner will discuss the phases of the SEP in full with the accuser, including the decision about the accuser's choice of advisor. If the accuser is a Brandeis student, the discussion will also include dialog about ongoing efforts to support the student in a variety of non-conduct-related areas, such as medical and counseling services, academic support services, living arrangements, classroom assignments, directory information accessibility, travel considerations, etc. Further, the accuser will be reminded that the SEP does not substitute for the filing of a complaint with law enforcement. The accuser may initiate both processes. Information about initiating a

_____

criminal complaint will be explained. Criminal investigations need not be initiated nor concluded prior to the initiation of the SEP.

**Note:** In addition to the above interactions between the accuser and the DDSRCS/Co-Examiner, the DOS Office, in conjunction with the Title IX Coordinator, will communicate with the accuser and the accused about any Interim Measures that the DOS Office may assign.

Subsequent to the initial meeting with the accuser, the DDSRCS will contact the accused in writing (Brandeis email account) to inform the accused that a Community Standards Report (CSR) has been submitted. Within two business days, or as soon as is practicable, the accused will meet in-person with the DDSRCS/Co-Examiner. The DDSRCS/Co-Examiner will show to the accused the CSR and suggest that the accused compose in writing a thorough response to the allegations described in the CSR. In addition to this response, any other substantiating materials, such as email, text messages, photographs, records, names of witnesses, names, etc., should be submitted to the DDSRCS/Co-Examiner.

The DDSRCS/Co-Examiner will discuss the process in full with the accused, including the decision about the accused's choice of advisor. Since the accused is always a Brandeis student, the discussion will also include dialog about ongoing efforts to support the student. Once the SEP is activated by a CSR, it may not be interrupted by the withdrawal from the University by the accused. *The decision to withdraw from the University is one that any student should make in consultation with advisors, family, guardians, Academic Services or other trusted administrators or faculty.*

The accused must accept or deny responsibility for the allegations presented in the CSR. If the accused accepts responsibility, the DOS (DOS) will issue an outcome for the case, including disciplinary actions or sanctions. Notification will be made in writing (hand-delivered paper copy) to the accuser and the accused. If the accused fails to cooperate prior to accepting or denying responsibility for the allegation(s), the DDSRCS/Co-Examiner or the Special Examiner may consider the accused to have accepted responsibility, the party may forfeit their opportunity to participate in the SEP, and the Special Examiner will report accordingly to the DOS for the Outcome Notification.

If the accused denies responsibility, the SEP will progress to the Fact-Finding Phase.

Cooperation by the parties with the Special Examiner is expected. If a party fails to respond to correspondence (see section 1.9) or attend a scheduled meeting with the DDSRCS/Co-Examiner or Special Examiner, the DDSRCS or Special Examiner may resume the SEP in the party's absence. A party shall have the right to one rescheduled meeting if the failure to attend the originally scheduled meeting was through no fault of their own as determined by the Special Examiner or the DDSRCS/Co-Examiner.

At any point during the SEP, any party is entitled to change their initial course of action. For example, an accuser may drop one or more charges, and an accused may accept responsibility.

**Fact-Finding Phase:** The Special Examiner and the Co-Examiner will conduct the Fact-Finding Phase based both on materials and information offered by the parties during the

Statements Phase, as well as other materials and information discovered in the course of this phase.

**Documents and Other Physical Evidence:** In addition to information and materials submitted during the Statements Phase, the parties and other witnesses, identified either by the parties or by the Special Examiner, may be added to the record for consideration during the Fact-Finding Phase. Documents and other physical evidence deemed by the Special Examiner to be of material importance to the Deliberations Phase will be logged and shared equally with the parties to ensure the opportunity for response. The Special Examiner retains the discretion not to share certain records due to confidentiality concerns, in accordance with applicable law. **Note:** Any records or other evidence retained by the University may be subject to production by court order.

**Interviews with Parties and Witnesses:** Interviews with the parties, witnesses and experts will also be conducted at the discretion of the Special Examiner. The Special Examiner will secure written release as necessary to access pertinent records protected by confidentiality and privacy policies and laws. The Special Examiner will determine who will be interviewed, as well as how many times and in what order individuals will be interviewed.

**Interviews with the Accuser and Accused:** Interviews with the parties will be conducted separately and in-person when possible. These interviews will address not only the facts of the case but also the impacts that the accounts have had on them. The Special Examiner will be joined at all interviews by a Co-Examiner, whose role is to ask questions and clarify policy or procedural questions. The parties are entitled (though not required) to be joined by their advisor, if one has been selected, during all interviews with the Special Examiner and Co-Examiner.

**Interviews of Witnesses:** Interviews of witnesses named by the parties during the Statements Phase or Fact-Finding Phase of the SEP as well as those identified by the Special Examiner, may be conducted in-person, by telephone or by use of Internet-based tools at the discretion of the Special Examiner. Some witnesses may not be local or easily accessible, and the Special Examiner will make a good-faith effort to contact all pertinent witnesses. Expert witnesses may be consulted to verify materials or provide opinions about information or documents submitted by the parties. **Note:** Any records or other evidence retained by the University may be subject to production by court order.

**Special Examiner's Report:** Upon conclusion of all interviews and collection of all known documents and materials deemed necessary by the Special Examiner, the Special Examiner will assemble a report for the DOS that summarizes factual findings, offers conclusions about the credibility of testimony and offers opinions about whether the accused is responsible or not responsible for any or all charges. **Note:** Any records or other evidence retained by the University may be subject to production by court order.

**Discussion Phase:** This phase of the SEP provides the accuser and the accused with separate meeting opportunities with the DOS to learn about and respond to the findings made by the Special Examiner.

The parties, in separate meetings, will receive a printed copy of the Special Examiner's report and engage in dialog with the DOS about the report. Each party will have two business days within which to provide new, pertinent information or names of witnesses

for the DOS's consideration. If after the meetings with the parties and after the submission of any new information or witness names, the DOS seeks additional fact-finding, the DOS will request the Special Examiner to make any and all necessary inquiries. The Special Examiner will submit a supplemental report to the DOS based on the new inquiries. The DOS retains the discretion to hold another round of meetings with the parties to discuss the new findings.

**Responsibility Findings:** If the accused is found not responsible for all charges, the DOS will contact the parties in writing (hand-delivered paper copy) within two business days under usual circumstances.

If the accused is found responsible for one or more charges, the SEP will progress to the Deliberations Phase.
**Deliberations Phase:** This phase of the SEP involves a panel of three University administrators and/or faculty, appointed by the DOS, who will receive the Special Examiner's report and make recommendations as to the outcome(s) for the accused. The DOS will not serve on the panel.

The panel will consult the Special Examiner's report and will be entitled to interview the Special Examiner. The panel will not interview the parties, witnesses or other experts or individuals. Upon voting, the panel will communicate its recommendations about the outcome(s) for the accused to the DOS. The DOS will render the final decision as to any outcomes.

**Outcome Notification:** The DOS will communicate the final outcome(s) decision in writing (hand-delivered paper copy) to the accuser and the accused within seven days under usual circumstances. The accuser will be informed of any sanctions that relate to them in accordance with applicable laws.

Any and all sanctions, including suspension or dismissal, will be in effect immediately, regardless of any appeal that may be submitted by the parties.

**Appeals Procedures:** The accuser and the accused are entitled to appeal the final decision in the SEP to the University Appeals Board (UAB). The UAB's composition, when engaged in a SEP, will differ from what is described in section 19.8. Faculty members will serve as UAB members; students will not. Such appeal requests shall be based only on specific evidence, presented in writing of:

> **1.** Fraud
> **2.** Denial of rights under this process
> **3.** Procedural error
> **4.** The claim of new evidence not previously available, which would have materially affected the decision

Appeals shall not be based upon, or granted due to, dissatisfaction with an imposed sanction. Appeals must be filed within seven business days of delivery of the DOS's final decision. Appeals that are not related to the above four bases will not be considered. On the first business day after the conclusion of the appeal deadline, the DOS will alert the parties by email that one or more appeals have been filed. The appellee will be permitted to receive a printed copy of the appeal and will be permitted to submit a statement to the UAB in response to the appeal within seven business days. The Special Examiner will