UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 15-11557-FDS |
| v. | ) | |
| | ) | |
| BRANDEIS UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT BRANDEIS UNIVERSITY'S REPLY BRIEF IN SUPPORT
OF ITS MOTION TO DISMISS JOHN DOE'S AMENDED COMPLAINT**

Defendant Brandeis University ("Brandeis" or "the University") hereby submits this reply brief in support of its Motion to Dismiss John Doe's ("Doe") Amended Complaint. In Doe's opposition, he does nothing to support his plainly unreasonable contract interpretations or his deficient tort claims. Instead, Doe asks the Court to redefine the "reasonable expectations" standard, to ignore controlling precedent, and to apply wholly unrecognized and inapposite legal theories to this case. Doe also fails to refute many of the specific legal arguments asserted by Brandeis in its original memorandum. Accordingly, Brandeis respectfully requests that the Court grant its motion and dismiss Doe's Amended Complaint in its entirety.

I. Doe's Breach of Contract Claims Misapply the "Reasonable
Expectations" Standard, Ignore Governing Case Law, and are Based
on Plainly Erroneous Interpretations of Brandeis' Student Handbook

Doe alleges that Brandeis breached its Rights and Responsibilities handbook ("R&R") by "effectively eliminating the Statements Phase of the Special Examiner's Process." Docket No. 41 at 7 (internal quotation marks omitted). Specifically, Doe argues that "[a] reasonable hypothetical student in [Doe's] situation would reasonably expect the University to share with

the accused the accuser's 'thorough statement' of the allegations during the Statements Phase of the Process . . ." Id. at 8 (emphasis omitted). This conclusion rests on contract terms that simply do not exist. As noted in Brandeis' original memorandum, the R&R did not require Brandeis to share any "thorough statement" created by J.C. during the Statements Phase. Docket No. 35 at 15; Moriello Aff. Ex. A § 22.6.[1] Rather, it expressly states that Doe was only permitted to view, and respond to, the allegations "described in the [Community Standards Report ("CSR")]." Moriello Aff. Ex. A § 22.6 (emphasis added). Thus, Doe's focus on the "substantially more information" that Brandeis obtained from J.C., Docket No. 41 at 8, is immaterial.

Doe piles misinterpretation atop misinterpretation by relying on language from the Fact-Finding Phase. Id. at 9. In that section, the R&R states only that the Fact-Finding Phase will be "based on both materials and information offered by the parties during the Statements Phase." Moriello Aff. Ex. A § 22.6. The R&R does not say anything about the sort of information that the parties are permitted to produce, or the specific materials that the parties are entitled to review prior to producing such information. At bottom, this allegation is based on Doe's subjective expectations of what an ideal disciplinary process ought to look like. It is untethered to the R&R's controlling language or to any objectively reasonable expectations.[2]

Doe next alleges that Brandeis breached its "contractual obligation to comply with [the Family Education Rights and Privacy Act ("FERPA")]" by failing to provide him with a copy of

---

[1] "Moriello Aff." refers to the first Affidavit of Antonio Moriello in support of Brandeis' motion to dismiss. Docket No. 21.

[2] Doe contends that these terms, as well as others, are ambiguous and should be construed against Brandeis. See, e.g., Docket No. 41 at 10, 12. However, "[t]he mere existence of a disputed interpretation by the parties does not create an ambiguity." Suffolk Const. Co. v. Illinois Union Ins. Co., 80 Mass. App. Ct. 90, 94 (2011). "A term is ambiguous only if it is susceptible of more than one meaning and if reasonably intelligent persons would differ over the proper meaning." Id. As explained throughout this reply brief, Doe's interpretations of the R&R are patently unreasonable and do not reflect any actual ambiguities in the student handbook.

the Special Examiner's report.  Docket No. 41 at 10-11.  Doe suggests that Brandeis "undertook" this obligation by referencing FERPA in its R&R.  Id.  He further argues that the specific R&R provision—Section 17.4—creates a reasonable expectation of FERPA compliance.

Doe's contentions are meritless.  Doe does not present any legal authority stating that, whenever a party references a statute in a contract, it assumes a contractual duty to comply with that statute.  To incorporate extra-contractual terms into a contract, "[t]he contract's language must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract ..."  CSX Transp., Inc. v. ABC & D Recycling, Inc., No. CIV.A. 11-30268-FDS, 2013 WL 3070770, at *4 (D. Mass. June 14, 2013).  Although the R&R refers to FERPA, Brandeis did not expressly incorporate by reference the substantive terms of the statute.  The plain language of Section 17.4 merely apprises Brandeis' students of their FERPA rights.

Doe alleges that Brandeis breached the R&R by eliminating the Deliberations Phase of the Special Examiner Process.  Docket No. 41 at 12-13.  This claim is based on Doe's erroneous contention that the three-member "Deliberations Panel" was tasked with making findings of fact.  This is not the case.  Indeed, the R&R contains a Fact-Finding Phase and a Responsibility Findings procedure that immediately precede the Deliberations Phase.  The R&R states, "[i]f the Accused is found responsible for one or more charges, the Special Examiner's Process will progress to the Deliberations Phase."  Moriello Aff. Ex A § 22.6 (emphasis added).  In other words, unless the Special Examiner issues her findings of fact and finds the accused responsible, and the Senior Student Affairs Officer or his/her designee ("SSAO/D") adopts those findings, the case will never progress to the Deliberations Phase at all.  Therefore, there is no basis to conclude that findings of fact are made during the Deliberations Phase.

Doe's interpretation also ignores the express R&R language outlining the Panel's limited duties. The R&R defines the Panel as "[a] group of three University administrators and/or faculty, appointed by the SSAO/D or designee, who will receive the Special Examiner's report (<u>when the Accused is found responsible for one or more charges</u>) and make a <u>recommendation to the SSAO/D as to the outcome(s) for the Accused</u> during the Deliberations Phase." Moriello Aff. Ex A § 22.6 (emphasis added). This provision reveals that the Panel is limited to recommending "outcomes" after the accused is already found responsible. The only "findings" that the Panel is empowered to make, Docket No. 41 at 16, are those relating to such outcomes.

Doe contends that Brandeis' interpretation of "outcomes" conflates the term with "sanctions." Docket No. 41 at 14-17. Doe is mistaken. In its original memorandum, Brandeis stated that "'outcomes' refers to the University's post-finding actions/decisions, <u>including any sanctions</u>." Docket No. 35 at 22 (emphasis added). Under this interpretation, the University's three-member Panel may issue an outcome in the form of a sanction, or may decide to take no further action. <u>See</u>, <u>e.g.</u>, Moriello Aff. Ex. A § 21.1.a. Thus, although a sanction constitutes an outcome, an outcome is not necessarily a sanction. Brandeis' interpretation, in which findings of fact, outcomes, and sanctions are all discrete terms, is the only logical construction that comports with basic canons of contractual construction.

Doe alleges that Brandeis breached Lisa Boes' "express representation" that the three members of the University Appeals Board would not have any conflict of interest. Docket No. 41 at 18; <u>see</u> <u>also</u> Third Moriello Aff. Ex. A. Although Doe recognizes that this statement does not appear in the R&R (or any other potential contract), he claims that it imposes contractual liability on Brandeis because it "was made during the course of the … Special Examiner's Process and was a communication in furtherance of that Process." Docket No. 41 at 19.

Doe has not presented any legal authority for this bald assertion. It "is familiar law that evidence is not admissible to vary, contradict or add to the terms of a contract reduced to writing by the parties." W. Newspaper Union v. Dittemore, 264 Mass. 74, 77 (1928); see also Coffin v. Bowater Inc., 501 F.3d 80, 98 (1st Cir. 2007) ("Extrinsic evidence should not be used to add terms to a contract that is plausibly complete without them.") (citation omitted). Doe does not submit Ms. Boes' representation as evidence of an ambiguous provision pertaining to the Appeals Board process. Rather, he seeks to create a new contract term that is not present in either the R&R or Brandeis' Conflict of Interest Policy. He is not permitted to do so.

Doe does not save this claim by relying on the Appeals Board's reference to "recommended minimum sanctions" and No Contact Orders. Even if J.C.'s advisor and the Chair did speak about these issues, there is no basis to conclude that they also discussed the specifics of the J.C.-Doe case. More to the point, Doe has not pled any facts showing that their alleged discussions altered the outcome of Doe's appeal. The Chair was not the only member of the Appeals Board and there is no allegation that the other two members had any conflict of interest. See Amended Complaint; Third Moriello Aff. Ex. B. The Board voted unanimously in rejecting each of Doe's arguments on appeal. Third Moriello Aff. Ex. B. Thus, Doe cannot plausibly claim that, if the Chair and J.C.'s advisor did not have their alleged discussions, the other two members of the Appeals Board would have voted differently.[3]

---

[3] Doe's contention that the Appeals Board's decision is "dismissive in tone, barely touches on the merits, and dwells on two 'extraneous issues'" is false. Docket No. 41 at 21. In fact, the Appeals Board examined each of Doe's appeal arguments and stated the specific reasons why they lacked merit. Third Moriello Aff. Ex. B. The Appeals Board stated its position regarding minimum sanctions, in passing, after it had already reached its various conclusions regarding the merits. Id. at 4. Its discussion regarding a No Contact Order was similarly cursory, and was part of its responses to specific issues raised by Doe himself. Id. at 2-3.

Doe alleges that Brandeis impermissibly proceeded via the Special Examiner Process rather than the "Hearing Process" as included in the 2011-2012 R&R.  As Brandeis previously explained, the word "tweak" in the R&R pertains to all of the University's disciplinary procedures, not just those pertaining to J.C.'s CSR.  See Docket No. 35 at 24.  Doe ignores this point in his opposition, and does not refute Brandeis' position that the amendments between 2011-2012 and 2013-2014 pertained only to a narrow subset of student misconduct.[4]  Doe also ignores the fact that each R&R was expressly labelled to correspond to a particular school year.  Thus, he fails to explain how an objectively reasonably student could have expected the procedures in the 2011-2012 R&R to govern the 2013-2014 school year.[5]

Doe alleges that he was entitled to proceed through the Hearing Process on the charges of physical harm and invasion of privacy.  Docket No. 41 at 24-25.  Brandeis previously explained why this contention runs contrary to the R&R's express terms.  Docket No. 35 at 25.  In response, Doe contends that R&R Section 19.1 contains the "same general language" as the provision cited by Brandeis.  Docket No. 41 at 24.  That is not correct.  By its express terms, the procedures in Section 19.1 apply only where DSRCS "decides that there is evidence of a violation that warrants referral to the [Hearing Process]."  Moriello Aff. Ex. A § 19.1.  DSRCS

---

[4] The Hearing Process, which remains largely intact, still applies to disciplinary actions based on, among other things: intimidation; threatening behavior; bullying; defamation; failure to comply with University instructions, decisions, or regulations; misuse of computers and electronic media; misuse of safety equipment; hazing; use of weapons and dangerous items; plagiarism; and misuse of alcohol, tobacco, and illegal drugs.  Moriello Aff. Ex. A §§ 2.0-5.5.

[5] Doe's contention that Brandeis "expressly limited itself to 'tweaking' the rules" is incorrect.  Docket No. 41 at 23-24.  The tweak language, to the extent it is actionable at all, Docket No. 35 at 24 n. 5, merely informs Brandeis' students of the University's right to "modify" its rules in accordance with Coveney v. President & Trustees of Coll. of Holy Cross, 388 Mass. 16, 22 (1983).  See also Oxford Dictionary, Tweak, available at http://www.oxforddictionaries.com/us/definition/american_english/tweak (noting that "tweak" is synonymous with "modify").

cannot determine that a CSR "warrants" referral to the Hearing Process where it contains allegations of sexual harassment. Section 22.6 expressly requires that such "case[s],"—not allegations—proceed through the Special Examiner Process.[6] Moriello Aff. Ex. A § 22.6.

Doe alleges that Brandeis breached the R&R by, among other things, "allowing" a leak of "information about the Special Examiner's findings" to third parties. Amended Complaint ¶ 174. Brandeis previously explained that the provisions cited by Doe do not extend to such "information." Docket No. 35 at 25-26. Does' argument that there is no material difference between a leaked document and leaked information is belied by the R&R's express terms. See Moriello Aff. Ex. A §§ 19.5, 19.6.j, 22.6 (applying only to written records and hearing reports).

Further, Doe's contention that Brandeis leaked "information contained in confidential documents," Docket No. 41 at 25, is not what he alleged. As noted above, Doe alleged only that Brandeis leaked information "about" the Special Examiner's "findings." Amended Complaint ¶ 174. There are plenty of things that Brandeis could have said "about" the findings that would not involve material "in" the underlying report, e.g., who would be in charge of reviewing the findings and disseminating them to the parties, how they should be treated under FERPA, etc. Because Doe does not identify any particular information that was "leaked," it is impossible to conclude that such information was actually contained "in" the Special Examiner's report.

Doe alleges that Brandeis breached its obligation to "ensure that the Special Examiner's findings were based on a preponderance of the evidence and were not arbitrary and capricious."

---

[6] Furthermore, to the extent that Section 19.1 contains "general language" about referrals to different conduct processes, Section 22.6 is more specific and trumps it. See Lembo v. Waters, 1 Mass. App. Ct. 227, 233 (1973) ("If the apparent inconsistency is between a clause that is general and broadly inclusive in character and one that is more limited and specific in its coverage, the latter should generally be held to operate as a modification and pro tanto nullification of the former.") (citation omitted).

Docket No. 41 at 25.  In support, Doe merely restates the insufficient allegations and unsupported legal conclusions that he advances in his Amended Complaint.  Id. at 25-28.  He does not address, let alone distinguish, the holdings in Coveney, Schaer v. Brandeis Univ., 432 Mass. 474 (2000), Cloud v. Trustees of Boston Univ., 720 F.2d 721 (1st Cir. 1983), or Driscoll v. Bd. of Trs. of Milton Acad., 70 Mass. App. Ct. 285 (2007).  In fact, his argument that Brandeis may not properly "defend the Special Examiner's Report on a motion to dismiss" is squarely inconsistent with Schaer.  See 432 Mass. at 479 n. 9 (finding that the record on a motion to dismiss contained sufficient evidence that the university's disciplinary decision was based on clear and convincing evidence).  Here, as in Schaer, the record contains ample evidence—including witness statements, corroborating evidence of Doe's other sexual misconduct, and the Special Examiner's credibility determinations—to dispose of Doe's contract claim at this stage.[7]

II.   Doe's Claims for Breach of the Covenant of Good Faith
      and Fair Dealing and Estoppel/Reliance Are Legally Deficient

Doe's claim for breach of the covenant of good faith and fair dealing is likewise based on R&R terms that do not exist.  Docket No. 41 at 28-29.  Although he states, in conclusory fashion, that Brandeis deprived him of the "fruits of his contract," he points only to the same deficient bases underlying his contract claim.  Id. at 28-29.  "The purpose of the covenant [of good faith and fair dealing] is not to add terms to a contract …" McAdams v. Massachusetts Mut. Life Ins. Co., 391 F.3d 287, 301 (1st Cir. 2004).  Doe fails to recognize this principle, and does not plead any facts suggesting that Brandeis acted in bad faith or to gain an unfair advantage.

Doe's estoppel claim also fails.  The only "promise" that Doe identifies is Ms. Boes' statement about the Appeals Board.  Docket No. 41 at 29.  As shown above, this allegation

---

[7] There is no merit to Doe's contention that "sexual violence" is separate and distinct from "physical harm" or "violence of any kind."  Docket No. 41 at 27.  Sexual violence is necessarily physical in nature.

suffers from fatal causation deficiencies.  Also, Doe has not pled any facts showing that he relied on this promise.  See Moore v. La-Z-Boy, Inc., 639 F. Supp. 2d 136, 142 (D. Mass. 2009) (noting that an estoppel claim requires "action or forbearance").  He simply does not allege that he took any action/inaction in response to this promise that he otherwise would not have taken.

III.     Doe's Negligence Claims are Based on Unrecognized and Irrelevant Tort Duties

Doe does not dispute that the student-college relationship is contractual in nature.  Docket No. 41 at 29-31.  Nor does he point to any authority showing that Massachusetts courts recognize a tort duty to exercise reasonable care when making disciplinary decisions.  Id.  Instead, Doe seeks to circumvent controlling case law by advancing a negligent retention/supervision theory.

This theory is baseless.  "The torts of negligent hiring, retention, and supervision ordinarily relate to situations where 'employees are brought into contact with members of the public in the course of an employer's business.'"  Vicarelli v. Bus. Int'l, Inc., 973 F. Supp. 241, 246 (D. Mass. 1997) (citing Foster v. The Loft Inc., 26 Mass. App. Ct. 289, 290 (1988)).  The duty underlying these torts rests on the legal relationship between a landowner and its invitees.  See Annotation, *Liability of Employer, Other Than Carrier, For a Personal Assault Upon Customer, Patron, or Other Invitee*, 34 A.L.R.2d 372 (1954).  To state a claim for negligent retention/supervision, the plaintiff must "allege that the employer knew, or should have known, that the offending employee had a proclivity to commit the complained-of acts, and that the employer nevertheless failed to take corrective action."  Vicarelli, 973 F. Supp. at 246.

Here, Doe was not a member of the public; he was a Brandeis student with a private contractual relationship with the University.  Although Brandeis acknowledges that it owed certain tort duties to invitees (including Doe)—e.g. a duty to keep its premises in a reasonably

9

safe condition—those duties have no application in the student discipline context.[8] In any event, Doe fails to state a plausible claim for negligent retention/supervision. Specifically, he has not pled any facts suggesting that Brandeis knew or should have known that Ms. Boes had a "proclivity" to commit the alleged procedural errors. Indeed, by Doe's own admission, this was Ms. Boes' first time serving as the "final decision maker." Docket No. 41 at 30.

Doe also asserts a negligence claim based on Brandeis' alleged violation of FERPA. Id. In support, Doe correctly states that a statutory violation may provide evidence that a party breached a tort duty. Juliano v. Simpson, 461 Mass. 527, 532 (2012). However, "[a] duty of care must already exist before a plaintiff can use a defendant's statutory violation to support a claim of tort liability." Id.[9] Doe fails to present any legal authority showing that Brandeis owed a tort duty (independent of its statutory duty) to comply with FERPA.

IV.     Doe's Claims for Defamation and Invasion of Privacy are Insufficient as a Matter of Law

In Brandeis' original memorandum, it explained that Doe's defamation allegations are conclusory and based on true—i.e. non-defamatory—findings. Docket No. 35 at 34, n. 10. Doe, in response, does not dispute that the Special Examiner's findings were substantially true because Doe admitted to much of the conduct for which he was ultimately found responsible. See Docket No. 41 at 32-33. Although Doe contends that Brandeis was one of "several sources" that leaked information about Doe's case, he does not point to any specific factual allegations

---

[8] To hold otherwise would run afoul of the controlling principle that "in the absence of a violation of a reasonable expectation created by the contract, or arbitrary and capricious conduct by the university, courts are not to intrude into university decision-making." Berkowitz v. President & Fellows of Harvard Coll., 58 Mass. App. Ct. 262, 269-70 (2003) (internal citations omitted).

[9] Whether or not a duty exists is a question of law. Davis v. Westwood Group, 420 Mass. 739, 743 (1995).

supporting that conclusion. See id.[10] Doe also argues that Brandeis "aided and abetted J.C. not only by standing idly by but by allowing J.C. to create" a hostile environment for Doe. Id. at 33. That is a distinction without a difference. Because Brandeis did not provide any affirmative assistance or encouragement to J.C., the University cannot be liable for aiding and abetting.

Doe apparently concedes that his privacy claim would be subject to dismissal to the extent it asserts allegations of false light invasion of privacy. See id. at 34. Nevertheless, he contends that his privacy claim is actionable because it is based on "sexually intimate facts" that were disclosed during the Special Examiner Process. Id. Doe does not, however, point to any specific "facts" that: (1) are true; and (2) were disclosed to third parties. He alleges only that Brandeis disclosed the Special Examiner's "findings"—not the Special Examiner's report (which contained information other than her findings). Amended Complaint ¶ 248 (emphasis added). To the extent Doe refutes the veracity of those findings, his claim is, despite his characterization, a false light claim. Accordingly, it must be dismissed.

V.      Doe's Claim for Intentional Infliction of Emotional Distress Fails
        Because He Fails to Allege Actionable "Extreme and Outrageous Conduct"

In his opposition, Doe clarifies that his claim for intentional infliction of emotional distress ("IIED") is based solely on the alleged dissemination of "false statements." Docket No. 41 at 35. In support, he points to two cases—Tech Plus, Inc. v. Ansel, 59 Mass. App. Ct. 12, 26 (2003) and Zajac v. Zajac, No. 20051805B, 2007 WL 2706145 (Mass. Super. Aug. 17, 2007)—for the proposition that the "deliberate spreading or publication" of such false statements "can constitute 'outrageous conduct.'" Docket No. 41 at 35.

---

[10] As made apparent during the briefing on Doe's motion to proceed under a pseudonym, many other third parties knew about the Special Examiner's findings besides Doe, J.C., and Brandeis. Much of this publicity was fomented by Doe himself. Docket No. 11 at 6; Docket No. 12, Exs. A-E.

11

Doe misreads the Ansel decision. In that case, the Massachusetts Appeals Court found sufficient evidence of outrageous conduct where the defendants had spread deliberately false statements about the plaintiff's anti-Semitism. Ansel, 59 Mass. App. Ct. at 26. There is a distinction between the deliberate spreading of information (as alleged by Doe), and the spreading of deliberately false information (as proscribed by Ansel). If the deliberate spreading of false information constituted outrageous conduct, then all defamation could give rise to a claim for IIED. That is not the law. See, e.g., LeBeau v. Town of Spencer, 167 F. Supp. 2d 449, 457 (D. Mass. 2001) (although publication of a report could support defamation claim, it did not, even when coupled with other conduct, constitute outrageous conduct). Doe has not alleged sufficient facts showing that Brandeis spread knowingly false information.

The Zajac decision, moreover, is a Superior Court case that has no precedential or persuasive value. Notably, it fails to analyze in any detail the "extreme and outrageous conduct" requirement. Zajac, 2007 WL 2706145 at *4. It also conflates claims for IIED with those for defamation and negligent infliction of emotional distress. Id. Ultimately, the "extreme and outrageous conduct" conduct standard is considerably high, and is not met here as a matter of law.[11]

### Conclusion

For the foregoing reasons and the reasons stated in Brandeis' original memorandum, Brandeis respectfully requests that the Court grant its motion to dismiss Doe's Amended Complaint in its entirety.

---

[11] See, e.g., Inman v. Siciliano, No. CIV.A. 10-10202-FDS, 2012 WL 1980408, at *15 (D. Mass. May 31, 2012) (granting summary judgment on IIED claim even though the underlying conduct was "unreasonable for purposes of the Fourth Amendment"); Edsall v. Assumption Coll., 367 F. Supp. 2d 72, 80 (D. Mass. 2005) (dismissing IIED claim and stating that "the mere fact that the defendants' conduct may turn out to be violative of the plaintiff['s] civil rights does not, in and of itself" sustain the IIED claim) (citation omitted).

Respectfully submitted,

BRANDEIS UNIVERSITY,

By its attorneys,

/s/ Antonio Moriello
Alan D. Rose (BBO #427280)
Antonio Moriello (BBO #685928)
Rose, Chinitz & Rose
One Beacon Street, 23rd Floor
Boston, Massachusetts  02108
(617) 536-0040
Fax: (617) 536-4400
adr@rose-law.net
am@rose-law.net

Dated:  August 19, 2015

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via mail to those indicated as non-registered participants on August 19, 2015.

/s/ Antonio Moriello